IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MARK T. EDDINGSTON, | § | |
| JEFFERY M. DAVIS, | § | |
| ELRIDGE NICHOLAS BOLLICH | § | |
| RAY A. COX and GEORGE GALANIS | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 2:12-CV-00422 |
| | § | |
| V. | § | |
| | § | |
| UBS FINANCIAL SERVICES, INC. | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Plaintiffs, for their First Amended Complaint against Defendant UBS Financial

Services, Inc., would show as follows:

### Parties

1.      Plaintiffs are individuals.

2.      Defendant has appeared.

3.      Subject matter jurisdiction of this Court over this civil action exists under 28

U.S.C. §1331 and 29 U.S.C. §1132(e)(1)  based on Plaintiff's claim under 29 U.S.C.

§1132, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§§1001-1461. Supplemental jurisdiction exists under 28 U.S.C. §1367 based upon

Plaintiff's alternative claim under Texas law.

4.     Venue is proper because Defendant resides or may be found in this District under 28 U.S.C. §1391(b) and (c) and 29 U.S.C. §1132(e) because, among other things, it owns and operates one or more offices in this District and the Plan, as defined below, covered individuals residing in this District.

Facts

5.     Defendant is a broker-dealer and Plaintiffs and other individuals similarly situated were employed as registered representatives of Defendant, referred to by Defendant as financial advisors, prior to January 1, 2011. Plaintiffs and other individuals similarly situated, employed by Defendant prior to January 1, 2011, became covered by an employee benefits plan of Defendant referred to as PartnerPlus Plan for Financial Advisors (as applicable prior to January 1, 2011, the "Plan"). The Plan was a continuation of an employee benefits plan established as of January 1, 1995 by one of Defendant's predecessors in interest, PaineWebber and Company. Initially, the Plan covered financial advisors and also covered branch managers, although not specifically named as eligible to be covered by the Plan. As of January 1, 1998, Defendant created a separate PartnerPlus Plan for Branch Managers. Defendant acquired PaineWebber and Company in 2000.

6.     Prior to an amendment and restatement of the Plan as of January 1, 1998, the Plan was claimed to be a "top hat" plan governed by ERISA in part, a plan which is unfunded and maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1102(a)(2). "Top hat" plans are governed by certain provisions

of ERISA applicable to employee benefits plans, but not to all vesting, funding and other requirements imposed by ERISA on employer-sponsored employee benefits plans. After the Plan was amended and restated as of January 1, 1998, it did not claim to be governed by ERISA in whole or part, but exclusively by New York law, until January 1, 2011, when UBS again claimed that it was an ERISA "top-hat" plan.

7.      The Plan constituted an employee benefits plan governed by ERISA because, as established by Defendant, it was an arrangement intended to provide benefits, have a group of beneficiaries as participants, a source of funding and a procedure for providing benefits. Further, the Plan contained provisions of a nature requiring it be treated as an employee benefits plan governed by ERISA.

8.      The Plan further constituted a pension plan under 29 U.S.C. §1002(3)(2)(A) governed by ERISA and, as such, was governed by all vesting, funding and other requirements imposed by ERISA on employer-sponsored employee benefits plans, in that it was "a plan fund or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or by the result of surrounding circumstances such plan, fund or — (i) provides retirement income to employees, or (ii) results in the deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan, or the method of distributing benefits from the plan."

9.     The Plan further constituted an individual account pension plan under 29

U.S.C. §1002(34), and as such was governed by all vesting, funding and other requirements

imposed by ERISA on employer-sponsored employee benefit plans, in that it was a

"pension plan which provides for an individual account for each participant and for benefits

based solely upon the amount contributed to the participant's account, and any

income, expenses, gains and losses, and any forfeitures of accounts of other participants

which may be allocated to such participant's account."

10.     Under the Plan, employees covered by the Plan benefitted from two types of

contributions. "Firm Contributions" were deferred awards made by Defendant. Firm

Contributions remained unvested for the first five years after they were awarded and then

vested 20% per year in years six through ten of a financial advisor's continued employment.

The Plan also permitted financial advisors to make "Voluntary Contributions." Voluntary

Contributions were always immediately vested and were not subject to any vesting

schedule. Both types of contributions were credited with "Turbo Interest" for the first four

years after a contribution was made. Turbo Interest was calculated as four times the

applicable market interest rate. Under the Plan, all Turbo Interest accumulated on either

Firm or Voluntary Contributions was considered a Firm Contribution. Vested amounts were

not distributed to employees covered by the Plan until their tenth year anniversary but

continued to earn "Market Interest" during that time frame. If a financial advisor voluntarily

left Defendant, all unvested Firm Contributions, including unvested Turbo Interest, were

forfeited. The Plan did, however, provide an exception for financial advisors who met "age

and service" rules and who voluntarily resigned to leave the industry. In order to benefit from this exception to the Plan's forfeiture provisions, a financial advisor who met the "age and service" rule upon leaving Defendant was also required to sign a separation agreement which specifically affirmed, among other things, that the financial advisor was in fact, leaving the industry and would not compete against, nor solicit customers from Defendant. Financial advisors who did not sign such an agreement forfeited all unvested Firm Contributions without exception.

11.     Despite the applicability to the Plan of all vesting, funding and other requirements imposed by ERISA on employee pension plans, including individual account pension plans, the Plan did not comply with ERISA. Specifically, as an individual account pension plan under ERISA, the Plan was subject to the vesting and non-forfeiture provisions of of ERISA, including 29 U.S.C. §1053 and the funding provisions of of ERISA, including 29 U.S.C.§§ 1081 and 1082, but the Plan did not comply with such provisions.

12.     Under 29 U.S.C. §1053, as it existed at the time of the formation of the Plan, a pension plan "shall satisfy" the requirements of §§ 1053(a)(1) and (2) with respect to vesting. With respect to employee contributions, § 1053(a)(1) specifies that a plan must provide that "an employee's rights in his accrued benefit derived from his own contributions are non-forfeitable." With respect to employer contributions, § 1053(a)(2) specified in 1995 that a plan must satisfy subparagraph (A), (B), or (C). Under subparagraph (A), an employee "who has completed at least 5 years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions." (This is

known as "cliff vesting.") Under subparagraph (B), an employee has a different non-forfeitable percentage after completing different number of years of service, but in any case must have a 100% non-forfeitable percentage after 7 or more years of service. (This is known as "graded vesting.") Subparagraph (C) applies to multiemployer plans and is not pertinent, but similarly states that an employee covered by a collective bargaining agreement who has completed at least 10 years of service has a non-forfeitable right to 100% of the employee's accrued benefit derived from employer contributions, and (A) and (B) are satisfied as to any other employee. Under 29 U.S.C. §1053, as it existed as of 2007, a pension plan shall satisfy either §1053(a)(2)(B)(ii) or (iii), which provide with respect to employer contributions: under subparagraph (ii), an employee "who has completed at least 5 years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions," or under subparagraph (iii), an employee has a different non-forfeitable percentage after completing different number of years of service, but in any case must have a 100% non-forfeitable percentage after 7 or more years of service. Under 29 U.S.C. §1053, as subsequently amended, a pension plan shall satisfy either §1053(a)(2)(B)(ii) or §1053(a)(2)(B)(iii), which provide with respect to employer contributions: under subparagraph (ii), an employee "who has completed at least 3 years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions," or under subparagraph (iii), "an employee has a different non-forfeitable percentage after completing different number of years of service, but in any case must have a 100% non-forfeitable percentage after 6 or more years of service."

13.    The Plan (as amended from time to time) properly specified, consistent with §1053(a)(1), even while the Plan did not acknowledge the applicability of ERISA, that each employee covered by the Plan had at all times a non-forfeitable interest in Voluntary Contributions. However, with respect to Firm Contributions, the Plan (as amended from time to time) provided that each such employee shall have an interest in each Firm Contribution (and a contribution from another employee benefit plan referred to as a "Rollover Contribution") only as of the date of the making of the Firm Contribution or date of vesting of a Rollover Contribution and subject to the requirement that the employee remain employed by Defendant. The Plan similarly provided that the time for vesting of "Market Interest" begin only at the time of each Firm Contribution on which it accrued and for vesting of such Market Interest only 10 years after the date of such Firm Contribution. With respect to "Turbo Interest," the Plan (as amended from time to time) provided that the employee shall have a vested right only if the employee retired from the brokerage business and executed a Non-Competition, Non-Solicitation and Non-Disclosure Agreement in form satisfactory to Defendant.

14.    Under the Plan, payment of benefits due under the Plan other than Voluntary Contributions could be denied in the event the employee of Defendant did not meet an age and service rule provided for in the Plan and engaged in the brokerage business after the termination of his or her employment with Defendant and did not execute a a Non-Competition, Non-Solicitation and Non-Disclosure Agreement in form satisfactory to Defendant.

15. The vesting provisions of the Plan were improper because ERISA governed the Plan and such vesting provisions did not comply with §1053 of ERISA. The provisions in the Plan for vesting of Firm Contributions and Market Interest on such Firm Contributions to be recomputed as of the time any new Firm Contribution is made was not authorized by §1053, which ties vesting to length of employment and applies to all "accrued benefits," defined in 29 U.S.C.§1002(23)(B) and (34) of ERISA to include "the balance of an individual's account" including amounts contributed to the account and "any income, expenses, gains and losses which may be allocated to such participant's account." The provisions in the Plan for vesting of Turbo Interest, and for distribution of Firm Contributions, Market Interest and Turbo Interest, only if a Non-Competition, Non-Solicitation and Non-Disclosure Agreement is executed, were also not authorized by §1053, which makes such accrued benefits, including interest, nonforfeitable based upon length of service only.

16. The Plan was not funded separate and apart from the general assets of Defendant, as required by the funding provisions of ERISA, including 29 U.S.C. §§ 1081 and 1082.

17. In violation of 29 U.S.C. § 1053, Plaintiffs and other similarly situated individuals employed by Defendant prior to January 1, 2011 have had amounts distributable to them under the Plan on account of Firm Contributions, Market Interest and Turbo Interest forfeited solely because Plaintiffs and such other employees have refused to sign a Non-Competition, Non-Solicitation and Non-Disclosure Agreement required by Defendant

to be signed as a condition of any distribution of such amounts. Specifically, Defendant has improperly forfeited as to Plaintiffs and similarly situated individuals employed by Defendant prior to January 1, 2011 the Firm Contributions, Market Interest and Turbo Interest to which Plaintiffs were entitled.

18.     The Plan was not a "top hat" plan, nor was it another plan not subject to ERISA's vesting and funding provisions (e.g., excess benefit plan, as defined in 29 U.S.C. § 1002(36)). Between January 1, 1995 and January 1, 2011, the Plan was not limited to a select group of management or highly compensated employees, as required for a "top hat" plan, given the number of financial advisors and percentage of total financial advisors of Defendant covered by the Plan, and was not subject to negotiation by financial advisors. Even as originally offered by PaineWebber and Company, eligibility was available to any Investment Executive/Financial Adviser "who generated a minimum of $200,000 in gross production at PaineWebber in 1994," which made it non-select in that almost all of such individuals, constituting a material percentage of total employees of PaineWebber and Company, were eligible to be covered by the Plan when it was first formed. After Defendant's acquisition of PaineWebber and Company in 2000, at least prior to January 1, 2011, the Plan continued to be non-select in that most, if not substantially all, financial advisors of Defendant were eligible to be covered by the Plan and Defendant used the Plan to recruit new employees, including new employees who did not have any actual production. The Plan was also not subject to negotiation by financial advisors. The Plan was not solely for the purpose of providing benefits for certain employees in excess of the

limitations on contributions and benefits imposed by Section 415 of the Internal Revenue Code.

19.     The Plan purported to be governed by New York law. However, even assuming the validity of the governing law clauses in the Plan before and after January 1, 2011, as to amounts deferred under the plan prior to January 1, 2011, Defendant's principal place of business was not in New York, and Plaintiffs and individuals similarly situated employed by Defendant in Texas did not have any significant contacts with Defendant in New York. Plaintiffs and individuals similarly situated employed by Defendant in Texas prior to January 1, 2011 only had significant contacts with Texas in connection with their employment with Defendant because such employment was based on personal services provided in Texas. Further, Texas, not New York, had the substantial relationship to Plaintiffs and such similarly situated employees employed by Defendant in Texas, had a materially greater interest than New York in the determination of the enforceability of the Plan's provisions relating to competition, and enforcement of the law of another state to determine the enforceability of a non-competition restriction within the forfeiture provisions of the Plan as to Plaintiffs and such individuals similarly situated employed by Defendant in Texas would be contrary to a fundamental policy of Texas embodied in Chapter 15 of the Texas Business & Commerce Code. Accordingly, if ERISA does not govern the Plan, Texas law governs the interpretation and application of the Plan as to Plaintiffs and any similarly situated employees employed by Defendant in Texas prior to January 1, 2011. Under Texas law, the non-competition restriction within the forfeiture

provisions of the Plan is unenforceable as to Plaintiffs, based upon §§ 15.05 and § 15.50 of the Texas Business & Commerce Code, and the forfeiture provisions of the Plan are also unenforceable because they impose a severe economic penalty upon Plaintiff as a departing employee simply for engaging in competition. Among other consequences of the provisions of the Plan, any Plaintiff or similarly situated individual employed by Defendant in Texas prior to January 1, 2011 who, in accordance with the non-competition restriction in the forfeiture provisions of the Plan, did not engage in the securities business for two years would have to re-qualify for one or more securities licenses at substantial cost.

## Claims

20.    For their first cause of action, Plaintiffs would show that Defendant has violated ERISA by the Plan, and that they and other similarly situated individuals are entitled to all appropriate relief under 29 U.S.C.§1132(a)(3), including an injunction against any act or practice which violates ERISA or the terms of the Plan and any other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan, attorney's fees and expenses and costs of court.

21.    For their second cause of action, in the alternative to their first claim, Plaintiffs would show that the Plan, to the extent not governed in pertinent part by ERISA, is governed by Texas law and that non-competition within the forfeiture provisions of the Plan is unenforceable and that Plaintiffs are accordingly entitled to recover all amounts to which they is entitled under the Plan, including all Firm Contributions, Market Interest and

Turbo Interest purportedly forfeited by them, prejudgment interest, attorney's fees and expenses and costs of court.

Class Action Allegations

22.     With respect to the claim referred to in paragraph 23, this action is maintainable as a class action by Plaintiffs on behalf of themselves and other similarly individuals situated employed by Defendant, and who left the employment of Defendant, prior to January 1, 2011 and had amounts of Firm Contribution, Market Interest and Turbo Interest deferred under the Plan forfeited by Defendant, nationally, and with respect to the claim referred to in paragraph 24, this action is alternatively maintainable as a class action by Plaintiffs on behalf of themselves and other similarly situated individuals employed by Defendant in Texas, and who left the employment of Defendant, prior to January 1, 2011 and had amounts of Firm Contribution, Market Interest and Turbo Interest deferred under the Plan forfeited by Defendant, prior to January 1, 2011, because:

(a)     the class of employees who have been subject to Defendant's wrongful conduct is so numerous that joinder of all members is impracticable, including that it consists of former employees of Defendant at various locations throughout Texas and outside Texas, and former employees without knowledge of the existence of their claims.  Potential retaliation against employees who would assert claims and considerations of judicial economy also dictate a finding that joinder is impracticable.

(b)     there are questions of fact or law common to the class.

(c)     the claims of Plaintiffs are typical of the claims of the class.

(d)     Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

(e)     the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant or adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members of the class not parties to the adjudication or substantially impair or impede their ability to protect their interests, or

(f)     Defendant has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(g)     the questions of law or fact common to members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating

the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

23. Plaintiffs demand a jury to the extent they are entitled to do so under the United States Constitution and other applicable law.

WHEREFORE, Plaintiffs pray that this Court grant them judgment for all appropriate relief.

Respectfully submitted,

_____

Robert E. Goodman, Jr., Lead Attorney
State Bar No. 08158100
reg@kilgorelaw.com
Theodore C. Anderson
State Bar No. 01215700
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099
(214) 953-0133 (telecopy)

Brian E. Bro
State Bar No. 03030000
brian@bebroatty.com
Law Offices of Brian E. Bro
3200 SW Freeway, Suite 2200
Houston, Texas 77027
713-961-3111
281-265-9181(telecopy)

Sam F. Baxter
State Bar No. 01938000
sbaxter@mckoolsmith.com
Theodore Stevenson, III
State Bar No. 19196650
tstevenson@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
jtruelove@mckoolsmith.com
McKOOL SMITH, P.C.
104 East Houston Street, Suite 300
Marshall, Texas 75670
903-923-9000
903-923-9099 (telecopy)

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served upon Defendant's counsel of record through this Court's electronic filing system this 19th day of September, 2012 as follows:

Deborah S. Davidson
Andrew Scroggins
Morgan Lewis & Bockius, LLP
77 West Wacker Drive
Chicago, Illinois 60601

Ira G. Rosenstein
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178-0060

Michael C. Smith
Siebman, Burg, Phillips & Smith, LLP
113 East Austin Street
Marshall, Texas 75671

_____

Robert E. Goodman, Jr.