## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| MARK T. EDDINGSTON, JEFFERY M. DAVIS, ELRIDGE NICHOLAS BOLLICH, RAY A. COX and GEORGE GALANIS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:12-CV-00422 |
| v. | ) ) | |
| UBS FINANCIAL SERVICES, INC., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT AND COMPEL ARBITRATION

Deborah S. Davidson
Andrew Scroggins (*pro hac vice*)
Morgan Lewis & Bockius LLP
77 W. Wacker Drive
Chicago, Illinois 60601
(312) 324-1000; (312) 324-1001 (fax)
ddavidson@morganlewis.com
ascroggins@morganlewis.com

Ira Rosenstein (*pro hac vice*)
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6001
irosenstein@morganlewis.com

Michael C. Smith
Siebman, Burg, Phillips & Smith LLP
113 East Austin Street
Marshall, Texas 75670
(903) 938-8900; (972) 767-4620 (fax)
michaelsmith@siebman.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................... 1

II.  ISSUE PRESENTED ............................................................ 3

III.  STATEMENT OF RELEVANT FACTS ................................. 4

    A.  Plaintiffs Each Entered Into Binding Arbitration Agreements That Include Express Class Action Waivers .............................................. 4

        1.  The PartnerPlus Plan Challenged By Plaintiffs Included An Arbitration Agreement. ......................................................... 4

        2.  Plaintiffs Agreed To FA Compensation Plans Which Included An Arbitration Agreement. ................................................... 6

        3.  Plaintiffs' Arbitration Agreements Cover Their Claims In This Action .................................................................................. 7

IV.  ARGUMENT ...................................................................... 8

    A.  The Court Should Dismiss The Amended Complaint And Compel Plaintiffs' Claims To Arbitration Because All Claims In The Amended Complaint Are Subject To The Mandatory Arbitration Agreements To Which Plaintiffs Agreed ................................................... 8

        1.  Standard Of Review And Burden Of Proof ............................. 8

        2.  The Federal Arbitration Act, Controlling Supreme Court And Fifth Circuit Authority, And Persuasive Authority That The Same Agreements Have Been Enforced By Other Courts All Strongly Favor Arbitration And Require The Court To Enforce Plaintiffs' Arbitration Agreements. ................................................... 9

        3.  Plaintiffs' Claims Are Subject To Arbitration, And The Court Should Compel Each Plaintiff To Arbitrate His Individual Claims ....... 11

            a.  The Arbitration Agreements Are Valid And Enforceable .......... 12

            b.  Plaintiffs and UBSFS Agreed to Arbitration .............................. 14

            c.  Plaintiffs' Claims Are Covered By Their Arbitration Agreements ................................................................................. 15

            d.  Plaintiffs' Arbitration Agreements Should Be Enforced On A Non-Class Basis ....................................................................... 16

    B.  The Court Should Dismiss Or Stay This Action................................. 20

    C.  Plaintiffs' Request For Injunctive Relief Should Be Stricken If They Are Not Compelled To Non-Class Arbitration ....................................... 21

V.  CONCLUSION.......................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apache Bohai Corp., LDC v. Texaco China, B.V.*,
  330 F.3d 307 (5th Cir. 2003) .............................................................................21

*Armstrong v. Associates Int'l Holdings Corp.*,
  242 F. App'x 955 (5th Cir. 2007) .......................................................................10

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ............................................................................... passim

*AT&T Technologies, Inc. v. Commc'ns Workers of Am.*,
  475 U. S. 643 (1986) ..........................................................................................10

*Becerra v. Newpark Mall Dental Group*,
  No. C 12-01325 LB, 2012 WL 3010973 (N.D. Cal. July 23, 2012) ....................19

*Bell v. Koch Foods of Mississippi, LLC*,
  358 F. App'x 498 (5th Cir. 2009) .........................................................................9

*Bourgeois v. Nordstrom, Inc.*,
  No. 11-2442 (KSH), 2012 WL 42917 (D.N.J. Jan. 9, 2012) .........................13, 14

*BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*,
  689 F.3d 481 (5th Cir. 2012) ............................................................................2, 9

*Brown v. St. Paul Travelers Cos., Inc.*,
  331 Fed. Appx. 68 (2d Cir. 2009) .......................................................................13

*CompuCredit Corp. v. Greenwood*,
  132 S. Ct. 665 (2012) ........................................................................................2, 9

*D'Antuono v. Serv. Rd. Corp.*,
  789 F. Supp. 2d 308 (D. Conn. 2011) .................................................................19

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ...........................................................................................11

*Fedmet Corp. v. M/V Buyalyk*,
  194 F.3d 674 (5th Cir. 1999) .........................................................................10, 20

*First Options of Chicago Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...........................................................................................12

*Genesco, Inc. v. T. Kakichi & Co., Ltd.,*
815 F.2d 840 (2d Cir. 1987)................................................................13

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991)............................................................................16

*Gordon v. JKP Enterprises Inc.,*
35 Fed. Appx. 386 (5th Cir. 2002).....................................................21

*Green Tree Fin. Corp.-Ala. v. Randolph,*
531 U.S. 79 (2000).......................................................................8, 19

*Horenstein v. Mortg. Mkt., Inc.,*
9 F. App'x 618 (9th Cir. 2001) ..........................................................19

*Hornsby v. Macon County Greyhound Park, Inc.,*
No. 3:10cv680-MHT, 2012 WL 2135470 (M.D. Ala. June 13, 2012) ...................19

*In re AdvancePCS Health L.P.,*
172 S.W.3d.........................................................................................12

*In re Big 8 Food Stores,*
166 S.W.3d 869 (Tex. App.—El Paso 2005)........................................12

*In re Dallas Peterbilt, Ltd.,*
196 S.W.3d 161 (Tex. 2006)...............................................................12

*In re Dillard Dep't Stores, Inc.,*
198 S.W.3d 778 (Tex. 2006)...............................................................12

*In re Halliburton,*
80 S.W.3d 566 (Tex. 2002).................................................................12

*In re RRGT, Inc.,*
2006 WL 622736 (Tex. App.—San Antonio 2006) ............................13

*Jones v. Fujitsu Network Communications, Inc.,*
81 F. Supp. 2d 688 (N.D. Tex. 1999) .................................................12

*Kramer v. Smith Barney,*
80 F.3d 1080 (5th Cir. 1996) ..............................................................19

*LaVoice v. UBS Fin. Servs., Inc.,*
No. 11-cv-2308, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ........ passim

*Lewis v. UBS Fin. Servs., Inc.,*
818 F. Supp. 2d 1161 (N.D. Cal. 2011) ("*Lewis*").......................... passim

*Marsh v. 33 Prudential Securities, Inc.,*
    1 N.Y.3d 146 (2003) ................................................................15

*Martindale v. Sandvik, Inc.,*
    173 N.J. 76, 800 A.2d 872 (2002) ..........................................14

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
    514 U.S. 52 (1995) ..................................................................10

*McKee v. Home Buyers Warranty Corp.,*
    45 F.3d 981 (5th Cir. 1995) ...................................................2, 9

*Mehler v. Terminix Int'l Co. L.P.,*
    205 F.3d 44 (2d Cir. 2000)......................................................12

*Metzger v. Aetna Ins. Co.,*
    227 N.Y. 411, 125 N.E. 814 (1920) ........................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985)........................................................9, 10, 11

*Morrison v. Anway Corp.,*
    517 F.3d 248 (5th Cir. 2008) ..................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)...................................................................2, 9

*Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v.*
    *ExxonMobil Ref. & Supply Co.,*
    449 F.3d 616 (5th Cir. 2006) ..................................................10

*Perry v. Thomas,*
    482 U.S. 483 (1987) ..................................................................9

*Reed v. Florida Metro. Univ. Inc.,*
    681 F.3d 630 (5th Cir. 2012) ....................................................2

*Sarbak v. Citigroup Global Markets, Inc.,*
    354 F. Supp. 2d 531 (D.N.J. 2004) ..........................................14

*Smith Barney Shearson, Inc. v. Boone,*
    46 F.3d 750 (5th Cir. 1995) ....................................................11

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.,*
    130 S. Ct. 1758 (2010)........................................................16, 19

*Valero Refining, Inc. v. M/T Lauberhorn,*
    813 F.2d 60 (5th Cir. 1987) ....................................................12

Page(s)

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ..............................................................................21

*Walton v. Rose Mobile Homes LLC*,
 298 F.3d 470 (5th Cir. 2002) ....................................................................10

*Webb v. Investacorp., Inc.*,
 89 F.3d 252 (5th Cir. 1996) ......................................................................11

## STATUTES

9 U.S.C. § 2....................................................................................................10, 11

9 U.S.C. § 3.........................................................................................................21

9 U.S.C. § 4.........................................................................................................11

28 U.S.C. § 1404(a) .............................................................................................3

Texas Business & Commerce Code, Sections 15.05 and 15.50 ..........................1

# I.
## INTRODUCTION

Plaintiffs Mark T. Eddingston ("Eddingston"), Jeffery M. Davis ("Davis"), Elridge Nicholas Bollich ("Bollich"), Ray A. Cox ("Cox") and George Galanis ("Galanis") (collectively, "Plaintiffs") are all former highly paid, educated, and licensed Financial Advisors for Defendant UBS Financial Services Inc. ("UBSFS" or "the Firm") who left the Firm to go to work for competitors. While employed by UBSFS, Plaintiffs participated in a UBSFS incentive compensation plan, the PartnerPlus Plan for Financial Advisors ("PartnerPlus" or the "Plan").

When Plaintiffs decided to leave UBSFS for equally (if not more) lucrative jobs with other financial services firms, they did so with full knowledge that leaving UBSFS to accept employment with competitors would result in the cancellation of their unvested Firm contributions and interest under the Plan. Plaintiffs now claim they are entitled to unvested contributions and interest that they voluntarily abandoned and purport to represent a class of others across the nationwide who are allegedly similarly situated. According to Plaintiffs, their claims arise under the Employee Retirement Income Security Act ("ERISA") or, in the alternative, the Texas Business & Commerce Code, Sections 15.05 and 15.50.

Plaintiffs' claims, however, are required to be resolved through arbitration on a non-class basis, rather than through a class action lawsuit. Each Plaintiff repeatedly and specifically agreed to arbitrate all claims and disputes relating to his employment with UBSFS and all claims arising under the Plan, and to waive any right to commence, be a party to, or participate in any class action. By this motion, UBSFS seeks to enforce those agreements and compel each Plaintiff to arbitrate his claims on a non-class basis.

Plaintiffs in this action were each parties to the exact same arbitration agreements and class action waivers that have been enforced by other federal district courts, and each Plaintiff

should be required to arbitrate his claims here for the same reasons that the plaintiffs in those cases were required to arbitrate their claims in those cases. *See LaVoice v. UBS Fin. Servs., Inc.*, No. 11-cv-2308, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ("*LaVoice*") (enforcing arbitration agreements and class action waivers contained in UBSFS's agreements with Financial Advisors), and *Lewis v. UBS Fin. Servs., Inc.*, 818 F. Supp. 2d 1161, 1166-67 (N.D. Cal. 2011) ("*Lewis*") (same). Plaintiffs' arbitration agreements encompass all employment-related claims, and all claims arising from the Plan, and thus include the claims Plaintiffs assert in this action.

As the Supreme Court reaffirmed last year in its landmark decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ("*Concepcion*"), the Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration" and requires courts to enforce arbitration agreements "according to their terms." *Id.* at 1745, 1748-49 (internal citations omitted) (in reversing a decision that failed to enforce an arbitration agreement with a class action waiver, the Supreme Court held that the "overarching purpose" of the FAA is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). *See also CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (same); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same); *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.,* 689 F.3d 481, 490 (5th Cir. 2012) (same); *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 983 (5th Cir. 1995) (same). Since the Supreme Court issued *Concepcion*, federal courts have repeatedly concluded that *Concepcion* overrules or abrogates prior state law rulings declining to enforce arbitration agreements containing class action waivers. *See, e.g., Reed v. Florida Metro. Univ. Inc.*, 681 F.3d 630, 640 (5th Cir. 2012) (observing that *Concepcion* expressly held that state laws prohibiting class action waivers in arbitration agreements are preempted by the FAA and remanding to the district court

with instructions to refer the parties to bilateral arbitration).  *See also Lewis*, 818 F. Supp. 2d at 1166-67 (holding that, regardless of which state's law applies, the class action waivers contained in UBSFS's arbitration agreements with Financial Advisors "are not unconscionable and are enforceable," and that *Concepcion* "effectively overrules" a prior state court decision that "in assessing the enforceability of a class action waiver [under California law], the court should consider[, inter alia,] the size of the plaintiff's potential recovery [and] whether other real world obstacles would prevent the vindication of class members' rights through individual arbitration").  For these reasons and as more fully explained below, UBSFS respectfully requests that the Court compel Plaintiffs' claims to arbitration on a non-class basis and dismiss the Amended Complaint with prejudice.[1]

## II.
## ISSUE PRESENTED

1.     In light of the mandatory arbitration agreements and class waivers between Plaintiffs and UBSFS, should the Court compel Plaintiffs to arbitrate their claims on a non-class basis and dismiss Plaintiffs' claims with prejudice?

---

[1] Finally, and as more fully explained below, if this Court determines that any of Plaintiffs' claims should not be compelled to arbitration or otherwise denies UBSFS's motion to compel arbitration in whole or in part, UBSFS respectfully submits that Plaintiffs' request for injunctive relief should be stricken because Plaintiffs are all former employees and therefore lack standing to bring a claim for injunctive relief.  Further, UBSFS reserves its right to move to dismiss Plaintiffs' Amended Complaint on pleading grounds in the event that the Court denies this Motion.  UBSFS also reserves its right to move to transfer venue pursuant to 28 U.S.C. § 1404(a).

### III.
### STATEMENT OF RELEVANT FACTS

**A.  Plaintiffs Each Entered Into Binding Arbitration Agreements That Include Express Class Action Waivers.**

Like the *LaVoice* and *Lewis* plaintiffs, Plaintiffs are licensed and highly compensated former Financial Advisors who worked for UBSFS (and, in some cases, predecessor companies, including PaineWebber) for a number of years.[2]  Am. Compl. ¶ 5.  Before voluntarily resigning from UBSFS in order to join competitors in the financial services industry (Ferreira Decl. ¶¶ 2, 17-22), each Plaintiff entered into one or more express written arbitration agreements with UBSFS that encompass all of the claims asserted in their Amended Complaint.

During their employment, Plaintiffs were participants in the PartnerPlus Plan, which was one component of the UBSFS Financial Advisor Compensation Plan ("FA Compensation Plan").  Each Plaintiff expressly agreed to the FA Compensation Plan, including the same arbitration agreement and class waiver that other courts have enforced.

1.  The PartnerPlus Plan Challenged By Plaintiffs Included An Arbitration Agreement.

The Plan was described as "a wealth accumulation plan" which was "established and maintained for the purpose of providing certain Financial Advisors with enhanced financial awards and permitting the voluntary deferral of compensation for a period of years."  Ferreira Decl. ¶ 3 and Exhibit ("Ex.") 1 at 1 (excerpts from the 1998 PaineWebber PartnerPlus Plan).

---

[2] Davis was employed by UBSFS from December 1998 through January 2009; Eddingston from November 1987 through August 2008; Bollich from May 1997 through May 2009; Cox from March 1993 through January 2010; and Galanis from April 2001 through January 2009.  Declaration of Rebeca Ferreira ("Ferreira Decl."), filed herewith, at ¶¶ 19-23; Exs. 17-25 (Plaintiffs' Financial Industry Regulatory Authority ("FINRA") BrokerCheck Reports and FINRA Form U5 Uniform Termination Notice for Securities Industry Regulation).

The terms of the 1998 Plan expressly provided that any dispute related to the Plan would be resolved through arbitration:

> [I]n the event of any dispute, claim or controversy involving a Participant or any other claimant and the Plan, or PaineWebber or any Sponsor, arising out of the Plan, any such controversy shall be resolved before a [National Association of Securities Dealers ("NASD")] arbitration panel in accordance with the arbitration rules of NASD.

*Id.*, pp. 17-18.

Substantially identical arbitration agreements were included in subsequent Plans published in 2004, 2006, 2008 and 2009:

| | |
|---|---|
| 2004 Plan: | [I]n the event of any dispute, claim or controversy involving a Participant or any other claimant and the Plan, or UBS Financial Services or any Sponsor, arising out of the Plan, any such controversy shall be resolved before an NASD arbitration panel in accordance with the arbitration rules of the NASD. |
| 2006 Plan: | [I]n the event of any dispute, claim or controversy involving a Participant or any other claimant and the Plan and a Sponsor, arising out of the Plan, any such controversy shall be resolved before an NASD arbitration panel in accordance with the arbitration rules of the NASD. |
| 2008 and 2009 Plans: | [I]n the event of any dispute, claim or controversy involving a Claimant and the Plan and a Sponsor, arising out of the Plan, any such controversy shall be resolved before a FINRA arbitration panel in accordance with the arbitration rules of FINRA.[3] |

Ferreira Decl. ¶¶ 4-7; Ex. 2 at 18; Ex. 3 at 20; Ex. 4 at 29; Ex. 5 at 29 (excerpts from the 2004, 2006, 2008 and 2009 UBSFS PartnerPlus Plans for Financial Advisors).[4]

---

[3] In July 2007, the NASD consolidated with the member regulation, enforcement and arbitration operations of the New York Stock Exchange ("NYSE") to become FINRA. *See* "SEC Gives Regulatory Approval for NASD and NYSE Consolidation," July 26, 2007, available at http://www.sec.gov/news/press/2007/2007-151.htm.

[4] The PartnerPlus Plans also required participants to avail themselves of a claim and appeal procedure pursuant to the Plan terms before proceeding to arbitration. *See, e.g.*, the 2004 Plan, clause 11.1, which provides that claims under the Plan "must be filed in writing with the Committee in

Like the *LaVoice* and *Lewis* plaintiffs, each Plaintiff expressly agreed to have his compensation and benefits as a UBSFS Financial Advisor governed by the FA Compensation Plan (of which PartnerPlus was a part), and each Plaintiff expressly agreed to be bound by the terms of the FA Compensation Plan, including the agreement to arbitrate claims on a non-class basis and the class waivers that other courts have already found to be enforceable.

The FA Compensation Plan included arbitration agreements which provided in part:

> [Y]ou and UBS agree that ***any disputes*** between you and UBS ***including claims concerning compensation, benefits*** or other terms or conditions of employment and termination of employment … whether they arise by statute or otherwise, *including but not limited to,* ***claims arising under … The Employee Retirement Income Security Act*** … or any other federal, state or local employment … laws, rules or regulations, including wage and hour laws, *will be determined by arbitration…*
>
> You and UBS further agree that any disputes between you and UBS shall be heard… without consolidation of such claims with any other person or entity.  By agreeing to the terms of this Compensation Plan, *you waive any right to commence, be a party to or an actual or putative class member of any class... action* arising out of or relating to your employment with UBS or the termination of your employment with UBS.

Ferreira Decl. ¶ 8; Ex. 6 at 26 (excerpts from the 2007 FA Compensation Plan) (emphasis added).  The UBSFS FA Compensation Plans for 2008, 2009 and 2010 each include a virtually identical arbitration agreement and class action waiver.  Ferreira Decl. ¶¶ 9-11; Ex. 7 at 26; Ex. 8 at 29; Ex. 9 at 20 (excerpts from the 2008-2010 FA Compensation Plans).   The FA Compensation Plans for 2007-2010 each also include a description of the PartnerPlus Plan and

---

accordance with such procedures as the Committee reasonably establishes.  If any claim is wholly or partially denied, any challenge of such denial must be pursued in accordance with the arbitration provisions of Section 11.2." Ferreira Decl. ¶ 4; Ex. 2 at 18.  *See also* Ferreira Decl. ¶¶ 5-7; Ex. 3 at 19-20; Ex. 4 at 28-29; Ex. 5 at 28-29 (2006, 2008 and 2009 Plans).  Plaintiffs failed to avail themselves of the pre-arbitration claim and appeal procedures.

direct Financial Advisors to the UBSFS intranet for copies of the PartnerPlus Plan and related documents. Ferreira Decl. ¶¶ 8-11; Ex. 6 at 19-22; Ex. 7 at 19-22; Ex. 8 at 14-15; Ex. 9 at 14-15.

The FA Compensation Plans explicitly informed FAs that "[t]he continuation of your employment after receipt of this plan and/or acceptance of benefits hereunder shall be deemed your consent to its terms." Ferreira Decl. ¶¶ 8-11; Ex. 6 at 27 (2007 FA Compensation Plan); *see also* Ex. 7 at 27; Ex. 8 at 20; Ex. 9 at 21 (2008-2010 FA Compensation Plans). Furthermore, each of the Plaintiffs executed one or more FA Compensation Plan Acknowledgments in which they expressly acknowledged and agreed that they received, understood and agreed to be bound by the terms of the FA Compensation Plan, including, *inter alia*, the arbitration agreement and class action waiver set forth therein. Ferreira Decl. ¶¶ 12-16; Exs. 10-14 (FA Compensation Plan Acknowledgements).

Also as in *LaVoice* and *Cohen*, Plaintiffs Bollich, Cox and Gallanis entered into additional agreements over the course of their employment with UBSFS that included non-class arbitration agreements. Specifically, these three Plaintiffs agreed to the terms of an Account Reassignment Agreement that included arbitration agreements and class action waivers identical to those contained in the FA Compensation Plans. Ferreira Decl. ¶¶ 23-24; Exs. 25-26.[5]

3.    <u>Plaintiffs' Arbitration Agreements Cover Their Claims In This Action.</u>

Plaintiffs' arbitration agreements expressly cover all of the claims alleged in their Amended Complaint that are the subject of this motion. Plaintiffs allege generally that the events at issue arose from their employment at and voluntary resignation from UBSFS. Am. Compl. ¶ 22. Plaintiffs further allege that they were participants in PartnerPlus, that PartnerPlus

---

[5] The Financial Advisor Account Reassignment Agreement was entered into by electronic signature by Plaintiff Gallanis on November 7, 2008; by Plaintiff Bollich on January 2, 2009; and by Plaintiff Cox on February 13, 2009. *Id.*

was governed by ERISA, and that Plaintiffs and other "similarly situated" unnamed individuals forfeited "amounts distributable to them under the Plan." Am. Compl. ¶¶ 5, 7, 17. Plaintiffs seek to recover amounts of "Firm Contribution, Market Interest and Turbo Interest" which Plaintiffs claim to have earned as PartnerPlus participants and which were cancelled upon their resignation in accordance with the terms of the Plan. Am. Compl. ¶¶ 10, 19-22. These claims are covered by the arbitration agreements described above, which cover broadly "any dispute, claim or controversy involving a Participant or any other claimant and the Plan, or PaineWebber or any Sponsor, arising out of the Plan" and "any disputes between [Plaintiffs] and UBS including claims concerning *compensation, benefits or other terms or conditions of employment …. or any other claims* whether they arise by statute or otherwise, *including but not limited to, claims arising under … The Employee Retirement Security Act . . .* or any other federal, state or local employment … laws, rules or regulations[.]"[6] Ferreira Decl. ¶ 2-11; Ex. 1 at 17-18; Ex. 2 at 18; Ex. 3 at 20; Ex. 4 at 29; Ex. 5 at 29 (excerpts from 1998, 2004, 2006, 2008 and 2009 Partner Plus Plans); Ex. 6 at 26; Ex. 7 at 26; Ex. 8 at 19; Ex. 9 at 20 (excerpts from 2007-2010 FA Compensation Plans). Thus, it is clear that Plaintiffs' claims are covered by their arbitration agreements.

## IV.
## ARGUMENT

**A. The Court Should Dismiss The Amended Complaint And Compel Plaintiffs' Claims To Arbitration Because All Claims In The Amended Complaint Are Subject To The Mandatory Arbitration Agreements To Which Plaintiffs Agreed.**

1.      Standard Of Review And Burden Of Proof.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

---

[6] Plaintiffs' other arbitration agreements also expressly cover claims arising under ERISA and state laws. Ferreira Decl. ¶¶23-24; Exs. 25-26.

*See Bell v. Koch Foods of Mississippi, LLC*, 358 F. App'x 498, 501 (5th Cir. 2009) (same); *LaVoice*, 2012 WL 124590, at *2 (same). Plaintiffs cannot meet their heavy burden on this issue.

> 2.    The Federal Arbitration Act, Controlling Supreme Court And Fifth Circuit Authority, And Persuasive Authority That The Same Agreements Have Been Enforced By Other Courts All Strongly Favor Arbitration And Require The Court To Enforce Plaintiffs' Arbitration Agreements.

It is well established that the FAA establishes a "'liberal federal policy favoring arbitration'" and "*requires* courts to enforce agreements to arbitrate *according to their terms*." *CompuCredit*, 132 S. Ct. at 669 (quoting *Moses H. Cone Mem'l Hop. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (emphasis added); *Concepcion*, 131 S. Ct. at 1748 (it is the "overarching purpose" of the FAA "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (the FAA and the strong federal policy favoring arbitration require courts to "rigorously enforce agreements to arbitrate."). Indeed, for decades this has been the mantra of the Supreme Court and the Fifth Circuit when considering whether to order arbitration. *See, e.g., Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24 (1983); *see also CompuCredit*, 132 S. Ct. at 669; *Perry v. Thomas*, 482 U.S. 483 (1987) (observing that the FAA was "a congressional declaration of a liberal federal policy favoring arbitration"); *BP Exploration Libya Ltd.,* 689 F.3d at 490 (the FAA reflects a "liberal federal policy favoring arbitration"); *McKee*, 45 F.3d at 983 (noting the "liberal federal policy favoring arbitration").

The Supreme Court and the Fifth Circuit have also repeatedly stressed that the FAA, and the strong federal policy favoring arbitration that it embodies, "*requires* courts to enforce agreements to arbitrate *according to their terms*." *CompuCredit*, 132 S. Ct. at 669 (emphases added); *BP Exploration Libya Ltd.,* 689 F.3d at 490 ("arbitration agreements [must] be placed on

equal footing with other contracts and enforced according to their terms") (citations omitted). Moreover, the FAA establishes "a presumption in support of the enforceability of contractual arbitration agreements," and any ambiguities or doubts as to the scope of an arbitration agreement are to be resolved in favor of arbitration. *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002). *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Mitsubishi Motors Corp.*, 473 U.S. at 626 (concluding that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (any "[d]oubts as to the availability of arbitration must be resolved in favor of arbitration") (internal citations omitted).

Indeed, the Supreme Court also has instructed that an order to arbitrate "should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U. S. 643, 650 (1986) (emphasis added) (quoting *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582-83 (1960)). *See also Armstrong v. Associates Int'l Holdings Corp.*, 242 F. App'x 955, 957 (5th Cir. 2007) (same, and ordering employee to arbitrate his employment-related dispute against employer). The presumption in favor of arbitration can be rebutted only if there is an express agreement excluding the grievance from arbitration or "the 'most forceful evidence' of a purpose to exclude the claim from arbitration." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Ref. & Supply Co.*, 449 F.3d 616, 620 (5th Cir. 2006) (quoting *Commc'ns Workers of Am. v. Southwestern Bell Tel. Co.,* 415 F.2d 35 (5th Cir. 1969)).

Section 2 of the FAA broadly provides that: "A written provision ... to settle by arbitration ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

or in equity for the revocation of any contract."  9 U.S.C. § 2.  Moreover, pursuant to Section 4 of the FAA, where an arbitration agreement applies to the dispute, an order to arbitrate is mandatory:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  If a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is *mandatory* – not discretionary.  *Id.*  As the Supreme Court has explained, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  Thus, this Court should compel each Plaintiff to arbitrate his claims on a non-class basis.

3.  <u>Plaintiffs' Claims Are Subject To Arbitration, And The Court Should Compel Each Plaintiff To Arbitrate His Individual Claims.</u>

Where, as here, an enforceable arbitration agreement covers the claims asserted in a lawsuit, the Court should enter an order dismissing the action and compelling arbitration.  To decide whether a dispute must be arbitrated under the FAA, courts conduct a two-step inquiry to determine: (1) whether a valid agreement to arbitrate exists, and (2) whether legal constraints external to the parties' agreement foreclose the arbitration of those claims.  *See Mitsubishi Motors Corp*., 473 U.S. at 628; *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996).  Such an inquiry is limited to determining "whether the subject matter of the dispute is subject to arbitration under the parties' agreement."  *Smith Barney Shearson, Inc. v. Boone*, 46 F.3d 750, 753 (5th Cir. 1995).  Each of these inquiries inevitably leads to the conclusion that the Court should compel each Plaintiff to arbitrate his claims and dismiss this action.

a.    *The Arbitration Agreements Are Valid And Enforceable.*

Federal courts look to the state law of contract formation to determine whether a valid arbitration agreement exists. *See First Options of Chicago Inc. v. Kaplan,* 514 U.S. 938 (1995); *Morrison v. Anway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008); *Mehler v. Terminix Int'l Co. L.P.,* 205 F.3d 44, 48 (2d Cir. 2000) (to determine proper scope of an arbitration agreement, courts "should generally apply state-law principles that govern the formation of contracts").

Plaintiffs assert that Texas law should apply to this action, while acknowledging that the Plan states that it is to be governed by New York law. Am. Compl. ¶ 19. The 2007 FA Compensation Plan for which each Plaintiff signed an acknowledgment states that New York law governs the arbitration agreements, while the 2008-2010 FA Compensation Plans specify that New Jersey law is to apply. *See, e.g.,* Ferreira Decl. ¶¶ 8-11; Ex. 6 at 26; Ex. 7 at 26; Ex. 8 at 19; Ex. 9 at 20 (excerpts from the 2007-2010 FA Compensation Plans). No matter which state's law is applied, the arbitration agreements are valid and enforceable.

Under well established Texas law, arbitration agreements are enforceable so long as there is *notice* of the arbitration policy – in other words, no signed arbitration acknowledgment is required. *See Valero Refining, Inc. v. M/T Lauberhorn,* 813 F.2d 60, 64 (5th Cir. 1987); *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006); *In re Halliburton*, 80 S.W.3d 566 (Tex. 2002); *In re AdvancePCS Health L.P.,* 172 S.W.3d at 606; *In re Big 8 Food Stores*, 166 S.W.3d 869, 876 (Tex. App.—El Paso 2005, orig. proceeding). Receipt of the policy with the arbitration agreement is sufficient notice, and an employee accepts arbitration by continued employment. *See In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006); *Jones v. Fujitsu Network Communications, Inc.*, 81 F. Supp. 2d 688, 692 (N.D. Tex. 1999) (granting motion to compel arbitration where informational meeting held for employees and arbitration policy posted on intranet); *see also In re Halliburton Co.,* 80 S.W.3d at 569 (notice and summary given to the

employee was unequivocal notice); *In re RRGT, Inc.,* 2006 WL 622736 (Tex. App.—San Antonio 2006, orig. proceeding) (employee did not sign arbitration agreement but continued to work, and therefore accepted arbitration as term of employment).

Under New York law, it has long been the law that one "who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them." *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 125 N.E. 814 (1920). The same principle applies to arbitration agreements. *Genesco, Inc. v. T. Kakichi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir. 1987) ("Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation."). As with Texas law, it is also well-established under New York law that a party may be bound by an agreement to arbitrate even absent a signature. *Genesco*, 815 F.2d at 846 (citing *McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir. 1980) (applying federal common law and observing that the "established law of this circuit [is] that a party may be bound by an agreement to arbitrate even in the absence of a signature.")). Also as with Texas law, an employee can assent to an arbitration agreement with his or her employer by continuing employment, so long as the employee has notice of the policy in questions. *Brown v. St. Paul Travelers Cos., Inc.,* 331 Fed. Appx. 68 (2d Cir. 2009) (applying New York law and holding that an employee is "deemed to have accepted the arbitration policy by continuing to work after being advised that it was her responsibility to read and understand all of the company policies including the arbitration policy") (citations omitted).

Under New Jersey law, an employee submits to an agreement by signing a form acknowledging receipt of a handbook or other document containing an arbitration agreement. *Bourgeois v. Nordstrom, Inc.*, No. 11-2442 (KSH), 2012 WL 42917 (D.N.J. Jan. 9, 2012)

(applying New Jersey law). Furthermore, absent a showing of fraud or mental incompetence, a party is duty-bound to know the terms of the agreement and is obligated to perform his or her obligations as set forth therein. *Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, (D.N.J. 2004) (enforcing arbitration agreement and noting that failure to read an agreement does not excuse non-performance). New Jersey law also is in accord with Texas and New York state law that continued employment is sufficient consideration to render an arbitration agreement valid and enforceable. *See, e.g., Martindale v. Sandvik, Inc.*, 173 N.J. 76, 88-89, 800 A.2d 872, 879 (2002) (continued employment is consideration for agreement to arbitrate); *Bourgeois*, 2012 WL 42917, at *3 (applying New Jersey law and holding that continued employment is adequate consideration for arbitration agreement).

In sum, the arbitration agreements are valid whether the law of Texas, New York or New Jersey is applied.

        b.    *Plaintiffs and UBSFS Agreed to Arbitration.*

There can be no dispute that Plaintiffs and UBSFS entered into valid, binding arbitration agreements. Plaintiffs were informed through the FA Compensation Plan that their continued employment constituted consent to its terms. Ferreira Decl. ¶¶ 8-11; Ex. 6 at 27; Ex. 7 at 27; Ex. 8 at 20; Ex. 9 at 21. *See* discussion *supra* at pp. 6-8. Moreover, each Plaintiff executed and was bound by one or more arbitration agreements in which he explicitly agreed to arbitrate claims arising out of or relating to his employment with UBSFS. *See* discussion *supra* at pp. 4-8. Thus, it is incontrovertible that each Plaintiff entered into, and was subject to, valid, binding and enforceable arbitration agreements. *LaVoice*, 2012 WL 124590, at *2.

Similarly, Plaintiffs were on notice of the terms of the PartnerPlus Plan and its arbitration agreement. As with the FA Compensation Plans, Plaintiffs' continued employment constituted consent to the terms of the PartnerPlus Plan as a matter of law. *See* discussion *supra* at pp. 4-8.

Further, Plaintiffs acknowledged receipt of the Plans on several occasions. Ferreira Decl. ¶¶ 12-16; Exs. 10-14. Plaintiffs also could access the Plan documents at any time via the UBSFS intranet – a fact they were reminded of on an annual basis via the FA Compensation Plans. Ferreira Decl. ¶¶ 8-11; Ex. 6 at 22; Ex. 7 at 22; Ex. 8 at 15; Ex. 9 at 15. Indeed, Plaintiffs' knowledge of the Plan's terms is confirmed by the detailed descriptions of the Plan's terms provided in the Amended Complaint. *See, e.g.,* Am. Compl. ¶¶ 5, 10, 13-14.

Plaintiffs were highly-compensated employees who received valuable consideration in exchange for their repeated and voluntary agreements to arbitrate and to waive any right to bring or be a party to any class action, and there is no legitimate basis for Plaintiffs to challenge the enforceability of the agreements. Indeed, Plaintiffs knowingly entered into these agreements as sophisticated Financial Advisors capable to recognize the risks and rewards of the agreements. *See Lewis*, 818 F. Supp. 2d at 1168 (finding that UBSFS Financial Advisors are not "ill-informed" of their rights, and that any "who wish to assert claims against UBS can effectively assert their rights in individual arbitration"); *Marsh v. 33 Prudential Securities, Inc.,* 1 N.Y.3d 146, 155 (2003) (noting in wage deduction action that financial advisors were "sophisticated" and could assess the benefits and potential rewards of participating in a stock plan).

<blockquote>c. *Plaintiffs' Claims Are Covered By Their Arbitration Agreements.*</blockquote>

Plaintiffs' agreements to arbitrate plainly cover the claims asserted in this lawsuit. The PartnerPlus arbitration agreements specifically govern "any dispute, claim or controversy involving a Participant" or "Claimant" and "arising out of the Plan." Ferreira Decl. ¶¶ 3-7; Ex. 1 at 17-18; Ex. 2 at 18; Ex. 3 at 20; Ex. 4 at 29; Ex. 5 at 29. Plaintiffs' claims fall squarely within this definition, since they seek forfeited "amounts distributable to them under the Plan," such as "Firm Contribution, Market Interest and Turbo Interest." Am. Compl. ¶¶ 7, 19-22.

Similarly, the FA Compensation Plan arbitration agreements also cover Plaintiffs' claims. The FA Compensation Plan arbitration agreements govern "any disputes between [Plaintiffs] and UBS including claims concerning compensation, benefits or other terms and conditions of employment." Ferreira Decl. ¶¶ 8-11; Ex. 6 at 26; Ex. 7 at 26; Ex. 8 at 19; Ex. 9 at 20. The arbitration agreement explicitly states that ERISA claims, such as those raised by Plaintiffs, will be resolved through arbitration. *Id.* Even if ERISA claims were not specifically encompassed by the arbitration agreement, Plaintiffs' claims for money which they allege was improperly forfeited upon their departure from UBSFS plainly relate to "compensation, benefits or other terms or conditions of employment and termination of employment" subject to arbitration. Id. The other arbitration agreements contain identical language, specifying that disputes concerning compensation, benefits, and claims arising under ERISA are subject to arbitration. Ferreira Decl. ¶¶ 23-24; Exs. 25-26.

In sum, Plaintiffs' claims fall squarely within the confines of the arbitration agreements they accepted as a consequence of their employment, and any doubts should be resolved in favor of arbitration.

> d. *Plaintiffs' Arbitration Agreements Should Be Enforced On A Non-Class Basis.*

The Supreme Court has instructed that class action waivers are enforceable and that the FAA requires the enforcement of agreements to arbitrate on a non-class basis. *See Concepcion*, 131 S. Ct. at 1748-49; *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 32 (1991). Indeed, if an agreement is silent on whether class arbitration is permitted, the agreement cannot be interpreted to allow a class proceeding, because the "changes brought about by the shift from bilateral arbitration to class-action arbitration" are "fundamental." *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1776 (2010).

The Supreme Court recently ruled in *Concepcion* that courts are required to enforce arbitration agreements containing class action waivers. There, the plaintiffs were customers of AT&T Mobility who had brought a class action in federal court on behalf of customers alleging that the company engaged in false advertising and other unfair business practices. *Concepcion*, 131 S. Ct. at 1744. AT&T Mobility moved to compel non-class arbitration pursuant to the arbitration clause in the parties' customer agreement. *Id.* at 1745. The district court denied the motion. The Ninth Circuit affirmed the district court on the basis that the class action waiver provision was unconscionable under California state law because AT&T Mobility had failed to show that bilateral arbitration adequately substituted for the purported deterrent effects of class actions. *Id.* The Supreme Court reversed the Ninth Circuit's decision, emphasizing the strong federal policy favoring arbitration and that the FAA requires courts to put arbitration agreements on an equal footing with other contracts when analyzing their enforceability. *Id.* at 1745-46. For example, the Supreme Court held that courts cannot apply a traditional doctrine such as duress or unconscionability in a fashion that disfavors arbitration. *Id.* at 1746-47. Instead, courts must adhere to the "principal purpose of the FAA," and "ensure that private arbitration agreements are enforced according to their terms." *Id.* at 1748.

In re-affirming the strong federal policy favoring arbitration, the Supreme Court rejected the proposition that an arbitration agreement should not be enforced on the terms agreed to by the parties merely because it contains a class action waiver, even if the agreement was a contract of adhesion, there was unequal bargaining power, and any individual recovery would be "predictably small." *Concepcion*, 131 S. Ct. at 1750 & n.5. As the Supreme Court explained in rejecting the argument that a class action waiver effectively precludes "small-dollar" claims from being resolved, "[r]equiring the availability of classwide arbitration interferes with the

fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA," and a court "cannot require a procedure that is inconsistent with the FAA, even if it desirable for unrelated reasons." *Id.* at 1748, 1753; *see also LaVoice*, 2012 WL 124590, at *6; *Lewis*, 818 F. Supp. 2d at 1166-68.

Courts repeatedly have enforced class action waivers and compelled arbitration of the plaintiff's claims on a non-class basis, including the very same agreements at issue in this case. For example, in *Lewis*, the plaintiff sought on behalf of himself and a putative class to challenge UBSFS's practice of requiring financial advisors who left the Firm to repay outstanding promissory notes. 818 F. Supp. 2d at 1162-63. UBSFS moved to compel arbitration, and the court considered the arbitration agreements contained in the same UBSFS 2007 FA Compensation Plan described above. *Id.* at 1163-64; *see* also discussion of the FA Compensation Plan, *supra*, at pp. 6-8. The court held that the agreements were enforceable and that they contained valid class action waivers. 818 F. Supp. 2d at 1168. Because the dispute was subject to arbitration and the class waiver was enforceable, the court granted UBSFS's motion to compel and *dismissed plaintiffs' claims with prejudice. Id.* at 1169.

In *LaVoice*, plaintiff – a former UBSFS Financial Advisor – brought an action asserting class and collective claims for violations of the Fair Labor Standards Act and New York state law compensation claims. 2012 WL 124590, at *1. UBSFS moved to compel arbitration, and the court considered the arbitration agreements contained in the same UBSFS 2007-2010 FA Compensation Plans described above. *See* discussion *supra* at pp. 6-8. The court held that the plaintiff's arbitration agreements and class action waivers were enforceable and granted

UBSFS's motion to compel arbitration of the plaintiff's claims on a non-class basis.[7]  2012 WL 124590, at * 6.

Here, Plaintiffs explicitly agreed to arbitrate their claims on a non-class basis.  Ferreira Decl. ¶¶ 8-11; Ex. 6 at 26; Ex. 7 at 26; Ex. 8 at 19; Ex. 9 at 20.  Plaintiffs further agreed to "waive any right to commence, be a party to or an actual or putative class member of any class or collective action."  *Id.*  The arbitration agreement contained in the PartnerPlus Plan also precludes class proceedings in arbitration, since it does not expressly provide for class arbitration. *Id. See Stolt-Nielsen, S.A.*, 130 S. Ct. at 1776.

Based on the Supreme Court's *Concepcion* ruling and the weight of case law in support of arbitration, including decisions enforcing the very same arbitration agreements and class action waivers at issue in this case, Plaintiffs cannot seriously challenge the enforceability of their arbitration agreements.  Indeed, although Plaintiffs have the burden of proving that their claims are unsuitable for arbitration (*Green Tree*, 531 U.S. at 91), they have not even alleged any facts in their Amended Complaint to challenge the enforceability of their arbitration agreements and class action waivers.  As highly-compensated employees who received valuable consideration in exchange for their agreements to arbitrate on a non-class basis and to waive any

---

[7] Other examples of courts enforcing class action waivers such as those contained in Plaintiffs' arbitration agreements and compelling arbitration of the plaintiff's individual claims include, *e.g., Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) (surveying prior courts and "agree[ing] that Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act")*; Horenstein v. Mortg. Mkt., Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001) (enforcing arbitration agreement with class and collective action waivers and explaining that "[a]lthough plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the statute"); *Becerra v. Newpark Mall Dental Group*, No. C 12-01325 LB, 2012 WL 3010973 (N.D. Cal. July 23, 2012) (ordering plaintiff to arbitrate ERISA claims); *Hornsby v. Macon County Greyhound Park, Inc*., No. 3:10cv680-MHT, 2012 WL 2135470, at *5 (M.D. Ala. June 13, 2012) (collecting cases holding that ERISA claims are arbitrable); *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 332 (D. Conn. 2011) (enforcing class action waivers and holding that "federal statutory claims are generally arbitrable unless Congress' intention to protect against waiver of the right to litigate in court is deducible from the statute's text or legislative history") (internal quotation omitted).

right to bring or be a party to any class action, Plaintiffs evidently recognize that there is no legitimate basis for them to challenge the enforceability of their agreements. Plaintiff knowingly entered into these agreements as sophisticated Financial Advisors. *See Lewis*, 818 F. Supp. 2d at 1168 (finding that UBSFS Financial Advisors are not "ill-informed" of their rights, and that any "who wish to assert claims against UBS can effectively assert their rights in individual arbitration").

As the plain language of Plaintiffs' arbitration agreements makes clear that the parties intended for the claims in this action to be pursued in arbitration on a non-class basis, this Court should enforce Plaintiffs' arbitration agreements and compel each Plaintiff to arbitrate his claims on a non-class basis.

**B.    The Court Should Dismiss Or Stay This Action.**

Because Plaintiffs' claims are subject to arbitration for the reasons explained above, the Court should dismiss the complaint. "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Fedmet Corp.*, 194 F.3d at 678 (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). As the Fifth Circuit instructed in *FedMet Corp.*:

> Although we understand that Plaintiffs' motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed considerations and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. *See* 9 U.S.C. Sections 9-12.

194 F.3d at 678 (quoting *Alford*, 975 F.2d at 1164). Accordingly, the Court's retention of jurisdiction during the pendency of arbitration would serve no purpose, and dismissal is the only appropriate action.

In the alternative, UBSFS requests that the Court stay this action pending the conclusion of arbitration. The FAA provides that "the court … upon being satisfied that the issue … is referable to arbitration … shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]" 9 U.S.C. § 3. District courts have discretion to enter a stay rather than dismissing the complaint upon referral to arbitration. *See, e.g., Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 308-09 (5th Cir. 2003).

## C.   Plaintiffs' Request For Injunctive Relief Should Be Stricken If They Are Not Compelled To Non-Class Arbitration

Plaintiffs are all former employees who lack standing to bring claims for injunctive relief. and do not stand to benefit from any prospective changes to the PartnerPlus Plan. Am. Compl. ¶ 22. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2560 (2011) (former employees lack standing to seek injunctive relief against their former employer); *Gordon v. JKP Enterprises Inc.*, 35 Fed. Appx. 386 (5th Cir. 2002) (where plaintiffs "are no longer employed with [defendant], do not seek reinstatement, have not indicated that they plan to seek employment with [defendant] in the future, and have shown no other way in which they would benefit from the injunction" then "injunctive relief is unnecessary to the just disposition of the action."). Thus, if Plaintiffs are not compelled to arbitration, the Court should strike their claims for injunctive relief.

## V.   CONCLUSION

Plaintiffs each agreed in writing to arbitrate on a non-class basis the very same claims asserted in their Amended Complaint, and to waive any right to commence or be a party to any class action. Plaintiffs' arbitration agreements and class action waivers are enforceable. Thus, as more fully explained above, the Court should compel arbitration of each Plaintiff's claims on a non-class basis and dismiss Plaintiffs' claims in their entirety or, in the alternative, stay these

proceedings pending the conclusion of arbitration.  UBSFS further requests that UBSFS be awarded its costs incurred in defending this action, and that the Court award any and all other appropriate relief.

November 15, 2012                                  Respectfully submitted,

                                                   UBS Financial Services, Inc.

                                                   s/ Deborah S. Davidson
                                                   Deborah S. Davidson
                                                   Andrew Scroggins (*pro hac vice*)
                                                   Morgan Lewis & Bockius LLP
                                                   77 W. Wacker Drive
                                                   Chicago, Illinois 60601
                                                   (312) 324-1000; (312) 324-1001 (fax)
                                                   ddavidson@morganlewis.com
                                                   ascroggins@morganlewis.com

                                                   Ira Rosenstein (*pro hac vice* )
                                                   Morgan Lewis & Bockius LLP
                                                   101 Park Avenue
                                                   New York, New York  10178-0060
                                                   (212) 309-6001
                                                   irosenstein@morganlewis.com

                                                   Michael C. Smith
                                                   Siebman, Burg, Phillips & Smith LLP
                                                   113 East Austin Street
                                                   Marshall, Texas  75670
                                                   (903) 938-8900; (972) 767-4620 (fax)
                                                   michaelsmith@siebman.com

                                   *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I, Deborah S. Davidson, hereby certify that on November 15, 2012, I electronically filed a copy of **Defendant's Motion to Dismiss Plaintiffs' Amended Complaint and Compel Arbitration** with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Sam F. Baxter
sbaxter@mckoolsmith.com
Theodore Stevenson, III
tstevenson@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston Street, Suite 300
Marshall, Texas 75670
(903) 923-9000
(903) 923-9099 (facsimile)

Brian E. Bro
brian@bebroatty.com
Law Offices of Brian E. Bro
3200 SW Freeway, Suite 2200
Houston, Texas 77027
(713) 961-3111
(281) 265-9181 (facsimile)

Robert E. Goodman, Jr.
reg@kilgorelaw.com
Theodore C. Anderson
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099
(214) 953-0133 (facsimile)

s/ Deborah S. Davidson
Deborah S. Davidson