# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| MARK T. EDDINGSTON, | § | |
| JEFFERY M. DAVIS, | § | |
| ELRIDGE NICHOLAS BOLLICH, | § | |
| RAY A. COX and GEORGE GALANIS, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 2:12-CV-00422 |
| | § | |
| v. | § | |
| | § | |
| UBS FINANCIAL SERVICES, INC., | § | |
| | § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' AMENDED OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

Robert E. Goodman, Jr., Lead Attorney
State Bar No. 08158100
reg@kilgorelaw.com
Theodore C. Anderson
State Bar No. 01215700
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle St.
Dallas, TX 75204
(214) 969-9099; (214) 953-0133 (fax)

Peter K. Stris (*pro hac vice*)
peter.stris@strismaher.com
Brendan S. Maher (*admission pending*)
State Bar No. 24053336
brendan.maher@strismaher.com
Stris & Maher LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090; (424) 212-7001 (fax)

Brian E. Bro
State Bar No. 03030000
brian@bebroattv.com
Law Offices of Brian E. Bro
3200 SW Freeway, Ste. 2200
Houston, TX 77027
(713) 961-3111; (281) 265-9181(fax)

Sam F. Baxter
State Bar No. 01938000
sbaxter@mckoolsmith.com
Theodore Stevenson, III
State Bar No. 19196650
tstevenson@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston St., Ste. 300
Marshall, TX 75670
(903) 923-9000; (903) 923-9099 (fax)

COUNSEL FOR PLAINTIFFS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ISSUES PRESENTED.......................................................................................................3

STATEMENT OF FACTS .................................................................................................3

    A. The Dispute Over the UBS Pension Plan ........................................................5

    B. The Relief Sought by Plaintiffs.......................................................................6

    C. The Relevant Language Regarding Arbitration of Disputes.............................7

        1. The binding UBS Pension Plan arbitration provision.................................7

        2. The summary brochure describing, *inter alia,* the UBS Pension Plan .....................10

ARGUMENT....................................................................................................................14

I.    THE UBS PENSION PLAN EXPRESSLY AUTHORIZES PLAINTIFFS TO LITIGATE THIS CASE IN FEDERAL COURT ................................................14

    A. The Arbitration Clause in the UBS Pension Plan Clearly Permits a Putative Class Action – Like This One – to Be Litigated in Federal Court.....................14

    B. Unhappy With the Arbitration Clause *That It Drafted*, UBS Seeks to Rely on Inapplicable and Unenforceable Language in a Summary Brochure .............17

II.   THE SUMMARY BROCHURE EXPRESSLY AUTHORIZES PLAINTIFFS TO LITIGATE THIS CASE IN FEDERAL COURT ................................................20

    A. The Summary Brochure Expressly Requires That "Claims for Injunctive Relief" Be Brought in Court and *Not* Arbitration. ....................................................21

    B. UBS's Argument That Plaintiffs Lack Standing Is Frivolous .......................22

III.  IN ANY EVENT, THE UBS MOTION MUST BE DENIED BECAUSE ITS ATTEMPT TO COMPEL ARBITRATION VIOLATES ERISA ......................25

    A. ERISA Prohibits the Arbitration of Claims Under 29 U.S.C. § 1132(a)(3) ..................25

    B. Even If ERISA Permitted Arbitration of Claims Under 29 U.S.C. § 1132(a)(3), It Would Not Excuse UBS's Violation of 29 U.S.C. §§ 1022(a) and 1024(b)...............29

CONCLUSION..................................................................................................................31

# TABLE OF AUTHORITIES

**CASES**

*Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 2012 WL 1494340 (S.D. Tex., April 27, 2012).................................................................................................................................4

*Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007) .................................................26

*AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2012).............................................27, 28

*Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122 (Tex. App. 2006) ...................................18

*Boos v. AT & T, Inc.*, 704 F. Supp. 2d 600 (W.D. Tex. 2010) ...................................................4

*Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000) ...........................................30

*Chailland v. Brown & Root, Inc.*, 45 F.3d 947 (5th Cir. 1995)...................................................17

*Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032 (2d Cir. 1985)..................30

*CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011)..............................................................passim

*County of Morris v. Fauver*, 153 N.J. 80 (1998) ......................................................................18

*Empire Fin. Group, Inc. v. Penson Fin. Services*, Inc., No. 3:09-CV-2155D, 2010 WL 742579 (N.D. Tex. Mar. 3, 2010) ..............................................................................................9

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)................................................16

*Galey v. World Marketing Alliance*, 510 F.3d 529 (5th Cir. 2007)...........................................15

*Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20 (1991) ...................................................27

*Glocker v. W.R. Grace & Co.*, 974 F.2d 540 (4th Cir. 1992)..............................................18, 19

*Gordon v. JKP Enterprises Inc.*, No. 01-20420, 35 F. App'x 386 (5th Cir. 2002)...............22, 23

*Granite Rock Co. . v. Int'l Broth. of Teamsters*, 130 S. Ct. 2847 (2010)....................................14

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ......................................26

*Hadnot v. Bay, Ltd.*, 344 F.3d 474 (5th Cir. 2003).................................................................28

*In re Citigroup, Inc.*, 376 F.3d 23 (1st Cir. 2004) .............................................................15, 18

*Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996)............................................................29

*LaRue v DeWolff Boberg & Associates*, 552 U.S. 248 (2008)..............................................24, 25

*LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590 (SDNY Jan. 13, 2012) ......................... 19, 20

*Lewis v. UBS Fin. Servs., Inc.*, 818 F.Supp. 2d 1161 (N.D. Cal. 2011) ................................. 19, 20

*McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234 (5th Cir. 1995) ..................................... 4

*Meriter Health Services Employee Retirement Plan v. Johnson*, No. 12-2216 (7th Cir. 2012) ................................................................................................................................................. 24

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) .................................................................. 26

*N. Metro. Residential Health Care Facility, Inc. v. Ledri Realty Associates, Inc.*, 179 A.D.2d 133 (1992) ......................................................................................................................... 18

*Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145 (7th Cir. 1995) ......................... 2, 15, 18

*North American Coal Corp. Retirement Savings Plan v. Roth*, 395 F.3d 916 (8th Cir. 2005) ..................................................................................................................................................... 22

*Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054 (11th Cir. 1998) ............................... 28

*Paulson v. Paul Revere Life Ins. Co.*, 323 F. Supp. 2d 919 (S.D. Iowa 2004) ..................... 17, 18

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 7 F.3d 1110 (3d Cir. 1993) ................. 28

*Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109 (1924) ........................................................ 27

*Sanders v. Scheideler*, 816 F.Supp. 1338 (W.D. Wis. 1993), aff'd, 25 F.3d 1053, 1994 WL 234497 (7th Cir. 1994) ..................................................................................................................... 19

*Sereboff v. Mid Atl. Med. Services, Inc.*, 547 U.S. 356 (2006) ................................................... 26

*Spain v. Prudential Ins. Co. of Am.*, 2010 WL 669866 (S.D. Ill. Feb. 22, 2010) ........................ 18

*Springs Valley, Bank & Trust Co. v. Carpenter*, 885 F.Supp. 1131 (S.D. Ind. 1993) ................. 18

*Sturges v. Hy-Vee Employee Benefit Plan and Trust*, 991 F.2d 479 (8th Cir. 1993) ................... 19

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) ..................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................................... 22, 23

STATUTES, RULES, AND REGULATIONS

7 U. S. C. § 26(n)(2) ..................................................................................................................... 28

9 U.S.C. § 1 ................................................................................................................................... 27

29 U.S.C. § 1002(7) ..................................................................................... 24, 25

29 U.S.C. § 1021(a) ........................................................................................... 25

29 U.S.C. § 1022 ................................................................................................ 30

29 U.S.C. § 1022(a) ...................................................................................... 30, 31

29 U.S.C. § 1024 ................................................................................................ 31

29 U.S.C. § 1024(b) ........................................................................................... 31

29 U.S.C. § 1053(a)(1) ......................................................................................... 6

29 U.S.C. § 1053(a)(2)(A)(ii) ............................................................................... 6

29 U.S.C. § 1053(a)(2)(A)(iii) .............................................................................. 6

29 U.S.C. § 1102(a)(1) ......................................................................................... 7

29 U.S.C. § 1132(a)(1)(B) ............................................................................ 17, 28

29 U.S.C. § 1132(a)(2) .................................................................................. 28, 29

29 U.S.C. § 1132(a)(3) ................................................................................. passim

29 U.S.C. § 1132(a)(3)(A) ............................................................................ 22, 23

29 C.F.R. § 2509.95-1(b) .................................................................................... 25

29 C.F.R. § 2510.3-3(d) ...................................................................................... 25

29 C.F.R. § 2520.102-2(a) ................................................................................... 29

29 C.F.R. § 2520.102-2(b) ................................................................................... 29


**OTHER AUTHORITIES**

3 Am. Jur., Arb. & Award § 74 (1936) ............................................................... 27

Amy J. Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1 (2004) ................................... 27

G. BOGERT & G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 943 (2d ed. 1982) ................. 27

Brief of Appellants in *Meriter Health Services Employee Retirement Plan v. Johnson*, No. 12-2216 (July 12, 2012) ............................................................................. 23

FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13204, *available at* http://www.finra.org/web/groups /arbitrationmediation/@arbmed/@arbion/documents/arbmed/p117547.pdf ......................... 14, 15

FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13204(b), *available at* http://www.finra.org/web/groups /arbitrationmediation/@arbmed/@arbion/documents/arbmed/p117547.pdf ................................. 9

FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13204(d), *available at* http://www.finra.org/web/groups /arbitrationmediation/@arbmed/@arbion/documents/arbmed/p117547.pdf ................................. 9

Motion to Dismiss the Writ, No. 06-856, 2007 WL 3231419 (U.S. 2007)................................... 23

NASD Code of Arbitration Procedure, Rule 10301(d)(2), *available at* http://www.finra.org/web/groups/arbitrationmediation/@arbmed/@arbion/documents/arb med/p018653.pdf ................................................................................................................. 9

NASD Code of Arbitration Procedure, Rule 10301(d)(3), *available at* http://www.finra.org/web/groups/arbitrationmediation/@arbmed/@arbion/documents/arb med/p018653.pdf ................................................................................................................. 9

Order Approving Proposed Rule Change Relating to Exclusion of Class Actions from Arbitration Proceedings, 57 Fed. Reg. 52659-02 (Nov. 4, 1992)................................................ 14

Restatement of Contracts § 550, cmt. A (1932) ....................................................................... 27

SEC Approves Amendments to Rule 13204 of the Industry Code to Preclude Collective Action Claims from Being Arbitrated Under the Code (July 9, 2012), *available at* http://www.finra.org/web/groups/industry/@ip/@reg/@notice/documents/notices/p12687 0.pdf ............................................................................................................................... 14, 15

# INTRODUCTION*

For years, Plaintiffs worked at UBS Financial Services, Inc. or its predecessors ("UBS" or "Defendant") as financial advisors between November 1987 and January 2010. *See* Ferreira Decl. ¶¶ 18-22.[1] They filed a Complaint, and then a First Amended Complaint [Dkt. No. 20] ("Am Compl.") alleging (1) that they were participants in a pension plan called the PartnerPlus Plan for Financial Advisors sponsored by UBS (the "UBS Pension Plan") and (2) that the UBS Pension Plan violated numerous legal requirements involving the vesting and forfeiture of their benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). *See* Am. Compl. ¶ 5, 11, 15-17. Plaintiffs also alleged that money required to fund the UBS Pension Plan and pay benefits was instead used by UBS to enrich itself. *See* Am. Compl. ¶ 17. Plaintiffs seek injunctive and other equitable relief on behalf of themselves and a putative class. *See* Am. Compl. ¶ 20.

---

\* This amended opposition to Defendant's motion to dismiss and compel arbitration is being filed to correct Plaintiffs' previously filed opposition by deletion of its footnote 20.

[1] UBS characterizes Plaintiffs, former branch managers within its wealth management unit, directly serving retail and institutional securities customers, as employees who left to go to work for competitors out of greed. Motion at 1. The record of UBS over the last five years tells a different story. Plaintiffs left UBS to save their careers. During the class period, UBS was rocked by multiple scandals arising from UBS' illegal conduct in its wealth management, commercial and investment banking units, Plaintiffs and other branch managers were hard put to defend UBS to their customers as a place to keep their money. *See* Morgenson, Gretchen. 2008, June 27, "Suit Claims UBS Misled Investors," *The New York Times* (litigation related to securities sold as cash equivalents); *See* Wyatt, Edward. 2011, May 4, "UBS Settles Fraud Cases over Munis," *The New York Times* (settlement of 2001-2006 claims of bid rigging in the municipal bond market). *See also* Stewart, James. 2012, July 20, "Suit For UBS, a Record of Averting Prosecution," *The New York Times* (deferred prosecution agreement for assisting in tax evasion). Moreover, there was an 80 percent cut in the bonus pool of UBS in 2008 which further discouraged employees from remaining with UBS. *See* Logutenkove, Elena, 2009, February 3, "UBS Hired Brokers in U.S. with 'Super-Sized' Bonuses (Update3)," *Bloomberg. See also* Zamansky, Jacob, 2010, July 26, "UBS Clients Flee: The Rest of the Story," *www.zamanzky.com/blog/2010/07/ubs-clients-flee-the-rest-of-the-story*. The truth tells.

Defendant argues that Plaintiffs are party to an agreement with UBS that mandates arbitration (and thus dismissal) of this suit. *See* Defendant's Motion to Dismiss Plaintiffs' Amended Complaint at 1 ("Motion"). But the UBS Pension Plan says *exactly the opposite*: all class claims are explicitly exempted from arbitration. Specifically, the relevant language – Section 10.2 of the UBS Pension Plan – requires arbitration in accordance with rules of the Financial Industry Regulatory Authority ("FINRA"). Those FINRA rules explicitly exempt from mandatory arbitration all claims that are the subject of a putative class action. Indeed, when the Seventh Circuit held that a materially identical arbitration provision exempted all putative class actions, it felt moved to remark that the matter was "not a difficult interpretive question[]." *Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145, 148 (7th Cir. 1995).

That is even more true here. The arbitration language in the UBS Pension Plan could not be clearer. UBS knows this. Accordingly, in a quixotic effort to circumvent its own plan, UBS attempts to manipulate language that appears in another document – a brochure that *summarizes* the UBS Pension Plan. There is no dispute whatsoever that the document UBS relies on to compel arbitration is a summary. It says, explicitly, that it is a summary brochure. It also says, explicitly, that should it somehow differ from the UBS Pension Plan it summarizes, the UBS Pension Plan language governs.

The reason UBS wants to enforce the summary over the terms of the UBS Pension Plan is because the summary, according to UBS, includes the very class action waiver that the plan abjures. But as the United States Supreme Court recently made clear: summary documents cannot under any circumstances modify federally-regulated pension plans. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (explaining that summaries cannot, as a matter of law, alter

the terms of a plan). Nor, as a matter of simple contract and logic, could a summary that defers to the terms of an operative legal instrument, modify that same instrument.

Even if the summary brochure *could* somehow amend the pension plan, UBS would still lose, for two reasons. First, the brochure exempts from arbitration all claims for injunctive relief – such as those asserted in this case. Second, its terms are legally unenforceable, given the substantive and procedural protection that ERISA affords to pensioners.

Accordingly, the Motion to Dismiss must be denied.

## ISSUES PRESENTED

1. Must Defendant's motion to dismiss be denied because the governing arbitration clause (found in the UBS Pension Plan) clearly exempts from arbitration all claims that are the subject of a putative class action?

2. Must Defendant's motion to dismiss be denied because the arbitration clause relied on by UBS (found in a brochure summarizing the UBS Pension Plan) clearly exempts from arbitration all claims for injunctive relief?

3. Must Defendant's motion to dismiss be denied because ERISA prohibits UBS from compelling arbitration under the circumstances of this case?

## STATEMENT OF FACTS

Plaintiffs are former financial advisors of UBS. Am. Compl. ¶ 5. They seek relief "on behalf of themselves and other similarly situated individuals employed by Defendants, and who left the employment of Defendant, prior to January 1, 2011 and had amounts . . . . deferred under the [UBS Pension Plan applicable prior to January 1, 2011] forfeited by Defendant" Am. Compl.

¶ 22. Plaintiffs – and all members of the class they seek to represent – were participants in pre-2011 versions of the UBS Pension Plan.[2]

The gravamen of the Am. Compl. is this: the UBS Pension Plan violated ERISA by failing to comply with basic statutory rules pertaining to vesting, forfeiture, and funding of covered plans.[3]

---

[2] The pension plan at issue in this litigation is the continuation of an ERISA plan established in 1995 by the Paine Webber Group, Inc., a UBS predecessor. *See* Am. Compl. ¶ 5. In 1998, this pension plan was amended and restated. *See* Ferreira Decl. Ex. 1, at *158-160 (page numbers from Ferreira declaration and exhibits correspond to Page ID# on ECF stamp) (3 pages from the 1998 Restatement of the "PaineWebber PartnerPlus Plan"). In 2004, UBS amended and restated the 1998 plan, but split it into two separate plans, one for financial advisors and one for branch managers, entitled respectively the "2004 UBS PartnerPlus Plan for *Financial Advisors* Plan Document" and the "2004 UBS PartnerPlus Plan for *Branch Managers* Plan Document." (emphasis added). *See* Bro Decl. Ex. 3. This lawsuit involves the former. *See* Bro Decl. Ex. 6, at *1; Ex. 7, at *1; and Ex. 8, at *1(page numbers from Bro declaration correspond to page numbers as shown on document or within document) (2006, 2008 and 2009 restatements of UBS PartnerPlus Plan for Financial Advisors Plan Document in the form of PartnerPlus Plan for Financial Advisors); Ferreira Decl. Ex. 2, *162-163 (2 pages from the 2004 Restatement of the pension plan for financial advisors). The pension plan for financial advisors was amended and restated again in 2006, 2008, and 2009. *See* Ferreira Decl. Ex. 3 (4 pages from the 2006 restatement); Ex. 4, (4 pages from the 2008 restatement); Ex. 5, (4 pages from the 2009 restatement).

[3] Defendant concedes that the UBS Pension Plan was initially subject to ERISA. *See* Am. Compl. ¶ 6. Defendant also concedes that the UBS Pension Plan has been subject to ERISA from 2011 to the present day. *See id.* For a period of intervening years, however, Defendant took – and takes – the curious position that the UBS Pension Plan was *not* subject to ERISA. *See, e.g.*, Ferreira Decl. Ex. 2, Article I, at *162; Ex 3, §1.4, at *165; Ex. 4, §1.4 at *170; Ex. 5, §1.4, at *175 (each stating that "[t]he Plan is not intended to be subject to ERISA") (Dkt. No. 31-2). Plaintiffs allege that the UBS Pension Plan is – *and has always been* – covered by ERISA. *See, e.g.*, Am. Compl. ¶¶ 7-9.

At this stage of the litigation, UBS's claim that "[t]he Plan is not intended to be subject to ERISA" is irrelevant because the "existence vel non of a plan is a question of fact." *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir. 1995). To make that determination, "[c]ourts in the Fifth Circuit utilize the three-factor test[, considering] whether: (1) the plan exists; (2) the plan falls within the safe-harbor provision established by the Department of Labor; and (3) the employer established or maintained the plan with the intent to benefit employees." *Boos v. AT & T, Inc.*, 704 F. Supp. 2d 600, 608-09 (W.D. Tex. 2010). On a motion to dismiss, the Court must accept Plaintiffs' factual allegations as true. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff."); *Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 2012 WL

In plain English: the UBS Pension Plan imposed vesting and forfeiture requirements that are flatly prohibited by ERISA and was not, as required by ERISA, funded separate and apart from the general assets of UBS.[4] When Plaintiffs left UBS, Defendant used the illegal vesting and forfeiture requirements to deny Plaintiffs millions of dollars of pension monies to which they are legally entitled. To remedy such action, Plaintiffs seek, *inter alia*, injunctive and other equitable relief under 29 U.S.C. § 1132(a)(3) (authorizing injunctive and other equitable relief).

## A. The Dispute Over the UBS Pension Plan

The UBS Pension Plan worked roughly as follows. Participants held an "account" in the plan that could be filled with employer contributions (referred to as "Firm Contributions") and/or employee contributions (referred to as "Voluntary Contributions"). *See* Ferreira Decl. Ex. 1, at *158. For four years, the money was appreciated at an interest rate equal to four times the applicable market rate (referred to by the UBS Pension Plan as the "Turbo Interest" benefit). *See, e.g.*, Bro Decl. ¶ 4; Ex. 3, at *18-19.[5] After four years, a participant's money in the UBS Pension Plan was appreciated at the applicable market rate (referred to as the "Market Interest" benefit). *See id.* Thus, at any time, a participant's account balance consisted of (1) Firm Contributions, (2) Voluntary Contributions, (3) accumulated Turbo Interest, and (4) accumulated Market Interest.

---

1494340, at *1 n.2 (S.D. Tex., April 27, 2012) (on motion to dismiss and compel arbitration, court must accept as true the fact allegations in the complaint). And Defendants do not contend that Plaintiffs have inadequately pled the existence of an ERISA plan.

[4] Plaintiffs also make other claims. *See, e.g.*, Am. Compl. ¶ 16. The details of those claims, however, are not relevant to the pending motion.

[5] To assist the Court, Plaintiffs have provided the applicable versions of the plan. *See* Bro Decl. Ex. 1; Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6.

The UBS Pension Plan is clear (as ERISA requires) that all monies in a participant's account consisting of Voluntary Contributions were immediately vested and non-forfeitable. *See, e.g.,* Bro Decl. ¶ 4; Ex. 3, at *20. *See also* 29 U.S.C. § 1053(a)(1). The dispute in this case applies to treatment of the monies attributable to (1) Firm Contributions and (2) the accumulated Turbo and Market Interest earned on *both* Firm and Voluntary Contributions. Those monies – according to UBS and its illegal plan – are *not* available to plan participants unless (1) they remain employed at UBS for longer than ERISA requires for vesting purposes, and (2) they sign non-competition agreements, which ERISA bars as a condition for receiving pension monies.[6]

### B. The Relief Sought by Plaintiffs

The illegal means relied on by Defendant to deny Plaintiffs their pension monies are expressed as terms of the UBS Pension Plan. *See, e.g.,* Bro Decl. Ex. 3, at *20-21. Because the UBS Pension Plan uses illegal terms, Plaintiffs are seeking relief under 29 U.S.C. § 1132(a)(3), which permits participants to obtain injunctive and other equitable relief. 29 U.S.C. § 1132(a)(3) (authorizing a civil action by a participant (A) "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or (B) "to obtain other appropriate equitable relief"). *See also* Am. Compl. ¶ 20.

---

[6] An employer may comply with ERISA's nonforfeitability requirements by satisfying one of two alternative grounds set forth in 29 U.S.C. § 1053(a)(2)(A)(ii) and 1053(a)(2)(A)(iii). The UBS Pension Plan complies with neither. *Compare* 29 U.S.C. § 1053(a)(2)(A)(ii) (providing that the right to 100 percent of employer contributions must be nonforfeitable after *5 years* of service) *with, e.g.,* Bro Decl. Ex. 3, at *21 (providing that the right to 100 percent of employer contributions is nonforfeitable only after *10 years* of service); *compare also* 29 U.S.C. § 1053(a)(2)(A)(iii) (providing that employer contributions must vest according to the following table: 3 years/20 percent; 4 years/40 percent; 5 years/60 percent; 6 years/80 percent; 7 years or more/100 percent) *with, e.g.,* Bro Decl. Ex. 3, at *21 (providing for vesting according to the following table: 6 years/20 percent; 7 years/40 percent; 8 years/60 percent; 9 years/80 percent; 10 years/100 percent).

The injunctive relief Plaintiffs are seeking is straightforward: they have requested an order from this Court enjoining Defendant from enforcing the illegal provisions in the UBS Pension Plan. *See* Am. Compl. ¶ 20. The other equitable relief is similarly straightforward: Plaintiffs ask this Court to equitably "reform" the UBS Pension Plan so as to strike the illegal vesting and forfeiture provisions that Defendant is relying on to deny Plaintiffs their pension monies. *Id.* *See also CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1869 (2011) (holding that reformation of a plan's terms is a remedy authorized by 29 U.S.C. § 1132(a)(3)).

### C. The Relevant Language Regarding Arbitration of Disputes

UBS seeks to compel arbitration and to dismiss the operative complaint in this case – Plaintiffs' Amended Complaint. Motion at 1. Put simply, UBS argues that each of the named Plaintiffs agreed to resolve this dispute pursuant to bilateral (*i.e.*, non-class) FINRA arbitration. *Id.* As explained below, UBS is completely wrong. *See infra* pp. 13 - 25 (Argument Sections I & II).

In order to articulate their legal position clearly and in its proper context, Plaintiffs must first identify and briefly discuss various documents mentioned by UBS that contain language pertaining to the arbitration of disputes. This is essential because the Motion filed by UBS is an inaccurate, incomplete, and misleading treatment of the relevant documents and language.

### 1. The binding UBS Pension Plan arbitration provision

All ERISA plans must be in writing. 29 U.S.C. § 1102(a)(1). Here, the relevant plan is set forth, as amended and restated, in a series of documents each containing the words "PartnerPlus Plan" in its title. *See supra* p. 3 n.2 (identifying the relevant plan documents). It is these documents, collectively referred to herein as the "UBS Pension Plan," that contain the provisions

that – according to Plaintiffs – violate the vesting, forfeiture and funding requirements of ERISA. *See id.*

To be sure, the UBS Pension Plan contains an arbitration provision. *See, e.g.*, Ferreira Decl. Ex. 1, at *159-160. In its Motion, UBS repeatedly cites that arbitration provision. *See* Motion at 5. What Defendant fails to mention, however, is that the arbitration provision in the UBS Pension Plan *carves out an exception for class actions.* It does so by expressly incorporating the arbitration rules of the National Association of Securities Dealers, Inc. ("NASD") (and, in later years, FINRA). For example, the arbitration provision in the 1998 UBS Pension Plan provides:

> [I]n the event of any dispute, claim or controversy involving a Participant or any other claimant and the Plan, or PaineWebber or any Sponsor, arising out of the Plan, any such controversy shall be resolved before a NASD arbitration panel *in accordance with the arbitration rules of the NASD.*

Ferreira Decl. Ex. 1, at *159-160 (emphasis added). When the UBS Pension Plan was amended and restated in 2004, the arbitration provision remained materially identical:

> [I]n the event of any dispute, claim or controversy involving a Participant or any other claimant and the Plan, or UBS Financial Services or any Sponsor, arising out of the Plan, any such controversy shall be resolved before an NASD arbitration panel *in accordance with the arbitration rules of the NASD.*

Ferreira Decl. Ex. 2, at *163 (emphasis added).[7] When the UBS Pension Plan was amended and restated in 2006, the essential language of the arbitration provision again remained the same:

> [I]n the event of any dispute, claim or controversy involving a Participant or any other claimant and the Plan and a Sponsor, arising out of the Plan, any such controversy shall be resolved before an NASD arbitration panel *in accordance with the arbitration rules of the NASD.*

Ferreira Decl. Ex. 3, at *167 (emphasis added).[8] And when the UBS Pension Plan was amended and restated in 2008, the arbitration provision was not altered in any relevant way:

---

[7] UBS merely substituted its name for its predecessor PaineWebber Incorporated. This obviously does not affect the meaning of the clause as applied here.

> [I]n the event of any dispute, claim or controversy involving a Claimant and the Plan and a Sponsor, arising out of the Plan, any such controversy shall be resolved before a FINRA arbitration panel *in accordance with the arbitration rules of FINRA.*

Ferreira Decl. Ex. 4, at *172 (emphasis added).[9]

NASD and FINRA rules specifically preserve the right of a claimant to participate in a class action. *See, e.g.,* FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13204(b) (2012), *available at* http://www.finra.org/web/groups/arbitrationmediation/@arbmed/ @arbion/documents/arbmed/p117547.pdf ("FINRA Code") (declaring FINRA arbiters to be without jurisdiction over claims that are the subject of a putative class action); NASD Code of Arbitration Procedure, Rule 10301(d)(2), *available at* http://www.finra.org/web/groups/ arbitrationmediation/@arbmed/@arbion/documents/arbmed/p018653.pdf ("NASD Code") (same); FINRA Code, Rule 13204(d) (barring a party from enforcing an arbitration agreement against any member of a putative class action); NASD Code, Rule 10301(d)(3) (same).

Reading the UBS Pension Plan arbitration provision and the FINRA/NASD rules together, the plain meaning of the provision is as follows:

> [I]n the event of any dispute, claim or controversy involving a Claimant and the Plan and a Sponsor, arising out of the Plan, any such controversy shall be resolved before a [NASD/]FINRA arbitration panel in accordance with the arbitration rules of [NASD/]FINRA[, *rules which give NASD/FINRA arbitrators no jurisdiction over claims that are the subject of class actions, and indeed expressly bar a party from enforcing an arbitration provision such as this vis-à-vis claims that are the subject of a putative class action*].

Ferreira Decl. Ex. 4, at *172 (illustrative language added and emphasized).[10]

---

[8] This time, UBS excised its name from the clause. Again, its meaning remains the same.

[9] In 2007, the NASD and the New York Stock Exchange consolidated to form FINRA. *See Empire Fin. Group, Inc. v. Penson Fin. Services,* Inc., No. 3:09-CV-2155D, 2010 WL 742579, at *1 n.1 (N.D. Tex. Mar. 3, 2010). As a result, UBS substituted FINRA for NASD as the designated arbitral forum. The FINRA rules relevant to this action are identical to those of its predecessor NASD. *See, infra,* p. 9. Accordingly, the meaning of the clause is the same.

Indeed, UBS decided in 2011 that is no longer wanted to carve putative class action lawsuits out of the arbitration provision in the UBS Pension Plan. As such, it amended and restated its pension plan on January 1, 2011. *See* Bro Decl. Ex. 7, at \*42. The pertinent clause from the amended plan states that:

> By participating in the Plan, to the fullest extent permitted by law, whether in court or in arbitration, Claimants waive any right to commence, be a party to in any way, or be an actual or putative class member of any class, collective, or representative action arising out of or relating to any Dispute, and Claimants agree that any Dispute may only be initiated or maintained and decided on an individual basis.

*Id.* at 44. The 2011 restatement is the first – and only – actual UBS Pension Plan document that contains a purported "class action waiver." A second clause from the amended plan states that "[a]ny Dispute that is subject to arbitration pursuant to the Plan, but which is *ineligible* for arbitration before FINRA, including but not limited to *any Dispute that is the subject of a certified or putative class action*, will be conducted before JAMS . . . ." *Id.* at 43 (emphasis added). The clause, by its reference to claims "ineligible" for arbitration under FINRA, explicitly acknowledges that the arbitration clause in prior versions of the UBS Pension Plan preserved the right of the parties to participate in class actions by designating FINRA – and thereby incorporating its Rules – as the arbitral forum. Of course, the 2011 UBS Pension Plan does not apply to Plaintiffs, or any member of the class they seek to represent, all of whom left UBS prior to January 1, 2011. *See supra* p. 1 n.1.

### 2. The summary brochure describing, *inter alia*, the UBS Pension Plan

Hindsight being 20-20, UBS is now unhappy with the arbitration provision that it drafted and included <u>for over 13 years</u> in its pension plan. To overcome this problem, UBS attempts to rely

---

[10] This illustration uses the 2008 provision, but it would apply with equal force to each restatement of the arbitration clause.

on inapplicable (and, in any event, unenforceable) language in a summary brochure that it began to circulate in 2007 "for internal use only." Ferreira Decl. Ex. 6, at *180-186 (describing itself as a "summary. . . brochure") (the "Summary Brochure").[11]

It is even worse than that. Apart from relying on a summary instead of the actual plan, UBS cites only *some* language from the Summary Brochure. *See* Motion at 6 (including an incomplete and misleading quote of the arbitration provision from the Summary Brochure). *See also, infra,* pp. 12-13. The Motion also claims falsely that the UBS Pension Plan was *part of* the Summary Brochure. *See* Motion at 6 ("[E]ach Plaintiff expressly agreed to have his compensation and benefits as a UBSFS Financial Advisor governed by the FA Compensation Plan [*i.e.,* the Summary Brochure] (of which PartnerPlus [*i.e.,* the UBS Pension Plan] was a part) . . . .").

UBS has grossly misrepresented the facts. The Summary Brochure *is not a pension plan of any kind (or part of one).* Reading UBS's brief, it seems evident that UBS hopes to mislead the Court by repeatedly referring to the Summary Brochure that contains the arbitration provision it likes as a "Plan." The Summary Brochure may colloquially be a plan, in that it informally describes the UBS "plan" or "scheme" for compensating its financial advisor employees, but it is not the ERISA plan at issue here.

---

[11]   The Summary Brochure itself actually referred to another summary. In 2007, 2009 and 2010, and presumably 2008, the Summary Brochure (for financial advisors) referred to an *individual summary* of the UBS Pension Plan (for financial advisors) called "the PartnerPlus Plan Brochure." *See* Ferreira Decl. Ex. 6, at *184; Ex. 8, at *199; Ex. 9, at *205 ("Refer to the PartnerPlus Brochure and PartnerPlus Plan Documents for detailed information not provided in this summary. Copies of the PartnerPlus Brochure and Plan Documents can be found…"). In its Motion, UBS fails to mention the existence of the PartnerPlus Plan Brochure. Its existence makes the Summary Brochure even that much more tangential to the UBS Pension Plan.

The ERISA plan in this case—the document that sets forth the rights and obligations of those promised protected benefits—is the UBS Pension Plan. *See supra* p. 3 n.3 (identifying the formal plan documents). The UBS Pension Plan defines, in careful and complete language, the entitlement that is being promised and the terms and conditions thereof. It uses the ERISA term of art "Plan Document," and is unmistakably clear about when it changes (*i.e.,* each time it is amended, restated, and re-dated). It does not define or circumscribe itself in reference to some other document. The Summary Brochure, in contrast, summarizes a variety of compensation programs available to UBS employees, several of which are not "benefits" at all, and explicitly defines itself in reference to other documents.[12] It is merely a non-binding description of compensation to be received by Financial Advisors from multiple sources – only one of which is the UBS Pension Plan. Indeed, the four pages of the Summary Brochure prepared by UBS in 2007, 2008, 2009, and 2010 about the UBS Pension Plan make clear that it is merely a summary and *not* an amendment of that plan. *See* Ferreira Decl. Ex. 6, at *184; Ex. 8, at *199; Ex. 9, at *205 (stating that "[i]f there is *any difference between this summary* and the Plan Document, the Plan Document will govern.").

As explained below, any arbitration language contained in the Summary Brochure is, therefore, irrelevant. *See infra* pp. 17-20 (Argument Section I.B). And even if it could be considered, it is of no legal effect because it is unenforceable under ERISA. *See infra* pp. 2-31 (Argument Section III.B).[13] Should this Court disagree, however, it is important to identify the

---

[12] The vast majority of the Summary Brochure describes sources of compensation for Financial Advisors that have absolutely nothing to do with the UBS Pension Plan such as (i) the commission schedule for revenue an employee generates, (ii) eligibility for credit and mortgage assistance, and (iii) expense allowance programs. *See, e.g.*, Bro Decl. Ex. 8, at *47-50.

[13] ERISA prohibits enforcing terms in a Summary Brochure that either (1) are not contained in the actual Plan, (2) are improperly disclosed to recipients, or (3) are written such that an average plan participant would not appreciate their true import. *See infra* pp. 29-31 (Argument

*actual arbitration language* in the Summary Brochure because that language does not, in fact, contemplate arbitration of this action. In its Motion, UBS quotes the arbitration language from the Summary Brochure as follows:

> [Y]ou and UBS agree that *any disputes between you and UBS **including claims concerning compensation, benefits** or other terms or conditions of employment and termination of employment . . . whether they arise by statute or otherwise, including but not limited to, **claims arising under. . . The Employee Retirement Income Security Act** . . or any other federal, state or local employment. . . laws, rules or regulations, including wage and hour laws, will be determined by arbitration . . . .*

Motion at 6 (all emphasis in original UBS Motion). Brazenly, however, UBS has omitted the initial clause from the arbitration provision. In full, the provision reads:

> <u>With the exception of claims for injunctive relief,</u> you and UBS agree that ***any disputes** between you and UBS **including claims concerning compensation, benefits** or other terms or conditions of employment and termination of employment . . . whether they arise by statute or otherwise, including but not limited to, **claims arising under. . . The Employee Retirement Income Security Act** . . or any other federal, state or local employment. . . laws, rules or regulations, including wage and hour laws, will be determined by arbitration . . . .*

Ferreira Decl. Ex. 6, at *185; Ex. 8, at *200; Ex. 9, at *206 (all emphasis in Motion except underlined text which was omitted by UBS).

---

Section III.B). As a factual matter, however, it bears mention that the Summary Brochure purports to be self-enforcing. *See, e.g.*, Ferreira Decl. Ex. 6, at *186; Ex. 8, at *201 ("The continuation of your employment after receipt of this plan and/or acceptance of benefits hereunder shall be deemed your consent to its terms"); Ex. 9, at *207 ("The continuation of your employment after receipt of this plan and/or acceptance of benefits hereunder shall be deemed your consent and agreement to its terms".) And it does not advise recipients to seek legal advice regarding the consequences of what they were allegedly "agreeing" to by dint of showing up to work. To the contrary, the Summary Brochure was clearly marked – on every page – as being for "Internal Use Only." *See, e.g.*, Ferreira Decl. Ex. 6, at *180-186.

13

**ARGUMENT**

## I. THE UBS PENSION PLAN EXPRESSLY AUTHORIZES PLAINTIFFS TO LITIGATE THIS CASE IN FEDERAL COURT

It is axiomatic that "[a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S. Ct. 2847, 2856 (2010). As explained below, the UBS Pension Plan expressly authorizes Plaintiffs to litigate this case in federal court and not in arbitration. As such, the Motion must be denied.

### A. The Arbitration Clause in the UBS Pension Plan Clearly Permits a Putative Class Action – Like This One – to Be Litigated in Federal Court.

The UBS Pension Plan specifically invokes NASD/FINRA arbitration rules, which exempt from arbitration any claim that is the subject of a putative class action. *See supra* pp. 7-8 (discussing FINRA Code Rules 13204(b) & 13204(d); NASD Code Rules 10301(d)(2) & 10301(d)(3)). Thus, the UBS Pension Plan effectively provides that "all claims must be resolved per FINRA's arbitration rules, which preserve for litigation class action claims."

As the Securities and Exchange Commission explained when it approved the predecessor version of FINRA Code Rule 13204: the purpose of the rule was to ensure that class claims would proceed *in court* and avoid the "wasteful, duplicative litigation" of seriatim individual claims *in arbitration*. *See* Order Approving Proposed Rule Change Relating to Exclusion of Class Actions from Arbitration Proceedings, 57 Fed. Reg. 52659-02, 52661 (Nov. 4, 1992). The whole point of the rule at issue – and its predecessor rules – was (and is) to ensure that class actions are handled by the courts because of the burdens of multiple FINRA arbitrations. *See id. Cf.* SEC Approves Amendments to Rule 13204 of the Industry Code to Preclude Collective Action Claims from Being Arbitrated Under the Code, at 1 (July 9, 2012), *available at*

14

http://www.finra.org/web/groups/industry/@ip/@reg/@notice/documents/notices/p126870.pdf (clarifying that FINRA Code Rule 13204, which declines jurisdiction over class claims, applies not only to class actions, but also to collective actions under the Fair Labor Standards Act, Age Discrimination in Employment Act, and Equal Pay Act of 1963).

Indeed, the Seventh Circuit had occasion to consider the meaning of an arbitration provision materially identical to the relevant language in all pre-2011 versions of the UBS Pension Plan. *See Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145 (7th Cir. 1995) ("*Nielsen*"). In *Nielsen*, the contractual language provided that "all controversies which may arise . . . shall be determined by arbitration . . . in accordance with the rules . . . of the New York Stock Exchange or the National Association of Securities Dealers, Inc. as [the plaintiff] may elect." *Nielsen*, 66 F.3d at 146 (quoting the arbitration provision attempting to be enforced). The NASD and NYSE rules regarding arbitration were essentially identical to the FINRA rules today. *See supra* pp. 7-8. In determining whether such a provision could compel arbitration of the plaintiff's claim while a class action was pending, the Seventh Circuit said:

> This case does not present us with difficult interpretive questions. [The defendant] specifically agreed that arbitration shall be conducted according to the rules in effect at the chosen arbitration forum . . . . Both the NASD and the NYSE, the two forums in which arbitration could be pursued under this agreement, adopted rules prohibiting arbitration of an individual's claim that has been filed as a putative or certified class action . . . . [w]hich is to say that the contract expressly prohibited [the defendant] from compelling arbitration of this claim.

*Nielsen*, 66 F.3d at 148. *See also In re Citigroup, Inc.*, 376 F.3d 23, 25 (1st Cir. 2004) (where arbitration was to be held in accordance with NASD rules, "neither [the plaintiff] himself or those class members subject to NASD rules could be compelled to arbitrate"). *Cf. Galey v. World Marketing Alliance*, 510 F.3d 529, 532 -33 (5th Cir. 2007) (holding that an arbitration

agreement providing for "arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc." incorporated such rules into the arbitration agreement).

The point of judicial oversight of arbitration agreements is "to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995). Although it would require choosing an arbitral forum other than FINRA, it would not have been difficult for UBS to write an arbitration provision that purported to extinguish the right of Plaintiffs to bring a putative class action lawsuit in federal court. Indeed, UBS did just that in 2011. As noted above, the UBS Pension Plan was amended (effective January 1, 2011) to provide that:

> Any Dispute that is subject to arbitration pursuant to the Plan, *but which is ineligible for arbitration before FINRA, including but not limited to any Dispute that is the subject of a certified or putative class action, will be conducted before JAMS* pursuant to its Employment Arbitration Rules and Procedures and subject to the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness.
>
> \* \* \*
>
> By participating in the Plan, to the fullest extent permitted by law, whether in court or in arbitration, Claimants waive any right to commence, be a party to in any way, or be an actual or putative class member of any class, collective, or representative action arising out of or relating to any Dispute, and Claimants agree that any Dispute may only be initiated or maintained and decided on an individual basis.

*See supra* pp. 9-10 (emphasis added). *See also* Bro Decl. ¶ 8; Ex. 7, at \*43-44. Prior to 2011, however, the UBS Pension Plan clearly preserved the right of former employees to bring a putative class action in federal court. That provision must be enforced.[14]

---

[14] UBS intimates that Plaintiffs need to have pursued administrative appeals prior to commencing suit. Motion at 5-6 n.4. UBS is mistaken. The UBS Pension Plan only requires administrative exhaustion when an individual is seeking benefits under the plan. *See* Ferreira Decl. Ex. 2, at \*163 ("All claims *for benefits under this Plan* must be filed in writing with the

16

**B. Unhappy With the Arbitration Clause *That It Drafted*, UBS Seeks to Rely on Inapplicable and Unenforceable Language in a Summary Brochure.**

As explained above, UBS wants this Court to ignore the governing arbitration provision of the UBS Pension Plan. *See supra* pp. 16-19 (Argument Section I.A). Contrary to the plain language of that provision, UBS wants to force Plaintiffs into bilateral (i.e., non-class) FINRA arbitration of this ERISA dispute, and tries to achieve that result by relying on language in a Summary Brochure that it began to circulate in 2007.

In the words of the United States Supreme Court, however: "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but [they] do not themselves constitute the *terms* of the plan . . . ." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011). And the language of summary documents – unlike that of an ERISA Plan – is not binding. As the Court explained: "[t]o make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." *Id.* at 1877-78. *See also Paulson v. Paul Revere Life Ins. Co.*, 323 F. Supp. 2d 919, 940 (S.D. Iowa 2004) ("[I]n its commonly understood meaning, a summary may well be expected to leave out some terms and detail, but cannot be expected to add terms not appearing in the document being summarized."). Indeed, it is black-

---

Committee in accordance with such procedures as the Committee reasonably establishes.") (emphasis added). The law is well settled. Unlike claims under 29 U.S.C. § 1132(a)(1)(B), claims under 29 U.S.C. § 1132(a)(3) are not subject to an administrative exhaustion requirement. *See Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995) ("Our cases applying this common law exhaustion requirement presuppose that the grievance upon which the lawsuit is based arises from some action of a plan covered by ERISA, *and that the plan is capable of providing the relief sought by the plaintiff*." (emphasis added)). The rationale is simple: plaintiffs seeking to invalidate an illegal plan term need not first present their case to the party charged with imposing the illegal term.

letter law that no provision disfavoring a participant in a summary is binding against the

participant *unless that provision is also contained in the ERISA plan itself.*[15]

Courts have long held that a "favorable" term in an ERISA Plan will always be enforced over

a more restrictive term contained in a summary of the plan. *See, e.g., Spain v. Prudential Ins.*

*Co. of Am.*, 2010 WL 669866, at \*6 (S.D. Ill. Feb. 22, 2010) (holding that a provision contained

in an SPD – but not in the Plan – cannot be enforced unless (i) it advantages the participant and

(ii) she or he relied on it); *Springs Valley, Bank & Trust Co. v. Carpenter*, 885 F.Supp. 1131,

1141-42 (S.D. Ind. 1993) (when terms of a summary plan description and policy conflict, the

terms that favor the participant will govern, regardless of disclaimers).[16]

The irrelevance of language in a summary is particularly obvious in cases – like this one –

where the summary explicitly states that plan language takes precedence. *See, e.g., Glocker v.*

*W.R. Grace & Co.*, 974 F.2d 540, 541-43 (4th Cir. 1992) (refusing to find binding language in a

summary stating that private-duty nursing would be covered only if approved by the plan

---

[15] Such is also black-letter contract law *outside of the ERISA context.* By definition, a
summary does not modify the thing it summarizes. Nor could a summary that explicitly defers
to the language of a legal instrument it purports to summarize possibly work as a modification of
that instrument. UBS discusses the state law of New Jersey, New York, and Texas. Motion at
12-13. The law of all those states is clear that a contract must be interpreted according to its
plain terms. *See County of Morris v. Fauver*, 153 N.J. 80, 100 (1998) (contract modification
requires mutual assent); *N. Metro. Residential Health Care Facility, Inc. v. Ledri Realty
Associates, Inc.*, 179 A.D.2d 133, 136 (1992) (same); *Barrand, Inc. v. Whataburger, Inc.*, 214
S.W.3d 122, 145 (Tex. App. 2006) (same). A document that (1) expressly describes itself as a
summary and not a modification and (2) resolves any difference between itself and the document
described in favor of the latter is necessarily what it purports to be. Here, the terms of arbitration
provision in the UBS Pension Plan plainly and clearly exempt putative class actions. *Cf. Nielsen
v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145, 146, 148 (7th Cir. 1995); *In re Citigroup, Inc.*,
376 F.3d 23, 25 (1st Cir. 2004); *see also supra* pp. 13-16 (Argument Section I.A).

[16] This is true not only of documents formally designated as a summary plan description
("SPD") under ERISA. It is true of any document that purports to summarize an ERISA Plan.
*See, e.g., Paulson*, 323 F. Supp. 2d at 940 ("[G]iving effect to the discretionary language of the
Certificate, whether or not it constitutes an SPD, would defeat the legislative purpose and intent
of ERISA . . . .").

18

administrator and noting that "where the [summary] handbook favors the employer, the employer cannot disavow a disclaimer in the handbook representing that the Plan controls . . . ."); *Sturges v. Hy-Vee Employee Benefit Plan and Trust*, 991 F.2d 479, 480-81 (8th Cir. 1993) (adopting Fourth Circuit's holding in *Glocker*, 974 F.2d at 542-43, that "when summary favors employer, employer cannot disavow a disclaimer in the summary stating the plan controls."); *Sanders v. Scheideler*, 816 F.Supp. 1338, 1344 (W.D. Wis.1993), aff'd, 25 F.3d 1053, 1994 WL 234497 (7th Cir. 1994) (refusing to find binding language in a summary stating that "the plan shall have a priority right to recover all benefits paid from the third party and the third party's insurer" and noting that "[n]o court has ever [set aside the conflicts clause and enforced the terms of the Summary Plan Description] in favor of a plan.").

UBS cites two decisions that it contends involve "the exact same arbitration agreement and class actions waivers" as this case. *See* Motion at 1-2 (citing *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590 (SDNY Jan. 13, 2012) and *Lewis v. UBS Fin. Servs., Inc.*, 818 F.Supp. 2d 1161 (N.D. Cal. 2011)). UBS is wrong. Those cases unquestionably do *not* involve the same arbitration provisions. To be clear: neither *LaVoice* nor *Lewis* involved *the UBS Pension Plan* – which contains the only relevant arbitration provision in this case. That is a dispositive distinction.

Plan language matters. The central aim of ERISA is that participants can know with certainty that whatever the plan says, they can be no worse off. Here the UBS Pension Plan – repeatedly, explicitly, and without qualification – provides for a class action exemption from arbitration. UBS was not obligated to include such a provision in its pension plan. But it did, and the only way that can change is if the plan is amended; informal brochures and summaries will not do. If ERISA plan terms could be modified or altered by peripheral documents that

operated to make participants worse off, no promise in any ERISA plan would be safe. UBS's suggestion otherwise would undermine the fundamental purpose of the statute.[17]

Accordingly, because the terms of the UBS Pension Plan governing this action expressly permit the litigation of a putative class action – like this one – in federal court, the Motion must be denied. No language in a Summary Brochure can possibly alter that outcome.[18]

## II. THE SUMMARY BROCHURE EXPRESSLY AUTHORIZES PLAINTIFFS TO LITIGATE THIS CASE IN FEDERAL COURT.

In its Motion, UBS repeatedly asserts that Plaintiffs "agreed to arbitrate *all* claims and disputes relating to [their] employment with UBSFS and all claims arising under the Plan." *See, e.g.*, Motion at 1, 15 (emphasis added). That assertion is patently false. As explained above, it contradicts the express terms of the arbitration provision contained in the UBS Pension Plan. *See supra* pp. 13-16 (Argument Section I.A). As explained below, it also contradicts the express

---

[17] *LaVoice* and *Lewis* are inapposite for numerous other reasons. For example: neither case involved a claim under 29 U.S.C. § 1132(a)(3). *See infra* pp. 25-28 (Argument Section III.A) (explaining that claims under section 502(a)(3) of ERISA are not arbitrable). Indeed, neither case implicates ERISA at all. *See infra* pp. 29-31 (Argument Section III.B) (explaining several ERISA violations in this case that preclude enforcement of any arbitration agreement).

[18] In a footnote, UBS claims that three of plaintiffs signed "Financial Advisor Account Reassignment Agreements," which include a class action waiver. Motion at p. 7 n.5. These Reassignment Agreements do not help UBS. First, the Reassignment Agreements specifically say, in bold, that they have "No Effect on Other Agreements." Ferreira Decl. Ex. 25, at *269; Ex. 26 at *274. The Agreements goes on to make clear that they exclusively "relate[] to all agreements, written or otherwise, concerning Account Reassignment" (meaning the process of the assignment of customer accounts between registered representatives). *Id.* By their terms, these Reassignment Agreements have nothing at all to do with the UBS Pension Plan, which does not concern Account Reassignment. Nor, even if the Reassignment Agreement purported to alter the UBS Pension Plan, would those alterations have legal force; peripheral documents do not amend ERISA plans. Second, the only signed version of this Reassignment Agreement offered by Defendant is an agreement signed in October of 2007. *Id.* at *28. After that, the UBS Pension Plan was amended and restated in both 2008 and 2009, with no change whatsoever to the provision carving out class actions from arbitration. Finally, UBS has only presented evidence that one plaintiff signed the Reassignment Agreement. *Id.* (Bollich signature). At best, that would simply disqualify Mr. Bollich as a class representative.

terms of the arbitration language *in the Summary Brochure*. *See infra* pp. 21 (Argument Section II.A.) (describing the carve out of "claims for injunctive relief" from the arbitration language in the Summary Brochure). *See also infra* pp. 22-25 (Argument Section II.B.) (explaining that Plaintiffs have asserted viable claims for injunctive relief under ERISA). As such, the UBS Motion must be denied *even if* this Court could determine that the arbitration language in the Summary Brochure is binding and enforceable.

### A. The Summary Brochure Expressly Requires That "Claims for Injunctive Relief" Be Brought in Court and *Not* Arbitration.

As indicated above, the Summary Brochure provides that:

> <u>With the exception of claims for injunctive relief</u>, you and UBS agree that ***any disputes*** between you and UBS ***including claims concerning compensation, benefits*** or other terms or conditions of employment and termination of employment . . . *whether they arise by statute or otherwise, including but not limited to,* ***claims arising under. . . The Employee Retirement Income Security Act*** . . or any other federal, state or local employment. . . laws, rules or regulations, including wage and hour laws, *will be determined by arbitration* . . . .

Motion at 6; *see also* Ferreira Decl. Ex. 6 at *185; Ex. 8 at *200; Ex. 9 at *206 (all emphasis in original UBS Motion except underlined text that was omitted by UBS).

Although it was omitted from the Motion, this language – drafted by UBS – unquestionably exempts from arbitration all "claims for injunctive relief." And UBS is *clearly* aware that Plaintiffs seek injunctive relief in this case. Indeed, UBS has asked this Court to strike Plaintiffs' request for injunctive relief. *See* Motion at 21. Specifically, UBS attempts to avoid the effect of the exception that it drafted by arguing that Plaintiffs – who are former employees – have no standing to seek injunctive relief. That argument, however, is frivolous.

## B. UBS's Argument That Plaintiffs Lack Standing Is Frivolous.

Plaintiffs allege that UBS has included illegal vesting and forfeiture requirements in its ERISA Plan. *See supra* p. 2. *See also* Am. Compl. ¶¶ 11-18 (alleging violations of ERISA vesting and non-forfeiture provisions). Plaintiffs also allege that UBS is relying on those illegal vesting and forfeiture requirements to deny Plaintiffs millions of dollars of pension monies to which they are legally entitled. *See supra* p. 4. *See also* Am. Compl. ¶ 17.

As a remedy for these ERISA violations, Plaintiffs have asserted a claim under 29 U.S.C. § 1132(a)(3). Pursuant to this section of ERISA, Plaintiffs seek injunctive relief – *i.e.*, an order from this Court enjoining Defendant from invoking the illegal provisions in the UBS Pension Plan. *See* Am. Compl. ¶ 20 (requesting "an injunction against any act or practice which violates ERISA or the terms of the Plan."). This relief is unquestionably available under the statute. *See e.g.*, *North American Coal Corp. Retirement Savings Plan v. Roth*, 395 F.3d 916 (8th Cir. 2005) (affirming, in part, an opinion granting an injunction under section 502(a)(3)). Indeed, the statute expressly permits a lawsuit by a participant "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan . . . ." 29 U.S.C § 1132(a)(3)(A).

In its motion, UBS argues that "Plaintiffs are all former employees who lack standing to bring claims for injunctive relief." Motion at 21 (citing Am Compl. ¶ 22). This argument is based on a fundamental misapprehension of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ("*Dukes*") and *Gordon v. JKP Enterprises Inc.*, No. 01-20420, 35 F. App'x 386 (5th Cir. 2002) ("*Gordon*"). *Dukes* involved a claim *under Title VII* for back pay by current and former employees in an action seeking class certification under Fed. R. Civ. P. 23(b)(2), which requires that injunctive or declaratory relief be appropriate for the class as a whole. *See Dukes*, 131 S. Ct. at 2560. The Supreme Court held that the former employees could not continue because of the

nature of their claim – back pay was expressly held *not* to be a form of injunctive relief. *Id.* ("As Title VII itself makes pellucidly clear, backpay is neither [injunctive nor declaratory relief]."). *Gordon* involved an injunction prohibiting defendant from engaging in future discrimination in light of plaintiffs' Title VII victory. *See Gordon*, 35 F. App'x at *6. The Fifth Circuit reversed on the basis that plaintiffs *would not benefit from the injunction.* *Id.* at *7 ("[Plaintiffs] do not seek reinstatement, have not indicated that they plan to seek employment with [defendant] in the future, and have shown no other way in which they would benefit from the injunction.").

Neither case has any relevance here. Unlike the request for back-pay under Title VII sought by the former employees in *Dukes*, the remedy sought by Plaintiffs in this case is *defined by statute* as injunctive relief. As noted above, 29 U.S.C § 1132(a)(3)(A) expressly permits a lawsuit by a participant "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan . . . ." 29 U.S.C § 1132(a)(3)(A). Plaintiffs seek precisely that. *See, e.g.*, Am. Compl. ¶ 20. And unlike the former employees in *Gordon*, Plaintiffs in this case obviously stand to benefit from the injunction they have requested. Put simply, if UBS is enjoined from enforcing the unlawful portions of its plan, Plaintiffs will be entitled to additional benefits. Such relief is undoubtedly authorized under 29 U.S.C. § 1132(a)(3). *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) ("[T]he fact that . . . relief takes the form of a money payment does not remove it from the category of traditionally equitable relief.").

That UBS's standing argument is meritless is beyond dispute. UBS's lawyers advanced the exact same argument in a recent case before the Seventh Circuit. *See* Brief of Appellants in *Meriter Health Services Employee Retirement Plan v. Johnson*, No. 12-2216, at 22 (July 12, 2012) ("Former Plan participants already received their benefits from the Plan, no longer participate in it, and the sole remedy they seek is money damages. These class members may not

even have standing to seek injunctive or declaratory relief (as distinct from an award of benefits or damages) at all."). Judge Posner – writing for a unanimous court – rejected the argument as "silly." *Meriter Health Services Employee Retirement Plan v. Johnson*, No. 12-2216, at 9 (7th Cir. 2012) (Posner, J.). In the court's words:

> Meriter's further argument that class members who are no longer participants in the plan are not entitled to declaratory or injunctive relief because such relief is forward looking and they want retrospective relief—that is, money—is silly. . . . Those class members who are no longer participants in the plan, because they have quit or retired . . . seek reformation of the Meriter plan as a basis for claiming additional pension benefits. Those benefits would not be damages. They would be the automatic consequence of a judicial order. . . .

*Id.* at 9-10.

Indeed, the attempt to manufacture procedural significance from the fact that a plaintiff is a *former* employee was expressly rejected by the United States Supreme Court in *LaRue v DeWolff Boberg & Associates*, 552 U.S. 248 (2008) ("*LaRue*"). After the Court granted *certiorari* in *LaRue* (to address the scope of monetary relief available under sections 502(a)(2) and 502(a)(3) of ERISA), defendants filed a motion to dismiss the writ contending that the plaintiff's case was moot because he was a former employee who already received the undisputed balance of his account in the ERISA plan at issue. *See LaRue*, 552 U.S at 256 n.6; Motion to Dismiss the Writ in *LaRue v DeWolff Boberg & Associates*, No. 06-856, 2007 WL 3231419, at 6 (U.S. 2007). Section 3(7) of ERISA, however, expressly defines the term "participant" as "any employee *or former employee* of an employer . . . who is *or may become* eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." 29 U.S.C. § 1002(7) (emphasis added).[19] For that reason, the Supreme Court held that "[a] plan

---

[19] Congress knew how to narrow the term participant when it wanted to do so. For example, section 101(a) of ERISA uses the phrase "participant covered under a plan" to narrow the class of people to whom plan administrators must provide information, in many cases without charge

'participant,' as defined by § 3(7) of ERISA . . . may include a former employee with a colorable claim for benefits." *LaRue*, 552 U.S. 248, 256 n.6. That is *exactly* the case here.

Put simply, there is no doubt that Plaintiffs have standing to seek all relief available – including an injunction – under 29 U.S.C. § 1132(a)(3). And, because they have asserted "a claim for injunctive relief," the UBS Motion must be denied *even if* this Court somehow determines that the arbitration language in the Summary Brochure is binding and enforceable.

## III. IN ANY EVENT, THE UBS MOTION MUST BE DENIED BECAUSE ITS ATTEMPT TO COMPEL ARBITRATION VIOLATES ERISA.

As explained above, there is no arbitration agreement cited by UBS in its Motion that includes language warranting dismissal of this case. *See supra* pp. 13-24 (Argument Sections I & II). To the extent that this Court concludes, however, that language in the UBS Pension Plan or elsewhere mandates arbitration, ERISA would render that language without force.

### A. ERISA Prohibits the Arbitration of Claims Under 29 U.S.C. § 1132(a)(3).

Plaintiffs bring a federal claim under section 502(a)(3) of ERISA. *See* Am. Compl. ¶ 20 (seeking relief pursuant to 29 U.S.C. § 1132(a)(3)). Congress did not intend that such claims be subject to arbitration. The reason is quite simple: the private right of action authorized by 29 U.S.C. § 1132(a)(3) is unlike virtually any other in the United States Code. Its contours (*i.e.*, the circumstances in which it may be brought, against whom, and for what type of relief) are *exclusively* and *specifically* defined by a historical inquiry, namely how an analogous equitable claim would have been treated by a pre-merger court of equity. The United States Supreme

and without request, under ERISA's automatic disclosure requirements. 29 U.S.C. § 1021(a) (emphasis added); *see also* 29 C.F.R. § 2510.3-3(d) (providing a regulatory definition of the phrase "participant covered under a plan" that is considerably narrower than the broad definition of "participant" in 29 U.S.C. § 1002(7))); 29 C.F.R. § 2509.95-1(b) (clarifying that 29 C.F.R. § 2510.3-3(d) does not affect who is a participant for purposes of bringing suit under section 502(a)(2) of ERISA).

Court, for almost two decades, has repeatedly made this clear. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993) ("*Mertens*"); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("*Great West*"); *Sereboff v. Mid Atl. Med. Services, Inc.*, 547 U.S. 356, 361-62 (2006) ("*Sereboff*"); *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) ("*Amara*"). And the Fifth Circuit has faithfully followed this Supreme Court precedent, even when it believed that such a reading of the statute was grossly unfair. *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 (5th Cir. 2007) ("Because the remedy sought here was not typically available in pre-fusion courts of equity, we are obliged to follow the Supreme Court's decision in *Great-West* and deny § 502(a)(3) relief."). *See also id.* at 348-49 (Benavides, J., concurring) ("The facts as detailed in Chief Judge Jones's opinion scream out for a remedy beyond the simple return of premiums. Regrettably, under existing law it is not available. I am constrained to join the court's opinion, which I find correctly applies controlling precedent.").

Put another way, the Supreme Court has held – without caveat or equivocation – that the 93rd Congress, in enacting ERISA and creating a cause of action for "other appropriate equitable relief," essentially reached back in time, froze in amber all equitable claims and their defenses as they were in days of the divided bench, and said to civil litigants "you may litigate those claims, and *only* those claims, exactly as you would have in a pre-merger court of equity." There is no question that any defenses to such "frozen" equitable claims must have been ones that equity courts historically would have recognized with respect to the claim being asserted. *See, e.g.*, *Great-West*, 534 U.S. at 210 ("the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity . . . .'" (citing *Mertens*, 508 U.S. at 256)); *Sereboff*, 547 U.S. at 363 (conducting inquiry into "[o]ur case law from the days of the divided bench" to determine whether claim was equitable).

For this reason alone, the Motion filed by UBS must be denied. Pre-merger equity courts, when faced with trust provisions that were alleged to be illegal, uniformly paid no heed to any contracts that limited liability or denied access to the equity court. *See, e.g.*, G. BOGERT & G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 943, at 475-80 (2d ed. 1982) ("[I]n the case of release of a fiduciary, special requirements are set by the courts."). Moreover, under the common law revocability doctrine "any party to an arbitration agreement could revoke an arbitrator's authority at any time before the arbitrator rendered an award, even if the parties had agreed the delegation was irrevocable." *See, e.g.*, Amy J. Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1, 30-31 (2004) (describing development of revocability doctrine). This rule was adopted by the Supreme Court. *See, e.g.*, *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 121 (1924) ("The federal courts . . . have, *both in equity and at law*, denied in large measure, the aid of their processes to those seeking to en force [*sic*] executory agreements to arbitrate disputes." (emphasis added)). And it continued to exist after the merger of law and equity under the Federal Rules of Civil Procedure in 1938. *See* Restatement of Contracts § 550, cmt. A (1932); 3 Am. Jur., Arb. & Award § 74 (1936).

In its Motion, UBS spends considerable time invoking the Federal Arbitration Act (9 U.S.C. § 1) (the "FAA") and the Supreme Court's recent decision in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2012) ("*Concepcion*"), to suggest that this case must be arbitrated. *See* Motion at 2, 9-11, 16-19, 21. Neither helps Defendant. The FAA preempts *state law*. And the Supreme Court in *Concepion* invalidated a California state law that barred arbitration in certain circumstances. Of course, *Concepcion* said nothing about the inability of *federal law* to prohibit a contractual agreement to arbitrate a particular type of claim. And it has long been

settled that a federally created right of action is immune from any agreement to arbitrate if that is what was intended by Congress. That will certainly occur when Congress expressly bans arbitration. See, e.g., 7 U. S. C. § 26(n)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section"). But it also occurs when an agreement to arbitrate is fundamentally inconsistent with the federal statutory claim asserted. See, e.g., Hadnot v. Bay, Ltd., 344 F.3d 474, 478 n.14 (5th Cir. 2003) (holding provision in an arbitration clause barring punitive and exemplary damages in Title VII cases unenforceable); Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1062 (11th Cir. 1998) (declining to enforce arbitration clause that purported to exclude claims for damages and equitable relief under Title VII because "[w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute . . . the arbitration clause is not enforceable.").

The Supreme Court has spent two decades explaining that 29 U.S.C. § 1132(a)(3) is a unique private right of action intended by Congress to preserve historical equity in amber. Congress – with vigorous backing from the Court – could have been no clearer that, as a matter of federal law, historical equity's refusal to permit the arbitration of claims means that no predispute contract to arbitrate claims *under 29 U.S.C. § 1132(a)(3)* shall be valid or enforceable.[20]

---

[20] The other common ERISA causes of action, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2), are not defined by reference to historical equity. As such, any decision in which an ERISA dispute involving those causes of action was held to be arbitrable is of no moment. See, e.g., *Kramer v. Smith Barney*, 80 F.3d 1080, 1083-84 (5th Cir. 1996) (holding that the plaintiff's claim was remediable under 29 U.S.C. § 1132(a)(2) and that it was arbitrable because "Congress did not intend to prohibit arbitration of statutory ERISA claims . . . '[s]o long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum.'" (citation omitted)). It is also worth nothing that the arbitration clause in *Kramer* did not contain a class action waiver. That is unsurprising because the case was not a class action. What is surprising, however, is that UBS falsely claims otherwise. See Motion at 19 n.7 (characterizing *Kramer* as an example of a court "enforcing class action waivers such as those contained in Plaintiffs' arbitration agreements").

**B. Even If ERISA Permitted Arbitration of Claims Under 29 U.S.C. § 1132(a)(3), It Would Not Excuse UBS's Violation of 29 U.S.C. §§ 1022(a) and 1024(b).**

ERISA imposes very strict notice requirements and procedures on plans and fiduciaries. As explained above, if a summary contains a term that is not in the actual plan, participants are not bound by that term. *See supra* pp. 16-19 (Argument Section I.B). It is also well settled, however, that even if a term is actually in a plan, it cannot be enforced against any participant who has not been properly given notice of the provision. The statute and accompanying regulations extensively discuss the type of language through which the notice must be expressed and the manner in which the notice must be provided. For example:

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024 (b) of this title . . . . *A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024 (b)(1) of this title.*
>
> * * *
>
> The summary plan description shall contain . . . the remedies available under the plan for the redress of claims which are denied in whole or in part.

29 U.S.C. §§ 1022(a) and 1024(b), respectively. *See also, e.g.*, 29 C.F.R. § 2520.102-2(a); 29 C.F.R. § 2520.102-2(b) (outlining various regulatory requirements). A change from judicial resolution to non-class arbitration is obviously a "material modification" of a participant's "remedies." If it were immaterial, UBS would not have filed its Motion.

UBS's conduct in this case does not come close to satisfying the requirements of 29 U.S.C. § 1022. Nowhere does the Summary Brochure inform Plaintiffs that their remedies are being materially modified. Acceptable language would have been: "This document is an amendment to a UBS pension plan, *i.e.*, the PartnerPlus Plan. It includes a material modification of your remedies; in contrast with the language in the PartnerPlus Plan, in the event of a dispute with

29

UBS, you are *no longer* eligible to participate in a class action." UBS did the opposite of informing Plaintiffs of a material modification. The Summary Brochure expressly informed participants that any differences between the UBS Pension Plan and the summary were to be resolved in favor of the UBS Pension Plan. *See supra* p. 12.

Plaintiffs presume that UBS will argue that there is no difference between the UBS Pension Plan and the Summary Brochure. Both documents, according to Defendant, include class waivers. *See, e.g.,* Motion at 19 ("The arbitration agreement contained in the PartnerPlus Plan also precludes class proceedings in arbitration, since it does not expressly provide for class arbitration."). That is simply not accurate, as Plaintiff has explained. *See supra* pp. 13-16 (Argument Section I.A).[21] Nor could a plan, under ERISA, include a provision that circumscribed the equitable relief available to participants injured by an illegal trust provision. *See supra* pp. 25-28 (Argument Section III.A). But even putting those arguments aside, UBS still loses on notice grounds, because it did not follow (nor does it even claim to have followed) ERISA's mandated *procedures* for notice.

---

[21] Even if the UBS Pension Plan could have been, or could be, interpreted to mandate bilateral FINRA arbitration, the Summary Brochure is still required by ERISA to explain the "full import" of such an arbitration requirement before it can be enforced against any participant. *See e.g., Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1040 (2d Cir. 1985) (requiring SPD to explain "full import" of provisions affecting employees); *Bowerman v. Wal-Mart Stores, Inc.,* 226 F.3d 574, 587 (7th Cir. 2000) (holding that an SPD failing to provide "critical information" was defective). This, it most certainly did not do. First, the arbitration page of the Summary Brochure was not "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). For example: it is a dense paragraph written in legalese using words such as "vacatur." It has an exception for "claims for injunctive relief." And it talks about arbitration "as authorized and governed by the arbitration law of the state of New York." Nothing about the page was written in a manner intended to be understood by the average financial advisor who is, obviously, not an attorney. Second, it was not "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The inability to bring a class action in any forum is significant. The arbitration page of the Summary Brochure did not reasonably apprise participants of this alleged consequence.

29 U.S.C. § 1024 makes clear that a "summary plan description, and all modifications and changes referred to in Section 1022(a)," must be provided to a participant "within 90 days after he becomes a participant" or "within 120 days after the plan becomes subject to this part." 29 U.S.C. § 1024(b). Moreover, the "administrator shall make copies of the latest updated summary plan description and . . . other instruments under which the plan was established or is operated available for examination by any plan participant." *Id.* There is no evidence – none whatsoever – that Defendant complied with these requirements. UBS merely alleges that the named Plaintiffs signed – at some point – an acknowledgment of the 2007 Summary Brochure. Motion at 7, 12. That, however, is insufficient to satisfy the demanding procedure set forth in 29 U.S.C. § 1024(b). Under such circumstances, the Motion filed by UBS must be denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss and Compel Arbitration should be denied in its entirety.

December 21, 2012

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr., Lead Attorney
State Bar No. 08158100
reg@kilgorelaw.com
Theodore C. Anderson
State Bar No. 01215700
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle St.
Dallas, TX 75204
(214) 969-9099; (214) 953-0133 (fax)

Peter K. Stris (*pro hac vice*)
peter.stris@strismaher.com
Brendan S. Maher (*admission pending*)
State Bar No. 24053336
brendan.maher@strismaher.com
Stris & Maher LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090; (424) 212-7001 (fax)

Brian E. Bro
State Bar No. 03030000
brian@bebroattv.com
Law Offices of Brian E. Bro
3200 SW Freeway, Ste. 2200
Houston, TX 77027
(713) 961-3111; (281) 265-9181(fax)

Sam F. Baxter
State Bar No. 01938000
sbaxter@mckoolsmith.com
Theodore Stevenson, III
State Bar No. 19196650
tstevenson@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston St., Ste. 300
Marshall, TX 75670
(903) 923-9000; (903) 923-9099 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served upon Defendant's counsel of record through this Court's electronic filing system this 21st day of December, 2012 as follows:

Deborah S. Davidson
Andrew Scroggins
Morgan Lewis & Bockius, LLP
77 West Wacker Drive
Chicago, Illinois 60601

Ira G. Rosenstein
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178-0060

Michael C. Smith
Siebman, Burg, Phillips & Smith, LLP
113 East Austin Street
Marshall, Texas 75671

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.