# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MARK T. EDDINGSTON, JEFFERY M. DAVIS, ELRIDGE NICHOLAS BOLLICH, RAY A. COX and GEORGE GALANIS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) | 
| UBS FINANCIAL SERVICES, INC., | ) ) |
| Defendant. | ) ) |

Case No. 2:12-CV-00422

## DEFENDANT'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT AND COMPEL ARBITRATION

January 11, 2013

Respectfully submitted,
/s/ Deborah S. Davidson

Deborah S. Davidson
Andrew Scroggins (*pro hac vice*)
Morgan Lewis & Bockius LLP
77 W. Wacker Drive
Chicago, Illinois 60601
(312) 324-1000; (312) 324-1001 (fax)
ddavidson@morganlewis.com
ascroggins@morganlewis.com

Ira Rosenstein (*pro hac vice*)
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6001
irosenstein@morganlewis.com

Michael C. Smith
Siebman, Burg, Phillips & Smith LLP
113 East Austin Street
Marshall, Texas 75670
(903) 938-8900; (972) 767-4620 (fax)
michaelsmith@siebman.com

*Attorneys for Defendant*

# **INTRODUCTION**

Plaintiffs fail to offer any persuasive basis for this Court not to compel each Plaintiff to arbitrate his claims pursuant to their arbitration agreements, which include the same arbitration provisions recently enforced by other courts. Plaintiffs each voluntarily agreed, in exchange for valuable consideration as described in UBS's opening memorandum ("Def. Mem."), to arbitrate his claims on a non-class basis. In light of the strong federal policy favoring arbitration, as recently emphasized yet again in *Nitro-Lift Technologies, L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012), the Court should compel Plaintiffs' claims to arbitration and dismiss this lawsuit.

Nevertheless, Plaintiffs argue that the PartnerPlus arbitration agreement "carves out an exception for class actions… by expressly incorporating the arbitration rules of" FINRA. Pl. Op. at 8. This argument was rejected in *Cohen v. UBS Fin. Servs., Inc.,* 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012). It is well established that (1) the FINRA arbitration rule relied upon by Plaintiffs cannot trump the FAA, which mandates enforcing Plaintiffs' arbitration agreements according to their terms; (2) FINRA member firms and registered employees are free to enter into arbitration agreements that modify and supersede the FINRA arbitration agreement and rules, and those agreements will be enforced according to their terms; and (3) enforcing Plaintiffs' arbitration agreements and class action waivers are consistent with FINRA's rules.

Plaintiffs' other arguments are unavailing:

- First, amendments to the PartnerPlus arbitration agreement post-dating Plaintiffs' employment are irrelevant and do not create an inference that earlier versions of PartnerPlus permit class actions. To the contrary, those plans clearly mandate arbitration but do not expressly authorize *class* arbitration, so they must be read to preclude class arbitration. *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758 (2010).
- Second, characterizing their claims as seeking "injunctive relief" does not exempt Plaintiffs' claims from arbitration. According to Plaintiffs, because the FA Compensation Plan ("FA Comp Plan") arbitration agreement carves out claims for injunctive relief, their claims are not arbitrable because their Amended Complaint contains a single boilerplate request for an "injunction" as one potential form of

"equitable relief" under ERISA § 502(a)(3). However, the same arbitration agreement expressly encompasses *all* ERISA claims and also includes an express waiver of all class claims. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 n.8 (1995).

- Third, an injunction would not be appropriate because Plaintiffs are former employees and have no legitimate interest in the future operation of PartnerPlus, which an injunction would necessarily entail. What Plaintiffs really want is to recover the PartnerPlus payments they forfeited when they left UBS for more lucrative jobs, and an order providing such relief need not be in the form of an injunction. Even if the Court finds that Plaintiffs' claim for injunctive relief should not be compelled to arbitration and declines to dismiss this claim, Plaintiffs' other claims and the underlying merits of the parties' dispute are questions for the arbitrator, not the Court, to decide. Thus, at a minimum, this action should be stayed pending arbitration.

- Fourth, Plaintiffs are flatly wrong to assert that ERISA § 502(a)(3) claims are not arbitrable. "Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act." *Kramer v. Smith Barney,* 80 F.3d 1080 (5th Cir. 1996).

- Finally, the FA Comp Plan and Account Reassignment arbitration agreements govern this dispute and are plainly enforceable, as shown by the recent decisions in *Cohen*, 2012 WL 6041634, at *1; *LaVoice v. UBS Fin. Servs., Inc.,* 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012); and *Lewis v. UBS Fin. Servs., Inc.,* 818 F. Supp. 2d 1161 (N.D. Cal. 2011).

## ARGUMENT

### A. FINRA Rules Do Not Exempt Plaintiffs' Class Claims From Arbitration.

#### 1. The FAA Mandates Enforcement Of Plaintiffs' Arbitration Agreements.

UBS's Motion is consistent with FINRA's rules, but even if it was not, the FAA trumps FINRA's rules and mandates that Plaintiffs' arbitration agreements and class action waivers be enforced according to their terms. *See, e.g., AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) ("the overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA").

*Compucredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), confirms that the FAA requires that arbitration agreements be enforced according to their terms "even when the claims … are

federal statutory claims, *unless the FAA's mandate has been overridden by a contrary Congressional command.*" *Id.* at 669 (emphasis added.) Here, Plaintiffs have failed to meet their burden of showing a "contrary Congressional command" to counter "the FAA's mandate." *See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987) ("[t]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies"). Neither the language of FINRA Rule 13204 (cited by Plaintiffs) nor the regulatory history of how FINRA or its predecessor NASD promulgated Rule 13204 qualifies as a "Congressional command" to counter "the FAA's mandate."

Moreover, there is nothing in the Securities Exchange Act of 1934 (the "Exchange Act") – the relevant Act of Congress empowering FINRA and the SEC – that provides a "contrary Congressional command" to counter "the FAA's mandate" or authorizes FINRA to impose limitations on the FAA's mandate or a member firm's rights under the FAA to have arbitration agreements with its employees enforced according to their terms.[1] Thus, if there is any conflict between Plaintiffs' arbitration agreements and FINRA's rules, the FAA's mandate must prevail and Plaintiffs' agreements should be enforced according to their terms.

Finally, compelling arbitration is consistent with both the mandate of the FAA and controlling Supreme Court precedent confirming the liberal federal policy favoring arbitration and ruling that, under the FAA, arbitration agreements and class action waivers must be enforced according to their terms, and any doubts should be resolved in favor of arbitration. *Concepcion*, 131 S. Ct. at 1745; *Stolt-Nielsen SA*, 130 S. Ct. at 1758; *Mastrobuono,* 514 U.S. at 62.

---

[1] Plaintiffs have identified no provision of the Exchange Act that suggests let alone demonstrates that Congress intended the Act to override the FAA's mandate by ensuring that registered employees of FINRA member firms have an unwaivable right to pursue employment claims against member firms in class actions in court rather than in non-class arbitrations. To the extent Plaintiffs are relying on FINRA's July 2012 commentary regarding the newly amended version of Rule 13204 (Pl. Op. at 14-15), their reliance is misplaced because that commentary was issued in connection with the adoption of a new rule which applies only to collective actions, not class actions, and, in any event, FINRA's commentary does not qualify as a "Congressional command" to counter the FAA's mandate. *Compucredit Corp.*, 132 S. Ct. at 669.

### 2. FINRA Member Firms And Their Employees Are Free To Enter Into Enforceable Arbitration Agreements That Modify And Supersede The FINRA Arbitration Agreement And Rules.

Even if Plaintiffs' arbitration agreements were inconsistent with FINRA's rules – which they are not – well established law holds that, consistent with ordinary principles of contract law, FINRA member firms and their registered employees are free to enter into arbitration agreements that modify and supersede the FINRA Form U4 arbitration agreement and the FINRA Code of Arbitration Procedure for Industry Disputes (the "Code"), which is incorporated by reference therein,[2] and courts have consistently enforced such agreements.[3] *Cohen*, 2012 WL 6041634, at *2-3; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 112-13 (2d Cir. 1990) (stock exchange arbitration rule approved by SEC was validly modified and "superseded" by the firm's separate arbitration agreement). [4]

### 3. Plaintiffs' Arbitration Agreements Are Consistent with FINRA's Rules.

Plaintiffs' arbitration agreements and class action waivers should also be enforced because they are consistent with FINRA's rules. First, there is no provision in the FINRA Code that prohibits member firms and their employees from entering into agreements in which the employees agree to waive any right they may have to file or participate in a class action in exchange for valuable consideration, as Plaintiffs and UBS did here.

---

[2] The FINRA Form U4 is a registration form used by broker-dealers to register associated persons (employees) with FINRA. The Form U4 contains an arbitration clause that requires the registered employee to arbitrate any disputes that are required to be arbitrated under the FINRA Code. *See* http://tinyurl.com/b6uk3nm.

[3] Therefore, *Nielsen v. Piper Jaffray, & Hopwood, Inc*., 66 F.3d 145 (7th Cir. 1995) and *In re Citigroup, Inc.,* 376 F.3d 23 (1st Cir. 2004) (cited in Pl. Op. at 15), are inapposite. As Plaintiffs concede, in *Nielsen* the parties "specifically agreed that arbitration shall be conducted according to the rules in effect at the… NASD." In contrast, here the parties entered into a separate arbitration agreement that explicitly rejected and thereby superseded the FINRA class action rule. *Citi* is inapposite because (1) the only issue decided there was whether Citi waived its right to arbitration and (2) unlike here, where the parties entered into separate arbitration agreements that superseded the FINRA arbitration agreement and rules, the parties' arbitration agreement in *Citi* applied the NASD rules.

[4] *See also Chanchani v. Salomon/Smith Barney, Inc*., 2001 WL 204214, at *5 (S.D.N.Y. Mar. 1, 2001) (U-4 terms "in no way prohibit member organizations from entering into separate, private arbitration agreements with their employees"); *Creative Sec. Corp. v. Bear Stearns & Co.,* 671 F. Supp. 961, 967 (S.D.N.Y. 1987) (member firms may enter into agreements that "validly modify the arbitration provisions of the NASD as they apply to the parties to such agreements"), *aff'd*, 847 F.2d 834 (2d Cir. 1988).

Second, enforcement of Plaintiffs' arbitration agreements would be consistent with Rule 13204 because the Rule's savings clause states that nothing in that Rule will "otherwise affect the enforceability of any rights under the Code *or any other agreement*." *Id.* (emphasis added.) Thus, Rule 13204 explicitly contemplates that parties can enter into separate arbitration agreements, and expressly provides that nothing in that Rule will affect the enforceability of any rights under those separate agreements. As at least two federal courts have already held, this includes agreements that contain class action waivers. *See Cohen*, 2012 WL 6041634, at *3 (Rule 13204 "(1) recognizes that parties may choose to enter into additional agreements beyond the scope of the Code; and (2) provides that the Code does not affect the enforceability of these additional agreements"); *Suschil v. Ameriprise Fin. Servs., Inc.,* 2008 WL 974045, at *6 (N.D. Ohio Apr. 7, 2008) (parties "agreed to arbitrate their Claims and … forego their class action remedies. This Court cannot overlook the exception delineated at the close of the FINRA/NASD class action rule: 'This paragraph does not otherwise affect the enforceability of any rights under the Code *or any other agreement*'") (emphasis in original).

Third, enforcement of Plaintiffs' arbitration agreements would be consistent with Rule 13204(d) because Rule 13204(d) specifically contemplates that employees may elect not to participate in class actions. Rule 13204(d) expressly provides for the enforcement of arbitration agreements against members of a putative class where "[t]he member of the… class elects not to participate in the class[.]" This Rule, therefore, puts in the hands of each employee the decision as to whether or not to participate in class actions. Here, as contemplated by Rule 13204(d), each Plaintiff affirmatively agreed to the class action waivers contained in their arbitration agreements in exchange for valuable consideration. *Cohen*, 2012 WL 6041634, at *3 ("That the arbitration agreements here would preclude Plaintiffs from pursuing a class… action does not

5

change the Court's view. Indeed, Rule 13204(a) specifically speaks to the possibility that a 'member of the certified or putative class elects not to participate in the class.'").

Fourth, the FINRA Code – which includes Rule 13204 – applies *only to disputes submitted to arbitration before FINRA*. Specifically, Rule 13101(a) – which sets forth the "Applicability of [the] Code" – states in unambiguous terms that: "The Code applies to any dispute that is *submitted to arbitration under the Code*." FINRA Rule 13101(a) (emphasis added).[5] Thus, Rule 13204 has no application to disputes filed in court.

**B.  Amendments To PartnerPlus That Post-Date Plaintiffs' Employment Are Irrelevant.**

The versions of PartnerPlus (pre-2011) that apply to Plaintiffs (Dkt. 31-2, Exs. 1-5) did not preserve or create any right to participate in class actions. Nevertheless, Plaintiffs repeatedly and misleadingly attempt to fabricate provisions that appear nowhere in the plans and suggest that the plans *did* expressly allow class action litigation.[6] *E.g.,* Pl. Op. at 9 and 14 (providing a purported quote from the PartnerPlus Plan which includes so-called "illustrative language" that is not in PartnerPlus at all but is a creation of Plaintiffs' counsel); 14 ("the UBS Pension Plan effectively provides that 'all claims must be resolved per FINRA's arbitration rules, *which preserve for litigation class action claims'*"); 19 ("the UBS Pension Plan – *repeatedly, explicitly, and without qualification – provides for a class action exemption from arbitration*") (emphasis added). From here, Plaintiffs argue that the addition of an express class action waiver to the

---

[5] It is no accident that Rule 13101 limits the applicability of the rules contained within the Code to disputes submitted to arbitration before FINRA. The limited applicability of the Code is consistent with the fact that, as the full title of the Code suggests, the "Code of Arbitration *Procedure* for Industry Disputes" is a set of procedural rules that apply to industry disputes arbitrated before the FINRA arbitration forum, and not to claims filed in court.

[6] Plaintiffs seek to mislead the Court by providing what they purport to be quotes from the PartnerPlus Plan but which are in fact nothing more than Plaintiffs' own argument. Pl. Op. at 9, 14. What Plaintiffs call "illustrative language" is not in PartnerPlus at all but is a creation of Plaintiffs' counsel. This is a common theme throughout Plaintiffs' opposition. Rather than refer to PartnerPlus or the FA Compensation Plans by their names, Plaintiffs have manipulatively re-designated them as the "UBS Pension Plan" and "Summary Brochure," respectively.

6

2011 version of PartnerPlus creates an inference that no such waiver existed prior to 2011. Pl. Op. at 16.

The Court should reject Plaintiffs' misrepresentations. Indeed, Plaintiffs have drawn the wrong inference from the absence of an express class waiver in pre-2011 PartnerPlus. Where, as here, an agreement is silent on whether class arbitration is permitted, the agreement cannot be interpreted to allow it. *Stolt-Nielsen*, 130 S. Ct. at 1776 ("silence on the issue of class-action arbitration" does not constitute consent to class proceedings).

**C.     Plaintiffs' Request For An Injunction Does Not Exempt Their Claims From Arbitration.**

Plaintiffs argue that their boilerplate request for an "injunction" exempts their claims from the FA Comp Plan's arbitration and class action waiver agreement. Pl. Op. at 20-21. However, Plaintiffs' purported claim for *equitable* relief under ERISA § 502(a)(3) is not a claim for *injunctive* relief within the meaning of the FA Comp Plan, which expressly requires arbitration of ERISA claims. To begin with, the law is clear that "any doubts" regarding arbitrability shall be resolved in arbitration (*Mastrobuono*, 514 U.S. at 62 n.8), and an arbitration agreement is presumed enforceable unless it may be said with "positive assurance" that the arbitration clause is "not susceptible of an interpretation" that covers the asserted dispute. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). *Any doubt* as to enforceability is resolved in favor of arbitration. *PACE Local No. 4-2001 v. ExxonMobil Refining & Supply*, 449 F.3d 616, 620 (5th Cir. 2006).

In addition, an injunction would not be appropriate in this case because Plaintiffs are all former employees and have no legitimate interest in the future operation of PartnerPlus, which an injunction would necessarily entail. What Plaintiffs really want is to recover the PartnerPlus

7

payments that they forfeited when they left UBS for more lucrative jobs.[7] Pl. Op. at 23-25. An order providing such relief need not be in the form of an injunction. *See Johnson v. Meriter Health Servs. Employee Retirement Plan*, --- F.3d ---, 2012 WL 6013457, at *6 (7th Cir. Dec. 4, 2012) ("injunctive relief" would be necessary *only* if the employer/plan sponsor *ignored* the terms of a declaratory court order specifying the rights that the plan should confer on plaintiffs).[8] Because Plaintiffs do not need an injunction for the relief they seek, *Gordon v. JKP Entt. Inc.*, 35 F. App'x 386 (5th Cir. 2002), mandates compelling the case to arbitration. Pl. Op. at 22-23.[9]

Further, the FA Comp Plan arbitration agreement (Dkt. 31-2, Exs. 6-9) expressly governs all "claims arising under" ERISA and includes an express class action waiver in a separate sentence that is altogether distinct from the injunctive relief carve-out Plaintiffs cite. Thus, regardless of whether Plaintiffs' claims fall within the carve-out for "injunctive relief" – which they do not – they are arbitrable because they claim to "arise under" ERISA, and are also subject to the wholly separate class action waiver. *See, e.g., Frontera E. Ga. v. ARAR, Inc.*, 483 Fed.Appx. 896, 899 (5th Cir. 2012) (court's objective is to "harmonize and [give] effect to all the provisions of the contract"). For all of these reasons, Plaintiffs cannot establish the requisite "positive assurance" that their claims are not subject to the arbitration clause as Supreme Court precedent requires. *Steelworkers*, 363 U.S. at 582-83. *See also Woodmen of the World Life Ins.*

---

[7] *LaRue v. DeWolff Boberg & Assocs.*, 552 U.S. 248 (2008) (Pl. Op. at 24-25), is irrelevant because it decided whether a former 401(k) plan participant who had cashed out of the plan had standing to sue on behalf of the plan to recover individual investment losses. *LaRue* did not decide any issues regarding § 502(a)(3) or injunctive relief.

[8] UBS respectfully disagrees with *Johnson*'s suggestion that former employees who sought retrospective monetary relief had standing to seek injunctive relief. Other courts have drawn distinctions between ERISA claimants who lack any ongoing affiliation with the plan and whose incentive "is to seek only the highest amount of monetary relief possible" versus current plan members who have an ongoing and future interest in the plan's design. *See, e.g., Churchill v. Cigna Corp.*, CIV.A. 10-6911, 2011 WL 3563489, at **4-5 (E.D. Pa. Aug. 12, 2011). Such is the case here, since all Plaintiffs are really seeking are additional payments.

[9] Further, whether Plaintiffs would be entitled to an injunction under ERISA § 502(a)(3) would require a determination that PartnerPlus was in fact governed by ERISA, that PartnerPlus violated ERISA, and that an injunction would be the appropriate relief under ERISA § 502(a)(3). These issues go to the merits of Plaintiffs' claims and are questions for the arbitrator, not the Court. *ExxonMobil Refining & Sup. Co.*, 449 F.3d at 620.

*Soc'y v. JRY*, 320 Fed. Appx. 216, 222 (5th Cir. 2009) (ordering arbitration where "the arbitration clause is at a minimum 'susceptible of an interpretation that covers the asserted dispute,'"; court "must resolve doubts in favor of coverage").

Plaintiffs argue that the phrase "with the exception of claims for injunctive relief" trumps all other language in the arbitration agreement, including the requirement to arbitrate ERISA claims and the class action waiver. However, where an arbitration agreement is susceptible of two interpretations, the dispute is to be resolved in favor of arbitration. *ExxonMobil Refining & Supply*, 449 F.3d at 620. *See also Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284-86 (9th Cir. 2009) (though arbitration agreement gave courts "exclusive jurisdiction" for equitable remedies, agreement was "capable of two different reasonable interpretations" and was interpreted to require arbitration of all disputes, including those for equitable relief).

Even if the Court finds that Plaintiffs' claim for injunctive relief should not be compelled to arbitration or dismissed, Plaintiffs' other claims and the underlying merits of the parties' disputes (*e.g.,* whether PartnerPlus was in fact governed by ERISA and, if so, whether PartnerPlus violated ERISA) are questions for the arbitrators, not the Court, to decide. *ExxonMobil Refining & Sup. Co.,* 449 F.3d at 620. Thus, at a minimum, this action should be stayed pending arbitration. If the arbitrators decide that PartnerPlus was in fact governed by and violated ERISA, Plaintiffs could then petition the Court for entry of an injunction if warranted – though not on a class basis, as the class action waiver should still be enforced.

### D. Statutory ERISA Claims Are Subject To Arbitration.

Plaintiffs also argue that "Congress did not intend that [ERISA § 502(a)(3)] claims be subject to arbitration" Pl. Op. at 25-28. However, the FAA requires that arbitration agreements be enforced according to their terms "*unless the FAA's mandate has been overridden by a contrary Congressional command.*" *Compucredit,* 132 S. Ct. at 669 (emphasis added). Plaintiffs
9

have not identified any "contrary Congressional command" under *any* section of ERISA to counter the FAA, and indeed there is none. Every Circuit court that has considered the question has concluded that ERISA claims *are* arbitrable, and there is no exception to the rule for § 502(a)(3) claims. As the Fifth Circuit has held, "Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act." *Kramer*, 80 F.3d at 1084.[10] Indeed, another district court ordered arbitration of ERISA claims arising from the PartnerPlus Plan. *See Thaning v. UBS Fin. Servs., Inc.,* No. 2008 WL 2024884, *3 (N.D. Cal. May 8, 2008).

**E.     The Parties' Arbitration Agreements Govern This Dispute And Are Enforceable.**

Finally, the arbitration agreements in the FA Comp Plan and Account Reassignment Agreements entered into by Plaintiffs[11] govern "***any*** disputes between [Plaintiffs] and UBS including claims concerning compensation, benefits or other terms and conditions of employment" (Dkt. 31-2 and -4, Exs. 6-9, 25-26) (emphasis added) and are clearly enforceable. *Lewis*, 818 F. Supp. 2d at 1164 (compelling arbitration of claims by former UBS FAs who were bound by the FA Comp Plan arbitration agreement); *Cohen,* 2012 WL 6041634, at *1 (same).[12]

---

[10] *See also Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000) ("Congress did not intend to prohibit arbitration of ERISA claims"); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3d Cir. 1993) ("statutory ERISA claims are subject to compulsory arbitration under the FAA . . .").

[11] Plaintiffs state incorrectly that "UBS has only presented evidence that one plaintiff signed the Reassignment Agreement." Pl. Op. at 20. In fact, UBS submitted a sworn statement that Plaintiffs Bollich, Cox and Gallanis electronically signed Account Reassignment Agreements. Docket 31-1 ¶ 24. Plaintiffs do not dispute this evidence, and their arbitration agreements would be enforceable even if they were not signed. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987); Def. Mem. at 12-14 and cases cited therein.

[12] Plaintiffs' arguments regarding the FA Comp Plan are premised on the notion that PartnerPlus is an ERISA plan and the FA Comp Plan an SPD under ERISA. While Plaintiffs appropriately concede that PartnerPlus's ERISA status need not be decided in ruling on this motion, they wrongly suggest that the Plan's ERISA status should be presumed and accepted as true per Rule 12(b)(6). Pl. Op. at 4 n. 3. However, when "deciding whether to grant a motion to compel arbitration pursuant to the FAA, courts apply a summary judgment standard." *Aviles v. Russell Stover Candies, Inc.*, 2012 U.S. Dist. LEXIS 165369, *9-10 (N.D. Tex. Nov. 13, 2012). Thus, the Court should not presume that PartnerPlus was subject to ERISA or that the FA Comp Plan is an ERISA SPD. In addition, the FA Comp Plans – which are not SPDs – do not conflict with the PartnerPlus arbitration agreement, since *all* of the agreements require arbitration of this dispute and never permitted employees to pursue class actions in court. Thus, Plaintiffs' argument regarding ERISA notice requirements falls flat because the rules apply only in the event of a "material modification" (29 U.S.C. §§1022(a), 1024(a)), and there has been none here since all claims under PartnerPlus have always been subject to arbitration and have never been subject to class action litigation.

# CERTIFICATE OF SERVICE

I, Deborah S. Davidson, hereby certify that on January 11, 2013, I electronically filed a copy of **Defendant's Reply in Further Support of Its Motion to Dismiss Plaintiffs' Amended Complaint and Compel Arbitration** with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Sam F. Baxter
sbaxter@mckoolsmith.com
Theodore Stevenson, III
tstevenson@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston Street, Suite 300
Marshall, Texas 75670
(903) 923-9000
(903) 923-9099 (facsimile)

Brian E. Bro
brian@bebroatty.com
Law Offices of Brian E. Bro
3200 SW Freeway, Suite 2200
Houston, Texas 77027
(713) 961-3111
(281) 265-9181 (facsimile)

Robert E. Goodman, Jr.
reg@kilgorelaw.com
Theodore C. Anderson
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099
(214) 953-0133 (facsimile)

                                                   s/ Deborah S. Davidson
                                                      Deborah S. Davidson
                                                       *Counsel for Defendant*