# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MARK T. EDDINGSTON, | § | |
| JEFFERY M. DAVIS, | § | |
| ELRIDGE NICHOLAS BOLLICH, | § | |
| RAY A. COX and GEORGE GALANIS, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 2:12-CV-00422 |
| | § | |
| v. | § | |
| | § | |
| UBS FINANCIAL SERVICES, INC., | § | |
| | § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' SURREPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

Robert E. Goodman, Jr., Lead Attorney
State Bar No. 08158100
reg@kilgorelaw.com
Theodore C. Anderson
State Bar No. 01215700
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle St.
Dallas, TX 75204
(214) 969-9099; (214) 953-0133 (fax)

Peter K. Stris (*pro hac vice*)
peter.stris@strismaher.com
Brendan S. Maher (*admission pending*)
State Bar No. 24053336
brendan.maher@strismaher.com
Stris & Maher LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090; (424) 212-7001 (fax)

Brian E. Bro
State Bar No. 03030000
brian@bebroatty.com
Law Offices of Brian E. Bro
3200 SW Freeway, Ste. 2200
Houston, TX 77027
(713) 961-3111; (281) 265-9181(fax)

Sam F. Baxter
State Bar No. 01938000
sbaxter@mckoolsmith.com
Theodore Stevenson, III
State Bar No. 19196650
tstevenson@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston St., Ste. 300
Marshall, TX 75670
(903) 923-9000; (903) 923-9099 (fax)

COUNSEL FOR PLAINTIFFS

**INTRODUCTION**

Each argument UBS advances in its Reply is untenable. As explained below, the arbitration agreement within the UBS Pension Plan recognizes the validity of this class action.[1] The same is true of the arbitration provision in the Summary Brochure. And to the extent either could be read to prohibit this class action, it is unenforceable. Accordingly, UBS's Motion must be denied.

**I. The Arbitration Provision in the UBS Pension Plan Permits This Class Action.**

In their Opposition, Plaintiffs explained that the terms of the UBS Pension Plan expressly incorporate the rules of FINRA. *See* Am. Pl. Opp. at 7-10, 13-16. Plaintiffs also explained, at length, that those incorporated rules unequivocally prohibit compelled arbitration of pending class claims. *See id.* As such, there can be no doubt that Plaintiffs are permitted to bring this putative class action in federal court. UBS spends the majority of its Reply unpersuasively attempting to avoid the plain language of the arbitration provision *that it wrote*. *See* Reply at 2-7 (Sections A & B). As explained below, the position advanced by UBS is wrong in all respects.

   A. *The FAA Merely Requires That This Court Enforce the Terms of the UBS Pension Plan.*

First, UBS argues that "The FAA Mandates Enforcement of Plaintiffs' Arbitration Agreements." Reply at 2-3. UBS begins this section of its Reply with the uncontroversial premise that "the overarching purpose of the FAA...is to ensure the enforcement of arbitration agreements according to their terms...." *Id.* at 2 (citing and quoting *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). The remainder of UBS's "argument," however, does nothing more than beg the dispositive question – namely, *do the terms of the relevant pre-dispute agreement in this case provide for mandatory arbitration. See* Reply at 2-3.

---

[1] Other documents alleged by Defendant to support arbitration, purported Reassignment Agreements, cannot do so for reasons stated in Am. Pl. Opp. at 20, n. 18. And only three of the five named Plaintiffs signed such agreements in any case.

1

UBS is confused. Plaintiffs have not argued that FINRA Rules somehow "trump" the parties' agreement. *See* Reply at 2-3 (arguing that the FAA trumps FINRA rules). As explained below, *see infra* pp. 2-3 (Section I.B), Plaintiffs have simply argued that the only relevant arbitration agreement in this case (found in the UBS Pension Plan) expressly incorporates FINRA's rules. As such, those rules *are an essential part* of the parties' relevant arbitration agreement that must be enforced pursuant to the FAA. And Rule 13204 of those rules, as explained in the Opposition, prohibits compelled arbitration of pending class claims. *See* Am. Pl. Opp. at 7-10, 13-16.[2]

B. *The UBS Pension Plan Permits Plaintiffs to Maintain This Class Action.*

The UBS Pension Plan does *not* contain a class action waiver. *Id.* at 13-16. UBS does not contest this fact. UBS asserts, however, that "[t]he versions of PartnerPlus (pre-2011) that apply to Plaintiffs did not preserve or create any right to participate in class actions." Reply at 6 (citation omitted). It is incorrect. As noted by Plaintiffs, the UBS Pension Plan expressly states: "[I]n the event of any dispute . . . such controversy shall be resolved before a FINRA arbitration panel *in accordance with the arbitration rules of FINRA* (necessarily including Rule 13204*)*." Am. Pl. Opp. at 8. That the pre-2011 UBS Pension Plan thereby did not preclude class actions is confirmed by amendment of the UBS Pension Plan in 2011 to require employees to waive their right to participate in class actions. Am. Pl. Opp. at 9-10. Indeed, the First and Seventh Circuits have interpreted materially identical language in the exact way Plaintiffs suggest. *See In re*

---

[2] For this reason, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, (2d Cir. 1990); *Cohen v. UBS Fin. Servs., Inc.*, 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012); *Chanchani v. Salomon/Smith Barney, Inc.*, 2001 WL 204214 (S.D.N.Y. Mar. 1, 2001) and *Creative Sec. Corp. v. Bear Stearns & Co.*, 671 F. Supp. 961 (S.D.N.Y. 1987), which UBS claims involve agreements to supersede NASD and FINRA rules, are irrelevant. To the extent that UBS is arguing the Summary Brochure supersedes FINRA Rule 13204, that argument is wrong for many reasons. *See infra* p. 4-6 [(Sections I.C, II)].

2

*Citigroup, Inc.*, 376 F.3d 23 (1st Cir. 2004); *Nielsen v. Piper Jaffray, & Hopwood, Inc.*, 66 F.3d 145 (7th Cir. 1995). That is not surprising because it is the only plausible interpretation of such language. *See Nielsen*, 66 F.3d at 148; *Citigroup*, 376 F.3d at 25.[3]

Rather, however, than provide any analysis of the relevant contractual terms, UBS asserts that *Plaintiffs* have "repeatedly and misleadingly attempt[ed] to fabricate provisions that appear nowhere in the plans and suggest that the plans *did* expressly allow class action litigation." *Id.* at 6. That is demonstrably false – as evidenced by the analysis, citations, and quotations found in Plaintiffs' Opposition. Am. Pl. Opp. at 7-10.[4]

C. *The Arbitration Language in the Summary Brochure Is Irrelevant.*

Unable to dispute the fact that the UBS Pension Plan precludes compelled arbitration of Plaintiffs' pending class claims, UBS continues to rely entirely on language found in the Summary Brochure. Reply at 7-10. Yet, in its Reply, UBS fails to offer any response to Plaintiffs' detailed arguments regarding why the Summary Brochure language is irrelevant. *See* Am. Pl. Opp. at 17, 20-24.

---

[3] UBS attempts to distinguish these cases by arguing that the Summary Brochure supersedes the language of the UBS Pension Plan. As explained in the Opposition, and as reiterated below, that is impossible. Am. Pl. Opp. at 17-20; *see infra* pp. 4-6 (Section I.C).

[4] UBS cites *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) for the proposition that because the "agreement is silent on whether class arbitration is permitted, the agreement cannot be interpreted to allow it" Reply at 7. But Plaintiffs are not seeking to compel class *arbitration* of their claims. UBS is seeking to avoid class judicial *adjudication* of Plaintiffs' claims. The only issue decided by the *Stolt-Nielsen* Court was whether *class arbitration* was permitted *once it was determined that the parties had agreed to binding arbitration*. *See Stolt-Nielsen*, 130 S. Ct. at 1772 (deciding what "rule [must] be applied in deciding whether class arbitration is permitted."). On that issue, the Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* at 1775 (emphasis omitted). The Court's decision relied on its belief that unique features of the arbitral forum make *class arbitration* excessively difficult. *See id.* Put simply, *Stolt-Nielsen* has absolutely no relevance in this case.

3

Nowhere does UBS confront the Summary Brochure's relevant language. That language is this: "[i]f there is *any difference* between this summary and the Plan Document, the Plan Document will govern." Am. Pl. Opp. at 12 (emphasis added). In other words, to the extent the language in the Summary Brochure would – *in any way* – change the rights and obligations of the parties under the UBS Pension Plan, that language has no legal effect. As explained in Plaintiffs' Opposition, no reasonable person would believe a summary to have a superseding effect on the thing that it summarizes. *See* Am. Pl. Opp. at 17 n. 14. Moreover, the Summary Brochure is unenforceable – for multiple reasons – under ERISA. *See* Am. Pl. Opp. at 17. UBS offers absolutely no response to this fact.[5] Indeed, the Supreme Court has recently expressly held that a summary cannot trump a plan. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011).

## II. The Arbitration Provision in the UBS Summary Brochure Permits This Class Action.

Even if the arbitration provision in the Summary Brochure were relevant, its terms would not bar this litigation. As explained in the Opposition, the Summary Brochure exempts claims for injunctive relief from mandatory arbitration. *Id.* at 20-24. And Plaintiffs seek such relief.

UBS makes three arguments against application of this exemption. First, it contends that Plaintiffs did not really request injunctive relief. Reply at 7 ("Plaintiffs' purported claim for equitable relief under ERISA § 502(a)(3) is not a claim for injunctive relief within the meaning of the FA Comp Plan."). Plaintiff specifically sought injunctive relief. *See* Complaint ¶ 20 (requesting "all appropriate relief under 29 U.S.C. § 1132(a)(3), *including an injunction* against any act or practice which violates ERISA or the terms of the Plan." (emphasis added)).

---

[5] UBS does continue to cite irrelevant cases. For example, in *Cohen v. UBS Fin. Servs., Inc.*, 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) and *Suschil v. Ameriprise Fin. Servs., Inc.*, 2008 WL 974045 (N.D. Ohio Apr. 7, 2008) the parties did not dispute that the governing agreements had class action waivers. *Cohen*, 2012 WL 6041634, at *2; *Suschil*, 2008 WL 974045, at *1.

4

Second, UBS rehashes its argument that Plaintiffs lack standing to seek injunctive relief. In doing so, UBS misrepresents *Gordon v. JKP Entt. Inc.*, 35 F. App'x 386 (5th Cir. 2002), citing it for the proposition that Plaintiffs must "need" injunctive relief to pursue a claim under Section 502(a)(1)(A) of ERISA. But *Gordon* only stands for the limited proposition that entry of an injunction is improper if a party will not benefit from it. Am. Pl. Opp. at 22. Here, Plaintiffs would obviously benefit from an injunction against UBS enforcing unlawful terms of its Plan. *See id.* UBS's reliance on *Johnson v. Meriter Health Servs. Employee Retirement Plan*, No. 12-2216, 2012 WL 6013457 (7th Cir. Dec. 4, 2012) is also misplaced. *Johnson* suggested an injunction might be unnecessary where a court orders a plan to be reformed pursuant to Section 502(a)(3)(B), which permits "other appropriate equitable relief." *Id.* at *6. Here, Plaintiffs seek injunctive relief under Section 502(a)(3)(A), with permits the direct entry of an injunction, making *Johnson* inapposite. UBS's reliance on *Churchill v. Cigna Corp.*, CIV.A. 10-6911, 2011 WL 3563489 (E.D. Pa. Aug. 12, 2011) is also misplaced. In that case, the court held that a proposed class representative could not satisfy Fed. R. Civ. P. 23(a)'s typicality requirement because, as a former member of the defendant's health plan, he had no interest in seeking prospective injunctive relief on behalf of current plan participants. *Id.* at *4. The court expressly avoided ruling on any standing issue because it determined it would allow amendment of the complaint to add additional class members who were current members of the plan. *Id.* at *4 n. 8. Here, the proposed class representatives seek injunctive relief only on behalf of similarly situated former employees. Thus, they indisputably have standing.

Third, UBS advances a tendentiou interpretation of the Summary Brochure's arbitration provision. Specifically, UBS claims that the carve for injunctive relief does not apply for "claims arising under" ERISA. Reply at 8. Such a reading is indefensible. In relevant part, the

provision states: "With the exception of claims for injunctive relief . . . any disputes between you and UBS . . . including . . . claims arising under . . . The Employee Retirement Income Security Act . . . will be determined by arbitration." Am. Pl. Opp. at 13. That language is not susceptible to two interpretations. UBS's reading would render the injunctive relief clause without *any* legal effect since the phrase "claims arising under" also applies to every other law encompassed by the arbitration provision. *See* Ferreira Decl. Ex. 6 at *29 (excerpt from 2007 Summary Brochure).[6]

### III. To the Extent Either Arbitration Provision Could Be Read to Prohibit This Class Action, It Is Unenforceable.

As explained above, the UBS Pension Plan, the only relevant document in this case, permits this class action. *See supra* pp. 1-3. Also as explained above, the UBS Summary Brochure also permits this class action. *See supandra* pp. 4-6. In the unlikely event that this Court disagrees, Plaintiffs note that UBS's Motion must still be denied because ERISA prohibits compelled arbitration of Plaintiffs claims under the circumstances of this case. *See* Am. Pl. Opp. at 24-30.

#### A. *A Plaintiff Cannot Be Forced to Arbitrate Any Claims Under 29 U.S.C. § 1132(a)(3).*

UBS correctly notes that in order for a federal statutory claim to be exempted from predispute agreements to arbitrate, there must be a clear congressional command to that effect. Reply at 2-3.[7] What UBS fails to acknowledge, however, is that there exists precisely such a congressional command concerning claims under Section 1132(a)(3). The Supreme Court has repeatedly held that Congress's intent regarding Section 1132(a)(3) ), and the scope of judicial

---

[6] Further, Comedy Club, Inc. v. Improv West Assoc., 553 F. 3d 1277, 1284-86 (9th Cir. 2009), cited by Defendant (Reply at 9) as a basis for concluding that the exception for claims for injunctive relief in the Summary Brochure cannot mean what it says, is not comparable. The provision in that case relating to "equitable relief" was not, as in this case, a direct threshold exception to arbitrability.

[7] The decisions Defendant cites, however, did not involve ERISA claims, and one AT&T Mobility v. Concepcion,131 S. Ct. 1740, 1748 (2011) dealt with preemption of state law by the Federal Arbitration Act, not an issue here..

6

jurisdiction under that provision, must be determined by inquiry into the tradition of pre-merger courts of equity. Am. Pl. Opp. at 25. Such equity courts would not enforce an arbitration agreement like UBS's. *Id.* at 26.

Unable to contest this, UBS baldly asserts that Plaintiffs have failed to identify any "contrary Congressional command" that Section 1132(a)(3) claims are exempt from the FAA. Reply at 10. The Supreme Court's interpretation of Section 1132(a)(3) makes clear that the provision itself is the contrary Congressional command. UBS nevertheless urges that "[e]very Circuit court that has considered the question has concluded that ERISA claims are arbitrable, and there is no exception to the rule for [Section 1132(a)(3)] claims." It cites four cases in support of that notion, including one against UBS itself. *See id.*

But none of those cases involved a claim under Section 1132(a)(3). *See Kramer v. Smith Barney*, 80 F.3d 1080, 1083 (5th Cir. 1996) ("[T]he specific issue before us . . . involves section 502(a)(2) . . . ."); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) (citing several cases that did not involve Section 1132(a)(3) claims for the notion that "Congress did not intend to prohibit arbitration of statutory ERISA claims"); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) (involving generalized claims for breach of fiduciary duty and prohibited transactions under 29 U.S.C. §§ 1104 & 1106 (*see Pritzker v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 1993 WL 45987, at *2 n. 1 (E.D. Pa. Feb. 17, 1993)); *Thaning v. UBS/Paine Webber*, 2008 WL 2024884, at *2 n. 1 (N.D. Cal. May 8, 2008) (involving generalized claims under ERISA "for payment of vested firm contributions [and] wrongful termination"). These courts did not consider Congress's intent concerning Section 1132(a)(3) claims. Conspicuously absent is any inquiry into the historical traditions of equity courts. Accordingly, these cases are inapposite. *See also* Am. Pl. Opp. at 28 n. 20.

7

B. *UBS Failed to Furnish Notice, as Required by 29 U.S.C. §§ 1022(a) and 1024(b).*

ERISA requires that a summary (1) of the plan and (2) of any material modification to the terms of the plan be furnished to participants in a document written in plain language, within a specific time period. Am. Pl. Opp. at 28. Failure to comply with these procedures results in the unenforceability of the term for which notice is not given. *Id.* As explained in the Opposition, a change in the UBS Pension Plan's terms from permissible class adjudication to mandatory bilateral arbitration is clearly such a material modification. Am. Pl. Opp. at 28-29. UBS does not dispute that it failed to notify Plaintiffs of that change to their rights in accord with ERISA's regulations. *See id.* 28-30. It has also failed to establish for the purpose of the Court's ruling on this Motion that it provided a plain language summary of any changed UBS Pension Plan and that that summary was provided within the applicable time period. *Id.*

UBS contends only that there was no material modification because the Plan never allowed class action litigation. Reply at 10. As explained above, *see supra* pp. 1-3 (Sections I.A, I.B), that is wrong.

**IV. UBS's Reliance on Two Procedural Arguments Is Erroneous.**

A. *UBS's Reliance on* PACE Local No. 4-2001 v. ExxonMobil Refining & Supply *Is Misplaced.*

UBS cites *PACE Local No. 4-2001 v. ExxonMobil Refining & Supply*, 449 F.3d 616 (5th Cir. 2006) for the notion that the Court must stay proceedings while arbitrators decide the underlying merits of Plaintiffs claims for injunctive relief. Reply at 9. *See also* Reply at 8 n. 9. *ExxonMobil* stands for no such notion. The *ExxonMobil* court said:

> The court's role is very limited when deciding issues of arbitrability. The court's function is to decide whether the claim asserted is the type of claim the parties have agreed to arbitrate. In no way are the courts to consider the merits of a claim. Rather, the

8

court is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.

*Id.* at 619 (internal quotation marks and citations omitted).[8] As should be apparent, the court was explaining what a court should – and should not – consider in deciding whether a parties' dispute must be arbitrated. That inquiry, it describes, is limited to determining whether a claim *on its face* is encompassed by a parties' arbitration agreement. The court intimated nothing about severing underlying factual issues from a pending adjudication for arbitral resolution.

A claim is comprised of the legal and factual predicates that compel a determination that it is either valid or invalid. And the arbitration clause in the Summary Brochure, as explained above, *see supra* pp. 4-6 (Section II), expressly carves out "claims" for injunctive relief. No where does the provision suggest that as a prerequisite to adjudication the parties must conclusively resolve whether the claim is valid. To be frank, that is an absurd proposition.

B. *UBS's Reliance on* Aviles v. Russell Stover Candies, Inc. *Is Misplaced.*

As explained in the Opposition, courts in the Fifth Circuit take as true the allegations in A complaint when ruling on a motion to dismiss. *See* Am. Pl. Opp. at 4 n. 3. UBS suggests that the Court should instead apply a "summary judgment" standard. Reply at 10 n. 12 (citing *Aviles v. Russell Stover Candies, Inc.*, 2012 U.S. Dist. LEXIS 165369 (N.D. Tex. Nov. 13, 2012)). Under either standard, UBS's Motion must be denied.

To prevail on a motion for summary judgment, the moving party (*i.e.*, UBS) must demonstrate the absence of a genuine issue of material fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). Accordingly, insofar as UBS seeks compelled arbitration, it

---

[8] UBS directs the reader to page 620 of the *ExxonMobil* court's opinion. However, UBS includes no further information, and Plaintiffs were unable to locate any relevant language on that page. Plaintiffs presume UBS intended to cite the relevant quoted text that accompanies this footnote, which is found on page 619 of the court's opinion.

must show the lack of a genuine issue of fact as to "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *See Aviles*, 2012 WL 5508378, at *3.

Undoubtedly, the Plan's ERISA status is a genuine issue of material fact. *See* Am. Pl. Opp. at 4 n. 3. For example, the Plan's ERISA status potentially affects whether the Summary Brochure may be considered a binding document (*see supra* pp. 3-4 (Section I.C); whether the Court may enforce its terms that disfavor Plaintiffs (*see supra* pp. 4-6 (Section II); whether *any* arbitration agreement between the parties may be enforced, regardless of its terms (*see supra* pp. 6-7 (Section III.A); and whether UBS was obligated to comply with ERISA's notice requirements (*see supra* pp. 7-8 (Section III.B). Accordingly, to satisfy a summary judgment standard, UBS would have had to offer evidence on the question of whether ERISA applies. It did not do so.

To avoid losing for this reason, UBS falsely asserts that Plaintiffs conceded that the Plan's ERISA status need not be decided. Reply at 10 n. 12. In reality, Plaintiffs only suggested that the Court presume, under a motion to dismiss standard, the Plan's ERISA status, which is equivalent to deciding the issue for the purpose of ruling on the particular motion. The Court should either do that or, as UBS's requests, hold UBS to a summary judgment standard and deny its Motion on the basis that genuine issues of material fact exist.

Respectfully submitted,


/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr., Lead Attorney
State Bar No. 08158100
reg@kilgorelaw.com
Theodore C. Anderson
State Bar No. 01215700
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle St.
Dallas, TX 75204
(214) 969-9099; (214) 953-0133 (fax)


Peter K. Stris (*pro hac vice*)
peter.stris@strismaher.com
Brendan S. Maher (*admission pending*)
State Bar No. 24053336
brendan.maher@strismaher.com
Stris & Maher LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090; (424) 212-7001 (fax)

Brian E. Bro
State Bar No. 03030000
brian@bebroatty.com
Law Offices of Brian E. Bro
3200 SW Freeway, Ste. 2200
Houston, TX 77027
(713) 961-3111; (281) 265-9181(fax)

Sam F. Baxter
State Bar No. 01938000
sbaxter@mckoolsmith.com
Theodore Stevenson, III
State Bar No. 19196650
tstevenson@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston St., Ste. 300
Marshall, TX 75670
(903) 923-9000; (903) 923-9099 (fax)

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served upon Defendant's counsel of record through this Court's electronic filing system this 25th day of January, 2013 as follows:

Deborah S. Davidson
Andrew Scroggins
Morgan Lewis & Bockius, LLP
77 West Wacker Drive
Chicago, Illinois 60601

Ira G. Rosenstein
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178-0060

Michael C. Smith
Siebman, Burg, Phillips & Smith, LLP
113 East Austin Street
Marshall, Texas 75671

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.