UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MARK T. EDDINGSTON, JEFFERY M. DAVIS, ELRIDGE NICHOLAS BOLLICH, RAY A. COX and GEORGE GALANIS, | § § § § § | |
| Plaintiffs, | § § | Civil Action No. 2:12-CV-00422 |
| v. | § § | |
| UBS FINANCIAL SERVICES, INC., | § § § | |
| Defendant. | § | |

**DEFENDANT UBS FINANCIAL SERVICES, INC.'S
MOTION FOR RECONSIDERATION OF
DENIAL OF MOTION TO COMPEL ARBITRATION (DKT. 31)**

## INTRODUCTION

The basic rule that any purported conflicts, ambiguities, or doubts must be resolved in favor of arbitration controls this case and requires that Plaintiffs' claims be compelled to arbitration. Specifically, "any doubts concerning the scope of arbitrable issues," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 n.8 (1995), and any "'ambiguities as to the scope of the arbitration clause itself *must* be resolved in favor of arbitration,'" *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citation omitted, emphasis added). Equally important, an arbitration agreement is presumed enforceable unless the opposing party provides "positive assurance" that the arbitration clause is "not susceptible of an interpretation" that covers the asserted dispute. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *Paper, Allied-Indus., Chem & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Ref. & Supply Co.*, 449 F.3d 616, 620 (5th Cir. 2006). Where, as here, "the claims at issue are federal statutory claims," the Federal Arbitration Act "requires courts to enforce agreements to arbitrate according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2011) (citation omitted)).

Plaintiffs are sophisticated and highly compensated former Financial Advisors and Branch Managers (collectively, "Financial Professionals") for Defendant UBS Financial Services, Inc. ("UBS"). They received valuable consideration in exchange for their repeated and voluntary agreements to arbitrate disputes with UBS on a non-class basis.

Each Financial Professional also participated in and was subject to the terms of UBS's PartnerPlus Plan ("PartnerPlus" or "the Plan"). The Plan states that with respect to arbitration of any claims arising from the Plan, "any such controversy shall be resolved before a [Financial Industry Regulatory Authority ('FINRA')] arbitration panel in accordance with the arbitration

rules of" FINRA. *Eddingston*, ECF No. 31 at 5; *Hendricks*, ECF No. 21 at 5. Among those rules is FINRA Rule 13204 and its savings clause, which together permit parties to pursue claims in court on a class basis *unless* "any other agreement" precludes class adjudication.

Consistent with Rule 13204's savings clause, each Financial Professional entered into separate arbitration agreements, which were contained in Financial Advisor Compensation Plans, Branch Manager Compensation Plans, Account Reassignment Agreements, Letters of Understanding, and/or Transition Agreements.[1] Those arbitration agreements mandate bilateral arbitration of "any dispute" between the Financial Professional and UBS, including claims brought under the Employee Retirement Income Security Act ("ERISA"). It is undisputed that the Financial Professionals have purported to bring ERISA claims and state-law claims related to their employment. Thus, a straightforward interpretation of Rule 13204 and the arbitration agreements requires each Financial Professional to arbitrate his claim on a non-class basis.

Nonetheless, the Magistrate Judge denied UBS's motion to compel arbitration. Not only did he reject UBS's straightforward interpretation, but he also was led astray by the Financial Professionals into adopting an interpretation that unnecessarily creates a conflict between the PartnerPlus and Compensation Plan arbitration agreements where none exists since the PartnerPlus arbitration agreement expressly authorized the parties to enter into separate enforceable arbitration agreements that include class action waivers and preclude class adjudication, which is precisely what the parties did here when they entered into the Compensation Plan arbitration agreements. Thus, there is no conflict between the two agreements and the Compensation Plan arbitration agreements did not impermissibly modify the PartnerPlus agreement.

---

[1] Because all of those arbitration agreements have substantially the same arbitration terms, UBS refers to them collectively as the "Compensation Plan arbitration agreements."

2

The Magistrate Judge did not resolve all doubts in favor of arbitration, as the Supreme Court and the Fifth Circuit require. The law is clear that an arbitration agreement is presumed enforceable unless the opposing party provides "positive assurance" that it is "not susceptible of an interpretation" that covers the asserted dispute. *ExxonMobil*, 449 F.3d at 620 (citation and internal quotation marks omitted). For that and other reasons set forth below, the Court should reconsider the Magistrate Judge's ruling and compel arbitration according to the plain terms of the parties' agreement.

## ISSUE PRESENTED

In declining to compel arbitration, did the Magistrate Judge err by not resolving all doubts and ambiguities "in favor of arbitration" and by not requiring "positive assurance" that the arbitration agreements are not "susceptible of an interpretation that covers the asserted dispute," as required by the Supreme Court in *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986), and by the Fifth Circuit in *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citations and internal quotation marks omitted)?

## FACTS

Plaintiffs are licensed and highly compensated former Financial Professionals who worked for UBS for a number of years. *Eddingston*, Am. Compl. ¶ 5 (ECF No. 20); *Hendricks*, Compl. ¶ 5 (ECF No. 1). Each voluntarily resigned from UBS to join one of UBS's competitors. *Eddingston*, ECF No. 31, Ferreira Decl. ¶¶ 2, 17-22; *Hendricks*, ECF No. 21, Ferreira Decl. ¶¶ 2, 21-24.

While employed by UBS, the Financial Professionals participated in PartnerPlus, which was one component of the Compensation Plans that each Financial Professional participated in. PartnersPlus is "a wealth accumulation plan" that was "established and maintained for the purpose of providing certain Financial Professionals with enhanced financial awards and

3

permitting the voluntary deferral of compensation for a period of years." *Eddingston*, ECF No. 31, Ferreira Decl. ¶ 3, Ex. 1; *Hendricks*, ECF No. 21, Ferreira Decl. ¶ 3, Ex. 1. During the relevant period, it was described as a plan to retain and motivate employees. *Id*. It was not intended to provide retirement income. *Id*.

There is no dispute that each Financial Professional agreed to have his compensation and benefits governed by the Compensation Plans, and that each executed one or more acknowledgments that he understood and agreed to the terms of the Compensation Plans, including the arbitration agreement and class action waiver set forth therein.[2] These arbitration agreements and class action waivers provided in part:

> With the exception of claims for injunctive relief for the denial of benefits under the firm's disability and medical plans, you and UBS agree that, unless prohibited by applicable law, **any disputes** between you and UBS **including claims** ... arising under ... The Employee Retirement Income Security Act ... will be determined by arbitration…
>
> You and UBS further agree that any disputes between you and UBS shall be heard … without consolidation of such claims with any other person or entity. By agreeing to the terms of this Compensation Plan, *you waive any right to commence, be a party to or an actual or putative class member of any class… action* arising out of or relating to your employment with UBS or the termination of your employment with UBS.

*Eddingston*, ECF No. 31, Ferreira Decl. ¶ 8, Ex. 7; Hendricks, ECF No. 21, Ferreira Decl. ¶ 10, Ex. 8 (2008 Compensation Plan) (emphases added). The 2009 and 2010 Compensation Plans each include a virtually identical arbitration agreement and class action waiver.[3] And it is undisputed that the last arbitration agreement entered into by each Financial Professional included a class action waiver.[4]

---

[2] *Eddingston*, ECF No. 31, Ferreira Decl. ¶¶ 12-16; *Hendricks*, ECF No. 21 Ferreira Decl. ¶¶ 14-19, Ex. 12-17.

[3] *Eddingston*, ECF No. 31, Ferreira Decl. ¶¶ 10-11; *Hendricks*, ECF No. 21, Ferreira Decl. ¶¶ 11-12, Exs. 8-9.

[4] Eddingston—2008 Comp Plan, ECF No. 31 Ex. 7; Davis, Gallanis—2009 Comp Plan, *id.,* Ex. 8; Bollich—April 2008 Account Reassignment Agreement, *id.*, Ex. 26; Cox—2010 Comp Plan, *id.*, Ex. 9; Hendricks—2008 Comp Plan, ECF No. 21, Ex. 4; Ellspermann, Roccisano—2011 Comp Plan, *id.*, Ex. 11.

4

## PROCEDURAL HISTORY

The *Eddingston* Plaintiffs filed their initial Complaint on August 3, 2012, followed by an Amended Complaint on September 19, 2012. *Eddingston*, ECF Nos. 1, 20. The *Hendricks* Plaintiffs filed their Complaint on September 19, 2012. *Hendricks*, ECF No. 1.

As relevant here, on November 15, 2012, UBS moved to compel arbitration of the Financial Professionals' claims. *Eddingston*, ECF No. 31; *Hendricks*, ECF No. 21. After briefing and oral argument, the Magistrate Judge denied the motions from the bench. *Eddingston*, ECF No. 48; *Hendricks*, ECF No. 38.

## ARGUMENT

The FAA establishes a "liberal federal policy favoring arbitration'" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit*, 132 S. Ct. at 669 (citation and internal quotation marks omitted). That is so "even when the claims ... are federal statutory claims, *unless the FAA's mandate has been 'overridden by a contrary Congressional command.'*" *Id*. (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)) (emphasis added). Those opposing arbitration bear the heavy burden of demonstrating such a command. *McMahon*, 482 U.S. at 227.

To overcome the liberal policy favoring arbitration, those opposing arbitration must also provide "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (citation and internal quotation marks omitted). Under that requirement, the Financial Professionals must set forth "the 'most forceful evidence' of a purpose to exclude the claim from arbitration." *ExxonMobil*, 449 F.3d at 620 (citation omitted). "[A]ny doubts concerning the scope of arbitrable issues," *Mastrobuono*, 514 U.S. at 62 n.8, and any "ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Webb*, 89 F.3d at 258.

5

In contravention of those controlling legal principles, the Magistrate Judge denied the motion to compel arbitration in a short ruling issued from the bench. The Magistrate Judge's ruling appears to rest on three determinations:

1. "The Court will accept the PartnerPlus Plan as a covered ERISA plan at this time . . . . [B]ecause the Court accepts it as such at this time, as I believe the Court has to on this record, the separate arbitration agreement in the Financial Advisor Compensation Plan will not be allowed to modify the arbitration clause in the PartnerPlus Plan under ERISA. Hearing Transcript 78:9-10, 78:18-22, *Eddingston* ECF No. 48, *Hendricks* ECF No. 38.

2. "I find that the arbitration clause in the PartnerPlus Plan clearly does not extend to arbitration of class claims." *Id*. at 77:18-20.

3. "I further find that the language of the FINRA rule, which I believe is 132[04], which has language accepting [sic] class claims where the member elects not to participate, does not apply here. Pre-suit waiver clause, such as that relied upon in the Financial Advisor Compensation Plan does not fall within the language of that FINRA rule which contemplates election not to participate in or withdrawal from a pending certified or putative class action claim." *Id*. at 77:21–78:4.

In reaching each determination, the Magistrate Judge did not resolve all doubts in favor of arbitration, as Supreme Court and Fifth Circuit precedent require. His ruling also did not account for other interpretations of the relevant agreements and well-established arbitrability doctrines that independently require arbitration. The motion to compel should have been granted, and this Court should reconsider and reverse the Magistrate Judge's contrary ruling.

**I.     The Magistrate Judge Erred In Not Resolving Any Doubts Or Ambiguities In Favor Of Arbitration And Not Enforcing The Parties' Arbitration Agreements—Including The Class Action Waivers—According To Their Terms.**

The Magistrate Judge declined to compel arbitration based on both the incorrect assumption that PartnerPlus was "a covered ERISA plan," and the erroneous conclusion that "to give [the Plan] the effect that the Defendant, UBS, is arguing for in this case would be to modify the [presumed ERISA] plan." *Id*. at 78:10, 23-24. That was error.

6

Initially, whether PartnerPlus is "a covered ERISA plan" goes to the merits of the Financial Professionals' claim that the Plan violated ERISA. Therefore, an arbitrator, not the court, should have decided that issue. *See ExxonMobil*, 449 F.3d at 619 ("The courts' role is very limited when deciding issues of arbitrability. . . . In no way are the courts to consider the merits of a claim." (citations and internal quotation marks omitted)). Moreover, making assumptions to *deny* motions to compel arbitration and not to enforce arbitration agreements according to their terms is the exact opposite of resolving all doubts in favor of arbitration—as the Supreme Court and the Fifth Circuit have repeatedly instructed courts to do. *See supra* 5-6.

The Magistrate Judge's assumption is even more problematic because PartnerPlus is not an ERISA-covered plan, as the Plan documents plainly state. *Eddingston*, ECF No. 31, Exs. 2-5; *Hendricks*, ECF No. 21, Exs. 2-6. It is a plan to retain and motivate employees, not to provide retirement income.[5] And if there were any doubts or ambiguities as to whether PartnerPlus was an ERISA plan, the Magistrate Judge should have resolved them in favor of arbitration.

Next, interpreting the Compensation Plan arbitration agreements to mandate non-class arbitration of the Financial Professionals' claims does not require modification—impermissible or otherwise—of PartnerPlus. That is because PartnerPlus incorporates FINRA Rule 13204, which sets forth FINRA's procedures governing class action claims. *Eddingston*, ECF No. 31, Exs. 1-5; *Hendricks*, ECF No. 21, Exs. 1-5. That Rule, including its savings clause, expressly provides that parties can enter into separate agreements, and that those agreements should be enforced according to their terms. Specifically, Rule 13204's savings clause specifies that its

---

[5] 29 U.S.C. § 1002(2)(1); *see also Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980) (stressing that the definition of an ERISA pension plan should not "be read as an elastic girdle that can be stretched to cover any content that can conceivably fit within its reach"); *Boos v. AT&T, Inc.*, 643 F.3d 127, 130 (5th Cir.) ("ERISA does not regulate all benefits paid by an employer." (citations and internal quotation marks omitted)), *cert. denied,* 132 S. Ct. 816 (2011); *Houston v. Saracen Energy Advisors, LP*, No. H-08-1948, 2009 WL 890384, at *3-8 (S.D. Tex. Mar. 27, 2009) (plan designed to provide incentive compensation not covered by ERISA as a pension plan).

"subparagraphs"—including those providing for the adjudication of class claims in court—"do not otherwise affect the enforceability of any rights under the Code or *any other agreement*." (emphasis added).

Here, the Financial Professionals are all sophisticated individuals who signed "other agreement[s]"—the Compensation Plan arbitration agreements—requiring that "any dispute" with UBS be arbitrated on a non-class basis. *Eddingston*, ECF No. 31 at 6-7. Under the plain terms of Rule 13204, which is expressly incorporated into PartnerPlus, those separate agreements to arbitrate—including the class action waivers—should have been enforced according to their terms, as Supreme Court and Fifth Circuit precedent require.[6]

Indeed, the Financial Professionals interpret PartnerPlus in essentially the same way as UBS does: "we're taking the position that the arbitration provision in PartnerPlus adopts the FINRA rules." Tr. 24:5-7. The only difference is that the Financial Professionals incorrectly rely only on Rule 13204(a)(1), which permits class adjudication in court, while UBS correctly reads Rule 13204(a)(1) in conjunction with the savings clause, which taken together (1) authorize the parties to enter into separate arbitration agreements that include class action waivers, and (2) require those separate agreements (including the class action waivers) to be enforced according to their terms.

What is more, the Financial Professionals effectively concede that the class action waiver in the Compensation Plan arbitration agreement requires arbitration on a non-class basis. In their opposition briefs, the Financial Professionals argue that "it would not have been difficult for

---

[6] At least two federal courts have held that the Rule 13204 savings clause encompasses agreements that include class action waivers. *Cohen v. UBS Fin. Servs., Inc.*, No. 12 Civ. 2147(BSJ)(JLC), 2012 WL 6041634, at *3 (S.D.N.Y. Dec. 4, 2012) (Rule 13204 "(1) recognizes that parties may choose to enter into additional agreements beyond the scope of the Code; and (2) provides that the Code does not affect the enforceability of these additional agreements"); *Suschil v. Ameriprise Fin. Servs., Inc.*, No. 1:07CV2655, 2008 WL 974045, at *6 (N.D. Ohio Apr. 7, 2008) (same). Given that two federal courts have independently construed this exact issue in favor of arbitration, it is at least susceptible to an interpretation favoring arbitration. *See supra* 5-6.

UBS to write an arbitration provision that purported to extinguish the right of Plaintiffs to bring a putative class action lawsuit in federal court" by including such a provision in PartnerPlus. *Eddingston*, ECF No. 38 at 16; *Hendricks*, ECF No. 28 at 16. But that is precisely what UBS did when it expressly incorporated Rule 13204—including its savings clause—in the PartnerPlus arbitration agreement. That is because Rule 13204 expressly authorized the parties to enter into separate arbitration agreements, such as the Compensation Plan arbitration agreement with its class action waiver, that must be enforced according to its terms as a "separate agreement" specifically contemplated by the Rule.[7]

The Magistrate Judge did not address how the Compensation Plan arbitration agreement could be viewed as somehow "modifying" the PartnerPlus arbitration agreement when that agreement itself—by incorporating Rule 13204—already requires the Compensation Plan arbitration agreement to be enforced according to its terms, including the class action waiver. Nor did he explain how UBS's interpretation is not at least a plausible interpretation of the arbitration agreements under hornbook contract law, which requires courts to read contracts concerning the same subject and parties in harmony and not in conflict. *See, e.g.*, *Delhomme Indus., Inc. v. Hous. Beechcraft, Inc.*, 669 F.2d 1049, 1056 (5th Cir. 1982). That alone is grounds for reconsidering the Magistrate Judge's ruling and compelling arbitration.

Even if Partner Plus were an ERISA plan (which it is not), and even if the arbitration agreements in the Compensation Plans were modifications to PartnerPlus (which they are not), the freestanding arbitration agreements in the Compensation Plans are still required to be enforced. Indeed, to the extent there is any conflict between ERISA's modification rule and the

---

[7] Some of the arbitration agreements are governed by New York law while others are governed by New Jersey law. Under either State's law—as under Texas law—contracts may incorporate by reference the terms of other documents. *See, e.g.*, *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 782 (Tex. 2006); *Movado Group, Inc. v. Mozaffarian*, 92 A.D.3d 431, 432 (N.Y. 2012); *EPIX Holdings Corp. v. Marsh & McLennan Cos.*, 982 A.2d 1194, 1200 (N.J. App. Div. 2009).

9

FAA's mandate to enforce arbitration agreements according to their terms, ERISA's modification rule must give way to the FAA's mandate because ERISA makes clear that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States[.]" 29 U.S.C. § 1144(d) (emphasis added); *see Rosenblum v. Drexel Burnham Lambert Inc.*, 700 F. Supp. 874, 876 (E.D. La. 1987) (explaining that ERISA makes clear that courts must comply with the FAA's mandate to enforce arbitration agreements according to their terms (citing, *inter alia*, *McMahon*, 482 U.S. at 220; *Mayaja, Inc. v. Bodkin*, 803 F.2d 157 (5th Cir. 1986), *vacated and rev'd on other grounds, Shearson Lehman Brothers, Inc., v. Mayaja, Inc.*, 107 S. Ct. 3205 (1987)). And the Fifth Circuit has made clear that "Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act." *Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996]).[8]

Applying that same well-established rule, the district court in *Brandl v. ACE USA*, No. 10-03512, 2011 WL 129422, at *4 (E.D. Pa. Jan. 14, 2011), compelled arbitration under indistinguishable circumstances. There, although the relevant ERISA plan documents stated that a plan participant "may file suit in state or federal court," the plaintiff had also entered into a separate agreement—the "ACE Employment Dispute Arbitration Policy"—which required arbitration of ERISA claims. *Id*. at *3-4. The court determined, "[t]o the extent that the terms of the ACE Plan Administration document create an ambiguity regarding whether Brandl's claims are subject to arbitration, courts contemplating questions about the enforceability of similar

---

[8] Indeed, "[b]y agreeing to arbitrate a statutory [ERISA] claim, the [Financial Professionals] would not forego any substantive rights afforded by the above statute, *but* simply would submit to their resolution in an arbitral, rather than a judicial, forum." *Rosenblum*, 700 F. Supp. at 876 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628-29 (1985)). The Supreme Court has explained that "the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 332 (1980).

arbitration agreements with similar competing documents have found that plaintiffs' ERISA claims should be submitted to arbitration." *Id.* at *5.[9]

Here, the Magistrate Judge also should have resolved any doubts or ambiguities resulting from any perceived conflicts between the PartnerPlus and Compensation Plan arbitration agreements in favor of arbitration. *See, e.g., ExxonMobil*, 449 F.3d at 620. Had he done so, this case would (and should) have been compelled to arbitration.[10]

## II. The Magistrate Judge Erred In Not Compelling Arbitration Because The Financial Professionals Failed To Exhaust The Plan's Claims Procedures And Their Claims Do Not "Arise Out Of" PartnerPlus.

Even if the PartnerPlus arbitration agreement permitted class adjudication—which, as explained above, it does not—the Magistrate Judge still erred in allowing this litigation to proceed because the PartnerPlus arbitration agreement cannot be invoked unless the Financial Professionals first exhaust the internal procedures for any claim that arises out of the Plan. *Eddingston*, ECF No. 31, Exs. 1-5; *Hendricks*, ECF No. 21, Exs. 1-5; *see* Tr. 77:13-20.

The Financial Professionals agreed with the Magistrate Judge that the "only claims [they] are asserting deal with [their] right to [alleged] pension benefits" under PartnerPlus. Tr. 29:2-4. Because the Financial Professionals plainly contend that their claims arise out of the Plan, they were required first to exhaust internal claims procedures before invoking the Plan's arbitration provision. It is undisputed, however, that they have not done so. *Eddingston*, ECF No. 38 at 16-

---

[9] Courts, including within this Circuit, routinely compel arbitration of ERISA claims like those here where the arbitration agreements are separate from the ERISA plan documents, which are required by law to include a claim and an appeals dispute-resolution procedure. 29 U.S.C. § 1133; *see, e.g., Gross v. H.F. Ahmanson & Co.*, No. H-98-1232, 1998 U.S. Dist. LEXIS 20911, at *2-3, 9, (S.D. Tex. Dec. 14, 1998) (granting motion to compel arbitration of ERISA and other claims based on plaintiff's signed U-4 form, which contained a general arbitration clause for all disputes between plaintiff and her employer).

[10] Plaintiffs' counsel conceded at the hearing that he was unaware of any case ruling that a separate "general arbitration agreement by an employee" cannot require non-class arbitration of ERISA claims. Tr. 52:18-22. Thus, he admittedly has not provided the "positive assurance" required to overcome the presumption that, by entering the Compensation Plan arbitration agreements, the parties intended to arbitrate "any disputes" on a non-class basis. *AT&T Techs.*, 475 U.S. at 650; *Eddingston*, ECF No. 31, Ex. 8. That is yet another reason for compelling arbitration that the Magistrate Judge did not address in his ruling.

11

17 n.14; *Hendricks*, ECF No. 28 at 16 n.13. For that reason, too, the Magistrate Judge erred in denying the motion to compel arbitration.

Alternatively, the PartnerPlus arbitration provision does not apply because it is expressly limited to claims that "arise out of" PartnerPlus. *Eddingston*, ECF No. 31, Exs. 1-5; *Hendricks*, ECF No. 21, Exs. 1-5. In contrast, the Compensation Plan arbitration agreement is much broader, covering "any dispute between [the Financial Professional] and UBS." *Eddingston*, ECF No. 31 at 6-7; *Hendricks*, ECF No. 21 at 6-7. "[C]ourts distinguish 'narrow' arbitration clauses" like the ones in PartnerPlus "that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses" like the ones in the Compensation Plan "governing disputes that 'relate to' or 'are connected with' the contract." *I.D.E.A. Corp. v. WC & R Interests, Inc.*, 545 F. Supp. 2d 600, 605-06 (W.D. Tex. 2008) (quoting *Pennzoil Exploration & Prod. Co. v. Ramco Energy*, 139 F.3d 1061, 1067 (5th Cir. 1998)). As a result, the "arising out of" clauses, such as the PartnerPlus provision, must "be narrowly construed to encompass claims arising solely under the agreement." *Id.* at 606.

Thus, if, as UBS maintains, the Financial Professionals' claims do not "arise out of" PartnerPlus—hence, they are statutory claims under ERISA—then the PartnerPlus arbitration provision does not apply because the broader arbitration provision in the Compensation Plan does. Even if, however, the claims do arise out of PartnerPlus, the PartnerPlus arbitration provision does not apply because the Financial Professionals failed to exhaust internal claims procedures as PartnerPlus requires. Either way, the Compensation Plan's arbitration agreement should have been enforced according to its terms, and the Magistrate Judge erred in not compelling arbitration as those terms require.

**III.  The Magistrate Judge Erred In Not Compelling Arbitration Because FINRA Rule 13204(a) Independently Requires Enforcement Of The Class Action Waivers.**

The Magistrate Judge also erred in construing FINRA Rule 13204(a)'s election clause, which allows UBS to "enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action" where, as here, "[t]he member of the certified or putative class elects not to participate in the class."

Enforcing the Financial Professionals' arbitration agreements with UBS is consistent with Rule 13204(a), which specifically contemplates that employees may elect not to participate in class actions. Rule 13204(d) expressly provides for enforcing arbitration agreem*ents* *against members of a putative class where "[t]he member of the* . . . class elects not to participate in the class[.]" The Rule as whole, then, simply puts in the hands of each employee the decision to participate (or not) in class actions.

Each Financial Professional affirmatively agreed to the class action waivers contained in their arbitration agreements in exchange for valuable consideration. *Cohen*, 2012 WL 6041634, at *3 ("That the arbitration agreements here would preclude Plaintiffs from pursuing a class . . . action does not change the Court's view. Indeed, Rule 13204(a) specifically speaks to the possibility that a 'member of the certified or putative class elects not to participate in the class.'"). The Magistrate Judge's determination that Rule 13204(a) prohibits "pre-suit waiver clause[s]" finds no support in the Rule itself, which says nothing about excluding such waivers. In fact, when FINRA intends that an arbitration agreement cannot be made pre-dispute, it has expressly said so in its rules. *See* Rule 13201(b) (exempting statutory employment discrimination and whistleblower claims from mandatory arbitration).

Even if there were a conflict between Rule 13204(a) and enforcing the class action waivers in the arbitration agreements—and there is none—the Supreme Court has made clear the class action waivers must be enforced. That is because neither the language nor the regulatory history of Rule 13204 qualifies as a "Congressional command" to counter the FAA's mandate "to enforce agreements to arbitrate according to their terms." *CompuCredit*, 132 S. Ct. at 669. Nor is there anything in the Securities Exchange Act of 1934—which empowered FINRA and the SEC—that provides a "contrary Congressional command" to counter "the FAA's mandate," or authorizes FINRA to impose limitations on that mandate or a member firm's rights under the FAA to have arbitration agreements with its employees enforced according to their terms. And insofar as the Magistrate viewed "election" as ambiguous and sought to interpret beyond plain language and contrary to *Cohen*, 2012 WL 6041634, at *3, it was error for him to interpret the language. *See, e.g.*, *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006) ("The Code does provide, however, that disputes over the interpretation of its provisions must be arbitrated."); Rule 10324 ("The panel has the authority to interpret and determine the applicability of all provisions under the Code")

**IV.** **At A Minimum, The Magistrate Judge Erred In Not Compelling Arbitration Of The Claims Brought By Two Plaintiffs Subject To The 2011 PartnerPlus Class Action Waiver, Which Independently Requires Arbitration.**

At the very least, the Magistrate Judge should have compelled arbitration as to Branch Managers Ellspermann and Roccisano in the *Hendricks* matter because they resigned in March 2011 and September 2011, respectively, and thus were subject to the PartnerPlus Plan and the arbitration agreement and class action waiver contained therein that went into effect on January 1, 2011. *Hendricks*, ECF No. 21, Exs. 22, 24. UBS amended PartnerPlus on January 1, 2011, to state:

> By participating in the Plan, to the fullest extent permitted by law, whether in court or in arbitration, *Claimants waive any right to commence, be a party to in any way, or be an actual or putative class member of any class, collective, or representative action arising out of or relating to any Dispute, and Claimants agree that any Dispute may only be initiated or maintained and decided on an individual basis*.

*Hendricks*, ECF No. 21, Ferreria Decl., Ex. 6. The Financial Professionals conceded in their opposition brief that this amendment was effective "to extinguish the right of Plaintiffs to bring a putative class action lawsuit in federal court." *Hendricks*, ECF No. 28 at 16. The Magistrate Judge did not address this point. That was error.

## CONCLUSION

For the reasons set forth above, the Court should grant UBS's motion for reconsideration and compel each Financial Professional to arbitrate his claims on a non-class basis.

Date: February 19, 2013
Respectfully submitted,

    /s/ Deborah S. Davidson

| | |
|---|---|
| Deborah S. Davidson<br>  (ddavidson@morganlewis.com)<br>Andrew Scroggins (*pro hac vice*)<br>  (ascroggins@morganlewis.com)<br>MORGAN LEWIS & BOCKIUS LLP<br>77 W. Wacker Drive<br>Chicago, Illinois 60601<br>T. 312.324.1000, F. 312.324.1001 | Samuel S. Shaulson (*pro hac vice*)<br>  (sshaulson@morganlewis.com)<br>Ira Rosenstein (*pro hac vice*)<br>  (irosenstein@morganlewis.com)<br>MORGAN LEWIS & BOCKIUS LLP<br>101 Park Avenue<br>New York, NY 10178<br>T. 212.309.6000, F. 212.309.6001 |

Michael C. Smith
(michaelsmith@siebman.com)
SIEBMAN, BURG, PHILLIPS & SMITH LLP
113 East Austin Street
Marshall, TX 75670
T. 903. 938.8900, F. 972.767.4620

                                        *Attorneys for Defendant UBS Financial Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on February 19, 2013.

                                                  /s/ Deborah S. Davidson
                                                  Deborah S. Davidson