# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| MARK T. EDDINGSTON, JEFFERY M. DAVIS, ELRIDGE NICHOLAS BOLLICH, RAY A. COX and GEORGE GALANIS, | § § § § § | |
| **Plaintiffs,** | § § | Civil Action No. 2:12-CV-00422 |
| v. | § § | |
| UBS FINANCIAL SERVICES, INC., | § § | |
| **Defendant.** | § | |

## DEFENDANT'S AMENDED ANSWER AND ADDITIONAL DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant UBS Financial Services Inc. ("Defendant"), by its attorneys and pursuant to Fed. R. Civ. P. 8 and 15(a), respectfully submits the following Amended Answer and Additional Defenses to Plaintiffs' First Amended Complaint (Dkt. No. 20).

## ANSWERS TO PLAINTIFFS' SPECIFIC ALLEGATIONS

Subject to their Additional Defenses, Defendant pleads as follows to the specific allegations contained in the numbered paragraphs of the Amended Complaint.

### Parties

1.     **Plaintiffs are individuals.**

**ANSWER:**

Defendant admits the allegations contained in Paragraph 1 of the Amended Complaint.

2.     **Defendant has appeared.**

**ANSWER:**

Defendant admits the allegations contained in Paragraph 2 of the Amended Complaint.

3.     **Subject matter jurisdiction of this Court over this civil action exists under 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1) based on Plaintiff's claim under 29 U.S.C. §1132, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001-1461. Supplemental jurisdiction exists under 28 U.S.C. §1367 based upon Plaintiffs alternative claim under Texas law.**

**ANSWER:**

The allegations contained in Paragraph 3 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant admits that Plaintiffs purport to assert claims under ERISA which would confer subject matter jurisdiction over this civil action and supplemental jurisdiction under 28 U.S.C. § 1367 based upon Plaintiffs' alternative claim under Texas law, but denies that Plaintiffs are entitled to any relief under ERISA, Texas law or any other law. Defendant denies any remaining allegations contained in Paragraph 3 of the Amended Complaint.

4.     **Venue is proper because Defendant resides or may be found in this District under 28 U.S.C. § 1391(b) and (c) and 29 U.S.C. §1132(e) because, among other things, it owns and operates one or more offices in this District and the Plan, as defined below, covered individuals residing in this District.**

**ANSWER:**

Defendant admits that it owns and operates one or more offices in this District. Defendant lacks knowledge or information sufficient to form a belief about the truth of Plaintiffs' allegations regarding the residence of "covered individuals" in the PartnerPlus Plan for Financial Advisors ("the FA Plan"). The remaining allegations contained in Paragraph 4 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant admits that venue is proper in this District but denies that this District is the most appropriate venue for the convenience of parties and witnesses and in the interest of justice; therefore, Defendant expressly reserves its right to move to transfer venue in

accordance with 28 U.S.C. § 1404(a).  Defendant denies the remaining allegations contained in

Paragraph 4 of the Amended Complaint.

<u>Facts</u>

5.　　**Defendant is a broker-dealer and Plaintiffs and other individuals similarly situated were employed as registered representatives of Defendant, referred to by Defendant as financial advisors, prior to January 1, 2011.  Plaintiffs and other individuals similarly situated, employed by Defendant prior to January 1, 2011, became covered by an employee benefits plan of Defendant referred to as PartnerPlus Plan for Financial Advisors (as applicable prior to January 1, 2011, the "Plan").  The Plan was a continuation of an employee benefits plan established as of January 1, 1995 by one of Defendant's predecessors in interest, PaineWebber and Company.  Initially, the Plan covered financial advisors and also covered branch managers, although not specifically named as eligible to be covered by the Plan.  As of January 1, 1998, Defendant created a separate PartnerPlus Plan for Branch Managers. Defendant acquired PaineWebber and Company in 2000.**

**ANSWER:**

Defendant admits that it is a broker-dealer and that it employed Plaintiffs as registered

representatives of Defendant prior to January 1, 2011.  Defendant admits that it referred to

registered representative employees as Financial Advisors.  Defendant admits that it or one of its

corporate predecessors (PaineWebber Incorporated) has maintained the FA Plan since January 1,

1995, and that Plaintiffs participated at times in the FA Plan.  Defendant admits that it has

maintained a PartnerPlus Plan for Branch Managers ("the Branch Manager Plan") since at least

January 1, 2004.  Defendant denies the remaining allegations contained in Paragraph 5 of the

Amended Complaint.

6.　　**Prior to an amendment and restatement of the Plan as of January 1, 1998, the Plan was claimed to be a "top hat" plan governed by ERISA in part, a plan which is unfunded and maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1102(a)(2).  "Top hat" plans are governed by certain provisions of ERISA applicable to employee benefits plans, but not to all vesting, funding and other requirements imposed by ERISA on employer-sponsored employee benefits plans.  After the Plan was amended and**

**restated as of January 1, 1998, it did not claim to be governed by ERISA in whole or part, but exclusively by New York law, until January 1, 2011, when UBS again claimed that it was an ERISA "top-hat" plan.**

**ANSWER:**

Defendant admits that the FA Plan was amended and restated as of January 1, 1998. The allegations contained in the first and third sentences of Paragraph 6 of the Amended Complaint purport to characterize written documents, the terms of which speak for themselves; therefore, no response is required. To the extent a response is required, Defendant denies the allegations and characterizations in the first and third sentences of Paragraph 6 of the Amended Complaint and refers to the documents referenced therein for the full contents and context thereof. The remaining allegations contained in the first and second sentences of Paragraph 6 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in the first and second sentences of Paragraph 6 of the Amended Complaint and refers to the statutory provisions referenced therein for the full contents and context thereof. Defendant denies the remaining allegations contained in Paragraph 6 of the Amended Complaint.

7.     **The Plan constituted an employee benefits plan governed by ERISA because, as established by Defendant, it was an arrangement intended to provide benefits, have a group of beneficiaries as participants, a source of funding and a procedure for providing benefits. Further, the Plan contained provisions of a nature requiring it be treated as an employee benefits plan governed by ERISA.**

**ANSWER:**

Defendant denies the allegations contained in Paragraph 7 of the Amended Complaint.

8.     **The Plan further constituted a pension plan under 29 U.S.C. §1002(3)(2)(A) governed by ERISA and, as such, was governed by all vesting, funding and other requirements imposed by ERISA on employer-sponsored employee benefits plans, in that it was "a plan fund or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or by the result of surrounding**

circumstances such plan, fund or — (i) provides retirement income to employees, or (ii) results in the deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan, or the method of distributing benefits from the plan."

**ANSWER:**

Defendant denies the allegations contained in Paragraph 8 of the Amended Complaint.

9. **The Plan further constituted an individual account pension plan under 29 U.S.C. §1002(34), and as such was governed by all vesting, funding and other requirements imposed by ERISA on employer-sponsored employee benefit plans, in that it was a "pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."**

**ANSWER:**

Defendant denies the allegations contained in Paragraph 9 of the Amended Complaint.

10. **Under the Plan, employees covered by the Plan benefitted from two types of contributions. "Firm Contributions" were deferred awards made by Defendant. Firm Contributions remained unvested for the first five years after they were awarded and then vested 20% per year in years six through ten of a financial advisor's continued employment. The Plan also permitted financial advisors to make "Voluntary Contributions." Voluntary Contributions were always immediately vested and were not subject to any vesting schedule. Both types of contributions were credited with "Turbo Interest" for the first four years after a contribution was made. Turbo Interest was calculated as four times the applicable market interest rate. Under the Plan, all Turbo Interest accumulated on either Firm or Voluntary Contributions was considered a Firm Contribution. Vested amounts were not distributed to employees covered by the Plan until their tenth year anniversary but continued to earn "Market Interest" during that time frame. If a financial advisor voluntarily left Defendant, all unvested Firm Contributions, including unvested Turbo Interest, were forfeited. The Plan did, however, provide an exception for financial advisors who met "age and service" rules and who voluntarily resigned to leave the industry. In order to benefit from this exception to the Plan's forfeiture provisions, a financial advisor who met the "age and service" rule upon leaving Defendant was also required to sign a separation agreement which specifically affirmed, among other things, that the financial advisor was in fact, leaving the industry and would not compete against, nor solicit customers from Defendant. Financial**

advisors who did not sign such an agreement forfeited all unvested Firm Contributions without exception.

**ANSWER:**

The allegations contained in Paragraph 10 of the Amended Complaint purport to characterize written documents, the terms of which speak for themselves; therefore, no response is required. To the extent a response is required, Defendant denies the allegations and characterizations in Paragraph 10 of the Amended Complaint and refers to the documents referenced therein for the full contents and context thereof. Defendant denies the remaining allegations contained in Paragraph 10 of the Amended Complaint.

11. **Despite the applicability to the Plan of all vesting, funding and other requirements imposed by ERISA on employee pension plans, including individual account pension plans, the Plan did not comply with ERISA. Specifically, as an individual account pension plan under ERISA, the Plan was subject to the vesting and non-forfeiture provisions of ERISA, including 29 U.S.C. §1053 and the funding provisions of ERISA, including 29 U.S.C.§§ 1081 and 1082, but the Plan did not comply with such provisions.**

**ANSWER:**

Defendant denies the allegations contained in Paragraph 11 of the Amended Complaint.

12. **Under 29 U.S.C. §1053, as it existed at the time of the formation of the Plan, a pension plan "shall satisfy" the requirements of §§ 1053(a)(1) and (2) with respect to vesting. With respect to employee contributions, § 1053(a)(1) specifies that a plan must provide that "an employee's rights in his accrued benefit derived from his own contributions are non-forfeitable." With respect to employer contributions, § 1053(a)(2) specified in 1995 that a plan must satisfy subparagraph (A), (B), or (C). Under subparagraph (A), an employee "who has completed at least 5 years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions." (This is known as "cliff vesting.") Under subparagraph (B), an employee has a different non-forfeitable percentage after completing different number of years of service, but in any case must have a 100% non-forfeitable percentage after 7 or more years of service. (This is known as "graded vesting.") Subparagraph (C) applies to multiemployer plans and is not pertinent, but similarly states that an employee covered by a collective bargaining agreement who has completed at least 10 years of service has a non-forfeitable right to 100% of the employee's accrued benefit derived from employer contributions, and (A) and (B) are satisfied as to any other**

employee.  Under 29 U.S.C. §1053, as it existed as of 2007, a pension plan shall satisfy either §1053(a)(2)(B)(ii) or (iii), which provide with respect to employer contributions: under subparagraph (ii), an employee "who has completed at least 5 years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions," or under subparagraph (iii), an employee has a different non-forfeitable percentage after completing different number of years of service, but in any case must have a 100% non-forfeitable percentage after 7 or more years of service.  Under 29 U.S.C. §1053, as subsequently amended, a pension plan shall satisfy either §1053(a)(2)(B)(ii) or §1053(a)(2)(B)(iii), which provide with respect to employer contributions: under subparagraph (ii), an employee "who has completed at least 3 years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions," or under subparagraph (iii), "an employee has a different non-forfeitable percentage after completing different number of years of service, but in any case must have a 100% non-forfeitable percentage after 6 or more years of service."

**ANSWER:**

The allegations contained in Paragraph 12 of the Amended Complaint state conclusions of law to which no response is required.  To the extent a response is required, Defendant refers to the cited statutory provisions for their true meaning and effect and denies the allegations contained in Paragraph 12 of the Amended Complaint.

13.    **The Plan (as amended from time to time) properly specified, consistent with §1053(a)(1), even while the Plan did not acknowledge the applicability of ERISA, that each employee covered by the Plan had at all times a non-forfeitable interest in Voluntary Contributions.  However, with respect to Firm Contributions, the Plan (as amended from time to time) provided that each such employee shall have an interest in each Firm Contribution (and a contribution from another employee benefit plan referred to as a "Rollover Contribution") only as of the date of the making of the Firm Contribution or date of vesting of a Rollover Contribution and subject to the requirement that the employee remain employed by Defendant.  The Plan similarly provided that the time for vesting of "Market Interest" begin only at the time of each Firm Contribution on which it accrued and for vesting of such Market Interest only 10 years after the date of such Firm Contribution.  With respect to "Turbo Interest," the Plan (as amended from time to time) provided that the employee shall have a vested right only if the employee retired from the brokerage business and executed a Non-Competition, Non-Solicitation and Non-Disclosure Agreement in form satisfactory to Defendant.**

**ANSWER:**

The allegations contained in Paragraph 13 of the Amended Complaint state conclusions of law and purport to characterize written documents, the terms of which speak for themselves; therefore, no response is required. To the extent a response is required, Defendant denies the allegations and characterizations in Paragraph 13 of the Amended Complaint and refers to the documents cited therein for the full contents and context thereof. Defendant denies the remaining allegations contained in Paragraph 13 of the Amended Complaint.

14.   **Under the Plan, payment of benefits due under the Plan other than Voluntary Contributions could be denied in the event the employee of Defendant did not meet an age and service rule provided for in the Plan and engaged in the brokerage business after the termination of his or her employment with Defendant and did not execute a Non-Competition, Non-Solicitation and Non-Disclosure Agreement in form satisfactory to Defendant.**

**ANSWER:**

The allegations contained in Paragraph 14 of the Amended Complaint purport to characterize written documents, the terms of which speak for themselves; therefore, no response is required. To the extent a response is required, Defendant denies the allegations and characterizations in Paragraph 14 of the Amended Complaint and refers to the documents cited therein for the full contents and context thereof. Defendant denies the remaining allegations contained in Paragraph 14 of the Amended Complaint.

15.   **The vesting provisions of the Plan were improper because ERISA governed the Plan and such vesting provisions did not comply with §1053 of ERISA. The provisions in the Plan for vesting of Firm Contributions and Market Interest on such Firm Contributions to be recomputed as of the time any new Firm Contribution is made was not authorized by §1053, which ties vesting to length of employment and applies to all "accrued benefits," defined in 29 U.S.C.§1002(23)(B) and (34) of ERISA to include "the balance of an individual's account" including amounts contributed to the account and "any income, expenses, gains and losses which may be allocated to such participant's account." The provisions in the Plan for vesting of Turbo Interest, and for distribution of Firm Contributions, Market Interest and**

**Turbo Interest, only if a Non-Competition, Non-Solicitation and Non-Disclosure Agreement is executed, were also not authorized by §1053, which makes such accrued benefits, including interest, nonforfeitable based upon length of service only.**

**ANSWER:**

The allegations contained in Paragraph 15 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 15 of the Amended Complaint.

16. **The Plan was not funded separate and apart from the general assets of Defendant, as required by the funding provisions of ERISA, including 29 U.S.C. §§ 1081 and 1082.**

**ANSWER:**

The allegations contained in Paragraph 16 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 16 of the Amended Complaint.

17. **In violation of 29 U.S.C. § 1053, Plaintiffs and other similarly situated individuals employed by Defendant prior to January 1, 2011 have had amounts distributable to them under the Plan on account of Firm Contributions, Market Interest and Turbo Interest forfeited solely because Plaintiffs and such other employees have refused to sign a Non-Competition, Non-Solicitation and Non-Disclosure Agreement required by Defendant to be signed as a condition of any distribution of such amounts. Specifically, Defendant has improperly forfeited as to Plaintiffs and similarly situated individuals employed by Defendant prior to January 1, 2011 the Firm Contributions, Market Interest and Turbo Interest to which Plaintiffs were entitled.**

**ANSWER:**

The allegations contained in Paragraph 17 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 17 of the Amended Complaint.

18. **The Plan was not a "top hat" plan, nor was it another plan not subject to ERISA's vesting and funding provisions (e.g., excess benefit plan, as defined**

in 29 U.S.C. § 1002(36)). **Between January 1, 1995 and January 1, 2011, the Plan was not limited to a select group of management or highly compensated employees, as required for a "top hat" plan, given the number of financial advisors and percentage of total financial advisors of Defendant covered by the Plan, and was not subject to negotiation by financial advisors. Even as originally offered by PaineWebber and Company, eligibility was available to any Investment Executive/Financial Adviser "who generated a minimum of $200,000 in gross production at PaineWebber in 1994," which made it non-select in that almost all of such individuals, constituting a material percentage of total employees of PaineWebber and Company, were eligible to be covered by the Plan when it was first formed. After Defendant's acquisition of PaineWebber and Company in 2000, at least prior to January 1, 2011, the Plan continued to be non-select in that most, if not substantially all, financial advisors of Defendant were eligible to be covered by the Plan and Defendant used the Plan to recruit new employees, including new employees who did not have any actual production. The Plan was also not subject to negotiation by financial advisors. The Plan was not solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by Section 415 of the Internal Revenue Code.**

**ANSWER:**

The allegations contained in Paragraph 18 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 18 of the Amended Complaint.

19. **The Plan purported to be governed by New York law. However, even assuming the validity of the governing law clauses in the Plan before and after January 1, 2011, as to amounts deferred under the plan prior to January 1, 2011, Defendant's principal place of business was not in New York, and Plaintiffs and individuals similarly situated employed by Defendant in Texas did not have any significant contacts with Defendant in New York. Plaintiffs and individuals similarly situated employed by Defendant in Texas prior to January 1, 2011 only had significant contacts with Texas in connection with their employment with Defendant because such employment was based on personal services provided in Texas. Further, Texas, not New York, had the substantial relationship to Plaintiffs and such similarly situated employees employed by Defendant in Texas, had a materially greater interest than New York in the determination of the enforceability of the Plan's provisions relating to competition, and enforcement of the law of another state to determine the enforceability of a non-competition restriction within the forfeiture provisions of the Plan as to Plaintiffs and such individuals similarly situated employed by Defendant in Texas would be contrary to a fundamental policy of Texas embodied in**

**Chapter 15 of the Texas Business & Commerce Code. Accordingly, if ERISA does not govern the Plan, Texas law governs the interpretation and application of the Plan as to Plaintiffs and any similarly situated employees employed by Defendant in Texas prior to January 1, 2011. Under Texas law, the non-competition restriction within the forfeiture provisions of the Plan is unenforceable as to Plaintiffs, based upon §§ 15.05 and § 15.50 of the Texas Business & Commerce Code, and the forfeiture provisions of the Plan are also unenforceable because they impose a severe economic penalty upon Plaintiff as a departing employee simply for engaging in competition. Among other consequences of the provisions of the Plan, any Plaintiff or similarly situated individual employed by Defendant in Texas prior to January 1, 2011 who, in accordance with the non-competition restriction in the forfeiture provisions of the Plan, did not engage in the securities business for two years would have to re-qualify for one or more securities licenses at substantial cost.**

**ANSWER:**

The allegations contained in the first sentence of Paragraph 19 of the Amended Complaint purport to characterize written documents, the terms of which speak for themselves; therefore, no response is required. To the extent a response is required, Defendant denies the allegations and characterizations in the first sentence of Paragraph 19 of the Amended Complaint and refers to the documents referenced therein for the full contents and context thereof. The allegations contained in the fourth, fifth and sixth sentences of Paragraph 19 of the Amended Complaint state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in the fourth, fifth and sixth sentences of Paragraph 19 of the Amended Complaint. Defendant denies the remaining allegations contained in Paragraph 19 of the Amended Complaint.

## Claims

20. **For their first cause of action, Plaintiffs would show that Defendant has violated ERISA by the Plan, and that they and other similarly situated individuals are entitled to all appropriate relief under 29 U.S.C.§1132(a)(3), including an injunction against any act or practice which violates ERISA or the terms of the Plan and any other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan, attorney's fees and expenses and costs of court.**

**ANSWER:**

Paragraph 20 of the Amended Complaint contains conclusions of law and purports to characterize the Amended Complaint, the allegations of which speak for themselves; therefore, no response is required. To the extent a response is required, Defendant denies that it has violated ERISA or the FA Plan and further denies that Plaintiffs are entitled to any relief, including the remedies described and the relief requested in Paragraph 20 of the Amended Complaint. Defendant denies the remaining allegations contained in Paragraph 20 of the Amended Complaint.

21. **For their second cause of action, in the alternative to their first claim, Plaintiffs would show that the Plan, to the extent not governed in pertinent part by ERISA, is governed by Texas law and that non-competition within the forfeiture provisions of the Plan is unenforceable and that Plaintiffs are accordingly entitled to recover all amounts to which they is entitled under the Plan, including all Firm Contributions, Market Interest and Turbo Interest purportedly forfeited by them, prejudgment interest, attorney's fees and expenses and costs of court.**

**ANSWER:**

Paragraph 21 of the Amended Complaint contains conclusions of law and purports to characterize the Amended Complaint, the allegations of which speak for themselves; therefore, no response is required. To the extent a response is required, Defendant denies that it has committed any wrongdoing or violated any law and further denies that Plaintiffs are entitled to any relief, including the remedies described and the relief requested in Paragraph 21 of the Amended Complaint. Defendant denies the remaining allegations contained in Paragraph 21 of the Amended Complaint.

## <u>Class Action Allegations</u>

22. **With respect to the claim referred to in paragraph 23, this action is maintainable as a class action by Plaintiffs on behalf of themselves and other similarly individuals situated employed by Defendant, and who left the employment of Defendant, prior to January 1, 2011 and had amounts of**

Firm Contribution, Market Interest and Turbo Interest deferred under the Plan forfeited by Defendant, nationally, and with respect to the claim referred to in paragraph 24, this action is alternatively maintainable as a class action by Plaintiffs on behalf of themselves and other similarly situated individuals employed by Defendant in Texas, and who left the employment of Defendant, prior to January 1, 2011 and had amounts of Firm Contribution, Market Interest and Turbo Interest deferred under the Plan forfeited by Defendant, prior to January 1, 2011, because:

a) the class of employees who have been subject to Defendant's wrongful conduct is so numerous that joinder of all members is impracticable, including that it consists of former employees of Defendant at various locations throughout Texas and outside Texas, and former employees without knowledge of the existence of their claims. Potential retaliation against employees who would assert claims and considerations of judicial economy also dictate a finding that joinder is impracticable.

b) there are questions of fact or law common to the class.

c) the claims of Plaintiffs are typical of the claims of the class.

d) Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

e) the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant or adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members of the class not parties to the adjudication or substantially impair or impede their ability to protect their interests, or

f) Defendant has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

g) the questions of law or fact common to members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

**ANSWER:**

Defendant denies each and every allegation contained in Paragraph 22, including its subparts a-g, of the Amended Complaint.

23. **Plaintiffs demand a jury to the extent they are entitled to do so under the United States Constitution and other applicable law.**

**ANSWER:**

Defendant admits that Plaintiffs purport to seek a jury trial for their claims alleged in the Amended Complaint but denies that Plaintiffs are so entitled with respect to their ERISA claim in Count I. Answering further, Defendant states that Plaintiffs conceded in the Parties' Rule 26(f) Report (Dkt. 33) that Plaintiffs seek a jury trial only for their alternative Texas state-law claim in Count II.

**WHEREFORE,** Plaintiffs pray that this Court grant them judgment for all appropriate relief.

**ANSWER:** Defendant denies that Plaintiffs are entitled to judgment or any relief whatsoever.

## DEFENDANT'S ADDITIONAL DEFENSES

1. Plaintiffs agreed to arbitrate, on a non-class basis, any and all disputes relating to their employment or termination of employment with UBS, including disputes related to compensation and benefits, and specifically including ERISA claims. Plaintiffs also waived any right to commence or be a party to any class action. Thus, Plaintiffs have waived their right to assert their claims in this forum.

2. To the extent their claims "arise out of" the FA Plan and seek distributions under the FA Plan, Plaintiffs failed to exhaust the FA Plan's pre-arbitration administrative claim and appeal procedures.

3. Plaintiffs' claims, which seek recovery for additional payments under the FA Plan, are not appropriately brought pursuant to 29 U.S.C. § 1132(a)(3), but rather must be brought under 29 U.S.C. § 1132(a)(1)(B).

4. Even if Plaintiffs were not required to arbitrate their claims, they have failed to exhaust their administrative remedies in accordance with the FA Plan's claim and appeals procedures.

5. Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted.

6. The FA Plan is not an employee pension plan within the meaning of 29 U.S.C. § 1002(2)(A).

7. Even if the FA Plan were subject to ERISA, it was maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

8. This District is not the most appropriate venue for the convenience of parties and witnesses and in the interest of justice. Defendant expressly reserves its right to move to transfer venue in accordance with 28 U.S.C. § 1404(a).

9. Plaintiffs' claims are barred in whole or in part by the applicable limitations periods under the applicable state law and/or as provided in the FA Plan and/or the doctrine of laches.

10. The claims of Plaintiffs, or any putative class members who executed a release of claims against Defendant, is barred.

11. Plaintiffs lack standing to obtain future injunctive relief with respect to the FA Plan.

12.     Plaintiffs are not entitled to a trial by jury of their ERISA claims.

## **RESERVATION OF RIGHTS**

To the extent not set forth herein, Defendant reserves the right to assert additional defenses that become available or apparent during discovery and to amend its Answer and Additional Defenses accordingly.

WHEREFORE, Defendant requests that Plaintiffs' Amended Complaint be dismissed and that Defendant be awarded its fees and costs, and such other relief that the Court deems just and proper.

March 12, 2013

Respectfully submitted,

UBS Financial Services, Inc.

s/ Charles C. Jackson
_____

Michael C. Smith
State Bar # 18650410
Siebman, Burg, Phillips & Smith LLP
113 East Austin Street
Marshall, Texas  75670
(903) 938-8900; (972) 767-4620 (fax)
michaelsmith@siebman.com

Charles C. Jackson (*pro hac vice*)
Illinois State Bar #01309374
Deborah S. Davidson
Illinois State Bar #6255813
Andrew Scroggins (*pro hac vice*)
Illinois State Bar #6287344
Morgan Lewis & Bockius LLP
77 W. Wacker Drive
Chicago, Illinois 60601
(312) 324-1000; (312) 324-1001 (fax)
charles.jackson@MorganLewis.com
ddavidson@MorganLewis.com
ascroggins@MorganLewis.com

Ellen Perlioni
Morgan Lewis & Bockius LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
(214) 466-4000
(214) 466-4001 (fax)
eperlioni@morganlewis.com

Samuel S. Shaulson (*pro hac vice*)
Ira Rosenstein (*pro hac vice*)
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000; (212) 309-6001 (fax)
sshaulson@morganlewis.com
irosenstein@MorganLewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Charles C. Jackson, hereby certify that on March 12, 2013, I electronically filed a copy of **Defendant's Amended Answer and Additional Defenses to Plaintiffs' Amended Complaint** with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Sam F. Baxter
sbaxter@mckoolsmith.com
Theodore Stevenson, III
tstevenson@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston Street, Suite 300
Marshall, Texas 75670
(903) 923-9000
(903) 923-9099 (facsimile)

Brian E. Bro
brian@bebroatty.com
Law Offices of Brian E. Bro
3200 SW Freeway, Suite 2200
Houston, Texas 77027
(713) 961-3111
(281) 265-9181 (facsimile)

Robert E. Goodman, Jr.
reg@kilgorelaw.com
Theodore C. Anderson
tca@kilgorelaw.com
Kilgore & Kilgore PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099
(214) 953-0133 (facsimile)

Peter K. Stris (*pro hac vice*)
peter.stris@strismaher.com
Brendan S. Maher (admission pending)
State Bar No. 24053336
brendan.maher@strismaher.com
Stris & Maher LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090
(424) 212-7001 (facsimile)

s/ Charles C. Jackson
Charles C. Jackson