IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MARK T. EDDINGSTON, et al. | § § | |
| v. | § § | Case No. 2:12-CV-422-JRG |
| UBS FINANCIAL SERVICES, INC. | § | |
| | | |
| BILL HENDRICKS, et al. | § § | |
| v. | § § | Case No. 2:12-CV-606-JRG |
| UBS FINANCIAL SERVICES, INC. | § § | |

**REPORT AND RECOMMENDATION**

**I.     Background**

Currently before the Court are two motions for class certification which came on for hearing on June 4, 2013. The motion in the Eddingston case (Dkt. No. 59) seeks to certify a national class of former "registered representatives" who left their employment as financial advisors for defendant UBS Financial Services, Inc. before January 1, 2011. The motion in the Hendricks case (Dkt. No. 53) seeks to certify a national class of former branch managers of UBS who also left the company before January 1, 2011. Both groups complain that UBS caused them to forfeit portions of their PartnerPlus deferred compensation plan upon their termination of employment by enforcing vesting requirements in conflict with ERISA.[1] Both actions seek

---

[1] Plaintiffs conceded at the hearing that they had abandoned their request for certification of their claims under Texas law.

declaratory and injunctive relief requiring UBS to conform its vesting and forfeiture provisions to ERISA, as well as monetary relief awarding plaintiffs the funds previously forfeited. UBS contends that the Plan is not covered by ERISA and that the claims are not appropriate for class treatment under Rule 23. For the reasons that follow, the Court finds that the following classes should be certified:

> Eddingston: "All individuals employed by Defendant as registered representatives in the United States who left the employment of Defendant before January 1, 2011 and who forfeited some portion of their PartnerPlus account due to the vesting provisions of the Plan."

> Hendricks: "All individuals employed by Defendant as branch managers in the United States who left the employment of Defendant before January 1, 2011 and who forfeited some portion of their PartnerPlus account due to the vesting provisions of the Plan."

## II. Legal Standards

Federal Rule of Civil Procedure 23 governs class action certification. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original). Thus, the party seeking certification must first demonstrate that the prerequisites of Rule 23(a) are met. Those prerequisites are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Once these prerequisites are met, the party seeking certification must also demonstrate that the proposed class satisfies at least one requirement set forth in Rule 23(b). Rule 23(b)(2) allows a

party to maintain a class action if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Additionally, Rule 23(b)(1)(A) allows a party to maintain a class action if Rule 23(a) is satisfied and "prosecuting separate actions by or against individual class members would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."

When considering a motion for class certification, "[t]he class certification determination rests within the sound discretion of the trial court, exercised within the constraints of Rule 23." *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 264 (5th Cir. 2007).

### III. Summary of Parties' Arguments

Defendant first contends that analysis under Rule 23 is unnecessary, as Plaintiffs have waived their right to proceed in a class action case due to language in the arbitration clause of UBS' "Financial Advisor Compensation Plan." Plaintiffs disagree based on differing language contained in the actual PartnerPlus plan document.

Plaintiffs contend that the prerequisites of Rule 23(a)(1)-(4) are met. Defendants disagree, based primarily based on alleged differences between members of the proposed class due to releases, varying statutes of limitations, and in-service distributions.

Plaintiffs further contend that class certification is proper under 23(b)(2), 23(b)(1)(A) and (B), and 23(b)(3). Defendants disagree, based primarily on the position that Plaintiffs' claims are primarily for monetary relief, and are thus improper for certification under any provision of 23(b).

**IV.    Discussion**

   **A.    Inquiry into the Merits**

As noted by Defendant, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). However, Defendant interprets this to mean that Plaintiffs must prove the merits of their case at the class certification stage. (Dkt. No. 112 at 4.)[2] This is an unsupported (and incorrect) conclusion. Defendant does not dispute that the question of whether the PartnerPlus plan is an ERISA plan is central to this case. The parties' briefing and arguments "touch[ed] aspects of the merits," as suggested by *Wal-Mart*. 131 S. Ct. at 2552. In fact, the parties have presented the Court with thousands of pages of exhibits. All evidence currently in the record has been carefully considered by the Court in the analysis below. However, the Court believes that a conclusive finding regarding the applicability of ERISA to the PartnerPlus plan is a) premature based on the undeveloped record before it in this case; and b) unnecessary for the purposes of ruling on the present motion for class certification.

   **B.    Waiver**

Defendant argues that Plaintiffs have waived their right to bring a class action suit with regards to their employment (or termination) from UBS. In support of this assertion, UBS relies primarily on an arbitration provision in UBS' "Financial Advisor Compensation Plan" brochure. (*See* Dkt. No. 77 at 4.) This arbitration provision reads, in one example, "…you waive any right

---

[2] This and subsequent citations to the record reference docket numbers in the Eddingston case. The Hendricks filings were virtually identical for the purposes of this order.

to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to your employment with UBS or the termination of your employment with UBS." *See, e.g.*, Plaintiffs' Exhibit 26 at UBS 00001377. Defendant suggests that this sentence be severed out as a stand-alone clause, but the four corners of the document clearly show that this was not the intent of the parties. *Id*.

The Financial Advisor Compensation Plan brochure contains a mere summary of the Partner Plus Plan, which makes clear that "[i]f there is any difference between this summary and the Plan Document, the Plan Document will govern." *Id.* at UBS 00001373. The PartnerPlus plan document has its own arbitration provision that covers "any dispute, claim, or controversy involving the Claimant and the Plan and a Sponsor, arising out of the Plan," but differs in a number of important ways from the arbitration provision contained in the Financial Advisor Compensation Plan – most notably, the arbitration provision in the PartnerPlus plan document contains no waiver of class actions. *See, e.g.*, Plaintiffs' Exhibit 9 at UBS 00002189. Given the differences between the arbitration provision in the Financial Advisor Compensation Plan summary and the PartnerPlus plan document, the text of the documents clearly requires that the arbitration clause from the PartnerPlus plan document controls. *See, e.g.*, Plaintiffs' Exhibit 26 at UBS 00001373. In the alternative, even if the terms of the document were found to be ambiguous, it is axiomatic in contract law that such an ambiguity is to be construed against the drafter (UBS). Furthermore, as the Court has already ruled, the Partner Plus Plan incorporates the FINRA rules in its arbitration clause, which have repeatedly been found to expressly accommodate class action claims. Thus, the Court finds that the Plaintiffs have not waived their right to a class action.

### C. Federal Rule of Civil Procedure 23(a)

#### 1. Numerosity and Commonality

Defendant UBS has agreed for the purposes of this inquiry that the numerosity and commonality requirements of Rule 23(a)(1) and (a)(2) are satisfied. The Court agrees and finds that those two requirements are met.

#### 2. Typicality and Adequacy

The typicality provision of Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The adequacy provision of Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."

As Defendant notes, the typicality test "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). Here, all of the Plaintiffs' claims revolve around a single document, the Plan, that purports to affect all Class members. Further, each Plaintiff's claim is based on the same legal and remedial theory: that the PartnerPlus plan "is subject to ERISA, including the vesting and anti-forfeiture provisions of Section 1053 of ERISA, and that it violates Section 1053 as to the entire class." (Dkt. No. 59 at 4.) The Court accepts that these theories are consistent with the applicable theories of the proposed class.

"The adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470, 484 (5th Cir. 1982); *see also Amchem*

*Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Here, as evidenced by their declarations, Plaintiffs stand ready and able to perform their duties as class representatives. (Dkt. No. 59-4, 59-5, 59-6, 59-7.) Similarly, the Court is satisfied that based on the record, Plaintiffs' attorneys possess the necessary zeal and competence to represent the class. (*See* Dkt. No. 59-1, 59-2, 59-3.)

Defendant contests typicality and adequacy on three grounds. First, Defendant alleges that variations in state statutes of limitations applicable to the proposed class members' ERISA claims undermine adequacy and/or typicality. The Court notes that Defendant's argument has shifted from the opening brief, where Defendant seemed to claim that an "individualized inquiry" into the state law on statute of limitations was necessary based on the state of residence of each putative Plaintiff. (Dkt. No. 77 at 8-9.) Defendant now asserts, however, that "[i]t is well-settled that in the absence of a federal statute of limitations, a court should apply or 'borrow the <u>forum</u> state's most analogous state statute." (Dkt. No. 112 at 9.) (Emphasis added.) Thus, it now seems to be undisputed that whatever statute of limitations applies, it is the same for all putative class members. Notwithstanding that discrepancy, the briefs and argument in this case make clear that the most prevalent question regarding the statute of limitations issue is when Plaintiffs' claims accrued. (*See* Dkt. No. 110 at 9-10; Dkt. No. 112 at 10-15.) Both sides agree that accrual is a question of federal law. "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman*, 280 F.3d at 562. The question of what accrual rule to apply is one common to all putative Plaintiffs, and is a question relevant to all Plaintiffs, thus the minor chronological differences alleged by Defendant do not undermine typicality and adequacy.

Defendant also alleges that some of the putative Plaintiffs (including one of the named Plaintiffs, Stacy) signed general releases, thus undermining typicality and adequacy. In support of this proposition, Defendant cites *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988) for the proposition that "class representatives must 'possess the same interest and suffer the same injury' as the class members, and ... a plaintiff lacks standing to litigate injurious conduct to which he was not subjected." (Dkt. No. 77 at 11.) The Court first notes that the effectiveness of the alleged releases is questionable in view of their pre-forfeiture nature and the anti-alienation provisions of ERISA. Yet even under the standard proposed by Defendants, the alleged releases do not undermine typicality and adequacy because most of the class representatives would not be "litigat[ing] injurious conduct to which he was not subjected." The effect of the alleged releases[3] will hinge primarily on whether the anti-alienation provision of ERISA applies to the PartnerPlus plan – an issue that must be resolved by determining the applicability of ERISA to the PartnerPlus plan, which is a class-wide question that all Platintiffs have an interest in resolving. *See Stirman*, 280 F.3d at 562. Thus, the alleged releases do not undermine typicality and adequacy.

Finally, Defendant alleges that in-service distributions received by the named plaintiffs, and ERISA vesting rules, undermine typicality and adequacy. Specifically, Defendant's argument relies upon the premise that because some of the named Plaintiffs allegedly received some "in-service" distributions, they "pose a serious vulnerability on the central issue of ERISA coverage." (Dkt. No. 77 at 10.) Defendant thus implies that the question of whether ERISA applies is an individual determination, or one that should be made based only on distributions to

---

[3] Unlike the *Langbecker* case cited by Defendant, which included evidence of more than 9,000 releases, the record here is devoid of any evidence as to how many employees signed releases or exactly what language was used.

the class representatives rather than to plan members as a whole. Defendant cites no authority for such a proposition. Whether a plan is an ERISA plan is not a determination made on an individual-by-individual basis, but is a class-wide question that applies to all putative Plaintiffs. In other words, the individual distributions allegedly made to class representatives will have no greater effect than they would if those distributions had been made to other putative Plaintiffs instead. Thus, the alleged in-service distributions do not undermine typicality and adequacy.

Defendant attempts to interpret the typicality and adequacy provisions or Rule 23(a) to mean that each Plaintiff's claim must be identical in any way, but this is not the law. As noted above, this is not correct: "[t]ypicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman*, 280 F.3d at 562. Because the claims of the representative Plaintiffs are typical of the claims of the class, the Court finds that Rule 23(a)(3) is satisfied. Similarly, because the representative parties will fairly and adequately protect the interests of the class, the Court finds that Rule 23(a)(4) is satisfied.

### D. Federal Rule of Civil Procedure 23(b)(2)

Rule 23(b)(2) allows a party to maintain a class action if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here, Plaintiffs "seek injunctive relief to prevent continued reliance by Defendant upon the illegal provisions of the Plan as to Plaintiffs and similarly situated individuals." (Dkt. No. 59 at 1.) Defendants argue that "an injunction against UBS does nothing

to improve [Plaintiffs'] situation without an accompanying award of monetary relief." (Dkt. No. 77 at 14.)

The critical factor in determining the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 131 S.Ct. at 2557. Here, ERISA either applies to the PartnerPlus plan as to all Plaintiffs or it does not – the determination is not an individualized one.

Plaintiffs correctly point out that a claim for monetary relief may be certified under Rule 23(b)(2) if it is "incidental" to the declaratory or injunctive relief. *Id*. At 2560. In response, Defendant cites *dicta* from *Bolin v. Sears, Roebuck & Co.*, but *Bolin* clearly recognizes the standard rule that "damages may be incidental when they are 'capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.'" 231 F.3d 970, 976 (5th Cir. 2000). Defendant also cites *Allison v. Citgo Petroleum Corp.*, which is inapposite here. In *Allison*, the classwide determination that defendants violated ERISA did not lead directly to liability – instead, there was a detailed factual analysis required for each claimant to determine issues such as causation and reliance. 151 F.3d 402, 414 (5th Cir. 1998). Those "complex individualized determinations" are not required to find liability here – a determination of ERISA applicability and violation by the Partner Plus Plan would directly "lead to an award in favor of" all claimants, unlike the scenario set forth in *Allison*. *Id*. at 415.

The Seventh Circuit recently applied the Supreme Court's *Wal-Mart* ruling to a similar set of facts in *Johnson v. Meriter Health Servs. Emple. Ret. Plan*:

> In this case, however, all that the class is seeking, which is to say all that the subclasses are seeking, at least initially, is a reformation of the [plan]—a

> declaration of the rights that the plan confers and an injunction ordering [defendant] to conform the text of the plan to the declaration. If once that is done the award of monetary relief will just be a matter of laying each class member's pension-related employment records alongside the text of the reformed plan and computing the employee's entitlement by subtracting the benefit already credited to him from the benefit to which the reformed plan document entitles him, the monetary relief will truly be merely "incidental" to the declaratory and (if necessary) injunctive relief (necessary only if [defendant] ignores the declaration).

702 F.3d 364, 371 (7th Cir. 2012). Here, if the Court issued an injunction, the requested monetary relief would inure to Plaintiffs by virtue of the operation of the injunction, rather than as a typical "damages" award, and the calculation of those monies would be a simple accounting, almost identical to the one identified in *Johnson*. Thus, the Court finds that the party opposing the class (UBS) has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, as required by 23(b)(2), and that the potential monetary relief is "incidental" to the requested final injunctive relief. Thus, the Court finds that Rule 23(b)(2) is satisfied.

### E. Federal Rule of Civil Procedure 23(b)(1)(A)

Rule 23(b)(1)(A) allows a party to maintain a class action if Rule 23(a) is satisfied and "prosecuting separate actions by or against individual class members would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Defendant claims that rule 23(b)(1)(A) certification is not appropriate here, because "[i]f one court determined, for example, that PartnerPlus was an ERISA plan and another determined that it was not, UBS could still comply with both orders." (Dkt. No. 77 at 13.) Defendant provides absolutely no support for this statement. In fact, if this Court issues an injunction finding that ERISA applies to the PartnerPlus plan and requiring UBS to conform its PartnerPlus plan to ERISA rules, UBS would be *statutorily required* to treat all similarly situated plan participants the same. As Plaintiffs

correctly note, the Supreme Court has held that certification under rule 23(b)(1)(A) is appropriate where "the party is obliged by law to treat the members of the class alike." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (U.S. 1997).

ERISA either applies to the PartnerPlus plans or it does not – if one court held that it did, and another that it did not, it would result in precisely the type of "inconsistent or varying adjudication[] … that would establish incompatible standards of conduct for the party opposing the class" that Rule 23(b)(1)(A) is designed to prevent against. Thus, the Court finds that Rule 23(b)(1)(A) is satisfied and would provide an alternative ground for class certification in the event that Rule 23(b)(2) is not deemed appropriate.

### F. Class Counsel

Based upon the pleadings, motions, and other court filings in this case, including materials relating to proposed class counsel, the Court has considered the following factors pursuant to Rule 23(g)(1): (1) the work Plaintiff's counsel have done to date in this action, (2) their experience in handling class actions, other complex litigation, and ERISA claims of the type asserted in this action and (3) the resources counsel will commit to representing the class. (*See, e.g.,* Dkt. No. 59-1, 59-2, 59-3.) The Court further recommends that Robert Goodman and Kilgore & Kilgore, PLLC and Peter Stris and Stris & Maher, LLP be appointed as Plaintiffs' lead class counsel, and Brian Bro be appointed as additional class counsel.

## V. Conclusion

Based on an analysis of the applicable law, the Court is of the opinion that a class action, rather than innumerable individual actions, is the better method of litigating this dispute. Therefore, the Court recommends that the motion for class certification be GRANTED.

Given the foregoing, the Court hereby recommends that the following classes be certified under Rule 23(b)(2):

Eddingston: "All individuals employed by Defendant as registered representatives in the United States who left the employment of Defendant before January 1, 2011 and who forfeited some portion of their PartnerPlus account due to the vesting provisions of the Plan."

Hendricks: "All individuals employed by Defendant as branch managers in the United States who left the employment of Defendant before January 1, 2011 and who forfeited some portion of their PartnerPlus account due to the vesting provisions of the Plan."\

Finally, the Court recommends that the parties be ORDERED to meet and confer concerning the need for a notice and the content that would be appropriate if notice is given. The matter will be determined at the next status conference to be set following action on this Report and Recommendation by the District Judge.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 12th day of June, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE