```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                      MARSHALL DIVISION

 3   Eddingston, et al.,        * Civil Docket No.
             Plaintiffs,        * 2:12-cv-00422
 4                              * Marshall, Texas
     -VS-                       *
 5                              *
     UBS Financial Services,    *
 6   Inc.,                      * June 4, 2013
             Defendant.         * 9:00 A.M.
 7
     *********************************************************
 8
     Hendricks, et al.,         * Civil Docket No.
 9           Plaintiffs,        * 2:12-cv-00606
                                * Marshall, Texas
10   -VS-                       *
                                *
11   UBS Financial Services,    *
     Inc.,                      * June 4, 2013
12           Defendant.         * 9:00 A.M.

13           **************************************
             TRANSCRIPT OF CLASS CERTIFICATION HEARING
14             BEFORE THE HONORABLE ROY S. PAYNE
                 UNITED STATES MAGISTRATE JUDGE
15           **************************************

16   APPEARANCES:

17   FOR THE PLAINTIFFS:    MR. THEODORE CARL ANDERSON, III
                            MR. ROBERT E. GOODMAN, JR.
18                          KILGORE & KILGORE
                            3109 Carlisle, Suite 200
19                          Dallas, Texas  75204

20                          MR. PETER K. STRIS
                            MR. BRENDAN MAHER
21                          STRIS & MAHER, LLP
                            19210 South Vermont Avenue
22                          Building E
                            Gardena, California  90248
23
                            MR. BRIAN BRO
24                          LAW OFFICES OF BRIAN E. BRO
                            3911 Wood Park
25                          Sugar Land, Texas 77479
```

```
 1                            MR. SAMUEL FRANKLIN BAXTER
                             McKOOL SMITH - MARSHALL
 2                           104 East Houston Street
                             Suite 300
 3                           Marshall, Texas  75670

 4   FOR THE DEFENDANTS:     MR. MICHAEL CHARLES SMITH
                             SIEBMAN BURG PHILLIPS & SMITH,LLP
 5                           Post Office Box 1556
                             Marshall, Texas  75671-1556
 6
                             MR. EUGENE SCALIA
 7                           MR. PAUL BLANKENSTEIN
                             MS. JACLYN NICCOLE WARR
 8                           GIBSON, DUNN & CRUTCHER, LLP
                             1050 Connecticut Avenue, N.W.
 9                           Suite 300
                             Washington, D.C.  20036-5306
10

11   COURT REPORTER:         MS. MELISSA J. CARSON, CSR
                             Deputy Official Court Reporter
12                           Post Office Box 551628
                             Dallas, Texas  75355-1628
13                           214.346.3434

14

15

16

17

18
     (Proceedings recorded by mechanical stenography,
19   transcript produced on a CAT system.)

20

21

22

23

24

25
```

**P R O C E E D I N G S**

09:03AM 2          THE COURT:   Good morning.  Please be

09:03AM 3   seated.

09:03AM 4          For the record, we're here for the class

09:03AM 5   certification hearing in the Eddingston and Hendricks

09:03AM 6   matters versus UBS, which are 2:12-422 and 2:12-606

09:03AM 7   respectively.

09:03AM 8          Would Counsel state their appearances for

09:03AM 9   the record?

09:03AM 10          MR. ANDERSON:   Yes, Your Honor.  My name

09:03AM 11   is Ted Anderson; I'm with the law firm of Kilgore &

09:03AM 12   Kilgore.  I'm here on behalf of the Plaintiff.

09:03AM 13          I have with me today, Robert Goodman from

09:03AM 14   my law firm, who is to my left.  Also arguing with me

09:04AM 15   today will be Mr. Peter Stris from the Stris Maher law

09:04AM 16   firm, and Mr. Brendan Maher from the Stris Maher law

09:04AM 17   firm.

09:04AM 18          Mr. Sam Baxter, who is our local Counsel,

09:04AM 19   from McKool Smith, needs no introduction.  And Mr.

09:04AM 20   Brian Bro from the Bro law firm of Houston is also

09:04AM 21   proposed class Counsel in the case, Your Honor.

09:04AM 22          THE COURT:   All right.  Thank you, Mr.

09:04AM 23   Anderson.

09:04AM 24          MR. SMITH:  And Your Honor, for UBS, I'm

09:04AM 25   Michael Smith.  We have from our General Counsel's

09:04AM 1    office, Mr. Stephen Bird.

09:04AM 2              And then from the Gibson Dunn firm, Ms.

09:04AM 3    Nicci Warr, Mr. Eugene Scalia, and Mr. Paul

09:04AM 4    Blankenstein.

09:04AM 5              MR. BLANKENSTEIN:  Good morning, Your

09:04AM 6    Honor.

09:04AM 7              MR. SMITH:  And we're ready to proceed,

09:04AM 8    Your Honor.

09:04AM 9              THE COURT:   All right.  Thank you, Mr.

09:04AM 10   Smith.

09:04AM 11             I know there have been some recent

09:04AM 12   motions filed and we may need to take those up before

09:04AM 13   we start.  When we do start the arguing, what I'd like

09:04AM 14   to do is -- is just to help me understand the issues as

09:05AM 15   much as possible, I'd like to break the argument down

09:05AM 16   into individual sections and hear from both sides on

09:05AM 17   each issue before we move on to the next issue, because

09:05AM 18   I think there are -- the briefs have done a very good

09:05AM 19   job of stating each parties' side, but they don't

09:05AM 20   always answer each other completely and I'd like to

09:05AM 21   have the chance to do that here orally.

09:05AM 22             But are there matters that either side

09:05AM 23   wants to take up before we turn to the argument on the

09:05AM 24   motion?

09:05AM 25             MR. ANDERSON:   Your Honor, on behalf of

09:05AM 1   the Plaintiffs, we have filed and reurged our Amended

09:05AM 2   Motion for Continuance.  We are requesting that, at an

09:05AM 3   abundance of caution, because if the Court today

09:05AM 4   believes that we need to get to the merits of whether

09:05AM 5   or not the PartnerPlus Plan is, in fact, a retirement

09:05AM 6   plan covered by ERISA, we simply have not had enough

09:06AM 7   time or opportunity to obtain the discovery that we

09:06AM 8   need on the facts and circumstances that surround how

09:06AM 9   the PartnerPlus Plan was operated.

09:06AM 10          We don't think that the Court needs to

09:06AM 11  reach that issue today and so with the Court's

09:06AM 12  indulgence, I would like to reserve the hearing on that

09:06AM 13  motion until after we proceed through the class action

09:06AM 14  issues.  If at that time the Court wants to hear us, we

09:06AM 15  will reurge it again.

09:06AM 16          And just to remind the Court, we had

09:06AM 17  filed and were here last Tuesday on a Motion for

09:06AM 18  Continuance and your order from the bench was that you

09:06AM 19  would permit us to reurge it today, if need -- if need

09:06AM 20  be.

09:06AM 21          THE COURT:  It's your motion, so if you

09:06AM 22  want to withhold argument until after the hearing, I --

09:06AM 23  I don't have a problem accommodating that request.

09:06AM 24          MR. ANDERSON:  Thank you, Your Honor.

09:06AM 25          THE COURT:  All right.  Are there any

09:06AM 1    other matters we need to take up before we start?

09:07AM 2              MR. ANDERSON:    Nothing else, Your Honor,

09:07AM 3    from the Plaintiff.

09:07AM 4              MR. SMITH:    The only issue we would have

09:07AM 5    is a procedural one, Your Honor, how the Court wanted

09:07AM 6    to handle the exhibits for the hearing.

09:07AM 7              For our part we already have a lion's

09:07AM 8    share of our exhibits before the Court in the record.

09:07AM 9    We will be bringing a disk to the Court shortly, per

09:07AM 10   your instructions at the last hearing, to add the --

09:07AM 11   some additional plans and the deposition excerpts that

09:07AM 12   we've referenced.  But we've -- how that's handled is

09:07AM 13   just at the Court's pleasure.

09:07AM 14             THE COURT:    All right.  Are there

09:07AM 15   objections to the exhibits that each side wants to

09:07AM 16   offer at this hearing?

09:07AM 17             MR. ANDERSON:    I don't believe so, Your

09:07AM 18   Honor.  The only objections that we have is with regard

09:07AM 19   to the expert opinion that is the issue that we brought

09:07AM 20   up to you previously.

09:07AM 21             THE COURT:    All right.  And the -- with

09:07AM 22   respect to the opinions themselves, I think the issue

09:07AM 23   we addressed last week had to do with whether or not

09:08AM 24   disclosures had been proper and whether there were

09:08AM 25   timing issues that would prevent those opinions from

09:08AM 1    being offered.  And I ruled and will continue to rule

09:08AM 2    that the objections are not well-founded on that issue.

09:08AM 3                    Anything else on that that we need to

09:08AM 4    take --

09:08AM 5                    MR. ANDERSON:  Your Honor, the -- the

09:08AM 6    remaining objection has to do with the relevance of the

09:08AM 7    expert opinions and whether or not they are relevant at

09:08AM 8    this stage of the class action.  It is our belief that

09:08AM 9    a determination as to whether or not the PartnerPlus

09:08AM 10   Plan is, in fact, a retirement plan covered by ERISA is

09:08AM 11   a merits issue.

09:08AM 12                   Both of the expert opinions that have

09:08AM 13   been offered by the Defendants go directly to that

09:08AM 14   point.  In fact, on the first pages of their expert

09:09AM 15   opinions, they say those very things.  And again, we

09:09AM 16   have just not had -- we don't believe it's appropriate

09:09AM 17   at this stage of the class certification stage and

09:09AM 18   if -- if it is relevant, then we need a partial

09:09AM 19   continuance so that we can cross-examine their experts,

09:09AM 20   get expert opinions for rebuttal, and then to get

09:09AM 21   merits discovery of the circumstances that surround how

09:09AM 22   the PartnerPlus Plan was administered under the

09:09AM 23   circumstances.

09:09AM 24                   THE COURT:  All right.  The --

09:09AM 25                   MR. ANDERSON:  And we filed a written

09:09AM 1    objection that I incorporate as well, Your Honor.

09:09AM 2                    THE COURT:    With respect to the issue of

09:09AM 3    relevance, while I do not believe that it's necessary

09:09AM 4    for the Court to determine finally at this hearing

09:09AM 5    whether ERISA covers this plan, I -- I can't say that

09:10AM 6    the issue is not relevant and I'll overrule that

09:10AM 7    objection.

09:10AM 8                    Mr. Scalia?

09:10AM 9                    MR. SCALIA:    Just briefly, Your Honor.

09:10AM 10   First, we do not have objections to the revised exhibit

09:10AM 11   list that was filed by the Plaintiffs last night.  And

09:10AM 12   Your Honor, since Mr. Anderson has now spent a few

09:10AM 13   minutes reurging certain points with regard to the

09:10AM 14   expert declarations, I'll just say this, he referred to

09:10AM 15   it as a merits issue and, Your Honor, that's a red

09:10AM 16   herring.

09:10AM 17                   We don't think it is necessary for the

09:10AM 18   Court, as this case is now postured, to delve equally

09:10AM 19   into the so-called merits issues.  But it's actually

09:10AM 20   been extraordinary that a class of Plaintiffs are

09:10AM 21   before you and don't want to talk about the merits of

09:10AM 22   their case.  Ordinarily in my experience in a

09:10AM 23   discrimination case, for example, Plaintiffs' Counsel

09:10AM 24   is -- is -- there's nothing more fervent about it than

09:10AM 25   advocating the merits of the case.  So it is -- it is

09:11AM 1    unusual.  Why they're running from the merits, I think
09:11AM 2    I know why, but it's -- I just think that it's unusual.
09:11AM 3            And finally, Your Honor, the suggestion
09:11AM 4    that if something touches upon the merits is taboo and
09:11AM 5    the Court can't go near it, is just flatly inconsistent
09:11AM 6    with what the Supreme Court has now said in 2011, 2013.
09:11AM 7    And we'll get to this later, but just for the record,
09:11AM 8    what this reflects is a  real misunderstanding by
09:11AM 9    Plaintiffs' Counsel about what is fair game and what's
09:11AM 10   not in a classification hearing.  So I just put that
09:11AM 11   marker down now and I think we'll be hearing that error
09:11AM 12   replicated later this morning.
09:11AM 13           THE COURT:  All right.  And thank you,
09:11AM 14   Mr. Scalia.  I will say that I -- I believe that the
09:11AM 15   Plaintiffs have fairly thoroughly addressed their
09:11AM 16   position on ERISA coverage, if that's the merits issue
09:11AM 17   we're talking about, in their briefing.  And I don't
09:11AM 18   understand their objection to be discussing that issue
09:11AM 19   at this hearing, but rather concluding that issue at
09:12AM 20   this hearing.  But to the extent that they don't want
09:12AM 21   to talk about it, they'll be disappointed in that we're
09:12AM 22   going to allow you to talk about it, so --
09:12AM 23           MR. SCALIA:  Thanks, Your Honor.
09:12AM 24           THE COURT:  -- the -- all right.  So with
09:12AM 25   respect to the exhibits, then, it's my understanding

09:12AM 1 that there are no objections to the exhibits listed by

09:12AM 2 each side on their final exhibit list and those will be

09:12AM 3 deemed admitted.  I guess I want to make sure that we

09:12AM 4 have those final exhibit lists in the record.  Have --

09:12AM 5                 MR. ANDERSON:  Your Honor --

09:12AM 6                 THE COURT:  -- they been filed?

09:12AM 7                 MR. ANDERSON:  Your Honor, I believe

09:12AM 8 that we have filed Plaintiffs' Exhibits 1 through 50 on

09:12AM 9 yesterday -- yesterday afternoon.  So if they are not

09:12AM 10 with the Court, we will check before the close of

09:12AM 11 today's hearing and make sure that they are before the

09:13AM 12 Court.

09:13AM 13                 THE COURT:  Those were e-filed; is that

09:13AM 14 right or --

09:13AM 15                 MR. ANDERSON:  No, we sent over hard

09:13AM 16 copies --

09:13AM 17                 THE COURT:  Okay.

09:13AM 18                 MR. ANDERSON:  -- and a CD.

09:13AM 19                 THE COURT:  Okay.

09:13AM 20                 MR. ANDERSON:  So you should have

09:13AM 21 binders of the exhibits.  And we -- Judge, we reduced

09:13AM 22 it by two-thirds, so --

09:13AM 23                 THE COURT:  Well, I would -- my only

09:13AM 24 quibble would then be with the word filed.  They --

09:13AM 25 those have been tendered, I take it, to chambers, is

09:13AM 1  what you're saying?

09:13AM 2  MR. ANDERSON:  Yes, Your Honor.

09:13AM 3  THE COURT:  Okay.  Then we will proceed

09:13AM 4  to file them into the record at this time.  And you say

09:13AM 5  that's Plaintiffs' Exhibits 1 through 50?

09:13AM 6  MR. ANDERSON:  Yes, Your Honor.

09:13AM 7  THE COURT:  Okay.  And -- and those are

09:13AM 8  admitted without objection, Mr. Scalia; is that right?

09:13AM 9  MR. SCALIA:  That's correct, Your Honor.

09:13AM 10  THE COURT:  All right.  And Mr. Scalia,

09:13AM 11  what about your objections or Mr. Smith, whoever wants

09:13AM 12  to address that?

09:14AM 13  MS. WARR:  Your Honor, we have -- we're

09:14AM 14  relying on several of the exhibits that were appended

09:14AM 15  to the briefs that we filed, so those have been filed

09:14AM 16  with the Court.  And we also have for you a CD that

09:14AM 17  contains the deposition transcript excerpts that we're

09:14AM 18  relying on, as well as some additional compensation and

09:14AM 19  early classic plans that are identified in our exhibit

09:14AM 20  list and we'll have hard copies for you here today as

09:14AM 21  well.

09:14AM 22  THE COURT:  So all of the exhibits that

09:14AM 23  the Defendant is relying upon have either been e-filed

09:14AM 24  or are on the disk that Mr. Smith has?

09:14AM 25  MS. WARR:  Correct, Your Honor.

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 09:14AM  | 1  | THE COURT:  All right.  Mr. Smith, if                        |
| 09:14AM  | 2  | you could tender one to the clerk and do you have a          |
| 09:14AM  | 3  | copy also that -- that you have tendered to the other        |
| 09:14AM  | 4  | side?                                                        |
| 09:14AM  | 5  | MR. SMITH:  I can do so now, Your Honor.                     |
| 09:14AM  | 6  | THE COURT:  Okay.  I always like to see                      |
| 09:14AM  | 7  | it done.  There's something reassuring about that.           |
| 09:15AM  | 8  | Well, Counsel has spent more time on this                    |
| 09:15AM  | 9  | than I have, but unless you have a preferred way to          |
| 09:15AM  | 10 | approach it, we can just approach it on an                   |
| 09:15AM  | 11 | element-by-element basis starting with Rule 23(a) and        |
| 09:15AM  | 12 | work through the -- the numbered sections of that.  You      |
| 09:15AM  | 13 | pretty much briefed it that way, I think, but --             |
| 09:15AM  | 14 | MR. ANDERSON:  Yes.                                          |
| 09:15AM  | 15 | THE COURT:  -- I'm quite happy if -- if                      |
| 09:15AM  | 16 | either side thinks it's more efficient to proceed in         |
| 09:15AM  | 17 | another way, to do that.                                     |
| 09:15AM  | 18 | MR. ANDERSON:  Your Honor, I just want                       |
| 09:15AM  | 19 | to make sure the record is clear, that the deposition        |
| 09:15AM  | 20 | excerpts that have been tendered by the Plaintiff have       |
| 09:15AM  | 21 | also been admitted into evidence.                            |
| 09:15AM  | 22 | THE COURT:  And are those lists included                     |
| 09:15AM  | 23 | in your Exhibits 1 through 50?                                |
| 09:15AM  | 24 | MR. ANDERSON:  I -- I don't --                               |
| 09:15AM  | 25 | MR. GOODMAN:  It's a separate --                             |

09:15AM 1                    MR. ANDERSON:  -- it's a separate -- it's

09:15AM 2  a separate group of documents that we've -- that we

09:15AM 3  tendered to the Court yesterday afternoon.

09:15AM 4                    THE COURT:  Okay.  And those are

09:16AM 5  tendered in hard copy and on a disk?

09:16AM 6                    MR. ANDERSON:  Yes, Your Honor.

09:16AM 7                    THE COURT:  Mr. Smith, do you have

09:16AM 8  receipt of those?

09:16AM 9                    MR. SMITH:  We do, Your Honor.  The

09:16AM 10  deposition excerpts that we have submitted actually are

09:16AM 11  complete copies of the deposition with both sides

09:16AM 12  excerpts included, so we do have those.  We have no

09:16AM 13  objection to the -- to the offer that they've made.

09:16AM 14                    THE COURT:  In other words, you've

09:16AM 15  highlighted in some fashion the portions that each side

09:16AM 16  wants?

09:16AM 17                    MR. SMITH:  Yes, Your Honor.

09:16AM 18                    THE COURT:  Okay.  Then I trust that's

09:16AM 19  the answer to your question, Mr. Anderson, but you

09:16AM 20  might want to have someone on your side verify that, in

09:16AM 21  fact, your designations are included in what they've

09:16AM 22  tendered, but --

09:16AM 23                    MR. ANDERSON:  Will do.  Will do so,

09:16AM 24  Your Honor.  I have no reason to suspect that it's

09:16AM 25  anything other than that.

|          |    |
|----------|----|
| 09:16AM  | 1  | THE COURT: Well, if you find out even |
| 09:16AM  | 2  | after the hearing that that's true, we can easily |
| 09:16AM  | 3  | remedy that. But I -- I would like to just look at one |
| 09:17AM  | 4  | copy of those depositions and if -- if the Defendant |
| 09:17AM  | 5  | has highlighted both sides' portions on their copies, |
| 09:17AM  | 6  | then I -- my preference would be to use their copies if |
| 09:17AM  | 7  | the Plaintiffs don't have the Defendant's highlighted. |
| 09:17AM  | 8  | MR. ANDERSON: We will work with |
| 09:17AM  | 9  | opposing Counsel to make sure that you just have one |
| 09:17AM  | 10 | set of deposition excerpts to -- |
| 09:17AM  | 11 | THE COURT: Okay. Well, that's good. |
| 09:17AM  | 12 | If you determine that there's any problem, I think we |
| 09:17AM  | 13 | can easily remedy it, but we'll proceed in that fashion |
| 09:17AM  | 14 | and your designated deposition excerpts are admitted as |
| 09:17AM  | 15 | well. |
| 09:17AM  | 16 | Mr. Scalia? |
| 09:17AM  | 17 | MR. SCALIA: Yes, just a point of |
| 09:17AM  | 18 | clarification in terms of the order of argument, Your |
| 09:17AM  | 19 | Honor, you mentioned beginning with 23(a), which |
| 09:17AM  | 20 | naturally comes before (b). We would regard the waiver |
| 09:17AM  | 21 | issue itself is part of 23(a), it's a very important |
| 09:18AM  | 22 | threshold issue relating to the waiver, so -- |
| 09:18AM  | 23 | THE COURT: All right. |
| 09:18AM  | 24 | MR. SCALIA: -- that would be our |
| 09:18AM  | 25 | intention, if it's approved by the Court. |

09:18AM 1                    THE COURT:  Certainly.  I definitely

09:18AM 2    want argument on the waiver issue as well.

09:18AM 3                    So I'm willing to start, then.  Mr.

09:18AM 4    Anderson, do you want to --

09:18AM 5                    MR. ANDERSON:  Yes, Your Honor.  Your

09:18AM 6    Honor, we have a PowerPoint presentation that we have

09:18AM 7    prepared.  I've got copies of the PowerPoint that I'd

09:18AM 8    like to -- it's purely demonstrative evidence.  We're

09:18AM 9    not in any way alleging that it is evidence, but we'd

09:18AM 10   like to tender a copy to the Court and to the other

09:18AM 11   side as well.

09:18AM 12                   And I think, understanding what the Court

09:18AM 13   would like us to do, it's basically the first part of

09:18AM 14   it is just kind of a background where we talk about

09:18AM 15   just background elements and then we would proceed with

09:18AM 16   23(a).  And then I -- I take it that at that point we

09:18AM 17   may, after we are done with our presentation on 23(a),

09:18AM 18   Mr. Stris has argument with regard to the waiver issue

09:19AM 19   that is being raised by Mr. Scalia.  And so I'll let

09:19AM 20   Mr. Stris address that particular part of it and then

09:19AM 21   I'll stop -- we'll stop there and allow them to -- to

09:19AM 22   argue that issue so then it's before the Court.

09:19AM 23                   THE COURT:  Okay.

09:19AM 24                   MR. STRIS:  May I approach, Your Honor?

09:19AM 25                   THE COURT:  Yes.

09:19AM 1        MR. Stris:  One for the Court, one for

09:19AM 2 you.

09:19AM 3        THE COURT:  Let me get copies for

09:19AM 4 Counsel.

09:19AM 5        MR. SMITH:  Your Honor, I -- I apologize,

09:19AM 6 the Defendant's slide shows only nine slides, but we're

09:19AM 7 happy to hand them a copy of that as well.

09:19AM 8        MR. SCALIA:  Michael, I'm sorry, not

09:19AM 9 this page.

09:19AM 10        MR. SMITH:  Oh, okay.

09:19AM 11        MR. ANDERSON:  May it please the Court.

09:20AM 12 My name is Ted Anderson and I'm speaking on behalf of

09:20AM 13 the Plaintiffs in both of the class action proceedings

09:20AM 14 before the Court and we will address all issues

09:20AM 15 together as we proceed, unless requested otherwise by

09:20AM 16 the Court.

09:20AM 17        I think the first background point that I

09:20AM 18 would like to make is to look at the time period and

09:20AM 19 what was going on at UBS, the Defendant in this case,

09:20AM 20 back prior to the end of the class period that we

09:20AM 21 proposed, which was January 1, 2011.  And what we know

09:20AM 22 is that in July of 2007, we asked the Court to take

09:20AM 23 judicial notice of number 06-405236, NY versus UBS

09:20AM 24 Financial Services, Inc., the New York Supreme Court,

09:20AM 25 that there was a announced settlement by UBS that refer

09:21AM 1    -- that pertained to placing inappropriate customers in

09:21AM 2    fee-based accounts.

09:21AM 3              We know that in August of 2008, which was

09:21AM 4    truly the advent of the stock market crash during that

09:21AM 5    time period, the auction rate securities market froze

09:21AM 6    and became illiquid.

09:21AM 7              THE COURT:   Mr. Anderson, which of the

09:21AM 8    issues on certification do these background facts

09:21AM 9    relate to?

09:21AM 10             MR. ANDERSON:   Your Honor, the -- it

09:21AM 11   pertains to the issue of whether or not the -- the

09:21AM 12   PartnerPlus Plan was something that was being operated

09:21AM 13   as a retirement plan or whether or not it was something

09:21AM 14   that was designed to give UBS the opportunity to use

09:21AM 15   beneficiary funds for investments.  It also has to do

09:21AM 16   with the issue as to why it was that there was a mass

09:22AM 17   exodus of class members during this time period.

09:22AM 18             THE COURT:   All right.  And the -- and

09:22AM 19   how does why the class members left, how does that

09:22AM 20   relate to what I've got to decide?

09:22AM 21             MR. ANDERSON:   Well, there have been

09:22AM 22   issues raised by the Defendants as to whether or not

09:22AM 23   they were leaving because they were being lured away by

09:22AM 24   competitors and whether or not and -- and for the

09:22AM 25   specific purpose as to why the plan was -- was

09:22AM 1 designed.  Their experts say in their opinions that the

09:22AM 2 plans were designed to create deferred income.  And we

09:22AM 3 think that the issue -- the purpose of the plan was to

09:22AM 4 give them access to PartnerPlus Plan funds.

09:22AM 5 THE COURT:   And is that a fact that you

09:22AM 6 have pled anywhere?

09:22AM 7 MR. ANDERSON:   It is a -- the fact that

09:22AM 8 the PartnerPlus Plan is a retirement plan is a fact

09:23AM 9 that we have pled.

09:23AM 10 THE COURT:   Okay.  I -- I mean, the --

09:23AM 11 the allegation that UBS' purpose was to get access to

09:23AM 12 these funds for some unrelated purpose.

09:23AM 13 MR. ANDERSON:   Your Honor, it goes --

09:23AM 14 it's -- it's the Defendant's position that it is not a

09:23AM 15 plan because the purpose is for something -- it's to

09:23AM 16 create a plan for deferred compensation as opposed to a

09:23AM 17 retirement plan, which would require that they have a

09:23AM 18 separate bank account where the funds are isolated and

09:23AM 19 can't be used for anything other than retirement.  And

09:23AM 20 so it is just a challenge to that.

09:23AM 21 I don't know that it's an issue that has

09:23AM 22 to be litigated here today, but I was just trying to

09:23AM 23 suggest to the Court some background information and a

09:23AM 24 challenge to this issue as to what the purpose of the

09:23AM 25 PartnerPlus Plan was.

|       |    |                                                      |
|-------|----|------------------------------------------------------|
| 09:24AM | 1  | THE COURT:  Mr. Scalia?                             |
| 09:24AM | 2  | MR. SCALIA:  I'll just object on                   |
| 09:24AM | 3  | relevance ground, Your Honor, and the fact that this |
| 09:24AM | 4  | was not raised previously.  I'll note that -- we'll see |
| 09:24AM | 5  | its inconsistency, I think, in the course of the   |
| 09:24AM | 6  | morning.  Mr. Anderson just reintroduced the ERISA |
| 09:24AM | 7  | issue, which under the circumstances he's fled from. |
| 09:24AM | 8  | And finally, I assume there are some limitations on the |
| 09:24AM | 9  | amount of time that Plaintiffs will have to make this |
| 09:24AM | 10 | presentation and that the extent they wish to dwell on |
| 09:24AM | 11 | matters such as this, which strike me as irrelevant, |
| 09:24AM | 12 | they will not be afforded extra time to address the |
| 09:24AM | 13 | issues that are actually important to us.           |
| 09:24AM | 14 | THE COURT:  Well, thank you, Mr. Scalia.           |
| 09:24AM | 15 | Mr. Anderson, I -- I think that this is             |
| 09:24AM | 16 | highly inflammatory and marginally relevant and I -- I |
| 09:24AM | 17 | would ask you to move on to the -- to the issues that I |
| 09:24AM | 18 | have to decide at this hearing.                     |
| 09:24AM | 19 | MR. ANDERSON:  I will, Your Honor.                 |
| 09:24AM | 20 | THE COURT:  Thank you.                             |
| 09:24AM | 21 | MR. ANDERSON:  Moving on, I'm going to             |
| 09:25AM | 22 | move over to Slide No. 4.  Basically with regard to the |
| 09:25AM | 23 | burden of the class certification, it's -- really the |
| 09:25AM | 24 | burden is on Plaintiffs only to establish compliance |
| 09:25AM | 25 | with the requirements of Rule 23, that the requirements |

09:25AM 1    are met.  There's -- there's no discretion to deny

09:25AM 2    certification and benefit of the doubt is to be given

09:25AM 3    the certification.

09:25AM 4              I'll move to Rule 23(a) requirements.

09:25AM 5    First, we -- there are four requirements under Rule

09:25AM 6    23(a).  The class --

09:25AM 7              THE COURT:  Let me stop you one minute.

09:25AM 8    I -- and maybe you have authority for this in your

09:25AM 9    brief about the benefit of the doubt.  That's the only

09:25AM 10   principle you've mentioned that isn't apparent to me,

09:25AM 11   it -- and would help me if you could give me a quick

09:25AM 12   cite on that.  That seems to be a little different than

09:25AM 13   the rigorous analysis requirements that the Supreme

09:26AM 14   Court has talked about lately.

09:26AM 15             MR. GOODMAN:  I'll do that, Your Honor.

09:26AM 16             THE COURT:  Okay.  See, I always like

09:26AM 17   these standards when I first give the benefit of the

09:26AM 18   doubt to something.

09:26AM 19             MR. GOODMAN:  Your Honor, may I give you

09:26AM 20   some citations?

09:26AM 21             THE COURT:  Yes.

09:26AM 22             MR. GOODMAN:  Recent one in the Northern

09:27AM 23   District is Hamilton versus First American Title

09:27AM 24   Insurance Company, 266 F.R.D. 153.  Another one from

09:27AM 25   this Court is a decision, Biwaters versus US, 196

09:27AM 1 F.R.D. 458, which is 2000. So those two decisions are

09:27AM 2 from 2000 and 2010 respectively citing other cases in

09:27AM 3 both instances.

09:27AM 4          THE COURT:   All right.  Thank you.

09:27AM 5 That's -- that's helpful.

09:27AM 6          MR. ANDERSON:   With regard to Rule

09:27AM 7 23(a), Your Honor, Plaintiffs have to -- have to show

09:27AM 8 that the class of employees who have been subject to

09:27AM 9 Defendant's wrongful conduct is so numerous that

09:27AM 10 joinder of all members is impracticable.

09:27AM 11          Two, that there are questions of fact or

09:27AM 12 law common to the class.

09:27AM 13          Three, that the claim of the Plaintiffs

09:27AM 14 is typical of the claim of the class.

09:27AM 15          And four, the Plaintiffs and their

09:28AM 16 Counsel will fairly and adequately protect the

09:28AM 17 interests of the class.

09:28AM 18          We then move to Rule 23(b), which I will

09:28AM 19 postpone for the time being --

09:28AM 20          THE COURT:  Yeah.

09:28AM 21          MR. ANDERSON:   -- so that we can move on

09:28AM 22 to really just going through the 23(a) issues.  I'm

09:28AM 23 going to defer to Mr. Stris to address those issues.

09:28AM 24          THE COURT:   And frankly, maybe we should

09:28AM 25 start the analysis with the class definition that's

09:28AM 1   been proposed.  I've got some questions about that.

09:28AM 2   And if Mr. Stris is the one to talk about that, then

09:28AM 3   that would be great.

09:28AM 4             MR. ANDERSON:   Thank you, Your Honor.

09:28AM 5             MR. STRIS:   Good morning, Your Honor.

09:28AM 6             THE COURT:  Good morning.

09:28AM 7             MR. STRIS:  I'm happy to start there.

09:28AM 8             THE COURT:   The one concern I have about

09:28AM 9   the proposed class definition is the second clause in

09:28AM 10  it, basically, that starts:  And who are alleged by

09:29AM 11  Defendant to have forfeited.  You know, the -- I think

09:29AM 12  the most important part of the class definition is to

09:29AM 13  provide ready notice to the world as to who is in and

09:29AM 14  out and particularly to the putative class members

09:29AM 15  themselves.

09:29AM 16        And so any time the class definition

09:29AM 17  incorporates a legal conclusion that -- that might be

09:29AM 18  hard or absent putative class members to understand, it

09:29AM 19  concerns me.  What -- what is the function of -- of

09:29AM 20  that clause in your definition?

09:29AM 21        MR. STRIS:   Yeah, I understand certainly

09:29AM 22  where you're coming from.  I think it may just be a

09:29AM 23  semantic issue, though.  What -- the way we've defined

09:29AM 24  the class was intended to be objective.  And so let me

09:29AM 25  explain what I mean by that.

09:29AM 1          The first element, for lack of a better

09:30AM 2   word, is that we're talking about former employees of

09:30AM 3   UBS who left before a date certain, January 1st, 2011.

09:30AM 4   So I think we all can agree that that's objective and

09:30AM 5   clear.

09:30AM 6          The second element is what I, if I were

09:30AM 7   just talking in kind of lay parlance, would say our

09:30AM 8   employees who forfeited money.  They left UBS.  They

09:30AM 9   had money that UBS claimed was unvested and they didn't

09:30AM 10  get it.  The reason the language that's used there is

09:30AM 11  alleged to have forfeited is just in an abundance of

09:30AM 12  caution; in other words, we don't believe that they

09:30AM 13  actually forfeited it.

09:30AM 14         But it's really a very straight forward

09:30AM 15  from a notice perspective, it's really a very straight

09:30AM 16  forward definition.  We're saying number one, you had

09:30AM 17  to have left before January 1st, 2011.  Number two, UBS

09:30AM 18  had to take the position that you forfeited the money

09:30AM 19  and you didn't get it.  And number three, you had to be

09:30AM 20  the kind of person where if this was an ERISA plan, the

09:31AM 21  forfeiture would have been impermissible.

09:31AM 22         THE COURT:  Doesn't that require the

09:31AM 23  putative class members to have some understanding of

09:31AM 24  what ERISA does?  How -- how would they know that if

09:31AM 25  the plan was governed by ERISA it would not have been

09:31AM 1 forfeitable?

09:31AM 2 MR. STRIS: From a notice perspective

09:31AM 3 you may be right and it may be unnecessary or

09:31AM 4 gratuitous. In other words, the -- from a notice

09:31AM 5 perspective, we're looking to define a class that's

09:31AM 6 pegged by two markers. You -- you left before January

09:31AM 7 1st, 2011, number one; and number two, you forfeited

09:31AM 8 money.

09:31AM 9 The problem is if we only use those two

09:31AM 10 markers, there may be, and I would -- I confess,

09:31AM 11 there's probably not enough evidence in the record to

09:31AM 12 prove this, but my strong instinct, having taken the

09:31AM 13 30(b)(6) deposition in this case, is that there may be

09:32AM 14 a very small amount of forfeitures that former

09:32AM 15 employees of UBS suffered on other grounds.

09:32AM 16 And I'll give you an example, Your Honor.

09:32AM 17 When I took the deposition, Mr. Levitan explained to me

09:32AM 18 that you could forfeit money for cause. So you know, I

09:32AM 19 don't mean to be -- give an -- you know, a salacious

09:32AM 20 example, but if you left UBS before January 1st, 2011,

09:32AM 21 and you left because they alleged that you tried to

09:32AM 22 kill someone, you forfeited -- you would have forfeited

09:32AM 23 your entitlement and we're not trying to encompass

09:32AM 24 people like that in the class.

09:32AM 25 So in an abundance of caution, we put

09:32AM 1    this third marker, which is it is someone who forfeited

09:32AM 2    the money because ERISA's vesting schedule was not

09:32AM 3    complied with.  And I think it's an appropriate class

09:32AM 4    definition from a -- from a notice perspective, but a

09:32AM 5    lot of that is going to go to the type of class at

09:33AM 6    issue here.  In other words, maybe the -- maybe the

09:33AM 7    simplest answer I have to your question is if, as I

09:33AM 8    believe, a Rule 23(b)(2) class is certified, then it

09:33AM 9    will make the situation very easy because we'll have

09:33AM 10   litigation over whether there should be an injunction.

09:33AM 11   And if an injunction is imposed that prohibits UBS

09:33AM 12   from, essentially, treating their retirement plan as a

09:33AM 13   nonretirement plan, then you would get to the issue of

09:33AM 14   the consequences of that.

09:33AM 15           But I understand your point, Your Honor,

09:33AM 16   in terms of having a clear definition so that people

09:33AM 17   know whether they are in or not in the class.

09:33AM 18           THE COURT:  Well, can you think of

09:33AM 19   language that would simply refer to what happened to

09:33AM 20   their funds that would not involve a conclusion about

09:33AM 21   how it would have been treated under ERISA?

09:34AM 22           MR. STRIS:  Yes.  Instead of make --

09:34AM 23   instead of phrasing it in terms of the legal

09:34AM 24   conclusion, what we could do is take the discrete

09:34AM 25   objective words in ERISA and put them in.  So it would

09:34AM 1  not -- it would just be much longer.

09:34AM 2  So in other words, the first marker would

09:34AM 3  be leaving before 2011.  The second marker would be

09:34AM 4  monies forfeited; and the third -- the third marker, I

09:34AM 5  guess it would link to the second, is forfeited because

09:34AM 6  the employee -- because the employee participated in

09:34AM 7  the plan for described time period.

09:34AM 8  In other words, you -- I -- I think -- I

09:34AM 9  can't do it off-the-cuff, it's a little bit

09:34AM 10  challenging, but certainly if I had, you know, a half

09:34AM 11  an hour, I could sit down and rewrite that language so

09:34AM 12  that instead of being linked to the -- the legal

09:34AM 13  conclusion, i.e., compliance with ERISA, it would be

09:34AM 14  linked to an objective standard phrased in terms of

09:35AM 15  number of years.  I think that would entirely solve the

09:35AM 16  problem that you've described.  The downside is it

09:35AM 17  would be much longer, but you know, we would be happy

09:35AM 18  to do that.

09:35AM 19  THE COURT:  What if it was something

09:35AM 20  along the lines of and who forfeited some portion of

09:35AM 21  their PartnerPlus accounts due to the vesting

09:35AM 22  provisions?  I don't know, something...

09:35AM 23  MR. STRIS:  Well, I mean, we would have

09:35AM 24  no problem with that.  I'm not sure that it solves the

09:35AM 25  -- the -- I'm not sure that it completely obviates

09:35AM 1   the --

09:35AM 2              THE COURT:  Well, in other words, there

09:35AM 3   may be people in a putative class who end up not being

09:35AM 4   entitled to relief or not being entitled to complete

09:35AM 5   relief, but that's just one of the consequences of a

09:36AM 6   class action.  But I -- in any event, that's a concern

09:36AM 7   I have.  So I'll just leave it out there and that's

09:36AM 8   something that -- that your side will need to address.

09:36AM 9              I also want to talk about, there's the

09:36AM 10  issue about the statute of limitations.

09:36AM 11             MR. STRIS:  Yes.

09:36AM 12             THE COURT:  And you have phrased --

09:36AM 13  framed this as a class with no beginning date.  Is

09:36AM 14  there some reason that you have done that?

09:36AM 15             MR. STRIS:  Yes.

09:36AM 16             THE COURT:  Tell me about it.

09:36AM 17             MR. STRIS:  So I'm going to answer that

09:36AM 18  question and it's going to necessarily bleed into some

09:36AM 19  argumentation on the statute of limitations issue, if

09:36AM 20  you don't mind.

09:36AM 21             THE COURT:  I don't mind.

09:36AM 22             MR. STRIS:  Okay.  So let me put it this

09:36AM 23  way, Rule 23(a) there's four requirements.  There's

09:36AM 24  numerosity; everyone agrees that applies here.

09:37AM 25             There's commonality.  I think that

09:37AM 1  essentially UBS has conceded that because the case

09:37AM 2  comes down to three legal issues that apply the same to

09:37AM 3  everyone.

09:37AM 4           Then we have typicality and adequacy.

09:37AM 5  And essentially the -- the defense that UBS has put

09:37AM 6  forward is because of statute of limitations,

09:37AM 7  in-service distributions, and releases, there's no

09:37AM 8  adequacy and typicality.  So I just want to get that

09:37AM 9  out there because those are kind of three points of

09:37AM 10 joinder that I think we'll have to take up today.

09:37AM 11          On the issue of statute of limitations,

09:37AM 12 we have two distinct arguments and they're going to

09:37AM 13 relate to the question you just asked me about why we

09:37AM 14 defined the class the way we did.  Our primary argument

09:37AM 15 is this, Your Honor, we believe that UBS is completely

09:37AM 16 wrong in terms of their -- their concept of accrual.

09:37AM 17 In other words, we think they're wrong about when under

09:37AM 18 ERISA a claim like this accrues.

09:37AM 19          We believe that under the correct accrual

09:38AM 20 rule, every single class member's claim is timely and

09:38AM 21 that we essentially can go back to the beginning of the

09:38AM 22 operation of this plan.  So in other words, the plan

09:38AM 23 was put into place in 1995.  If someone forfeited money

09:38AM 24 in 1996, '97, '98, we believe that all of those claims

09:38AM 25 are timely.

09:38AM 1        So in other words, we've defined the
09:38AM 2  class as people who left UBS before 2011 and if our
09:38AM 3  position on statute of limitations prevails, the class
09:38AM 4  would go back to the beginning of this plan.  And I'll
09:38AM 5  -- I can get to that argument in a minute, but I -- I
09:38AM 6  kind of just want to lay out our position first.
09:38AM 7        We have an alternative argument and if we
09:38AM 8  are -- if we're forced to rely on our alternative
09:38AM 9  argument, it would admittedly narrow the length of the
09:38AM 10 class and permit the Court to -- to bind not only the
09:38AM 11 outer boundary, but the -- the -- the beginning point.
09:38AM 12 Our alternative argument is that even under the line of
09:39AM 13 accrual cases that my friend from UBS have cited, which
09:39AM 14 we think are inapplicable, there's no statute of
09:39AM 15 limitations problem because the Fifth Circuit has very
09:39AM 16 clear authority that would establish that the relevant
09:39AM 17 accrual date in this case would be the point of
09:39AM 18 forfeiture, so the point at which people left UBS.
09:39AM 19        And again, I'm just previewing.  When we
09:39AM 20 get to the argument, I can address it.  But under --
09:39AM 21 under our alternative argument, the statute of
09:39AM 22 limitations would run from when people left UBS.  And
09:39AM 23 then we get to the question of, well, what is the
09:39AM 24 accrual period, if you borrow the -- I'm sorry, what is
09:39AM 25 the limitations period.  So if you borrowed the statute

09:39AM 1 of limitations from each state, which is the position

09:39AM 2 we would take, and we don't think that that in any way

09:39AM 3 eliminates the ability of this case to proceed as a

09:39AM 4 class, you essentially would -- would have a class

09:39AM 5 defined by X number of years before the lawsuit was

09:39AM 6 filed, but the X number of years would differ, it would

09:40AM 7 be three years in the shortest state, to longer periods

09:40AM 8 in other states.

09:40AM 9 So anyway, I guess the short answer to

09:40AM 10 your question is we've defined the class the way we

09:40AM 11 have because we believe under the correct

09:40AM 12 interpretation of the statute of limitations in this

09:40AM 13 case, there is no outer boundary. Anyone who forfeited

09:40AM 14 money under this plan would still have a timely claim

09:40AM 15 because UBS has consistently denied that this is an

09:40AM 16 ERISA plan. And so the -- the relevant operative facts

09:40AM 17 that go to the question of facts and circumstances did

09:40AM 18 not come out and were not available to any class member

09:40AM 19 until well into this lawsuit.

09:40AM 20 THE COURT: I think that's a really

09:40AM 21 tough position to take, that somebody who suffered a

09:40AM 22 forfeiture well in the past, back longer ago than the

09:40AM 23 applicable statute of limitations would not have their

09:41AM 24 limitations period ever start to run if they were not

09:41AM 25 individually put on notice of the illegality of it.

09:41AM 1          MR. STRIS:   Well, I appreciate that,

09:41AM 2    Your Honor.  Could I just be heard for a minute on why

09:41AM 3    I think, you know, perhaps, although it may be

09:41AM 4    counterintuitive, why I actually believe it's a correct

09:41AM 5    statement of the law?

09:41AM 6          THE COURT:   Okay.

09:41AM 7          MR. STRIS:   Okay.  So here's the

09:41AM 8    argument in a nutshell.  This case is about whether or

09:41AM 9    not PartnerPlus is an ERISA retirement plan, period.

09:41AM 10   That's what the litigation is going to be about.  I

09:41AM 11   think both sides can agree that that's going to turn on

09:41AM 12   what I will call the aggregate facts and circumstances

09:41AM 13   regarding the operation and administration of the plan.

09:41AM 14   And no Plaintiff has had that information until very

09:41AM 15   recently.  Let me give you some examples.

09:41AM 16          For the first time last month, for the

09:41AM 17   first time, UBS provided two 100-page internal manuals

09:41AM 18   which made crystal clear that UBS considered all of the

09:42AM 19   class members to be retirees.  For the first time last

09:42AM 20   month, UBS began to produce aggregate data on

09:42AM 21   distributions out of this plan.

09:42AM 22          I can give the -- example after example

09:42AM 23   after example, but all of them show that there's no

09:42AM 24   chance that a single member of this class had access to

09:42AM 25   aggregate information.  And that aggregate information

09:42AM 1    is critical because this isn't a typical benefits case,

09:42AM 2    Your Honor.  This isn't a -- isn't a case where you

09:42AM 3    have an ERISA plan and the fight is over whether you

09:42AM 4    get benefits under term A, term B, or term C.  This

09:42AM 5    case is about whether the plan is a retirement plan at

09:42AM 6    all.

09:42AM 7            And since that turns on a whole bunch of

09:42AM 8    complicated information that was only in the possession

09:42AM 9    of UBS, it's very much -- it's on all fours with the

09:42AM 10   Marriott case that we cite.  In fact, the Marriott case

09:42AM 11   is the only case, if you look at every statute of

09:42AM 12   limitations case that was cited in our briefs and in

09:43AM 13   their briefs, the only one that has any parallel to

09:43AM 14   this one is the Marriott case.

09:43AM 15           And the Court in that case made it very

09:43AM 16   clear that in an unusual circumstance like this where

09:43AM 17   the plan has said, oh, it's not an ERISA plan, for

09:43AM 18   years they said this isn't a ERISA plan, the point at

09:43AM 19   which the -- the individuals are put on notice so that

09:43AM 20   they actually realize that they have rights is not when

09:43AM 21   they forfeit money, it's not when they get a plan

09:43AM 22   document that says, oh, you're going to forfeit money

09:43AM 23   under this condition, that condition.  Because if you

09:43AM 24   think about it from a common sense standpoint, that

09:43AM 25   wouldn't bother you if you were a participant in the

09:43AM  1   plan unless you had reason to believe that it was a

09:43AM  2   retirement plan and that what they were doing was not

09:43AM  3   permitted.

09:43AM  4                THE COURT:   The Marriott case you're

09:43AM  5   talking about is the Maryland District Court case?

09:43AM  6                MR. STRIS:   Yes.

09:43AM  7                THE COURT:   Do you have anything that is

09:43AM  8   more in the chain of controlling authority that -- that

09:44AM  9   would indicate that this ERISA accrual is to be

09:44AM 10   interpreted in the way you're arguing?

09:44AM 11                MR. STRIS:   No.  And the reason I can

09:44AM 12   say that, and I think UBS will have to stand up here

09:44AM 13   and tell you that they don't have anything controlling

09:44AM 14   in the other direction, is because it is a very rare

09:44AM 15   case like this one where the fight is over whether a

09:44AM 16   plan is governed by ERISA when that has been denied,

09:44AM 17   essentially, for a decade.

09:44AM 18                But if you look at the facts of the

09:44AM 19   Marriott case, there's another case called Hilton, but

09:44AM 20   it's also not in the right chain of control.  I can --

09:44AM 21   I don't have the cite in front of me, they're the only

09:44AM 22   two cases, oddly they both involve hotels, but they're

09:44AM 23   the only two cases I've seen that involve this type of

09:44AM 24   fact pattern.  All of the statute of limitations cases

09:44AM 25   that UBS is citing, and I would like to just sort of

09:44AM 1     briefly touch upon this, they're from an entirely

09:44AM 2     different context. And I have tons of authority that

09:44AM 3     I'd like to provide that's not necessarily in the

09:45AM 4     papers that would show that the outer boundary has to

09:45AM 5     be the forfeiture.

09:45AM 6             So for example, the Fifth Circuit has

09:45AM 7     made clear, Your Honor, in an unbroken line of cases

09:45AM 8     that I can provide --

09:45AM 9             THE COURT: You know, I -- the -- the

09:45AM 10    fact that the forfeiture would be the logical starting

09:45AM 11    point is something that -- that I have believed all

09:45AM 12    along in this. But -- so you don't need to provide

09:45AM 13    those citations at this point, although I may ask you

09:45AM 14    later to comment on ones that UBS offers.

09:45AM 15            But I'm -- both sides seem to agree that

09:45AM 16    this question of accrual of the cause of action is

09:45AM 17    governed by federal law in this case.

09:45AM 18            MR. STRIS: That's correct.

09:45AM 19            THE COURT: And so tell me what -- what

09:45AM 20    is your best case, other than Marriott, which I

09:45AM 21    understand the position on, that your best case out of

09:46AM 22    the Fifth Circuit of the Supreme Court that would

09:46AM 23    indicate that -- that your argument is right?

09:46AM 24            MR. STRIS: Well, I mean, not -- not to

09:46AM 25    be flip, but this is a developing area of the law. I'm

09:46AM 1  litigating a case right now before the U.S. Supreme

09:46AM 2  Court called Heimeshoff.  The Court just granted it.

09:46AM 3  It's going to get argued next term.  I represent the

09:46AM 4  Plaintiffs in that case.  And it's about the --

09:46AM 5  literally it's about the accrual of statutes of

09:46AM 6  limitation under ERISA.  And there's huge -- a huge

09:46AM 7  circuit split, which is what led to the Court taking

09:46AM 8  the case, in the benefits context; in other words, an

09:46AM 9  ERISA 502(a)(1)(b) context about under federal law when

09:46AM 10 a claim accrues.  And there's case after case after

09:46AM 11 case about different issues in that context.

09:46AM 12         If I'm being candid, which of course I

09:46AM 13 have to be with the Court, this -- this is a very

09:46AM 14 unusual case because it's not a benefits case.  It's a

09:46AM 15 case where we're -- we're seeking an injunction and

09:47AM 16 reformation under 502(a)(3).

09:47AM 17         THE COURT:  Well, so let's not -- let's

09:47AM 18 take it beyond the ERISA area, if you say that you

09:47AM 19 don't have something close there.  Under federal law on

09:47AM 20 accrual generally, have you got something that deals

09:47AM 21 with a situation where the Defendant did some act which

09:47AM 22 caused the Plaintiffs' claims not to accrue?  In other

09:47AM 23 words, that seems to be what your relying upon --

09:47AM 24         MR. STRIS:  Yeah.  Yeah.  So let me

09:47AM 25 answer the question this way, because I don't have the

09:47AM 1   citation in front of me.  There's a long line of cases

09:47AM 2   I think both inside and outside the ERISA context about

09:47AM 3   what I would call fraud or equitable estoppel or

09:47AM 4   various types of estoppel where essentially the cases

09:47AM 5   talk about when the Defendants' conduct essentially

09:47AM 6   involves concealment and the Plaintiffs could not have

09:47AM 7   been aware of the operative facts because of the

09:47AM 8   Defendants' conduct.  Either the claim does not accrue

09:48AM 9   for statutory -- statute of limitations purposes or

09:48AM 10  it's equitably tolled.

09:48AM 11              THE COURT:  I don't think I've heard

09:48AM 12  anything that would indicate to me concealment here.

09:48AM 13  You're -- they're simply characterizing it one way

09:48AM 14  and -- and you the other.  I think that the

09:48AM 15  representatives were experiencing the facts about it.

09:48AM 16  I -- is there any form of concealment that -- that

09:48AM 17  you've --

09:48AM 18              MR. STRIS:  I --

09:48AM 19              THE COURT:  -- shown?

09:48AM 20              MR. STRIS:  -- I was very careful in the

09:48AM 21  way I put this because I -- I do not want to get up

09:48AM 22  here and take the position that there was concealment.

09:48AM 23  That -- that's not my position.

09:48AM 24              THE COURT:  Okay.

09:48AM 25              MR. STRIS:  I think your

09:48AM 1 characterization is more accurate.  But here's why I'm

09:48AM 2 struggling, because I really do believe we're right on

09:48AM 3 the law, but I'm struggling with your question about

09:48AM 4 authority and I really want to be clear why.

09:48AM 5 It is a rare case where you have the

09:48AM 6 entire dispute over -- being over whether or not based

09:48AM 7 on the facts and circumstances of the operation of a

09:49AM 8 pension plan it -- it constitutes as a -- as a

09:49AM 9 retirement plan.  So that's why the Marriott case is

09:49AM 10 unusual because it's on all fours, as I believe the --

09:49AM 11 the Hilton case is also pretty close.

09:49AM 12 When you're asking the questions about,

09:49AM 13 well, are there other authorities, the best I can do is

09:49AM 14 tell you that by analogy there's a -- there's a whole

09:49AM 15 line of cases both inside and outside the context of

09:49AM 16 ERISA that deal with equitable tolling and estoppel and

09:49AM 17 concealment.  They are not on all fours.  I absolutely

09:49AM 18 agree with you, but they're the best parallel that I

09:49AM 19 can draw to show why the principle that's set forth in

09:49AM 20 Marriott, even though it doesn't come up that often, is

09:49AM 21 governing here.

09:49AM 22 THE COURT:  So what I'm gathering is you

09:49AM 23 don't have any authority for the proposition that the

09:49AM 24 Defendant's characterization of the plan in a certain

09:49AM 25 way would keep the Plaintiffs' claims from accruing?

09:50AM 1          MR. STRIS:   That -- that's correct.  I

09:50AM 2    don't have any cases, and I feel very strongly that

09:50AM 3    although they may tell you otherwise, there's not a

09:50AM 4    single case that UBS is going to cite that would --

09:50AM 5    that would negate my proposition.  The -- the bottom --

09:50AM 6    and the reason is simple.  Facts and circumstances on

09:50AM 7    which I have a lot of authority, I have cases, I have

09:50AM 8    DOL opinion letters I can cite at you, it is an

09:50AM 9    extraordinarily fact-bound test and it's based on

09:50AM 10   aggregate factors.  It's not based on the individual

09:50AM 11   knowledge of a particular plan.

09:50AM 12          THE COURT:   Of course, if -- if I find

09:50AM 13   that the forfeiture is the event that would commence

09:50AM 14   the running of the statute, then I think it's going to

09:50AM 15   be incumbent on you to show that there's some reason

09:50AM 16   why that claim did not accrue at that time.  So I -- I

09:50AM 17   don't -- whether or not they can show me authority to

09:50AM 18   the contrary, I think -- think it's your burden --

09:50AM 19          MR. STRIS:   Oh, no doubt.

09:51AM 20          THE COURT:   -- on this issue.

09:51AM 21          MR. STRIS:   I agree -- I agree with you

09:51AM 22   and I've stated what our legal argument is and I've --

09:51AM 23   and in terms of authority, I've cited the Marriott

09:51AM 24   case, which literally goes through and explains the

09:51AM 25   basis.  You've asked me a very fair question and I just

09:51AM 1 want to be candid. You've asked is there any other

09:51AM 2 authority and I've told you no, but that doesn't mean

09:51AM 3 I'm wrong. That just means that this rare issue only

09:51AM 4 came up in one setting and for that reason, Your Honor,

09:51AM 5 I think it's very important that UBS will not be able

09:51AM 6 to point to a contrary case because what that means is

09:51AM 7 we have a sample size of one, actually one-and-a-half

09:51AM 8 because the Hilton case is the next closest, and if out

09:51AM 9 of the sample size of one-and-a-half, Courts have sided

09:51AM 10 with my argument one-and-a-half times, I think that's

09:51AM 11 the best one could ask me to do, given that it's a very

09:51AM 12 idiosyncratic fact pattern.

09:51AM 13 THE COURT: I have not studied the

09:51AM 14 Marriott case yet, but I -- I certainly will do that.

09:51AM 15 But if you have -- let's go ahead and get any other

09:51AM 16 argument you have on the statute of limitations issue

09:52AM 17 and then I'll let UBS respond to that before we move

09:52AM 18 on.

09:52AM 19 MR. STRIS: Okay. So I -- I think it's

09:52AM 20 very important we've -- we've kind of gone down the

09:52AM 21 road of our primary argument and whether it's accepted

09:52AM 22 or not, I feel comfortable that we've at least gotten

09:52AM 23 our position out there so that you understand where

09:52AM 24 we're coming from.

09:52AM 25 What I'd like to do now is explain our

09:52AM 1  fallback position, because I've spent most of the time

09:52AM 2  in the briefing on our primary position and I really

09:52AM 3  want to make sure that our fallback position is clear.

09:52AM 4              THE COURT:    Okay.

09:52AM 5              MR. STRIS:    The Fifth Circuit has an --

09:52AM 6  and here I have tons of authority, that in an unbroken

09:52AM 7  line of cases, case after case after case, the Fifth

09:52AM 8  Circuit, unlike others, because I believe there's a

09:52AM 9  Circuit split on this question, has made clear that an

09:52AM 10 ERISA claim cannot accrue for limitations purposes

09:52AM 11 prior to the actual denial of payment by the plan.

09:52AM 12             And the case I'd like to cite, just as

09:52AM 13 the paradigmatic example, is Paris versus Profit

09:52AM 14 Sharing Plan For Employees Of Howard B. Wolf, Inc.

09:53AM 15 That's 637 F.2d 357.  It's a 1981 Fifth Circuit case

09:53AM 16 and the pin cite is page 361.  And I'd like to quote

09:53AM 17 from the opinion, because it really makes clear the

09:53AM 18 problem with UBS' position.

09:53AM 19             The Fifth Circuit said, and I quote:  To

09:53AM 20 hold otherwise would put an almost intolerable burden

09:53AM 21 on employees covered by pension plans.  It would

09:53AM 22 require individuals who are unversed in the law to be

09:53AM 23 constantly vigilant.

09:53AM 24             And so as a result in the context from

09:53AM 25 which UBS is citing all of their cases, because all of

09:53AM 1    their cases are from what I believe is an irrelevant

09:53AM 2    context, but if we want to look at their accrual

09:53AM 3    context and take their cases at face value, then I

09:53AM 4    would point the Court to this unbroken line of Fifth

09:53AM 5    Circuit cases that says it doesn't matter if a

09:53AM 6    Plaintiff might have had reason to know in advance that

09:53AM 7    it -- that its benefits were going to be denied.  It

09:53AM 8    doesn't matter.  The claim doesn't begin to accrue in

09:54AM 9    the Fifth Circuit under ERISA until the money is taken

09:54AM 10   away from them.

09:54AM 11          And I'll cite you two examples that

09:54AM 12   are -- that are clearly on all fours.  There's the Rice

09:54AM 13   case, it's Rice versus Asbestos Workers Pension And

09:54AM 14   Annuity Fund.  It's an Eastern District of Louisiana

09:54AM 15   case from 1994.  1994 Westlaw 462983 that was affirmed

09:54AM 16   by the Fifth Circuit -- I'm sorry, it was affirmed by

09:54AM 17   the Fifth Circuit in 1991, it's 66 F.3d 521.

09:54AM 18          And then there's the Kennedy case.

09:54AM 19   Kennedy versus Electricians Pension Plan, which was

09:54AM 20   affirmed by the Fifth Circuit in 1992.  954 F.2d 1116.

09:54AM 21   It came up from the Middle District of Louisiana.

09:54AM 22          Case after case after case out of the

09:54AM 23   Fifth Circuit made clear that a clear repudiation is

09:54AM 24   not when you have some reason to believe that the plan

09:54AM 25   will deny you benefits in the future, it's when you

09:54AM 1  don't get your money.  So if UBS is going to hold my

09:54AM 2  feet to the fire and say, well, that's the relevant

09:55AM 3  context, we should be looking at statute of limitations

09:55AM 4  cases in that area, then I think, you know, we really

09:55AM 5  have them dead to rights because the law in the Fifth

09:55AM 6  Circuit couldn't be any clearer.

09:55AM 7            Now, my friends try and get away from

09:55AM 8  that with one single footnote in their brief where they

09:55AM 9  say, oh, well, but this isn't a benefits case.  They

09:55AM 10 say -- they try and sort of hoist me by my own petard

09:55AM 11 and they say, well, the -- the Plaintiffs have said,

09:55AM 12 look, we're not seeking benefits and we're challenging

09:55AM 13 the plan.  So all of this authority, implicitly their

09:55AM 14 argument goes from the Fifth Circuit, in the benefits

09:55AM 15 context is irrelevant.

09:55AM 16            That argument can't be right because all

09:55AM 17 of the cases that they cite for the statute of

09:55AM 18 limitations are precisely from that context.  So they

09:55AM 19 can't have it both ways.  Either I get to make my merit

09:55AM 20 out argument and say all of their cases are irrelevant

09:55AM 21 because this is a rare case that, like Marriott,

09:55AM 22 involves whether this was an ERISA plan at all or we

09:56AM 23 look at case -- in which case, you know, the -- it's

09:56AM 24 not the forfeiture that we peg things to, it's a much

09:56AM 25 longer period we get to bring the claim or we look in

09:56AM 1    the context where they don't want you to look and then

09:56AM 2    you have an unbroken line of Fifth Circuit cases that

09:56AM 3    would make crystal clear that the accrual cannot occur

09:56AM 4    until the money is forfeited.  That's fundamentally our

09:56AM 5    alternative position.

09:56AM 6                    THE COURT:   All right.  Thank you.  Let

09:56AM 7    me hear from the Defendant on that issue.

09:56AM 8                    MR. SCALIA:   Your Honor, just a few

09:56AM 9    introductory comments on the case in response to Mr.

09:56AM 10   Henderson.

09:57AM 11                   THE COURT:   All right.

09:57AM 12                   MR. SCALIA:   Your Honor, my judgment,

09:57AM 13   this is an exceptional case where people whose claims

09:57AM 14   are time-barred are seeking to bring a claim.  They're

09:57AM 15   people who, in some instances have released claims, are

09:57AM 16   seeking to bring the claims and indeed the people where

09:57AM 17   every named Plaintiff, all of them uniformly, have

09:57AM 18   waived the ability to proceed as a class are

09:57AM 19   nonetheless seeking to bring their case as a class and

09:57AM 20   they're not claiming unconscionability.  They're not

09:57AM 21   claiming duress.

09:57AM 22                   These are extremely sophisticated people,

09:57AM 23   sophisticated specifically in the area of financial

09:57AM 24   management.  And they concede they signed a waiver and

09:57AM 25   yet, nonetheless, they're seeking to bring a class for

09:57AM 1  hundreds and in fact, nearly 2000 people.  They're

09:57AM 2  doing so more of, Your Honor, entirely in the face of

09:57AM 3  Supreme Court precedent and you've already gotten a

09:57AM 4  taste of that this morning.

09:57AM 5          The Supreme Court in the Dukes, the

09:57AM 6  Comcast case and others has been emphatic on a number

09:57AM 7  of things.  First, that certification is too involved,

09:57AM 8  a rigorous analysis.  Second, that Plaintiffs must

09:58AM 9  affirmatively demonstrate their entitlement to

09:58AM 10 certification.  And as the Court said in Dukes, that

09:58AM 11 they must do so through proof of facts, both of those

09:58AM 12 are quotes, showing that certification is justified.

09:58AM 13         The Supreme Court has said as well that

09:58AM 14 proceeding on a class base is the exception, not the

09:58AM 15 norm.  And Your Honor, on the waiver form, we'll come

09:58AM 16 to it later I realize, we're not saying they can't seek

09:58AM 17 to vindicate there for legal rights.  We're simply

09:58AM 18 saying they've waived the ability to proceed as a

09:58AM 19 class.

09:58AM 20         To read their briefs, Your Honor, and to

09:58AM 21 hear a little bit of their argument here this morning

09:58AM 22 is to enter a class action case law time warp where

09:58AM 23 Dukes, Comcast and other cases are lost.  And instead,

09:58AM 24 as you've heard earlier, you got reliance upon, with

09:58AM 25 all respect, District Court cases that preceded Dukes.

09:58AM 1  The two cases that were cited to you by Mr. Anderson,

09:58AM 2  as I think you observed, were both prior to Dukes in

09:58AM 3  2011.  They were obviously both prior to Comcast in

09:58AM 4  2013.

09:58AM 5           There is no when in doubt, certify the

09:58AM 6  class and off to the races test.  The Supreme Court

09:59AM 7  made very clear on Dukes that's not what's done and to

09:59AM 8  the extent that those District Court cases said so,

09:59AM 9  they're simply wrong.

09:59AM 10           Just another observation on the general

09:59AM 11  class action law applicable here.  Your Honor, no one

09:59AM 12  would dispute that Dukes is the single most important

09:59AM 13  class action decision in years, if not decades.  I

09:59AM 14  think decades.

09:59AM 15           THE COURT:  Well, I mean, Dukes, you're

09:59AM 16  talking about exceptional cases.  Dukes was probably

09:59AM 17  the most exceptional class action there ever was and

09:59AM 18  certainly the fact that the Supreme Court was

09:59AM 19  confronted with that, I think has a lot to do with that

09:59AM 20  opinion.  Now, I -- and it's to me is mind boggling

09:59AM 21  to -- to see what the 9th Circuit had let through

09:59AM 22  there.

09:59AM 23           But I don't take the Dukes case as

09:59AM 24  changing Rule 23 in any significant way.  I think it

09:59AM 25  was a reminder to the District Courts that there is a

10:00AM 1  need to rigorously examine the requirements of Rule 23

10:00AM 2  and -- and see that class actions hold to it.  But

10:00AM 3  other than that, I don't think it was a game changer.

10:00AM 4          Now, admittedly it did talk about one

10:00AM 5  thing in some detail and that -- that happens to be at

10:00AM 6  issue here and that's whether or not monetary damages

10:00AM 7  should be deemed incidental to injunctive relief.  I --

10:00AM 8  it happened to have quite a lot to say about that,

10:00AM 9  which is a big issue in this case.  But other than

10:00AM 10  that, I don't see it as -- as having changed the

10:00AM 11  overall analysis of Rule 23 and maybe you can clarify

10:00AM 12  that for me.

10:00AM 13          MR. SCALIA:  Your Honor, I would

10:00AM 14  characterize it as substantially clarifying both as to,

10:00AM 15  as you point out, the way (b)(2) functions, but also,

10:00AM 16  for example, as to commonality and as to the role of

10:01AM 17  the merits at the class certification stage and I want

10:01AM 18  to comment on that briefly.  Because whatever one

10:01AM 19  thinks of Dukes, it is the touchstone now, a starting

10:01AM 20  point for understanding class action law.  And yet,

10:01AM 21  Plaintiffs cite it once and they get it wrong because

10:01AM 22  they say that Duke held that incidental damages under

10:01AM 23  (b)(2) are correct.  Again, we can come to that later.

10:01AM 24          That was not Dukes holding.  It was very

10:01AM 25  clear it wasn't approving that.  And what Duke said was

10:01AM 1  we have this opinion, it's called Eisen.  We've had

10:01AM 2  District Courts mistakenly suppose that it prevents a

10:01AM 3  court from touching upon merits issues.  That is not

10:01AM 4  what Eisen said the Supreme Court said.  This is

10:01AM 5  footnote 6 in Dukes.  Please don't use Eisen in that

10:01AM 6  way and if that weren't enough, they came back in

10:01AM 7  Comcast and they said the same thing again, that's not

10:01AM 8  what Eisen means.  And yet, what is the class action

10:01AM 9  case that they led with in their opening brief?  It's

10:01AM 10 Eisen.

10:01AM 11             And so my point is it's a time warp plan.

10:01AM 12 My larger point, Your Honor, is you've been presented

10:02AM 13 with an approach toward class action law that is

10:02AM 14 unreliable and the case they put before you is

10:02AM 15 ultimately unsustainable.

10:02AM 16             If I could turn then, Your Honor, to the

10:02AM 17 statute of limitations issue specifically.

10:02AM 18             THE COURT:  Yes.

10:02AM 19             MR. SCALIA:  Our position is all the

10:02AM 20 Plaintiffs' claims are barred by the applicable statute

10:02AM 21 of limitations.  And accordingly, they are both

10:02AM 22 inadequate class representatives and the case simply

10:02AM 23 can't proceed as a class for that reason because their

10:02AM 24 own claims can't proceed.

10:02AM 25             THE COURT:  It -- it's -- it's hard for

10:02AM 1   me to conceive that the Court would hold and I -- I

10:02AM 2   don't care whether we're talking about the Fifth

10:02AM 3   Circuit or the Supreme Court in this context, would

10:02AM 4   hold that if a Defendant puts out a plan that violates

10:02AM 5   ERISA and nobody challenges it or an individual

10:02AM 6   employee doesn't challenge it for his first four years

10:03AM 7   of employment, taking the Texas statute, that he's

10:03AM 8   thereafter barred from objecting when he's later

10:03AM 9   injured by it.

10:03AM 10          MR. SCALIA:   Your Honor, three responses

10:03AM 11  to that.  First, they're not making that argument until

10:03AM 12  just now.  And I mentioned, when I began this morning,

10:03AM 13  how Plaintiffs keep changing their arguments.  We hear

10:03AM 14  different things.  There were a number of cases cited

10:03AM 15  by Mr. Stris and these certain specific affirmative

10:03AM 16  arguments that weren't made in their briefs and that we

10:03AM 17  respectively submit are waived accordingly.  Only now

10:03AM 18  did Mr. Stris stand before you and take the position

10:03AM 19  that is what he called a fallback, the limitations

10:03AM 20  purely began with the forfeiture.  But Your Honor, he

10:03AM 21  didn't take that position in either of his briefs.

10:03AM 22  It's waived.  It's too late now.

10:03AM 23          But secondly, Your Honor, it's important

10:03AM 24  to understand the nature of their claim.  They quite

10:04AM 25  consciously are suing, attacking the plan terms and

10:04AM 1 saying the plan terms need to be changed.  That also is

10:04AM 2 a litigation choice they made and they must be held to

10:04AM 3 and they made it for a reason.  So if you look, for

10:04AM 4 example, at page 7 of their opposition brief, and it's

10:04AM 5 in their complaint, too, they say -- I'm sorry, this is

10:04AM 6 their opening brief, they say they're suing over things

10:04AM 7 that are, quote, expressed as terms of the plan.  They

10:04AM 8 say they're suing, quote, because the plan uses illegal

10:04AM 9 terms, end quote.

10:04AM 10 Your Honor, if I could, and I apologize

10:04AM 11 that I am not as technologically as adept as I'd hoped

10:04AM 12 to be, but I would like to provide you and provide the

10:04AM 13 Plaintiffs as well what was intended to be a PowerPoint

10:04AM 14 and instead will be a piece of paper.

10:04AM 15 But what it shows, Your Honor, and this

10:04AM 16 is an account statement of Mr. Eddingston, which is

10:04AM 17 outside the four year limitations period.

10:04AM 18 THE COURT:  And I know you did refer to

10:04AM 19 that in your briefs and I'm -- I'm happy to look at it

10:05AM 20 here, but I -- I understand what you're saying, that --

10:05AM 21 that he was --

10:05AM 22 COURTROOM DEPUTY:  Michael, on the

10:05AM 23 podium.

10:05AM 24 THE COURT:  -- the button is actually up

10:05AM 25 on the podium there in front of Mr. Scalia.  So you're

10:05AM 1  more technologically adept than you realized.

10:05AM 2              MR. SCALIA:   It might be easier if we

10:05AM 3  simply hand it up, Your Honor.

10:05AM 4              COURTROOM DEPUTY:  It's the document --

10:05AM 5  do you see the button?

10:05AM 6              MR. SCALIA:   I don't have a document

10:05AM 7  number in front of me, it's in the reference, but I

10:05AM 8  don't have that document in front of me.  Please, I

10:05AM 9  think it will be easier just to hand it up.  May we

10:05AM 10  simply hand it up to you, Your Honor?

10:05AM 11             THE COURT:   You may.  That's not going

10:06AM 12  to stop Ms. Andrews from fixing it, though.

10:06AM 13             MR. SCALIA:   There we are.  So Your

10:06AM 14  Honor, this is an account statement received by Mr.

10:06AM 15  Eddingston, produced by him in discovery.  And what

10:06AM 16  we've highlighted is all of those years showing that he

10:06AM 17  was not vesting as ERISA would vest you.

10:06AM 18             What ERISA says is that currently you

10:06AM 19  need to, if it's so-called cliff vesting, you need to

10:06AM 20  fully cliff vest after three years in the plan.  And by

10:06AM 21  the way after that, each contribution you're fully

10:06AM 22  vested.  And so once you're in the plan three years

10:06AM 23  under cliff vesting, you're in for good for all future

10:06AM 24  contributions.

10:06AM 25             Under graduated vesting under current

10:06AM 1    law, you start at year two at 20 percent and proceed at

10:06AM 2    20 percent increments through year six till you're

10:06AM 3    fully vested.  What this shows is that in those years,

10:06AM 4    even under a more generous five year cliff vesting

10:06AM 5    approach that existed until 2006, there were multiple

10:07AM 6    years where this man was on notice that he was not

10:07AM 7    vesting according to ERISA.  And again, they're suing

10:07AM 8    over the plan terms.

10:07AM 9              Your Honor, they had access to these

10:07AM 10   plans.  They received a compensation plan document,

10:07AM 11   which was not simply a brochure; it actually governed

10:07AM 12   the terms of their compensation.  You saw this before

10:07AM 13   in the prior hearing, Your Honor, I don't know if you

10:07AM 14   recall, but Plaintiffs' argument to you was that that

10:07AM 15   document was just a summary and of no force and effect.

10:07AM 16   But what is handed up to you and you looked at it, it

10:07AM 17   was 20 pages long.  You acknowledged at the hearing

10:07AM 18   that it seemed like a very substantial document and not

10:07AM 19   merely a fleeting summary.  In fact, it determines

10:07AM 20   their compensation, including the inputs into

10:07AM 21   PartnerPlus and on the face of it, that document also

10:07AM 22   made clear that the vesting was slow, not at the ERISA

10:07AM 23   pace.

10:07AM 24             So to come to first principles, Your

10:07AM 25   Honor, the Jenson V. Snelling case, which unlike a

10:07AM 1 number of cases you heard about a moment ago is cited

10:07AM 2 in our brief, but it's also a very familiar basic

10:08AM 3 principle.  And here in civil law there's no excuse and

10:08AM 4 a claim accrues upon knowledge of the relevant facts,

10:08AM 5 not upon knowledge of the law.

10:08AM 6 Mr. -- the Plaintiffs in their brief have

10:08AM 7 relied upon this Marriott case for the extraordinary

10:08AM 8 proposition that your claim doesn't accrue until you

10:08AM 9 file the complaint.  We're accustom to thinking of a

10:08AM 10 statute of limitations period as something that

10:08AM 11 precedes the filing of the complaint, but their

10:08AM 12 argument is that until you file the complaint, the

10:08AM 13 limitation period doesn't -- doesn't even begin.

10:08AM 14 THE COURT:  Is that what -- what is your

10:08AM 15 understanding of the holding in the Marriott?

10:08AM 16 MR. SCALIA:  My understanding of the

10:08AM 17 holding in that case is twofold.  First, it's wrong.

10:08AM 18 The -- the Court there took this position and, Your

10:08AM 19 Honor, it said we know it's anomalous to suggest that

10:08AM 20 the limitations period doesn't begin until you file the

10:08AM 21 complaint.  Your Honor, it's as if -- it's as if

10:09AM 22 instead of a statute of limitations we've got a statute

10:09AM 23 of limitless extensions.  That it doesn't begin to run,

10:09AM 24 and the Plaintiffs even suggest this in their brief,

10:09AM 25 until you file your complaint or afterward.  You heard

10:09AM 1 a moment ago that it actually doesn't even begin to run

10:09AM 2 until you get certain discovery in the case. Well,

10:09AM 3 that makes no sense.

10:09AM 4 Here's another way of looking at it, Your

10:09AM 5 Honor. They can't dispute that the plan terms they're

10:09AM 6 suing over now they could have sued over way back when

10:09AM 7 in 1998 or 1999. Given that, the claim must have

10:09AM 8 accrued. Now, that caused Mr. Stris to fall back on

10:09AM 9 suggestions of fraud, which he then backed away from.

10:09AM 10 And then he looked at equitable estoppel, which was not

10:09AM 11 in their briefs.

10:09AM 12 And so this theory in the Marriott case

10:09AM 13 which, as he acknowledges is absolutely unprecedented,

10:09AM 14 is simply wrong. And in fact the Marriott report said,

10:09AM 15 hey, we know it's a bit anomalus.

10:09AM 16 THE COURT: So --

10:09AM 17 MR. SCALIA: And secondly --

10:09AM 18 THE COURT: -- you don't disagree with

10:09AM 19 his characterization of what the Court held, you would

10:09AM 20 simply say it's -- it's wrong?

10:10AM 21 MR. SCALIA: Secondly, actually, I -- I

10:10AM 22 do disagree with aspects of it. What the Court said

10:10AM 23 there was that it had a very unusual case and it

10:10AM 24 identified certain specific facts. For example, and

10:10AM 25 I'm looking at page 772, he said that the retirement

1 awards did not even mention ERISA.

2 Well, Your Honor the PartnerPlus Plan,

3 which the Plaintiffs all had access to, did

4 specifically say from 2004 forward that it wasn't an

5 ERISA a plan, so it did specifically mention ERISA.

6 Second point, the Judge in the Marriott

7 case said that the employer, quote, did not indicate

8 how participants could be apprised of plan amendments,

9 quote.  Well, these very sophisticated financial

10 advisors in this case were told in that compensation

11 plan document, which determined and summarized a

12 variety of different elements in their compensation,

13 they weren't told where to find the PartnerPlus

14 document.

15 Third, he said there were no details

16 regarding any claim procedures in the Marriott case.

17 Your Honor, here there are claims procedures.  And --

18 and then he says summary plan descriptives were never

19 provided to Plaintiffs.  That claim isn't made here.

20 Again, they received the compensation plan which did

21 describe the Plaintiffs.

22 So the England Marriott case which they

23 rely upon is, as they conceive, an anomaly, an outlier,

24 and not factually aligned with this case on a number of

25 different dimensions.

10:11AM 1          And another case that I do want to
10:11AM 2  mention, Your Honor, because I want to talk about the
10:11AM 3  accrual understanding that's set forth in our papers,
10:11AM 4  is a case that, candidly, I disagree with in important
10:11AM 5  ways, but it's one of their very lead cases.  This is
10:11AM 6  the Seventh Circuit, Judge Posner, Johnson case.
10:11AM 7          Now, Judge Posner is not always a
10:11AM 8  reliable guy to class certification requirements;
10:11AM 9  however, here is what one of their principle cases says
10:12AM 10 regarding accrual.  This is at page 370.  An ERISA
10:12AM 11 claim accrues when the Plaintiff knows or should know
10:12AM 12 of conduct that interferes with the Plaintiffs' ERISA
10:12AM 13 rights.
10:12AM 14         And then the Judge, Judge Posner, of
10:12AM 15 course, the -- for the unanimous Seventh Circuit talked
10:12AM 16 about how a summary plan description apprising one of
10:12AM 17 the plan terms that they're subject to the suit could
10:12AM 18 itself trigger a clear repudiation and therefore an
10:12AM 19 ability to sue and therefore trigger the limitations
10:12AM 20 period.
10:12AM 21         Your Honor, this is just one of a number
10:12AM 22 of different cases that establish this principle that
10:12AM 23 we've cited in our briefs.  Again, I -- I'm not going
10:12AM 24 to be able to catch up with every case that Plaintiffs
10:12AM 25 are giving you now, didn't give in the briefs, but we

10:12AM  1  cited the Union Pacific case, Tenth Circuit.  Hurt,

10:12AM  2  Second Circuit.  Berry, Second Circuit.

10:12AM  3          The Balillo case, which I think although

10:13AM  4  it's a District Court decision out of New York, Your

10:13AM  5  Honor, it's striking and here's why.  Because ERISA

10:13AM  6  plans are complicated.  Whether or not something is an

10:13AM  7  ERISA plan, that may be a complicated question although

10:13AM  8  I would submit it's generally not and it's not here.

10:13AM  9  But how a cash balance plan works, how the whipsaw

10:13AM  10  requirements associated with cash balance plans work,

10:13AM  11  how the wear-away principle works, those things are

10:13AM  12  complicated.  And this case, as in the Johnson case

10:13AM  13  which the Plaintiffs rely on, concerned those

10:13AM  14  principles.

10:13AM  15          So the idea that, oh, well, ERISA

10:13AM  16  requires you to know, I think the term was, an

10:13AM  17  aggregation of facts and circumstances and somehow that

10:13AM  18  makes it different.  Well, these cases didn't regard it

10:13AM  19  as different.  And consider that principle and

10:13AM  20  transpose it to other areas of law, because I begin

10:13AM  21  with the first principle.  The limitations period

10:13AM  22  begins knowing facts, not knowing the law.  The

10:13AM  23  ignorance of the law is no excuse.  The limitations

10:14AM  24  period doesn't depend on that.

10:14AM  25          And so again, Plaintiffs think they have

10:14AM 1    a complicated case here.  We think they have a case

10:14AM 2    that's clearly flawed because this was clearly a

10:14AM 3    deferred compensation plan.  But we're not an antitrust

10:14AM 4    law.  Aren't -- isn't there an aggregation of facts

10:14AM 5    that you need to know to understand when you've

10:14AM 6    actually suffered antitrust injury?

10:14AM 7              What about Title 7 law?  Again, consider

10:14AM 8    the Dukes case, Your Honor.  Nobody there was

10:14AM 9    considering that nobody had a discrimination claim

10:14AM 10   until there was discovery in that case whereby you

10:14AM 11   could know of the pattern and practice of alleged

10:14AM 12   discrimination in Wal-Mart.  So that avenue that

10:14AM 13   they're urging to the Court is a road to an absolutely

10:14AM 14   radically different approach toward limitations period

10:14AM 15   that has no support even in the ERISA case law, but

10:14AM 16   would not be limited to the ERISA case law either.

10:14AM 17   It's simply a mistake.

10:14AM 18              THE COURT:  Well, how has an employee,

10:14AM 19   one of these representatives, been injured before they

10:14AM 20   suffer a forfeiture?

10:15AM 21              MR. SCALIA:  In two respects, Your

10:15AM 22   Honor.  Again, they are suing as against the plan

10:15AM 23   terms.  That is their asserted injury.  That's what

10:15AM 24   they want to join and change and I want to come back to

10:15AM 25   that in just a moment.

10:15AM  1          But secondly, to not receive the vesting

10:15AM  2   that ERISA entitles you to is also to be injured, to

10:15AM  3   not get something that you are legally entitled to.

10:15AM  4   As -- as for example, Judge Posner recognized, because

10:15AM  5   in that case, this relates to (b)(2), we'll come to it

10:15AM  6   later, but in that case, in a lot of the (b)(2) cases,

10:15AM  7   in fact, I think all of the (b)(2) cases that

10:15AM  8   Plaintiffs might be relying on, you had people with an

10:15AM  9   active injunctive interest.

10:15AM 10          So for example in the Johnson case, and

10:15AM 11   in some of the other cases I'm talking about, you had

10:15AM 12   people with an active interest in what was going to

10:15AM 13   happen in the future.  Judge Posner said that these

10:15AM 14   class members who have not yet quit or retired are

10:15AM 15   seeking forward-looking relief as distinct from

10:16AM 16   damages.  So at least in that case they were saying

10:16AM 17   we're not being vested properly and we want it fixed.

10:16AM 18          Plaintiffs just can't have it both ways.

10:16AM 19   They can't say we're just suing about the plan terms

10:16AM 20   and then turn around and say, well, we actually don't

10:16AM 21   have injury until forfeiture and that hasn't been their

10:16AM 22   argument.  Your Honor, if I could briefly explain why

10:16AM 23   that is.

10:16AM 24          The reason that they have made the

10:16AM 25   litigation decision to sue over the plan terms is

10:16AM 1 because they want to present this as a case for

10:16AM 2 injunctive relief as against the plan terms rather than

10:16AM 3 a claim for benefits, which would obviously not be

10:16AM 4 certifiable under any theory under (b)(2). So for

10:16AM 5 strategic legal reasons, they came to you and said

10:16AM 6 we're suing over the terms. And what we're saying in

10:16AM 7 response is you've known those facts for time and

10:16AM 8 memorial.

10:16AM 9 Again, they're in the plan. They're in

10:17AM 10 the compensation plans. In fact, the 2005 compensation

10:17AM 11 plan, which will be an exhibit in this case, I guess it

10:17AM 12 is now, specifically said this is not an ERISA plan.

10:17AM 13 That was the compensation plan document. And of

10:17AM 14 course, the Partnership Plus Plan documents have said

10:17AM 15 that as well.

10:17AM 16 Your Honor, Plaintiffs' Counsel cited a

10:17AM 17 number of benefit claims cases from the Fifth Circuit;

10:17AM 18 none of those are in their briefs. Because again,

10:17AM 19 they've, as they put it, fallen back on the new theory

10:17AM 20 not advanced before. But the point is, those are

10:17AM 21 benefit claim cases. Those are indisputably claims

10:17AM 22 seeking money; nobody is denying it.

10:17AM 23 They're at least pretending here that

10:17AM 24 they're not seeking money, they're seeking an

10:17AM 25 injunction to fix these plan terms. They have to be

10:17AM 1 held to that theory of their case, particularly because

10:17AM 2 the forfeiture concept, which I appreciate, Your Honor,

10:17AM 3 that you've been wrestling with, I, with all respect,

10:17AM 4 don't think you need to wrestle with it because they

10:17AM 5 failed to put it before you until this morning. They

10:18AM 6 first identified it as a fallback.

10:18AM 7 Your Honor, perhaps just a -- a few more

10:18AM 8 points. First, I also wanted to cite the Berry case,

10:18AM 9 which is also in our briefs. I believe it's a Judge

10:18AM 10 Schell decision from Beaumont, which also took the

10:18AM 11 approach that we're identifying to where once you're on

10:18AM 12 notice that the plan or plan terms don't comply with

10:18AM 13 ERISA, then your claim accrues and needs to be brought.

10:18AM 14 And remember, Your Honor, the alternative

10:18AM 15 is to accept two plainly incorrect propositions. One

10:18AM 16 is that ignorance of the law is an excuse and the

10:18AM 17 limitations period doesn't begin until you know the

10:18AM 18 law, just wrong. And second, it's to take the position

10:18AM 19 of the Marriott case, that a statute of limitations

10:18AM 20 actually only begins with filing a complaint and

10:18AM 21 therefore it's just a statute of limitless exceptions,

10:18AM 22 which is how they would have it function.

10:18AM 23 THE COURT: Your best case that you

10:19AM 24 would rely upon for your argument that their cause of

10:19AM 25 action accrued when they were on notice that their --

10:19AM 1  their contribution or their account was not vesting the

10:19AM 2  way it would under ERISA, what do you consider your

10:19AM 3  best authority on that?

10:19AM 4          MR. SCALIA:   A series of cases which

10:19AM 5  we've cited.  Union Pacific, Tenth Circuit.  Hurt --

10:19AM 6          THE COURT:   Anything out of the Fifth?

10:19AM 7          MR. SCALIA:   Yes, I mentioned the Berry

10:19AM 8  case from this district, B-E-R-R-Y, it's in our briefs.

10:19AM 9          THE COURT:  And was that reviewed by the

10:19AM 10 Fifth?

10:19AM 11         MR. SCALIA:  Not to my knowledge.

10:19AM 12         THE COURT:   Okay.

10:19AM 13         MR. SCALIA:  And then Johnson -- Jenson

10:19AM 14 V. Snelling, which we cite in our brief, which just

10:19AM 15 stands for the elementary proposition that, among other

10:19AM 16 things, limitations periods begin upon knowing facts.

10:19AM 17 In fact, I think when you review the transcript, you'll

10:19AM 18 see that Mr. Stris at one point referred to knowing the

10:20AM 19 facts giving rise to a claim.

10:20AM 20         He spoke about the aggregation of

10:20AM 21 circumstance.  Well, what is that, Your Honor?  That's

10:20AM 22 the facts.  So his own theory of when a limitations

10:20AM 23 period begins, as it must be, is that it begins, rather

10:20AM 24 in his fallback, is that it begins when you know facts.

10:20AM 25 That's the right answer, but it's not the understanding

10:20AM 1  of the law that they've put before the Court in this

10:20AM 2  case.

10:20AM 3           Your Honor, just a -- a few last points

10:20AM 4  with regard to the limitations period.  There was a

10:20AM 5  reference to the Hilton case.  Again, I haven't read

10:20AM 6  it, it wasn't cited.  I assume the Court will not be

10:20AM 7  placing reliance on cases and legal theories and even

10:20AM 8  claims that the Plaintiffs failed to put forth before.

10:20AM 9           THE COURT:   I -- I will tell you that I

10:20AM 10 intend to look at every case that -- that I think will

10:21AM 11 help me in deciding this, whether the parties have

10:21AM 12 cited it or not.  So I understand, I don't expect you

10:21AM 13 to be ready to discuss something that you have not had

10:21AM 14 called to your attention before, but I -- I think that

10:21AM 15 I'm responsible for my best effort to apply the law,

10:21AM 16 whether the parties have suggested it to me or not.

10:21AM 17           MR. SCALIA:   Fair enough, Your Honor.

10:21AM 18 Although, I guess what I would urge is that to the

10:21AM 19 extent the Plaintiffs are advancing new legal theories

10:21AM 20 that were not advanced before, that those properly be

10:21AM 21 regarded as waiver.  Your Honor, if I could -- well,

10:21AM 22 first of all, if you have any more questions on this

10:21AM 23 issue, I certainly want to address them.

10:21AM 24           THE COURT:   No, I think you've addressed

10:21AM 25 them.

| | | |
|---|---|---|
| 10:21AM | 1 | MR. SCALIA: So just a few last points |
| 10:21AM | 2 | that I wanted to address that Mr. Anderson and Mr. |
| 10:21AM | 3 | Stris raised. First, with regard to limitations |
| 10:21AM | 4 | period. Your Honor, I have always found it significant |
| 10:22AM | 5 | as a lawyer that when a participant in the case, |
| 10:22AM | 6 | litigant, repeatedly changes its position, that it's an |
| 10:22AM | 7 | indication that they're wrong at least once and quite |
| 10:22AM | 8 | often twice. |
| 10:22AM | 9 | You're going to see that a lot from |
| 10:22AM | 10 | Plaintiffs today and I just wanted to call out one |
| 10:22AM | 11 | other example. Not that it's particularly important on |
| 10:22AM | 12 | the statute of limitations issue, it's important on |
| 10:22AM | 13 | 23(b), I think, and -- and maybe also on adequacy in |
| 10:22AM | 14 | other ways. Something else that we heard for the first |
| 10:22AM | 15 | time today was that the limitations period depends |
| 10:22AM | 16 | actually not on the forum state but on where the |
| 10:22AM | 17 | different Plaintiffs happen to live. That's not what |
| 10:22AM | 18 | Plaintiffs said in their briefs. It's also not |
| 10:22AM | 19 | correct. |
| 10:22AM | 20 | We've both cited cases saying it's forum |
| 10:22AM | 21 | state law. I just wanted to call it out as another |
| 10:23AM | 22 | example of an unexpected shift. So finally, just to |
| 10:23AM | 23 | address some remaining issues that were left -- |
| 10:23AM | 24 | THE COURT: I'm not sure that I, |
| 10:23AM | 25 | frankly, had focused on that. So it is your position |

10:23AM 1    and your understanding of their position that the Texas

10:23AM 2    statute governs all of the class members because this

10:23AM 3    is the forum; is that what you're saying?

10:23AM 4            MR. SCALIA:    That's correct, Your Honor.

10:23AM 5    The forum states law, we've briefed that.

10:23AM 6            THE COURT:    So there wouldn't be a

10:23AM 7    problem of the class being subjected to different

10:23AM 8    statutes of limitation?

10:23AM 9            MR. SCALIA:    Under what we believe is

10:23AM 10   the correct view of the law, again that is the view of

10:23AM 11   the law that the Plaintiffs put forward.  Now, they

10:23AM 12   shouldn't be permitted to shift position and get this

10:23AM 13   other respected advanced new theory, but to the extent

10:23AM 14   that they were to do that, then that is going to create

10:23AM 15   problems as to typicality, adequacy, and -- and simply

10:24AM 16   manageability ultimately under Rule 23.

10:24AM 17           The -- Your Honor, just one last

10:24AM 18   observation that I wanted to make and it has to do with

10:24AM 19   the PowerPoints, which I know weren't even offered as

10:24AM 20   evidence and my understanding is that they won't be

10:24AM 21   considered as such by the Court, but particularly in

10:24AM 22   instances where they weren't even referred to by

10:24AM 23   Counsel during argument.  But just as an example, at

10:24AM 24   one point on the third page, the first bullet point

10:24AM 25   purports to represent what the UBS representative, Mr.

10:24AM 1 Levitan, testified to in his deposition about how the

10:24AM 2 plan was initially structured to be an ERISA plan and

10:25AM 3 then not, or at least it was.

10:25AM 4          What's omitted here is that he identified

10:25AM 5 a number of very significant changes that were

10:25AM 6 associated with it becoming ERISA plan 2011.  It's not

10:25AM 7 material to what's been heard so far and probably

10:25AM 8 nothing later.  And again, it's just in their

10:25AM 9 PowerPoint, but it's an omission of very important

10:25AM 10 facts, which we've separately put into the record, that

10:25AM 11 I thought I should -- I should mention as an example of

10:25AM 12 why we believe that these materials shouldn't properly

10:25AM 13 be considered as the Court makes its decision.

10:25AM 14          THE COURT:  I can tell you that I'm not

10:25AM 15 going to consider any parts of the demonstratives that

10:25AM 16 aren't discussed during the hearing.  So if that's your

10:25AM 17 concern, you don't have to be worried about that.

10:25AM 18          MR. STRIS:  Could I respond to some of

10:25AM 19 the statute?  I know there's a lot of issues in the

10:25AM 20 case.  Could I -- could I respond to some of the

10:25AM 21 statute of limitations issues briefly?

10:25AM 22          THE COURT:  Yes, that's fine.  They're

10:25AM 23 important.

10:25AM 24          MR. STRIS:  So I'll try and be brief,

10:25AM 25 Your Honor, but I actually think some context is very

10:26AM 1   important here because I was actually very surprised in

10:26AM 2   the things my friends are giving here and all of his

10:26AM 3   focus on waiver and changing positions and I certainly

10:26AM 4   don't want to get into some sort of ad hominem, you

10:26AM 5   know, like attacks back and forth.  What I would like

10:26AM 6   to do is just put some context there.

10:26AM 7            The reason I was surprised is we're at

10:26AM 8   the class certification stage and this is very

10:26AM 9   important.  We're not -- there's not a pending motion

10:26AM 10  to dismiss on statute of limitations grounds.  There's

10:26AM 11  not a motion for summary judgment.  We're at the class

10:26AM 12  certification stage.

10:26AM 13           And so the first time these statute of

10:26AM 14  limitations arguments come up are in UBS' opposition to

10:26AM 15  our motion to certify.  And we've heard a lot of

10:26AM 16  argument today about the merits of statute of

10:26AM 17  limitations questions, but what's interesting is very

10:26AM 18  few, if any of those arguments, go to the nature of --

10:26AM 19  go to the question of whether those statute questions

10:26AM 20  could be resolved on a class basis.

10:26AM 21           I'm happy to sit here and make these

10:26AM 22  legal arguments and I have a few things that I think

10:27AM 23  are important that I'd like to say, but if you listen,

10:27AM 24  every single argument that we've been having back and

10:27AM 25  forth, they're -- they're legal questions that will be

10:27AM 1  decided one way or the other and will affect the entire

10:27AM 2  class. And so you know, in -- in briefing this case,

10:27AM 3  we had no obligation in our class certification motion

10:27AM 4  to anticipate a statute -- a statute of limitations

10:27AM 5  defense.

10:27AM 6  And in writing ourself a mental brief, we

10:27AM 7  had a limited number of pages. And in fact, UBS was

10:27AM 8  not willing to give us additional pages and so we

10:27AM 9  addressed the statute of limitations question very

10:27AM 10  briefly. The notion that somehow we've waived

10:27AM 11  arguments or we have that sort of burden here, it's

10:27AM 12  frankly very surprising.

10:27AM 13  Now, with that said, I'd just like to

10:27AM 14  make a few brief legal points. On what I call our

10:27AM 15  Marriott theory, you know, the notion that the -- the

10:27AM 16  claim accrues when the lawsuit is filed, my friend

10:27AM 17  says, well, it's very surprising that you could have

10:27AM 18  such a -- such a broad statute of limitations. A

10:28AM 19  statute of limitations would mean nothing.

10:28AM 20  Let's not forget, Your Honor, that there

10:28AM 21  is no statute of limitations in ERISA for nonfiduciary

10:28AM 22  breached claims. You only get a limitations period

10:28AM 23  under federal common law because the Courts have agreed

10:28AM 24  to borrow state law. And let me cite a case that they

10:28AM 25  have in their brief to make this point. This is on

10:28AM 1   page 8 of their opposition.

10:28AM 2           They cite the Nordstar case.  It's a

10:28AM 3   Supreme Court case from 1995.  What that case makes

10:28AM 4   clear is although the default rule under federal law is

10:28AM 5   that when a statute is silent, you borrow the most

10:28AM 6   analogous state law statute of limitations, that's the

10:28AM 7   default rule.  If borrowing a state law statute of

10:28AM 8   limitations would frustrate the purpose of the federal

10:28AM 9   statute, you don't do it.

10:28AM 10          And so to the point of waiver, I made

10:28AM 11  very clear in our -- in our supplemental brief.  This

10:28AM 12  is page 9, footnote 9, we reserve the right to contest

10:29AM 13  the premises of UBS' argument.  If this case comes down

10:29AM 14  to statute of limitations, I would hope that we will

10:29AM 15  get the ability to actually brief at length these

10:29AM 16  complicated questions, because I actually think that

10:29AM 17  there are many things that could be said.  But nothing

10:29AM 18  you've heard today has anything to do with whether or

10:29AM 19  not they can be resolved on a class basis as opposed to

10:29AM 20  somehow undermining adequacy and typicality or if we're

10:29AM 21  talking about a 23(b)(3) class predominance.  Now,

10:29AM 22  that's on our Marriott theory.

10:29AM 23          On what -- what my friend is calling our

10:29AM 24  fallback theory, and it's anything but, if you look at

10:29AM 25  page 10, footnote 12 of our opposition, of our

10:29AM 1   supplemental brief, we made it clear that none of these

10:29AM 2   statutory statute of limitations issues are sufficient

10:29AM 3   to warrant the denial of a -- of a class certification

10:29AM 4   motion.  And in fact, we cite a case, and this is an

10:29AM 5   uncontroversial proposition, that as long as there's a

10:30AM 6   sufficient constellation of common issues, even if the

10:30AM 7   statute issues were -- were individualized, it wouldn't

10:30AM 8   bar class certification.

10:30AM 9           The -- the principle and these series of

10:30AM 10  cases that I cited that say that the forfeiture is the

10:30AM 11  starting point, they -- they should come as no surprise

10:30AM 12  to UBS because they briefed this line of cases in their

10:30AM 13  papers.  And they have a footnote, this is footnote 8

10:30AM 14  of their supplemental brief on page 10, and it's

10:30AM 15  interesting.  They cite a Fourth Circuit case.

10:30AM 16          I found -- and it kind of made me laugh

10:30AM 17  when I read it because they cite a Fourth Circuit case,

10:30AM 18  but the Fifth Circuit, which is what's obviously

10:30AM 19  relevant here, has clearly contrary authority that --

10:30AM 20  that -- that makes it almost impossible to argue that

10:30AM 21  at a minimum the forfeiture wouldn't be the starting

10:30AM 22  point.  So to hear my friend get up and say with some

10:30AM 23  sort of consternation that I've mentioned a series of

10:30AM 24  Fifth Circuit cases that he hasn't had a chance to

10:30AM 25  respond to, when he's put this argument sort of into

10:31AM 1    the issue in his supplemental brief and cited authority

10:31AM 2    from the wrong circuit, it's a little bit

10:31AM 3    disconcerting.

10:31AM 4              So I don't want to belabor the point

10:31AM 5    because I know there's many issues we need to cover

10:31AM 6    today, but at the end of the day, I guess I -- I would

10:31AM 7    rest on the notion that unless there is some reason for

10:31AM 8    the Court to believe that these legal questions about

10:31AM 9    statute of limitations are actually going to present an

10:31AM 10   adequacy or typicality problem, which I have not yet

10:31AM 11   heard, I don't think they require any further

10:31AM 12   attention.

10:31AM 13             And if there is an adequacy or typicality

10:31AM 14   problem, then I would hope that the argument would be

10:31AM 15   directed at that so that we have an opportunity to

10:31AM 16   clarify our position on why this isn't a bar to

10:31AM 17   certification.  Because I really -- the case is

10:31AM 18   sufficiently complicated procedurally, but I'd hate for

10:31AM 19   us to sort of get lost or mired in legal arguments

10:31AM 20   about whether the statute of limitations applies here

10:31AM 21   when it's not really relevant to the task at hand.

10:31AM 22             THE COURT:  And frankly, my concern

10:32AM 23   about the statute of limitations has been more along

10:32AM 24   the lines of whether or not it would make the -- the

10:32AM 25   class difficult to administer if you had multiple

10:32AM 1 different statutes that would apply.  I'm understanding

10:32AM 2 now that I simply missed that issue, that -- that in

10:32AM 3 fact, the parties agree that the entire class would be

10:32AM 4 bound by the -- the single statute from the forum.

10:32AM 5             MR. STRIS:   Although with respect, Your

10:32AM 6 Honor, I -- I -- I don't think the parties agree on

10:32AM 7 that issue.  I don't think the -- our position has

10:32AM 8 always been the Court need not reach the statute of

10:32AM 9 limitations questions now.  If you're forcing me to

10:32AM 10 take a position on sort of the merits of the statute of

10:32AM 11 limitations issue, I believe that neither side has

10:32AM 12 taken a position on what the borrowing would be.

10:32AM 13             THE COURT:   Well, it's -- it's a very

10:32AM 14 commonplace thing that in nationwide class actions

10:33AM 15 there is an issue about manageability and predominance

10:33AM 16 and other factors dealing with the question whether

10:33AM 17 different class members are going to be subjected to --

10:33AM 18             MR. STRIS:   That's correct.

10:33AM 19             THE COURT:   -- different statute of

10:33AM 20 limitations, so --

10:33AM 21             MR. STRIS:   Well, can I speak --

10:33AM 22             THE COURT:   -- that's the extent to which

10:33AM 23 I'm forcing you to deal with it now.

10:33AM 24             MR. STRIS:   But I'd like to speak to that

10:33AM 25 directly.  Let's -- instead of saying what the parties

10:33AM 1  are going to argue, let me put it this way. Let's take

10:33AM 2  what I would describe as the worst case scenario for us

10:33AM 3  and I'll explain why it doesn't matter. The worst case

10:33AM 4  scenario is that the correct view of the law is that

10:33AM 5  you borrow the state law statutes and then -- and the

10:33AM 6  relevant statutory period comes from the -- the

10:33AM 7  residency state of every class member.

10:33AM 8            Let's assume that's the case for a

10:33AM 9  minute, because that very well may be the law. Well,

10:33AM 10  that -- that is -- that does not present any reason to

10:33AM 11  deny class certification in a case like this. We're

10:34AM 12  talking about a class of thousands. This isn't

10:34AM 13  Wal-Mart versus Dukes where we're talking about one and

10:34AM 14  a half million people.

10:34AM 15            UBS undoubtedly has clear records and

10:34AM 16  I -- and I challenge them to stand up and challenge

10:34AM 17  this, as to what state every Plaintiff is in and it's

10:34AM 18  clear --

10:34AM 19            THE COURT:  And what if the Plaintiffs

10:34AM 20  have moved around during the applicable period?

10:34AM 21            MR. STRIS:  Well, I -- I -- again, I --

10:34AM 22  I did not come prepared to discuss, like, all -- all of

10:34AM 23  the nuances of statute of limitations that I didn't

10:34AM 24  think were relevant, but I -- I will say, I will make

10:34AM 25  the representation that I believe the law -- the

10:34AM 1  relevant law here is that the -- the -- the residency

10:34AM 2  of the individual at the point in time in question, I

10:34AM 3  don't know if it's the filing of the -- of the

10:34AM 4  complaint, I doubt -- I doubt it.  I believe it's the

10:34AM 5  residency when they participated in the plan is --

10:34AM 6  is -- is the relevant state that you would use.

10:34AM 7            But there's -- there's an answer to that

10:34AM 8  and it's going to be an answer that's reflected in UBS'

10:34AM 9  records.  So all that's required, Your Honor, I don't

10:34AM 10  mean to be flip, all that's required under the worst

10:35AM 11  case scenario for us, Your Honor, is that we look to

10:35AM 12  UBS' records, figure out the relevant state.  Then you

10:35AM 13  look at a chart and I -- we cite this chart in our

10:35AM 14  papers of what the -- the -- the contract state law

10:35AM 15  statutory period is in that state, and it's -- it's a

10:35AM 16  simple administrative calculation.

10:35AM 17            This is not like the cases that UBS sites

10:35AM 18  where the -- the reason why the statute of limitations

10:35AM 19  question destroyed the ability to proceed as a class is

10:35AM 20  because there were very complicated individualized

10:35AM 21  factors such as the constructive knowledge or the

10:35AM 22  active knowledge --

10:35AM 23            THE COURT:  Well, if the only thing

10:35AM 24  borrowed is the time period, then perhaps what you're

10:35AM 25  describing could work.  But if the accrual and

10:35AM  1  interruption and other state law doctrines regarding

10:35AM  2  statute of limitations are also borrowed, then --

10:36AM  3                    MR. STRIS:  Oh, but they're not.

10:36AM  4                    THE COURT:  -- it becomes a problem --

10:36AM  5                    MR. STRIS:   Sure.

10:36AM  6                    THE COURT:  -- that can affect

10:36AM  7  certification.

10:36AM  8                    MR. STRIS:   But -- but the law is clear

10:36AM  9  and UBS concedes this point, it's just black letter

10:36AM 10  law.  The accrual period for the question of a federal

10:36AM 11  cause of action, the -- the accrual of the statute of

10:36AM 12  limitations is a question of federal law.  And I'm

10:36AM 13  going to be honest, there are some cases where that

10:36AM 14  presents an insuperable bar to class certification.

10:36AM 15  Those are cases where the constructive knowledge or the

10:36AM 16  actual knowledge of specific facts on the part of

10:36AM 17  individual Plaintiffs is going to -- is going to

10:36AM 18  dictate the answer to the question.  That's not this

10:36AM 19  case.

10:36AM 20                    In this case accrual is either going to

10:36AM 21  be pegged to forfeiture, which is just a clear

10:36AM 22  administrative matter looking to UBS' records or the

10:36AM 23  Court will accept our Marriott argument and accrual

10:36AM 24  will be pegged essentially to the filing of the

10:36AM 25  complaint.  There -- there's no scenario under which

10:36AM 1 UBS' statute of limitations argument presents any

10:36AM 2 individualized inquiries -- requires any sort of

10:37AM 3 individualized inquiries that would warrant the denial

10:37AM 4 of -- of -- of class certification.

10:37AM 5 THE COURT: All right. I think that,

10:37AM 6 Mr. Scalia, maybe the best way to approach this, and

10:37AM 7 I'll give you an opportunity for a brief rejoinder, but

10:37AM 8 would be for you to address what you feel are the

10:37AM 9 issues that you have on the Rule 23(a) requirements.

10:37AM 10 And once you've identified those, we -- I can ask the

10:37AM 11 Plaintiffs to respond, because I think some of them are

10:37AM 12 probably not at issue.

10:37AM 13 MR. SCALIA: We don't challenge

10:37AM 14 numerosity and for present purposes aren't challenging

10:37AM 15 commonality, Your Honor. So it's typicality and

10:37AM 16 adequacy. We've already, obviously, talked about one

10:37AM 17 issue bearing on that. The releases bear on that, so

10:38AM 18 do receipt of in-service situations.

10:38AM 19 THE COURT: All right.

10:38AM 20 MR. SCALIA: And of course we have the

10:38AM 21 waiver, which we regard as really the threshold issue.

10:38AM 22 THE COURT: Well, we'll -- we can take

10:38AM 23 those up in any order you prefer.

10:38AM 24 MR. SCALIA: Would you like me to begin

10:38AM 25 by addressing them, Your Honor?

10:38AM 1          THE COURT:  Yes.

10:38AM 2          MR. SCALIA:  Your Honor, if I could then

10:38AM 3 begin simply by responding briefly just a few points in

10:38AM 4 the discussion you just had with Mr. Stris.

10:38AM 5          First, Plaintiffs' Counsel is suggesting

10:38AM 6 that this question of accrual limitations period

10:38AM 7 doesn't go to Rule 23(a) issues, but of course it does.

10:38AM 8 Our -- our view is that under very clear legal

10:38AM 9 principles, all of these Plaintiffs' claims are

10:38AM 10 time-barred, at least from inadequate representatives.

10:38AM 11 Mr. Stris explained that Plaintiffs had not addressed

10:38AM 12 certain legal issues including the limitations period

10:38AM 13 because Defendants had refused to give an extension of

10:38AM 14 the page limit.  I think when he reflects on that,

10:39AM 15 he'll realize that actually we did --

10:39AM 16          THE COURT:  That's not an issue you need

10:39AM 17 to worry about.

10:39AM 18          MR. SCALIA:  I just want you to know

10:39AM 19 that we actually did, from five pages to 15 pages.  I

10:39AM 20 think he'll confirm that when he thinks about it, but I

10:39AM 21 think it was important to mention.

10:39AM 22          There was a moment where Mr. Stris

10:39AM 23 offered an alternative, even third theory for the

10:39AM 24 limitations period in which he cited a Supreme Court

10:39AM 25 case that really is not opposite, but suggested that

10:39AM 1 maybe there's no limitations period whatsoever. That,

10:39AM 2 I would suggest, is emblematic of this sort of

10:39AM 3 floundering and flailing about for different legal

10:39AM 4 theories when dissatisfied that the one initially put

10:39AM 5 forward was not satisfactory.

10:39AM 6 Your Honor, you asked a couple questions

10:39AM 7 about applying different states' limitations periods

10:39AM 8 and they do matter. But again, they go to adequacy and

10:39AM 9 typicality and potential conflicts within the class.

10:39AM 10 THE COURT: Why would that matter if

10:39AM 11 your position is correct that -- that the forum states

10:40AM 12 statute applies to the whole class?

10:40AM 13 MR. SCALIA: Well, that would mean that

10:40AM 14 they're not adequate because they're all time barred,

10:40AM 15 but I agree the manageability issues, Your Honor, are

10:40AM 16 less. You raised, though, the question of Plaintiffs'

10:40AM 17 moving and it's a very good question. Actually Mr.

10:40AM 18 Stacy, who was put forward as the lead representative

10:40AM 19 Plaintiff in the Hendricks case did move and --

10:40AM 20 THE COURT: Why would that matter if

10:40AM 21 your position on the statute is correct?

10:40AM 22 MR. SCALIA: It wouldn't. But as to the

10:40AM 23 approach that's now being suggested by the Plaintiffs

10:40AM 24 which concerned you from a manageability perspective,

10:40AM 25 it would matter, Your Honor. It would matter also

10:40AM 1 because where the statute of limitations period is

10:40AM 2 longer or shorter, these Plaintiffs may have an

10:40AM 3 interest in stating what the legal rule is that's

10:40AM 4 different from, for example, where the limitations

10:40AM 5 period may be shorter.

10:40AM 6 And -- and -- and finally, Your Honor,

10:40AM 7 with regard to the theory that Plaintiffs have given as

10:41AM 8 to when accrual does -- does occur, you asked whether

10:41AM 9 state law accrual rules were used or whether Federal

10:41AM 10 Rules are -- are used and I agree with Plaintiffs'

10:41AM 11 Counsel that there's a federal accrual rule. It's --

10:41AM 12 it's the discovery principle which we would say, you

10:41AM 13 know, is reflected by this chart.

10:41AM 14 However, this is another respect in which

10:41AM 15 Plaintiffs' theory of discovery would make this case

10:41AM 16 absolutely unmanageable as a class action, because

10:41AM 17 imagine a discussion where a class member comes to

10:41AM 18 somebody in a senior position at UBS and says, how come

10:41AM 19 I'm not getting vested? I would -- expected to be

10:41AM 20 vested by now and that person at UBS says, well, this

10:41AM 21 is a deferred compensation plan. It's -- it's not an

10:41AM 22 ERISA plan. Here, look at our 2005 compensation plan

10:41AM 23 document which says it's not an ERISA plan.

10:41AM 24 Under Plaintiffs' own theory, even under

10:42AM 25 their theory, surely that person who's then told that

10:42AM 1    this isn't an ERISA plan in response to an exact

10:42AM 2    question of whether it's an ERISA plan, certainly that

10:42AM 3    person has now received sufficient notice under their

10:42AM 4    mistaken theory to come forward, but that's a very

10:42AM 5    imaginable theory on a class basis, Your Honor.

10:42AM 6                THE COURT:    What's the -- the question

10:42AM 7    would be whether they'd been injured at that point.

10:42AM 8    And frankly, I do think that injury is the touchstone

10:42AM 9    for the running of that limitation period.  But in any

10:42AM 10   event, I do understand your position.

10:42AM 11               MR. SCALIA:    Right.  And -- and our

10:42AM 12   belief is that the injury occurs once you're on -- once

10:42AM 13   you're aware that you are not vesting in accordance

10:42AM 14   with ERISA.

10:42AM 15               Your Honor, if I could just take a moment

10:42AM 16   to grab my notes --

10:42AM 17               THE COURT:    Okay.

10:42AM 18               MR. SCALIA:    -- for these -- these other

10:42AM 19   issues that you'd like me to address.

10:43AM 20               THE COURT:    Mr. Scalia, I tell you what,

10:43AM 21   we're going to take about a 10 minute recess now and

10:43AM 22   that will give you a chance to gather your notes and

10:43AM 23   then we'll come back and we'll start with these issues

10:43AM 24   that you've identified.

10:43AM 25               MR. SCALIA:  Yes, Your Honor.

10:43AM 1                THE COURT:  Thank you.

10:43AM 2                LAW CLERK:  All right.

10:43AM 3                (Recess.)

10:43AM 4                LAW CLERK:  All rise.

10:43AM 5                THE COURT:  Thank you.  Please be seated.

10:55AM 6                Mr. Scalia, you had the floor.  Do you

10:55AM 7 want to address the class action waiver issue?

10:55AM 8                MR. SCALIA:  Yes, Your Honor.  What I

10:55AM 9 would propose to do is begin with waiver and then

10:55AM 10 brief -- briefly address the release issue and

10:56AM 11 in-service distributions.

10:56AM 12                Your Honor, with regard to the waiver,

10:56AM 13 these are highly intelligent, sophisticated individuals

10:56AM 14 whose very purpose is to advise others regarding their

10:56AM 15 financial resources and who also have far more than the

10:56AM 16 usual amount of ability to look out for their own

10:56AM 17 financial well-being.

10:56AM 18                THE COURT:  I understand, but some

10:56AM 19 people might say they're more in sales than -- but in

10:56AM 20 any event, I consider that argument to be similar to

10:56AM 21 their argument that UBS is an evil entity.  I

10:56AM 22 understand you're saying they're sophisticated and that

10:56AM 23 should be held against them, but in any event, let's

10:56AM 24 talk about the waiver itself.

10:56AM 25                MR. SCALIA:  Yes.  And what I'd like to

10:56AM 1  do is put it up on the slide.  And the reason, Your

10:56AM 2  Honor, that I mentioned their sophistication is simply

10:56AM 3  to their credit, they have not come before the Court,

10:56AM 4  as you sometimes have in waiver cases, and claim that

10:57AM 5  it was unconscionable, that they entered it under

10:57AM 6  duress.  It is an undisputed fact that the Plaintiffs

10:57AM 7  in this case signed a waiver that said in no uncertain

10:57AM 8  terms that they would not participate in a class action

10:57AM 9  relating to their employment or the separation of their

10:57AM 10  employment from UBS.  And so if we could -- I guess

10:57AM 11  again we're attempting to display this slide.

12  COURT CLERK:  Number three.

13  MR. SCALIA:  Three?  What's the sequence,

14  power and then three?

15  COURT CLERK:  It's just the left table

16  and number three.

10:58AM 17  MR. SCALIA:  Okay.  Why don't we hand a

10:58AM 18  copy up to the Judge and a copy to Plaintiffs' table as

10:58AM 19  well.

10:58AM 20  Your Honor, this waiver is one that all

10:58AM 21  the Claimants signed, either in 2007 or 2008 and

10:58AM 22  included with our opening brief the waiver document

10:58AM 23  itself.  It is a page, page 26 from Docket No. 77,

10:58AM 24  entry 21 and the 2008 waiver, is Docket 77, entry 7.

10:58AM 25  And Your Honor, what this page illustrates is simply

| | | |
|---|---|---|
| 10:58AM | 1 | the entire coincidence in overlap between the claim |
| 10:58AM | 2 | being brought now and the waiver they signed.  They |
| 10:59AM | 3 | agreed, as this language shows, to waive any right to |
| 10:59AM | 4 | commence or be a party to or an actual putative class |
| 10:59AM | 5 | member of any class or collective action arising out of |
| 10:59AM | 6 | or relating to your employment with UBS or the |
| 10:59AM | 7 | termination of employment with UBS. |
| 10:59AM | 8 | That's what this case concerns, Your |
| 10:59AM | 9 | Honor.  Mr. Eddingston admitted that in deposition. |
| 10:59AM | 10 | Mr. Eddingston is the lead Plaintiff in the Eddingston |
| 10:59AM | 11 | case.  His testimony was accepted as satisfactory for |
| 10:59AM | 12 | all and when he was asked whether his claims arise out |
| 10:59AM | 13 | of his employment or the termination of employment, he |
| 10:59AM | 14 | said yes, they do. |
| 10:59AM | 15 | And finally, Your Honor, we quote from |
| 10:59AM | 16 | the complaint itself where in stating those on behalf |
| 10:59AM | 17 | they sue -- they sue, they said those employed by |
| 10:59AM | 18 | Defendant or those who left the employment of |
| 10:59AM | 19 | Defendant, Your Honor. |
| 10:59AM | 20 | Your Honor, with all respect, I think |
| 10:59AM | 21 | it's that simple.  There's an entire overlap between -- |
| 10:59AM | 22 | THE COURT:  Where is this waiver |
| 10:59AM | 23 | contained?  What -- what document is this -- |
| 11:00AM | 24 | MR. SCALIA:  This waiver is in what's |
| 11:00AM | 25 | called a compensation plan document.  Your Honor, I can |

| | | |
|---|---|---|
| 11:00AM | 1 | have handed up to you a copy of the 2007 compensation |
| 11:00AM | 2 | plan. |
| 11:00AM | 3 | THE COURT: All right. |
| 11:00AM | 4 | MR. SCALIA: And this document is one |
| 11:00AM | 5 | that you were shown at the prior hearing, Your Honor. |
| 11:00AM | 6 | And what Plaintiffs urged upon you in the prior hearing |
| 11:00AM | 7 | was that this was what they called then and call now |
| 11:00AM | 8 | simply a summary brochure, not an important document, |
| 11:00AM | 9 | didn't mean much. Your Honor, it's -- it's page 26 |
| 11:00AM | 10 | that the provision appears. |
| 11:00AM | 11 | THE COURT: They contend in their briefs |
| 11:00AM | 12 | that there is a provision in this document that refers |
| 11:00AM | 13 | to the document itself as a mere summary of the -- at |
| 11:00AM | 14 | some larger plan, which they've contended in their |
| 11:00AM | 15 | briefs is said to control in the event of any |
| 11:00AM | 16 | difference. |
| 11:00AM | 17 | MR. SCALIA: Your Honor, if you could |
| 11:01AM | 18 | turn to page 19 of that document and allow me to |
| 11:01AM | 19 | respond to that. You can see the sort of footnote down |
| 11:01AM | 20 | there and then respond to the broad point. |
| 11:01AM | 21 | In the prior hearing on arbitration when |
| 11:01AM | 22 | the Plaintiffs contended that this was just a |
| 11:01AM | 23 | relatively meaningless mere summary document, you asked |
| 11:01AM | 24 | to see a copy. And when you saw a copy, recognized its |
| 11:01AM | 25 | length and the number of issues that it addressed, you |

11:01AM 1    were no longer receptive to that argument.  At that

11:01AM 2    point, the Plaintiffs changed course to try a different

11:01AM 3    argument on you.

11:01AM 4              If I could just point out a couple of

11:01AM 5    things on this page 19.  First, the footnote says:  In

11:01AM 6    the event of a conflict between the summary of the

11:01AM 7    plans set forth in this brochure and the plan

11:01AM 8    documents, the plan documents will control.  This

11:01AM 9    document on this particular page, page 19, is

11:01AM 10   summarizing the PartnerPlus Plan.  It's talking about

11:01AM 11   PartnerPlus functions.  And at the very end on page 22,

11:02AM 12   Your Honor, it -- it again says:  Any difference

11:02AM 13   between this summary and the plan document, the plan

11:02AM 14   document will govern.

11:02AM 15             As the transcript from the prior hearing

11:02AM 16   will show, you recognized then, Your Honor, as I think

11:02AM 17   is, you know, plainly correct, this is a reference to

11:02AM 18   the summary of the Partnership Plan operation itself.

11:02AM 19   It's short, but it does not mean that this document as

11:02AM 20   a whole is not an effective, controlling, legally

11:02AM 21   binding document.  And in fact, every one of the

11:02AM 22   Plaintiffs, if you go to the very end of this document,

11:02AM 23   it has a signature page.  This is page 29, a

11:02AM 24   compensation plan acknowledgement, they all signed it.

11:02AM 25   We've got these among our exhibits with our opening

11:02AM 1 opposition brief.

11:02AM 2 This is a powerful, controlling document

11:02AM 3 governing their relationship. And just while you're on

11:02AM 4 page 19, Your Honor, you'll see that in the second

11:03AM 5 bullet point it refers to the recognition Council --

11:03AM 6 I'm sorry, in the first bullet point, members and then

11:03AM 7 the next bullet point below there it talks about

11:03AM 8 deferred productivity and UBS length of service awards,

11:03AM 9 and then the asset and credit line growth award. Your

11:03AM 10 Honor --

11:03AM 11 THE COURT: Which page are you --

11:03AM 12 MR. SCALIA: This is page 19.

11:03AM 13 THE COURT: My page 19 summarizes the

11:03AM 14 UBS PartnerPlus Plan?

11:03AM 15 MR. SCALIA: That's right. And the

11:03AM 16 first bullet refers to recognition Council members.

11:03AM 17 THE COURT: All right. I see that.

11:03AM 18 MR. SCALIA: And the next bullet talks

11:03AM 19 about deferred productivity and UBS length of service

11:03AM 20 awards. What this is doing, Your Honor, is explaining

11:03AM 21 that those different bonuses get poured into

11:03AM 22 PartnerPlus. So again, this document, if you go to

11:03AM 23 page 18, you'll see that it talks about a couple of

11:04AM 24 those awards, a couple of those bonuses. Page 18 talks

11:04AM 25 about the productivity and UBS length of service award.

11:04AM 1          Page 18 was the document for these

11:04AM 2     Plaintiffs which told them how these awards would be

11:04AM 3     calculated.  And then page 19 explains how those awards

11:04AM 4     get put into PartnerPlus.  So although pages 19 through

11:04AM 5     22 summarize PartnerPlus, as you see from page 18 or if

11:04AM 6     you go back to page 16, which talks about some other --

11:04AM 7     the recognition Councils, this document is governing

11:04AM 8     their compensation, setting the terms, and then also

11:04AM 9     summarizing related plans that essentially are

11:04AM 10    recipients of the awards earned as a consequence of

11:04AM 11    this compensation plan document.

11:04AM 12         Ironically, there is a separate summary

11:04AM 13    that sometimes has been given out by UBS that

11:04AM 14    summarizes this in PartnerPlus, but this is no summary

11:04AM 15    brochure.  This is a document that is critical in

11:05AM 16    determining their compensation.

11:05AM 17         And again, to get to the punch line, Your

11:05AM 18    Honor, it's a very clear waiver.  It's a broad waiver.

11:05AM 19    It covers exactly what the complaint says their case

11:05AM 20    concerns and it covers what Mr. Eddingston, the

11:05AM 21    representative Plaintiff, admitted what he was suing

11:05AM 22    over.

11:05AM 23         I will have just a couple last points to

11:05AM 24    add.  I think that anything further I have to say to

11:05AM 25    this is best in replying to Plaintiffs' Counsel,

11:05AM 1 because quite candidly, something this clear that they

11:05AM 2 all signed, that they don't claim to be unconscionable

11:05AM 3 in any way, disposes of this case in an instant.

11:05AM 4 I'll just make two brief points finally.

11:05AM 5 They said that this is different than the PartnerPlus

11:05AM 6 Plan and that's immaterial. What that means is there's

11:05AM 7 no conflict because they're different. They've said

11:05AM 8 the PartnerPlus Plan arbitration language is narrow;

11:05AM 9 that doesn't matter, this is plainly broad and it

11:05AM 10 plainly covers their points.

11:06AM 11 Your Honor, just to turn finally to the

11:06AM 12 releases, Mr. Stacy signed a release of his claims --

11:06AM 13 MR. STRIS: Sorry, excuse me, I -- I

11:06AM 14 don't want to interrupt, but it might be more efficient

11:06AM 15 if I could respond to the waiver first, because I think

11:06AM 16 we're talking about a lot of --

11:06AM 17 THE COURT: I -- I do agree with that.

11:06AM 18 I'd -- I'd like to hear the argument on the waiver.

11:06AM 19 And I'm sorry, I didn't realize that you had moved on

11:06AM 20 to the release, Mr. Scalia.

11:06AM 21 MR. SCALIA: Thank you, Your Honor.

11:06AM 22 THE COURT: Thank you.

11:06AM 23 MR. STRIS: Your Honor, again, it's

11:06AM 24 interesting to hear, my friend said this issue is

11:06AM 25 simple. I'd agree with him. I just think it's simple

11:06AM 1 in the other direction. And here's what I think I'd

11:06AM 2 like to do on that score. I'd like to point -- I'd

11:06AM 3 like you to take out, if you don't mind, the 2007

11:06AM 4 financial advisory compensation plan that he's put in

11:06AM 5 front of you and I'd like to go through what I think

11:06AM 6 are the most relevant provisions.

11:07AM 7 And I'd like to start with a page that

11:07AM 8 he -- that my friend did not point out, which is page

11:07AM 9 27, it's the conclusion. I -- I -- I -- I've been told

11:07AM 10 since I was young, it's often good to start with your

11:07AM 11 conclusion. And here UBS led with that conclusion and

11:07AM 12 it couldn't be any clearer. It says: The 2007

11:07AM 13 financial advisor compensation plan summarizes many,

11:07AM 14 but not all of the elements of your compensation.

11:07AM 15 Now, my point is not that that -- that

11:07AM 16 ends the inquiry, but it starts the inquiry. It makes

11:07AM 17 it clear that this document summarizes a number of

11:07AM 18 other things. So with that starting point, now let's

11:07AM 19 look at some of the other provisions.

11:07AM 20 Now, my friend focussed a lot on the

11:07AM 21 footnote on page 19. And he -- I believe he did that

11:07AM 22 on purpose because that language talks about the event

11:07AM 23 of a conflict and although that language is good, it's

11:07AM 24 not the language that we rely on. We rely on the

11:07AM 25 language on page 22 of this document. And let's be

11:08AM 1   very clear about what it says.  It says:  If there is

11:08AM 2   any difference between this summary and the plan

11:08AM 3   document, the plan document will govern.

11:08AM 4               Now, we read that consistent with the

11:08AM 5   conclusion of this document itself as referring to it

11:08AM 6   in its entirety.  If there's any difference between

11:08AM 7   this summary, meaning the entire brochure, and the plan

11:08AM 8   document, the plan document will govern.

11:08AM 9               And I'd like to say a few things about

11:08AM 10  why that interpretation must be adopted in this case.

11:08AM 11  First, UBS has gone to great pains to argue that we

11:08AM 12  have not yet proven that this is an ERISA plan.  Okay.

11:08AM 13  Well, let's -- let's look at what that would mean.

11:08AM 14  That means that at this stage in the case, you

11:08AM 15  interpret this document under general canons of

11:08AM 16  contract law.  And one general canon of contract law

11:08AM 17  that we pointed out, that has never been responded to

11:08AM 18  by UBS, is that unquestionably you interpret any

11:08AM 19  ambiguity against the drafter.

11:09AM 20              At a minimum the interpretation that I've

11:09AM 21  advanced here, that being if there's any difference

11:09AM 22  between this summary, this summary can mean being the

11:09AM 23  entire document and the plan document, the plan

11:09AM 24  document will govern, at a minimum that is a credible

11:09AM 25  interpretation of this provision, particularly in light

11:09AM 1    of the conclusion that it self-describes the entirety

11:09AM 2    of the document as a summary. And as such, I -- I

11:09AM 3    guess here's where I agree with -- with -- with my

11:09AM 4    friend side opposite, the issue is very simple. And --

11:09AM 5    and the reason the -- the issue is simple is because

11:09AM 6    the -- the -- the PartnerPlus Plan provision and the

11:09AM 7    arbitration provision here, they're not only different,

11:09AM 8    they're staggeringly different.

11:09AM 9                    And so let's talk about that for a

11:09AM 10   minute.

11:09AM 11                   THE COURT:   Well, let me stick for a

11:09AM 12   minute with your interpretation of the document.

11:09AM 13                   MR. STRIS:   Okay.

11:09AM 14                   THE COURT:   It does seem to me that page

11:10AM 15   19 starts a discrete part of this document that

11:10AM 16   discusses the UBS PartnerPlus/UBS Financial Advisor

11:10AM 17   Deferred Award Plan and that it specifically recites

11:10AM 18   that it's a summary of that plan; though, it also says

11:10AM 19   summary of the plans, plural, set forth in this

11:10AM 20   brochure, down in the asterisks footnote. But in any

11:10AM 21   event, I -- I don't think it's a fair reading of this

11:10AM 22   document to say that the reference on page 19 and again

11:10AM 23   on page 22 to this summary refers to the entire

11:10AM 24   document.

11:10AM 25                   MR. STRIS:   Could I -- may I respond to

11:10AM 1 that, Your Honor?

11:10AM 2 THE COURT: Yeah, that's why I'm saying

11:10AM 3 it.

11:10AM 4 MR. STRIS: Yeah. So I -- I think with

11:11AM 5 respect, it is at a minimum a fair reading, and let me

11:11AM 6 see if I can explain why by -- by referring to

11:11AM 7 contents. So if we look at the whole reason we're

11:11AM 8 here, page 26 of the document, which is entitled with a

11:11AM 9 big heading arbitration. This provision, it's a --

11:11AM 10 it's -- it's a dispute resolution provision that has a

11:11AM 11 number of elements to it and it's under the heading

11:11AM 12 arbitration. No one in this case disputes that the

11:11AM 13 formal PartnerPlus document also has a dispute

11:11AM 14 resolution provision and that it's -- it also has the

11:11AM 15 exact same title, arbitration.

11:11AM 16 There is literally no way to give force

11:11AM 17 to both of those provisions and we gave a number of

11:11AM 18 reasons why in our supplemental brief. They by their

11:11AM 19 own terms, they apply different states' laws. One

11:11AM 20 applies New Jersey law. One applies New York law.

11:11AM 21 They carve out different claims. The -- the one in the

11:11AM 22 plan doesn't mention anything about injunctive relief.

11:11AM 23 This one here cars out -- carves out injunctive relief.

11:12AM 24 They talk about different arbitral bodies.

11:12AM 25 They are two, not only different, but

11:12AM 1    contradictory dispute resolution provisions.  So it --

11:12AM 2    it presents, actually if you think about it, a fairly

11:12AM 3    straight forward problem, which is what happens when

11:12AM 4    you get a case where it's unquestionably a lawsuit over

11:12AM 5    the PartnerPlus Plan.  And I think UBS would agree that

11:12AM 6    the PartnerPlus Plan is more narrow than the

11:12AM 7    compensation work, what I call the summary brochure.

11:12AM 8         Do you give force to the specific

11:12AM 9    arbitration provision in the PartnerPlus Plan that only

11:12AM 10   applies to disputes under the PartnerPlus Plan or do

11:12AM 11   you give force to the contradictory, or at a minimum,

11:12AM 12   different arbitration provision in the summary

11:12AM 13   brochure.  You have to pick one.  See, this -- this is

11:12AM 14   the -- this is where UBS' argument breaks down.  They

11:12AM 15   want to suggest that somehow you can reconcile them.

11:12AM 16   You can't.

11:12AM 17        You can't apply -- if one says apply New

11:13AM 18   Jersey law and the other says apply New York law, if

11:13AM 19   one carves out claims for injunctive relief, the other

11:13AM 20   doesn't, that means you have two provisions and you

11:13AM 21   have to pick one.  So even if there had been no

11:13AM 22   precatory language in this -- in this brochure, I think

11:13AM 23   we would be right that as a matter of contract law, you

11:13AM 24   apply the one that's more directly relevant.

11:13AM 25        But UBS has made it easier for us.

11:13AM 1    They've put language in here that says, hey, we're

11:13AM 2    going to summarize a formal plan document.  We're going

11:13AM 3    to talk about a legal document that is many times the

11:13AM 4    length of this summary.  And hey, we want to be clear,

11:13AM 5    and they say it in two places.  In one place they say

11:13AM 6    it was a conflict; in another place they say if there's

11:13AM 7    any differences.

11:13AM 8             Think about what that means.  It means

11:13AM 9    the spirit of this document which UBS drafted which

11:13AM 10   must be construed against them is, hey, we want to

11:13AM 11   enforce our plan and so we're trying to summarize

11:13AM 12   things here, but if there's any confusion and -- and my

11:13AM 13   friend keeps talking about how our clients are all

11:14AM 14   sophisticated, well, if a sophisticated person looks at

11:14AM 15   this and they're told again and again and again, hey,

11:14AM 16   if there's any difference, if there's any conflict, go

11:14AM 17   look at the formal plan document, then at -- at a

11:14AM 18   minimum I think that should establish that -- that it's

11:14AM 19   a sensible and reasonable reading of this provision to

11:14AM 20   say you don't apply the -- the -- anything in the

11:14AM 21   provision entitled arbitration in the summary when you

11:14AM 22   could apply the provision that's entitled arbitration

11:14AM 23   in the plan document.

11:14AM 24             And I think that's true irrespective, I

11:14AM 25   know that's true irrespective of whether PartnerPlus is

11:14AM 1   an ERISA plan.  And that's why we have been, you know

11:14AM 2   content -- we've been claiming again and again and

11:14AM 3   again that there's no reason today for this Court to

11:14AM 4   wade into the merits issues about the ERISA status of

11:14AM 5   the PartnerPlus Plan.  Not because, as my friend

11:14AM 6   suggests, we take the position that it's never

11:14AM 7   appropriate to wade into the merits of a case of --

11:15AM 8   a -- a -- of a class action case, of course it is, but

11:15AM 9   the only reason UBS is trying to litigate at this stage

11:15AM 10   the merits of whether the PartnerPlus Plan is an ERISA

11:15AM 11   plan is because they seem to believe that this contract

11:15AM 12   argument that we're making is wrong and thus we have to

11:15AM 13   go to our secondary argument and I would concede.

11:15AM 14          But if we get to our secondary argument,

11:15AM 15   if you reject our interpretation as a matter of

11:15AM 16   contract, then in order to avoid the effect of this

11:15AM 17   provision, we would have to make a different argument,

11:15AM 18   one of which would be that this is an ERISA case.

11:15AM 19   PartnerPlus is an ERISA plan.  And this can't modify

11:15AM 20   the -- the ERISA plan.  But you don't need to get

11:15AM 21   there, if you accept what I think you must, which is a

11:15AM 22   contract-based argument, which is a reasonable

11:15AM 23   interpretation of a document that was intended as a

11:15AM 24   summary and that has to be construed against UBS, the

11:16AM 25   drafter.

11:16AM 1          THE COURT:   If your argument is that

11:16AM 2   this arbitration clause should not apply to your claims

11:16AM 3   because there is a separate arbitration clause in the

11:16AM 4   PartnerPlus Plan document?

11:16AM 5          MR. STRIS:   That's exactly right.  This

11:16AM 6   case -- we would be in a very different situation, Your

11:16AM 7   Honor, if UBS, as they could have, they're

11:16AM 8   sophisticated, you know, talk about sophisticated, they

11:16AM 9   were well advised here.  They could have written a

11:16AM 10  PartnerPlus Plan that did not have a dispute resolution

11:16AM 11  provision in it, that did not have an arbitration

11:16AM 12  provision and -- and the irony of this is that every

11:16AM 13  version of the PartnerPlus Plan beginning in 1995, and

11:16AM 14  I think this is important, Your Honor, every version of

11:16AM 15  the PartnerPlus Plan has had an arbitration and dispute

11:16AM 16  resolution provision.

11:16AM 17          This summary brochure, which they

11:16AM 18  circulated every year, and we have in the record all of

11:16AM 19  them from, I think, 2000 to 2010, they only began to

11:16AM 20  put this provision in starting in 2007.

11:17AM 21          THE COURT:   Is there a separate

11:17AM 22  financial advisor compensation plan document other than

11:17AM 23  this that -- that exists?

11:17AM 24          MR. STRIS:   No, and -- but --

11:17AM 25          THE COURT:   So this is not just a

11:17AM 1    summary of the financial advisor compensation plan, it

11:17AM 2    is the plan document?

11:17AM 3            MR. STRIS:    This -- well, it depends on

11:17AM 4    what you mean by plan document.  I -- I cannot dispute

11:17AM 5    that this is a plan.  It's called the 2007 Financial

11:17AM 6    Advisor Compensation Plan, but we have to pause for a

11:17AM 7    minute to reflect on what that means.  The reason why

11:17AM 8    they call it a plan, and I'm not trying to be -- to be

11:17AM 9    glib here, it's because some parts of this document

11:17AM 10   describe types of compensation that are not governed by

11:17AM 11   a separate plan document.  It's basically just

11:17AM 12   summarizing things like how your salary is going to get

11:17AM 13   set.  Other aspects of it summarize a lengthy, formal

11:17AM 14   plan document, it's not just PartnerPlus, there's other

11:17AM 15   examples of that.  So --

11:17AM 16           THE COURT:    What are the other examples?

11:18AM 17           MR. STRIS:    Oh, I cite -- I cite them in

11:18AM 18   our brief.  This changes from year to year.

11:18AM 19           In the 2010 document, I think I would

11:18AM 20   need to take a break, Your Honor, and look at my brief

11:18AM 21   to find it, but there is at least one other plan that's

11:18AM 22   governed by a formal plan document and we refer to it

11:18AM 23   in our supplemental brief.

11:18AM 24           THE COURT:    It's not in this 2007?

11:18AM 25           MR. STRIS:    I don't recall if it's in

11:18AM 1 the 2007 version. I know for sure it's in the -- it's

11:18AM 2 in there by 2010.

11:18AM 3 THE COURT: The table of contents does

11:18AM 4 not suggest one, but in any event, I understand what

11:18AM 5 you're saying, that the term plan doesn't have a lot of

11:18AM 6 formal legal meaning outside of ERISA.

11:18AM 7 MR. STRIS: And -- and -- and it's a

11:18AM 8 plan. I'm not trying to suggest that this is not a

11:18AM 9 plan. It describes -- and -- and -- as -- as UBS'

11:18AM 10 corporate representative made clear, it describes all

11:18AM 11 the different types of compensation a financial advisor

11:18AM 12 would get. But -- but in that deposition, he also gave

11:18AM 13 other testimony that I thought was very interesting and

11:19AM 14 I wasn't going to mention it, but my -- my -- my friend

11:19AM 15 from UBS brings it up.

11:19AM 16 He talks about how in some years there

11:19AM 17 was actually a summary of the summary; in other words,

11:19AM 18 he says this financial advisor compensation plan in

11:19AM 19 some years, UBS circulated an even shorter summary that

11:19AM 20 only described the key terms. And this, he's right,

11:19AM 21 and I addressed this issue at the deposition and it's

11:19AM 22 actually a -- a point that's very much in our favor,

11:19AM 23 Your Honor.

11:19AM 24 What UBS' 30(b)(6) deponent testified to

11:19AM 25 is, he said, oh, anything -- we wanted something to be

11:19AM 1    short and really drill down on the key terms of this

11:19AM 2    compensation plan.  So we would write a letter to all

11:19AM 3    of the advisors saying, hey, you're going to get a

11:19AM 4    summary, and one of them is marked as an exhibit to

11:19AM 5    that deposition, and then we would give them a summary.

11:19AM 6              And I asked him, are all the key

11:19AM 7    provisions of the compensation plan in that summary?

11:19AM 8    And he said, yeah, if it's important, it's in there.

11:19AM 9    Well, guess what's not in that summary?  A dispute

11:20AM 10   resolution provision.  There's no arbitration

11:20AM 11   provision.  There's no mention of class waivers,

11:20AM 12   nothing.

11:20AM 13             So the -- the -- the very summary of the

11:20AM 14   summary that opposing Counsel brings up as a point in

11:20AM 15   his favor, it actually cuts against the argument that

11:20AM 16   anyone in our clients' position would look at this

11:20AM 17   document and think that in the context of a claim under

11:20AM 18   PartnerPlus, this -- somehow this arbitration provision

11:20AM 19   was going to govern because it's a doubly whammy.  A

11:20AM 20   client would have to believe, number one, that the more

11:20AM 21   specific document doesn't govern, even though this says

11:20AM 22   otherwise.  And then they'd have to look at their

11:20AM 23   summary of all the key terms of this document and --

11:20AM 24   and there'd be no mention whatsoever of dispute

11:20AM 25   resolution to put them on notice that they might be

| | | |
|---|---|---|
| 11:20AM | 1 | giving up such an important and substantial right. |
| 11:20AM | 2 | THE COURT:  All right.  Let me hear from |
| 11:20AM | 3 | Mr. Scalia on this. |
| 11:20AM | 4 | Thank you, Mr. Stris. |
| 11:20AM | 5 | MR. STRIS:  Thank you, Your Honor. |
| 11:21AM | 6 | THE COURT:  And Mr. Scalia, what I'd like |
| 11:21AM | 7 | to hear is your response to the argument that this |
| 11:21AM | 8 | arbitration clause has to give weight with -- with |
| 11:21AM | 9 | regard to PartnerPlus disputes to the arbitration |
| 11:21AM | 10 | clause in the PartnerPlus Plan and then we'll talk |
| 11:21AM | 11 | about the waiver separately.  But I'm just talking at |
| 11:21AM | 12 | this point about the arbitration clause itself. |
| 11:21AM | 13 | Do you dispute that the arbitration |
| 11:21AM | 14 | clause in the PartnerPlus Plan document would control |
| 11:21AM | 15 | over this for disputes about the PartnerPlus Plan? |
| 11:21AM | 16 | MR. SCALIA:  Your Honor, I -- I don't, |
| 11:21AM | 17 | but I don't think you need to reach that question |
| 11:21AM | 18 | either.  So there is no conflict between the two. |
| 11:21AM | 19 | Mr. Stris did two things.  He utterly |
| 11:22AM | 20 | failed to actually address what this waiver language |
| 11:22AM | 21 | says.  This waiver language says in court you won't |
| 11:22AM | 22 | participate in the class.  That is the question before |
| 11:22AM | 23 | the Court today.  This language plainly covers this |
| 11:22AM | 24 | case.  The Plaintiff admitted it.  Their complaint |
| 11:22AM | 25 | confirms it and Plaintiffs' Counsel hasn't denied it. |

11:22AM 1    This case is that simple, Your Honor.

11:22AM 2                Now, Plaintiffs' Counsel, my colleague,

11:22AM 3    did purport to identify what he thought were conflicts

11:22AM 4    between the arbitration provision in PartnerPlus and

11:22AM 5    the arbitration provision here.  None of them are

11:22AM 6    material.  There was a reference to whether it should

11:22AM 7    be, I think, New Jersey or New York law.  There was a

11:22AM 8    reference to whether you might go before a different

11:22AM 9    arbitral body.  There was a different -- a -- a

11:22AM 10   reference to certain different resolution provisions.

11:22AM 11               Your Honor, there is only one document,

11:23AM 12   one document, that governs what happens in disputes

11:23AM 13   between former UBS employees, whether those disputes

11:23AM 14   concern their employment or the termination of their

11:23AM 15   employment and going to court.  That is the provision

11:23AM 16   we've put before you.  There is simply no conflict

11:23AM 17   whatsoever with a provision that addresses not court,

11:23AM 18   but arbitration and --

11:23AM 19               THE COURT:  It is part of what is

11:23AM 20   apparently billed as the arbitration provision of this

11:23AM 21   compensation plan.  And you -- you are asking the Court

11:23AM 22   to read that last sentence as a separate provision

11:23AM 23   applicable to the entire contract, not simply a part of

11:23AM 24   the arbitration.

11:23AM 25               MR. SCALIA:  Absolutely, Your Honor.

11:23AM 1 This language does a couple of different things. It

11:23AM 2 speaks to arbitration, but in the event you're in

11:23AM 3 court, it also speaks to being in court. As I think

11:24AM 4 you'll see, the provision acknowledges that there may

11:24AM 5 be some claims that won't be in court -- or I'm sorry,

11:24AM 6 that will be in court. There are always some claims

11:24AM 7 that, for one special reason or another, can be in

11:24AM 8 court and can't necessarily be subject to arbitration.

11:24AM 9 This deals with those circumstances, when you happen to

11:24AM 10 be in court, in that final sentence. There's simply no

11:24AM 11 disputing that's how it operates.

11:24AM 12          THE COURT: But the PartnerPlus Plan

11:24AM 13 arbitration clause, which of course, we contemplate the

11:24AM 14 same thing, that not all disputes would be in

11:24AM 15 arbitration.

11:24AM 16          MR. SCALIA: It -- it --

11:24AM 17          THE COURT: What does not address this?

11:24AM 18          MR. SCALIA: What -- it doesn't. It

11:24AM 19 doesn't speak to what happens in court. There's only

11:24AM 20 one document that does that, what a court is to do in

11:24AM 21 the circumstance that you confront, which is you're in

11:24AM 22 court, should you certify a class and that's no

11:24AM 23 surprise, Your Honor. PartnerPlus is about

11:25AM 24 arbitration. We're not in arbitration.

11:25AM 25          And the Federal Rules, those don't govern

| | | |
|---|---|---|
| 11:25AM | 1 | what a Federal Judge is to do when confronted with a |
| 11:25AM | 2 | class certification question when a Plaintiff has |
| 11:25AM | 3 | signed a waiver agreement that is indisputably valid, |
| 11:25AM | 4 | you know, no claim of unconscionability or the like. |
| 11:25AM | 5 | THE COURT: Well, you -- you do concede |
| 11:25AM | 6 | that you're asking the Court to read that last sentence |
| 11:25AM | 7 | as a free-standing provision of this plan and not |
| 11:25AM | 8 | simply as a part of the arbitration clause? |
| 11:25AM | 9 | MR. SCALIA: It doesn't govern |
| 11:25AM | 10 | arbitration. It is part of a paragraph titled |
| 11:25AM | 11 | arbitration, but it's a sentence which addresses a |
| 11:25AM | 12 | different circumstance than arbitration. So generally |
| 11:25AM | 13 | it's contemplated that disputes will be in arbitration, |
| 11:25AM | 14 | but what this sentence accomplishes, and this was |
| 11:25AM | 15 | added, nothing wrong with that, this was added, signed |
| 11:25AM | 16 | 2007, 2008, this addresses something additional. |
| 11:25AM | 17 | We're not in arbitration. We're in |
| 11:25AM | 18 | court. There's a motion for class certification |
| 11:26AM | 19 | pending. What should happen? And there's a crystal |
| 11:26AM | 20 | clear answer; there is not conflict. Again, Mr. Stris |
| 11:26AM | 21 | was asked to identify conflicts. He talked about New |
| 11:26AM | 22 | York versus New Jersey law and different arbitral |
| 11:26AM | 23 | bodies. That -- none of that is relevant. There is no |
| 11:26AM | 24 | conflict. Your Honor -- |
| 11:26AM | 25 | THE COURT: It doesn't take a conflict, |

| | | |
|---|---|---|
| 11:26AM | 1 | does it?  It simply takes a difference in order for |
| 11:26AM | 2 | the -- for the PartnerPlus Plan itself to govern. |
| 11:26AM | 3 | MR. SCALIA:  I -- I would agree that to |
| 11:26AM | 4 | the extent that the plans address different things, |
| 11:26AM | 5 | each controls the different thing it address. |
| 11:26AM | 6 | PartnerPlus addresses arbitration.  Now, we've |
| 11:26AM | 7 | separately explained to you why we believe that it |
| 11:26AM | 8 | incorporates by reference the arbitral language in the |
| 11:26AM | 9 | compensation clause, but that -- we didn't lean on |
| 11:26AM | 10 | that, Your Honor.  We're not before you on that now. |
| 11:26AM | 11 | This plan addresses a different thing and |
| 11:27AM | 12 | it's because they're different that there's no |
| 11:27AM | 13 | conflict.  If there had been language in PartnerPlus |
| 11:27AM | 14 | about litigation in court saying that a Federal Judge |
| 11:27AM | 15 | must certify a case, or something of that nature, we'd |
| 11:27AM | 16 | have a different question.  But it's simply not |
| 11:27AM | 17 | presented. |
| 11:27AM | 18 | If I could address the -- unless there |
| 11:27AM | 19 | are any further questions, because obviously this |
| 11:27AM | 20 | specific question is the most important, but I have |
| 11:27AM | 21 | other points to make.  Again, just to wrap up on that, |
| 11:27AM | 22 | the language is clear.  It covers Plaintiffs' case, |
| 11:27AM | 23 | they admitted it.  There is no conflict with the other |
| 11:27AM | 24 | language they've put before you and the only conflicts |
| 11:27AM | 25 | that their Counsel tried to identify are utterly |

11:27AM  1   irrelevant to now that we're here in Federal Court with

11:27AM  2   a motion for class certification.

11:27AM  3            Just a few other points that Your Honor

11:27AM  4   asked about and -- and I think with your questions,

11:27AM  5   Your Honor, it seemed to me that you've indicated that

11:28AM  6   you got the nub of it, but these pages 19 through 22

11:28AM  7   summarize the PartnerPlus Plan.

11:28AM  8            My colleague placed particular emphasis

11:28AM  9   on paragraph 22 -- I'm sorry, the paragraph in 22 at

11:28AM 10   the end, so let me come to that, because I think the

11:28AM 11   footnote in 19 and this concluding paragraph in 22 are

11:28AM 12   consistent.  If there is any difference, there's not a

11:28AM 13   difference, but if there's any difference between this

11:28AM 14   summary and the plan document, the plan document will

11:28AM 15   govern.

11:28AM 16            This summary is a summary of PartnerPlus.

11:28AM 17   It's not a summary, obviously, of the entire document.

11:28AM 18   That's why it talks about a conflict between this

11:28AM 19   summary and the plan document.  Now, I will note

11:28AM 20   footnote 19 refers to the plan documents and there's a

11:28AM 21   reason in that discussion between 19 and 22, they talk

11:29AM 22   about something known as baby PartnerPlus, just

11:29AM 23   briefly.  It's on page 21.  It's another deferred comp

11:29AM 24   plan.

11:29AM 25            But Your Honor, this is very

11:29AM 1   self-contained, but at the end of the day, doesn't even

11:29AM 2   matter because there's no conflict.  The language is so

11:29AM 3   clear that Plaintiffs' Counsel didn't want to ever talk

11:29AM 4   about it in a -- in a -- in a context that is

11:29AM 5   absolutely case dispositive.

11:29AM 6                   Your Honor, you asked whether a plan had

11:29AM 7   meaning apart from the ERISA context and -- and -- and

11:29AM 8   respectfully it can.  So even you don't -- if you don't

11:29AM 9   have an ERISA plan, you would refer to a deferred

11:29AM 10  compensation plan as a plan, even if everybody agreed

11:29AM 11  and I think that Mr. Stris acknowledged that.  I don't

11:29AM 12  think it matters --

11:29AM 13                  THE COURT:   What's the legal

11:29AM 14  significance of calling it a plan if it's not governed

11:29AM 15  by ERISA?

11:29AM 16                  MR. SCALIA:   Directly for the question

11:29AM 17  before you, there's not any.  But I noted as a response

11:30AM 18  to the suggestion that this is a summary and for some

11:30AM 19  reason summary doesn't matter.

11:30AM 20                  Mr. Stris referred to a document that was

11:30AM 21  put before a 30(b)(6) witness which summarized

11:30AM 22  provisions of the plan.  Well, that was a summary.

11:30AM 23  This is a plan.  As he's admitted, this is the driver

11:30AM 24  for what they're compensated for outside PartnerPlus

11:30AM 25  and inside PartnerPlus.  This is an important document.

11:30AM 1          Now, the fact that some summary document,

11:30AM 2    which was a summary of compensation terms, Your Honor,

11:30AM 3    did not also summarize an arbitration provision is

11:30AM 4    irrelevant.  They signed a provision not to bring a

11:30AM 5    class action and simply because a summary of their

11:30AM 6    compensation, it was a three or four page brochure

11:30AM 7    didn't mention it, is of no legal weight whatsoever.

11:30AM 8          Mr. Stris also mentioned the conclusion,

11:30AM 9    which is on page 27.  Again, rather than talk about the

11:30AM 10   language, rather than talk about his Plaintiffs'

11:30AM 11   concession, rather than talk about how the language of

11:31AM 12   this waiver matches perfectly with the language of the

11:31AM 13   complaint arising from employment, arising from

11:31AM 14   termination, rather than that, Plaintiffs' Counsel

11:31AM 15   seized on the fact that the conclusion said this

11:31AM 16   summarizes many, but not all, of the elements of your

11:31AM 17   compensation.  Well, it -- it -- it does summarize

11:31AM 18   some.  It sets forth others and establishes them and

11:31AM 19   that is a reference to what it says as to compensation,

11:31AM 20   not as to what it says about their agreement not to

11:31AM 21   bring a class action in Federal Court.

11:31AM 22          Your Honor, I think this is extremely

11:31AM 23   clear language which, among its many virtues, enables

11:31AM 24   this Court to dispose of this case on a threshold issue

11:31AM 25   that doesn't require addressing 23(a) or 23(b)(1),

11:31AM 1    (b)(1) or whatever other provisions you may have.

11:31AM 2                    THE COURT:    Let's move to the release

11:31AM 3    language now that you have --

11:31AM 4                    MR. STRIS:    Your Honor, could I just

11:31AM 5    make a brief point about the waiver?  I -- because I

11:32AM 6    found that language that you were asking about earlier.

11:32AM 7                    THE COURT:  When you get up to respond to

11:32AM 8    the release, I'll give you a chance to --

11:32AM 9                    MR. STRIS:  Okay.

11:32AM 10                   THE COURT:  -- to address whatever you

11:32AM 11   need on waiver as well.

11:32AM 12                   And I guess one -- one issue that is

11:32AM 13   paramount to me on this release question is whether or

11:32AM 14   not there are provisions of ERISA that specifically the

11:32AM 15   Plaintiff refers to the anti-alienation provisions and

11:32AM 16   how those -- how you would have us deal with those

11:32AM 17   regarding the release.

11:32AM 18                   MR. SCALIA:    Right.  Your Honor, I -- I

11:32AM 19   will be brief on the subject of the release.  It's

11:32AM 20   relevant in two respects.

11:32AM 21                   First, one of the named Plaintiffs signed

11:32AM 22   a release; he therefore can't go forward, he's an

11:33AM 23   inadequate representative.  But beyond that, Your

11:33AM 24   Honor, a number of other punitive class members signed

11:33AM 25   releases, which are not always identical, by the way,

11:33AM 1  to the one that he signed nor the circumstances of

11:33AM 2  their signing necessarily identical and that is a

11:33AM 3  question that makes typicality and adequacy for the

11:33AM 4  others who didn't sign releases problematic as well

11:33AM 5  because you'll have to probe into his individual cases

11:33AM 6  and circumstances.

11:33AM 7              That's correct, there's an

11:33AM 8  anti-alienation provision of ERISA that, essentially,

11:33AM 9  once you're vested, you are entitled to it and it can't

11:33AM 10  be alienated from you.  However, that doesn't speak to

11:33AM 11  the resolution of disputes and there's no general

11:33AM 12  prohibition on ERISA of reaching a settlement agreement

11:33AM 13  which compromises and waives claims.  It's simply

11:33AM 14  that's what Mr. Stacy did.

11:33AM 15              I -- I do have one case for you that I

11:33AM 16  admit -- admit is not in my briefs.  That's Johnson V.

11:33AM 17  Kansas City, which is a Fifth Circuit decision, simply

11:33AM 18  recognizing that you can, despite the anti-alienation

11:33AM 19  provision, settle compromise a vested benefit claim.

11:34AM 20              THE COURT:  And does the release that

11:34AM 21  you're referring to call out ERISA as being released?

11:34AM 22              MR. SCALIA:  I am not certain whether or

11:34AM 23  not it does, Your Honor.

11:34AM 24              THE COURT:  How would you characterize

11:34AM 25  it as settlement of an ERISA claim if it doesn't --

11:34AM 1          MR. SCALIA:   Because it's a settlement

11:34AM 2     and release of all claims and as a result of that,

11:34AM 3     naturally includes ERISA as well.  And settlement are

11:34AM 4     generally read that way, although they may call out

11:34AM 5     specific laws, it's also recognized that they would

11:34AM 6     include the other laws if the language is broad enough

11:34AM 7     to do so in these releases.  There's been no dispute

11:34AM 8     that these releases are broad enough to have an effect.

11:34AM 9          THE COURT:   This was a part of the

11:34AM 10    severance of the employee that this release was

11:35AM 11    executed?

11:35AM 12         MR. SCALIA:   What happened, Your Honor,

11:35AM 13    was that Mr. Stacy, before he left UBS, entered into a

11:35AM 14    new position at the firm and in connection with that,

11:35AM 15    he entered into a release of all claims that he had, up

11:35AM 16    and to that point.  And -- and so that's that release

11:35AM 17    which we rest upon.  Although we also, with our opening

11:35AM 18    brief, submitted for the record releases that several

11:35AM 19    other putative class members had entered as well.

11:35AM 20         THE COURT:   And is this release a part

11:35AM 21    of your exhibits?

11:35AM 22         MR. SCALIA:   I beg your pardon, Your

11:35AM 23    Honor?

11:35AM 24         THE COURT:   Is the release, the Stacy

11:35AM 25    release, a part of your exhibits?

| | | |
|---|---|---|
| 11:35AM | 1 | MR. SCALIA:   It is, Your Honor. |
| 11:35AM | 2 | THE COURT:  And -- |
| 11:35AM | 3 | MR. SCALIA:   It's exhibit -- it's an |
| 11:35AM | 4 | exhibit to our opening brief.  It's exhibit -- I |
| 11:35AM | 5 | believe it's Exhibit B. |
| 11:36AM | 6 | THE COURT:   All right. |
| 11:36AM | 7 | MR. SCALIA:   And -- and Your Honor, I |
| 11:36AM | 8 | apologize, I did not have the answer, but yes it does |
| 11:36AM | 9 | specifically release any claims or actions under the |
| 11:36AM | 10 | Employee Retirement Income Security Act.  Although |
| 11:36AM | 11 | immediately following that are other releases.  And |
| 11:36AM | 12 | again, they're different.  I do believe they also -- |
| 11:36AM | 13 | well, they do cover ERISA.  I think at least some may |
| 11:36AM | 14 | specifically call it out, but numerous putative class |
| 11:36AM | 15 | members beyond Mr. Stacy do have releases, which |
| 11:36AM | 16 | because they do vary somewhat, it creates added |
| 11:36AM | 17 | complications for class certification. |
| 11:36AM | 18 | THE COURT:   Yeah, I -- and whether or |
| 11:36AM | 19 | not putative class members have released their claims, |
| 11:36AM | 20 | I don't think has a lot to do with certification. |
| 11:36AM | 21 | Whether a named Plaintiff has, may be more problematic. |
| 11:36AM | 22 | But in any event, I -- I understand your position on |
| 11:36AM | 23 | that. |
| 11:36AM | 24 | MR. SCALIA:   Your Honor, I was also |
| 11:36AM | 25 | prepared to address in-service distributions. |

11:36AM 1          THE COURT:   Let's -- let me get their

11:37AM 2     response to release and whatever else he has to say

11:37AM 3     about waiver and then we'll turn to the in-service

11:37AM 4     distribution.

11:37AM 5          MR. SCALIA:   Thank you, Your Honor.

11:37AM 6          THE COURT:    Thank you.

11:37AM 7          MR. STRIS:    Thank you, Your Honor.  I

11:37AM 8     promise to be brief on waiver, but I do have three

11:37AM 9     things I wanted to say quickly.

11:37AM 10          The first one is, I mentioned earlier, in

11:37AM 11     the 2010 summary brochure, there are actually three

11:37AM 12     formal plan documents that are referred to and I would

11:37AM 13     direct you to page 6 of our supplemental brief to get

11:37AM 14     it in the record.  There's a declaration from one of my

11:37AM 15     associates attaching the relevant documents.  And the

11:37AM 16     2010 summary brochure, it includes references to the

11:37AM 17     PartnerPlus Plan, the Survivor Benefit Plan and the

11:37AM 18     Business Builder Plan.

11:37AM 19          And I actually think this is very

11:37AM 20     important.  It's kind of interesting because in one

11:37AM 21     case, Your Honor, and that is the Survivor Plan, the

11:38AM 22     language says:  In the event of a conflict between the

11:38AM 23     above summary of the Financial Advisor Survivor Benefit

11:38AM 24     Plan document and the plan document itself, the plan

11:38AM 25     document will control.  But in the other two examples,

11:38AM 1    PartnerPlus and the -- the Business Builder Plan, it --

11:38AM 2    it uses the more general language, which I think is

11:38AM 3    further evidence of the point that when they were

11:38AM 4    referring to summary, they were referring to the entire

11:38AM 5    document. And again, I would reiterate, we just need

11:38AM 6    to prove that that's a reasonable interpretation of the

11:38AM 7    document.

11:38AM 8            Okay. So that's the first of the three

11:38AM 9    things I wanted to briefly touch on.

11:38AM 10           The second is this: The -- the issue

11:38AM 11   here about the summary brochure, is about what happens

11:38AM 12   when there's -- this is -- this is my -- my opposing

11:38AM 13   Counsel's comment, he says it's about what happens in

11:38AM 14   disputes in court, not in arbitration. And I'd like to

11:38AM 15   just clarify this issue for the Court.

11:38AM 16           Essentially what UBS, I think, is

11:39AM 17   conceding is that if the PartnerPlus Plan said

11:39AM 18   expressly in its arbitration provision, we preserve the

11:39AM 19   right to class actions in ERISA cases, or I'll put it

11:39AM 20   differently, we preserve the right and anyone who's

11:39AM 21   complaining about PartnerPlus is permitted to bring a

11:39AM 22   class action in court; other than that, everything

11:39AM 23   needs to go to arbitration. What UBS is conceding is

11:39AM 24   if the PartnerPlus Plan said that, well then in that

11:39AM 25   case, you would have to defer to the language of the

11:39AM 1  PartnerPlus Plan, but not the summary brochure.

11:39AM 2  And they're resting their argument on the

11:39AM 3  fact that they believe that the PartnerPlus Plan is

11:39AM 4  silent and so, well, there's really no difference.

11:39AM 5  They keep using this phrase.  They keep saying the

11:39AM 6  summary brochure is the only document that speaks to

11:39AM 7  what happens in court.  I think that exposes sort of

11:39AM 8  the problem with their argument, which is this Court

11:39AM 9  has already held at the arbitration stage, consistent

11:39AM 10 with every Circuit Court, to have interpreted the

11:39AM 11 language that UBS chose in its PartnerPlus Plan.  That

11:40AM 12 that provision did preserve the right to bring a class

11:40AM 13 action in court.

11:40AM 14 So by incorporating the Federal Rules,

11:40AM 15 UBS, they didn't have to do this, they drafted a

11:40AM 16 PartnerPlus Plan that essentially said you have the

11:40AM 17 right to bring a class action in court.  So when

11:40AM 18 there's a conflicting document that says you don't, you

11:40AM 19 have to enforce one or the other and UBS gave clear

11:40AM 20 instruction in the document itself as to which one to

11:40AM 21 enforce.

11:40AM 22 Final point I want to make is -- goes to

11:40AM 23 the questions you were asking opposing Counsel about

11:40AM 24 whether they are separating the class action waiver

11:40AM 25 from the arbitration provision and he says yes.  He

11:40AM  1    says they can be separated.  And I want to reiterate a

11:40AM  2    point I made at the arbitration hearing because I think

11:40AM  3    it is of utmost importance.

11:40AM  4              If that is their argument, if their

11:40AM  5    argument is that the class action waiver in the summary

11:40AM  6    brochure is a stand alone, then what they have just

11:40AM  7    done is they've taken themselves outside the world of

11:40AM  8    the Federal Arbitration Act, because they've said it's

11:40AM  9    separate, and we then get to argue all the things that

11:41AM 10    he -- he praised us for not arguing in the first place,

11:41AM 11    namely that the class action waiver is invalid under

11:41AM 12    state law.

11:41AM 13              So if this Court is inclined to accept

11:41AM 14    their argument in any form, I would -- I would ask that

11:41AM 15    we have the opportunity at that point to file

11:41AM 16    supplemental briefing, because if this is a stand-alone

11:41AM 17    class action waiver governed by either New Jersey,

11:41AM 18    Texas, or New York law, then we have many arguments

11:41AM 19    under state law as to why we believe it's unenforceable

11:41AM 20    and we would have to have that opportunity.

11:41AM 21              Okay.  Those are my three points on

11:41AM 22    waiver.  If you have no questions on that, I -- I

11:41AM 23    will -- I'll turn to the issue of release.

11:41AM 24              THE COURT:   Okay.  Go ahead.

11:41AM 25              MR. STRIS:   Okay.  So I have three --

11:41AM 1   not much I want to say, I just want to make three brief

11:41AM 2   points about the relief issue.

11:41AM 3            The first one is it's a -- from a

11:41AM 4   procedural standpoint, in my view, it's really a

11:41AM 5   nonissue.  And what I would do is I would cite to the

11:41AM 6   Court the Langbecker Fifth Circuit case that UBS has

11:41AM 7   relied on throughout their briefs, they -- they think

11:41AM 8   it's a very good case for them.  Well, on page 313 of

11:42AM 9   that opinion, here's what the Fifth Circuit says, and I

11:42AM 10  quote:  Without commenting further on the

11:42AM 11  enforceability of the releases or application of the

11:42AM 12  benefits exception, we note that holders of releases

11:42AM 13  could become a subclass if a class action is otherwise

11:42AM 14  deemed appropriate.

11:42AM 15           That's just black letter law, you know.

11:42AM 16  At the end of the day, even if there were any validity

11:42AM 17  to UBS' release argument, and we don't think there is,

11:42AM 18  that would not warrant what they're saying, which is

11:42AM 19  denial of the class certification motion; that could be

11:42AM 20  dealt with through many procedural devices including

11:42AM 21  making them a subclass pursuant to Rule 23(c).

11:42AM 22           The second point I wanted to make is as I

11:42AM 23  understand the release, and I'm not exactly sure of the

11:42AM 24  full scope of it, because this is their defense and

11:42AM 25  they've put some into evidence, but they've kind of

11:42AM 1 cryptically suggested that there are many others.

11:42AM 2 Let's take Mr. Stacy's release. It's a preforfeiture

11:42AM 3 release. It's a release he signed before he ever left

11:43AM 4 and was denied his benefits under PartnerPlus.

11:43AM 5 So the notion that somehow by signing a

11:43AM 6 release before there was ever a forfeiture would

11:43AM 7 constitute him giving up his right to something where

11:43AM 8 the issue hadn't even perfected itself is odd to me and

11:43AM 9 it kind of bleeds into the final point, which is what

11:43AM 10 we rest on in our briefs, which is in the context of

11:43AM 11 ERISA, and they're claiming this is an ERISA release,

11:43AM 12 they -- they've said to look at the language and it's a

11:43AM 13 general release that among other things relate --

11:43AM 14 releases claims under ERISA. They run smack up against

11:43AM 15 the alienation provision.

11:43AM 16 And we don't have to resolve the merits

11:43AM 17 of that at this point. We can have a disagreement over

11:43AM 18 whether the release is enforceable, but that's just an

11:43AM 19 issue that would be amenable to class-wide treatment,

11:43AM 20 like many other issues that might come up in this

11:43AM 21 litigation.

11:43AM 22 I -- and I guess I would close by saying

11:43AM 23 I haven't heard anything from opposing Counsel to

11:43AM 24 suggest there's something about the nature of this

11:43AM 25 release at issue that would require individualized

11:43AM  1   determination.  The only argument I understand them to

11:44AM  2   be making is in the Eddingston case, I -- perhaps

11:44AM  3   there's some sort of suggestion that we would need a

11:44AM  4   named Plaintiff who signed the release in order to have

11:44AM  5   standing to bring the argument.  I -- and so if

11:44AM  6   essentially that's the position they're taking and you

11:44AM  7   don't accept our other arguments, we -- we would -- we

11:44AM  8   would request leave to amend and we will -- we will

11:44AM  9   amend the complaint, add a named Plaintiff who signed

11:44AM  10  the release.  And if that's something they want to

11:44AM  11  litigate, we're -- we look forward to litigating it

11:44AM  12  because we're comfortable we're going to prevail on the

11:44AM  13  merits, but I just don't see why it prevents the

11:44AM  14  certification of the class at this point.

11:44AM  15            THE COURT:   Okay.  Thank you, Mr. Stris.

11:44AM  16            MR. SCALIA:   Your Honor, just briefly

11:44AM  17  regarding the waiver.  My colleague mentioned a 2010

11:44AM  18  document, but these Plaintiffs signed their waivers in

11:44AM  19  2007, 2008, so I think that's a bit of a reach.

11:44AM  20            With regard to the arbitration provision,

11:45AM  21  Your Honor, again, it's -- it's just this simple, that

11:45AM  22  the class waiver talks about what a Court is to do when

11:45AM  23  presented with a motion for class certification.  No

11:45AM  24  other document does.  The Federal Rules merely indicate

11:45AM  25  that the arbitration won't go forward pending a

11:45AM 1    decision on that, but they don't somehow establish some

11:45AM 2    sort of indefeasible right to arbitration, nor could

11:45AM 3    Federal Rules govern how an Article III court decides

11:45AM 4    an issue of this nature.

11:45AM 5              Finally the provision the -- you don't

11:45AM 6    need to get here because there's not the conflict --

11:45AM 7    they've never really identified a conflict anyway, but

11:45AM 8    the federal provision also says these subparagraphs do

11:45AM 9    not otherwise affect the enforceability of any rights

11:45AM 10   under the code or any other agreement.

11:45AM 11             THE COURT:   All right.

11:45AM 12             MR. SCALIA:   And then finally, Your

11:45AM 13   Honor, Mr. Stris at the very end brought up this claim

11:46AM 14   that, well, it might be not permissible to use this

11:46AM 15   class waiver provision because of a -- it's an ERISA

11:46AM 16   plan and maybe there's a conflict.   That argument is

11:46AM 17   not in their briefs.   They made a very purposeful

11:46AM 18   decision not to raise their so-called ERISA defense the

11:46AM 19   way they did before in the motion to compel

11:46AM 20   arbitration.   It's way too late to go there.

11:46AM 21             But in any event, again, they haven't

11:46AM 22   found the conflict.   Recall when Mr. Stris was pressed

11:46AM 23   to weigh down the conflicts, it was about New York

11:46AM 24   versus New Jersey law or what arbitral form it'd be in.

11:46AM 25             Finally with respect to the release, Your

11:46AM 1   Honor, I think you've -- you've heard enough from us on

11:46AM 2   that.  We think that Mr. Stacy's release renders him

11:46AM 3   inadequate and we believe that this is another of a

11:46AM 4   number of issues that make this a difficult -- a very,

11:46AM 5   very difficult case on manageability issues if we were

11:46AM 6   to reach 23(b).

11:46AM 7               THE COURT:   All right.  And while you're

11:46AM 8   up, Mr. Scalia, I have a question that came up with me

11:46AM 9   during the briefing and I wanted to ask you.  Do you

11:47AM 10  contend that since the January 1, 2011, amendments to

11:47AM 11  the PartnerPlus Plan that it is now a Top-Hat Plan

11:47AM 12  under ERISA?  And I guess I don't mean you, but does

11:47AM 13  UBS contend that?

11:47AM 14              MR. SCALIA:   Yes, that was the testimony

11:47AM 15  of Mr. Levitan.  It's a deferred compensation plan

11:47AM 16  still, but a Top-Hat Plan is a very unique creature --

11:47AM 17              THE COURT:   Okay.

11:47AM 18              MR. SCALIA:   -- and we believe it's a

11:47AM 19  deferred compensation plan that meets that ERISA

11:47AM 20  Top-Hat definition.

11:47AM 21              THE COURT:   And what changes were made

11:47AM 22  to it in order to have it qualify as a Top-Hat?

11:47AM 23              MR. SCALIA:   The number of people who

11:47AM 24  could participate in the plan would substantially

11:47AM 25  change and that's one of the defining features of a

| 11:47AM | 1 | Top-Hat Plan, as sort of the name itself would |
| 11:47AM | 2 | indicate. |
| 11:47AM | 3 | THE COURT: Well -- |
| 11:47AM | 4 | MR. SCALIA: And -- and there were other |
| 11:47AM | 5 | changes, too. |
| 11:47AM | 6 | THE COURT: What I'm getting at is that |
| 11:48AM | 7 | I -- I found their argument inquiry, which I'm sure you |
| 11:48AM | 8 | saw, as interesting that if you concede that by |
| 11:48AM | 9 | limiting the number of people involved, it became |
| 11:48AM | 10 | covered under ERISA's Top-Hat provision, how would it |
| 11:48AM | 11 | not have been covered under ERISA but not the Top-Hat |
| 11:48AM | 12 | provision before those changes? |
| 11:48AM | 13 | MR. SCALIA: Well, several reasons, Your |
| 11:48AM | 14 | Honor. One is that, again, a Top-Hat Plan is a unique |
| 11:48AM | 15 | type of ERISA plan where you can have in-service |
| 11:48AM | 16 | distributions. And in fact, again, in the statute |
| 11:48AM | 17 | itself it's defined as a deferred compensation plan as |
| 11:48AM | 18 | opposed to a retirement plan. So that's one reason. |
| 11:48AM | 19 | But there were other changes, as I |
| 11:48AM | 20 | mentioned, to a PartnerPlus. One of those was that you |
| 11:48AM | 21 | could defer back into the PartnerPlus Plan even to the |
| 11:49AM | 22 | point of retirement. The way the PartnerPlus worked |
| 11:49AM | 23 | until then was after 10 years, that money was |
| 11:49AM | 24 | distributed to you. It was yours and you couldn't put |
| 11:49AM | 25 | it back into PartnerPlus. Now you can and that changes |

11:49AM 1  a bit how it functions.

11:49AM 2          Another change is that there became an

11:49AM 3  ability to use PartnerPlus to invest in certain stock

11:49AM 4  indices and the like.  So there were a number of

11:49AM 5  changes that did occur, but the restriction of the

11:49AM 6  participants, the fact that a Top-Hat Plan is after all

11:49AM 7  a deferred comp plan and then finally a redeferral into

11:49AM 8  PartnerPlus, let me emphasize that, into PartnerPlus

11:49AM 9  were all very significant changes.

11:49AM 10         THE COURT:  All right.  Thank you.  I

11:49AM 11  wanted to hear from you on that.

11:49AM 12         MR. SCALIA:  So on the menu of issues,

11:49AM 13  Your Honor, I had in-service distributions and we have

11:49AM 14  23(b).  I don't know if you'd like me to carry at this

11:50AM 15  point or Mr. Stris or --

11:50AM 16         THE COURT:  Go ahead and speak to the

11:50AM 17  in-service distribution, that's fine.

11:50AM 18         MR. SCALIA:  Your Honor, as the cases

11:50AM 19  that we've identified indicate and as also our expert

11:50AM 20  reports indicate, in-service distributions are

11:50AM 21  incompatible with being an ERISA plan.  And in fact,

11:50AM 22  one of the two lead Plaintiffs, I believe it was Mr.

11:50AM 23  Stacy himself, admitted that in-service distributions

11:50AM 24  were inconsistent with being a retirement plan.

11:50AM 25         THE COURT:  I mean, it's a matter of

11:50AM 1 degree, right? I mean, y'all don't contend that if

11:50AM 2 there are any in-service distributions it can't be a

11:50AM 3 retirement plan?

11:50AM 4         MR. SCALIA: Actually the exceptions are

11:50AM 5 extremely rare. And what's interesting is the

11:50AM 6 Plaintiffs were immediately alert to the only exception

11:50AM 7 I'm aware of, which is that in a 401K plan when you hit

11:51AM 8 59-and-a-half, you can take distributions out of your

11:51AM 9 401K plan. But apart from that, it's just

11:51AM 10 fundamentally inconsistent with being a retirement plan

11:51AM 11 because the idea of a retirement plan is save money for

11:51AM 12 retirement, accumulate earnings over time, and only

11:51AM 13 take them at retirement; whereas, these plans worked to

11:51AM 14 give very substantial current compensation. So these

11:51AM 15 Plaintiffs received, in one case, more than $500,000 in

11:51AM 16 in-service distributions and that makes him a very poor

11:51AM 17 person to present at argument this is really a

11:51AM 18 retirement --

11:51AM 19         THE COURT: Well, even your own brief

11:51AM 20 talks about the primary thrust of the plan needing to

11:51AM 21 be retirement income under that Fifth Circuit's Murphy

11:51AM 22 case, is that -- is that you?

11:51AM 23         MR. SCALIA: That -- that's correct.

11:51AM 24         THE COURT: So even if there are some

11:51AM 25 in-service distributions, it's theoretically possible,

11:52AM 1   I'm not saying it exists here, but certainly possible

11:52AM 2   that the primary thrust could be to provide retirement

11:52AM 3   income, couldn't it?

11:52AM 4                   MR. SCALIA:   I'm sorry, for this plan?

11:52AM 5                   THE COURT:   No, for a plan.   What I'm

11:52AM 6   getting at is --

11:52AM 7                   MR. SCALIA:   Right.

11:52AM 8                   THE COURT:   -- I don't understand how you

11:52AM 9   can argue that the test is what's the primary thrust of

11:52AM 10  the plan and then say if there are any in-services

11:52AM 11  distributions, it's -- it's not an ERISA retirement

11:52AM 12  plan.

11:52AM 13                  MR. SCALIA:   Yeah.   I think what I would

11:52AM 14  say, Your Honor, is that a properly lawfully drawn

11:52AM 15  retirement plan does not have in-service distributions,

11:52AM 16  but the fact that an employer, for example, leaches out

11:52AM 17  small amounts of in-service distributions can't be used

11:52AM 18  to evade the protections of ERISA.   So it's still

11:52AM 19  inconsistent with being a retirement plan, but you

11:52AM 20  wouldn't want a circumstance where when the primary

11:52AM 21  dominating thrust is to provide for retirement, you

11:52AM 22  don't have to comply with ERISA if you throw a few

11:52AM 23  dollars here and there.   But remember, our case is just

11:53AM 24  totally different.

11:53AM 25                  70 percent of the financial advisor plan

| | | |
|---|---|---|
| 11:53AM | 1 | distributions, as our expert report showed, were |
| 11:53AM | 2 | in-service. And -- and again, we have Claimants here |
| 11:53AM | 3 | who received hundreds of thousands of dollars |
| 11:53AM | 4 | in-service, enjoyed that benefit, Your Honor, and now |
| 11:53AM | 5 | want to turn around and say, oh, I'm -- I'm -- I'm just |
| 11:53AM | 6 | shocked and dismayed. This was a retirement plan. |
| 11:53AM | 7 | They are poor protagonists for that position. |
| 11:53AM | 8 | And if this case, obviously we believe it |
| 11:53AM | 9 | shouldn't be, but if it were certified, very inadequate |
| 11:53AM | 10 | representatives for that position given their own |
| 11:53AM | 11 | position, in a sense, their unclean hands. Remember, |
| 11:53AM | 12 | they want to proceed in equity while claiming this was |
| 11:53AM | 13 | for retirement and yet they took hundreds of thousands |
| 11:53AM | 14 | dollars presently, that makes them poor |
| 11:53AM | 15 | representatives. |
| 11:53AM | 16 | THE COURT: I -- I think it's a reach to |
| 11:53AM | 17 | say that goes to the adequacy of their representation |
| 11:53AM | 18 | since all of the members of the class have been under |
| 11:54AM | 19 | the same plan, but -- |
| 11:54AM | 20 | MR. SCALIA: But Your Honor, not all |
| 11:54AM | 21 | enjoyed the fruits of in-service distribution. In |
| 11:54AM | 22 | fact, one of the named Plaintiffs did not, so -- |
| 11:54AM | 23 | THE COURT: Why did he not? |
| 11:54AM | 24 | MR. SCALIA: Had to do with his tenure. |
| 11:54AM | 25 | THE COURT: Okay. So in any event, I -- |

11:54AM 1    I do understand your argument about that and as I see

11:54AM 2    it, it ties into the issue of whether or not this is

11:54AM 3    actually the kind of plan that would be covered by

11:54AM 4    ERISA, which I think is an issue on the merits and an

11:54AM 5    issue that is going to turn on the -- all of the facts

11:54AM 6    that are developed, not those simply known now and --

11:54AM 7    but I understand your position on in-service

11:54AM 8    distribution.

11:54AM 9              MR. SCALIA:   And of course, part of our

11:54AM 10   position, Your Honor, is that obviously these are

11:55AM 11   merits principles, need to be considered to the extent

11:55AM 12   relevant to certification and -- and the fact that they

11:55AM 13   took all this money in service is incompatible with the

11:55AM 14   ERISA argument they want to make down the road.

11:55AM 15             THE COURT:   Okay.

11:55AM 16             MR. SCALIA:   Thank you, Your Honor.

11:55AM 17             THE COURT:   Thank you.  Okay.  Mr.

11:55AM 18   Stris, I'd like to discuss a few questions with you.

11:55AM 19   The -- I don't -- I think you briefed your position on

11:55AM 20   the in-service distribution matter, but I -- you -- you

11:55AM 21   didn't talk about in your briefs at all about 23(c)(4).

11:55AM 22   The Plaintiffs have talked repeatedly about thinking

11:55AM 23   that this case is primarily about three -- three

11:55AM 24   questions all having to do with ERISA.  If that's true,

11:55AM 25   why shouldn't the Court simply certify this as a class

| | | |
|---|---|---|
| 11:55AM | 1 | for those three issues? |
| 11:56AM | 2 | MR. STRIS: So I'll speak to that |
| 11:56AM | 3 | directly. We have no objection to divided |
| 11:56AM | 4 | certification pursuant to Rule 23(c)(4) where you would |
| 11:56AM | 5 | certify, as per those three issues, a class pursuant to |
| 11:56AM | 6 | Rule 23(b)(2) and then the remaining issues would get |
| 11:56AM | 7 | certified pursuant to Rule 23(b)(3). We don't think |
| 11:56AM | 8 | that's necessary. That's something the Court could do |
| 11:56AM | 9 | in an abundance of caution, but I'd like to be clear on |
| 11:56AM | 10 | that point. |
| 11:56AM | 11 | I was shocked when I read UBS' brief and |
| 11:56AM | 12 | they dropped one footnote in, said that -- oh, well, |
| 11:56AM | 13 | that's not permitted and then they cited a case that |
| 11:56AM | 14 | literally had nothing to do with that issue. I would |
| 11:56AM | 15 | point the Court to the Bolin case. It's a Fifth |
| 11:56AM | 16 | Circuit case that gets cited throughout the briefs. |
| 11:56AM | 17 | And in the Bolin case on page 976, the cite of Bolin |
| 11:56AM | 18 | just for -- |
| 11:56AM | 19 | THE COURT: I'm familiar -- |
| 11:56AM | 20 | MR. STRIS: Okay. |
| 11:56AM | 21 | THE COURT: -- with the Bolin case and |
| 11:56AM | 22 | what Judge Higginbotham said about the -- the use of |
| 11:56AM | 23 | 23(c)(4) in that case. I -- I am concerned that I |
| 11:57AM | 24 | don't know that you -- that your side is appreciating |
| 11:57AM | 25 | sufficiently how close a question is involved in |

11:57AM 1    whether the monetary relief that your class members

11:57AM 2    would receive if you win, how close the question is

11:57AM 3    whether that monetary relief is merely incidental to

11:57AM 4    the injunction or not and the fact that certifying a

11:57AM 5    class under that could -- could end up being an issue

11:57AM 6    that -- that causes the certification to be reversed on

11:57AM 7    appeal and it's -- this is obviously going to be

11:57AM 8    appealed.

11:57AM 9             And I -- I think that the Dukes case has

11:57AM 10   to be read as at least injecting doubt on that.  And I

11:57AM 11   -- and that's one reason I -- I raise (c)(4) and I just

11:58AM 12   want to hear from you on why 23(b)(3) wouldn't be a

11:58AM 13   better way.  And I know that that gets you into the, I

11:58AM 14   guess, issues of predominance and --

11:58AM 15             MR. STRIS:   Superiority, yes.

11:58AM 16             THE COURT:   -- superiority that -- and is

11:58AM 17   it your concern about those issues that's -- that's

11:58AM 18   causing you to want to stick with (b)(2) or are you

11:58AM 19   really worried that that many people are going to opt

11:58AM 20   out of this class?

11:58AM 21             MR. STRIS:   I -- I'd love to speak to

11:58AM 22   that issue.  I -- I certainly appreciate the close

11:58AM 23   nature of the -- the importance of the question, I

11:58AM 24   would put it that way, and it's something on which I

11:58AM 25   have some fairly strong opinions and I'd like to share

| | |
|---|---|
| 11:58AM | 1 |

them.

So let me start by saying this:  I have no doubt that the issue of whether 23(b)(2) classes can get certified in ERISA cases like this is going to continue to get litigated and it would not surprise me if it's made -- if it makes its way up to the Supreme Court.  It is a critically important question that the defense lawyers are challenging in the wake of Dukes in case after case.  I'm aware of that.

But so far every Court that's decided the issue has decided it in, I believe, the correct way, which is that these cases should be certified under 23(b)(2) and I'd like to explain why.  So let's start with the Wal-Mart case.

So the relevant language in the Wal-Mart case that opposing Counsel is referring to, it comes from page 2560 of the Supreme Court Reporter and it's where there -- ironically there's a discussion of a Fifth Circuit case, Allison versus Citgo Petroleum, that has the language that -- that -- that says that you can certify a 23(b)(2) class as long as the monetary relief is incidental.  Now, to be sure, the Supreme Court in Wal-Mart did not sanction that.  That's not my position.  But the Supreme Court could not -- Justice Scalia could not have been clearer that

12:00PM 1  he was leaving that question open.  So it may way --

12:00PM 2  make its way back to the U.S. Supreme Court, I -- I

12:00PM 3  don't deny that, but as of now this is still good law

12:00PM 4  in the Fifth Circuit.

12:00PM 5          THE COURT:  He went a little bit beyond

12:00PM 6  leaving it open because the way he described what he

12:00PM 7  was not deciding was whether there are any forms of

12:00PM 8  incidental monetary relief that are consistent.  I

12:00PM 9  mean, he didn't go on to say that, you know, whether it

12:00PM 10 was properly applied when Allison was the issue, but

12:00PM 11 that's a fairly strong statement.

12:00PM 12         MR. STRIS:  Well, and I think he would

12:00PM 13 agree -- there's one thing I think he and I would agree

12:00PM 14 on as to this issue which is whatever -- however strong

12:00PM 15 the statement is, whatever he meant it is

12:00PM 16 unquestionably dicta.  And Justice Scalia has a very

12:00PM 17 strong, and I've appeared before him a number of times,

12:00PM 18 he has a very strong understanding and appreciation of

12:01PM 19 the difference between holding and dicta.  In fact, he

12:01PM 20 dissented in Cigna versus Amara expressly on that basis

12:01PM 21 because it was so important to him.

12:01PM 22         So I think we can all agree that whether

12:01PM 23 it's a strong suggestion or not, it's dicta.  What does

12:01PM 24 that mean?  What that means is as of now, this is the

12:01PM 25 law in the Fifth Circuit.  And you ask us why we want

12:01PM 1  this certified under 23(b)(2), there's a simple answer.

12:01PM 2  It should be.  It should be.  If Plaintiffs have the

12:01PM 3  right under the law to a certification under (b)(1) or

12:01PM 4  (b)(2), they should not be required to get

12:01PM 5  certification under (b)(3).

12:01PM 6          And if that means that I'm going to have

12:01PM 7  to defend that on a 23(f) appeal to the Fifth Circuit,

12:01PM 8  so be it.  I look forward to that.  Because I believe

12:01PM 9  the right answer is precisely what Judge Posner put

12:01PM 10 forward in the Johnson versus Meriter case.  And UBS

12:01PM 11 doesn't like it because it -- it -- it concludes the

12:01PM 12 exact opposite of their position, but they don't have

12:01PM 13 better authority in the Fifth Circuit.

12:01PM 14         They have the Allison case which says

12:01PM 15 it's permissible and sets forth this test.  And then in

12:01PM 16 the Seventh Circuit they have the Meriter case that

12:01PM 17 says, you know what, if you have an ERISA case, and

12:02PM 18 this comes up a lot, this case is a paradigmatic

12:02PM 19 example, if you have an ERISA case where the challenge

12:02PM 20 conduct is class wide, and that's the issue here,

12:02PM 21 either the forfeitures are invalid or they're not,

12:02PM 22 Plaintiffs get to say that it doesn't matter how much

12:02PM 23 monetary relief there is, they seize upon this point,

12:02PM 24 there -- they say how could the monetary relief be

12:02PM 25 incidental if it's hundreds of millions of dollars?

12:02PM 1  I'll tell you why because the difference between a

12:02PM 2  (b)(1) and a (b)(2) class on the one hand and (b)(3)

12:02PM 3  class on the other has nothing to do with how much

12:02PM 4  money is involved.  It has to do with whether the

12:02PM 5  issues are individualized.

12:02PM 6          When -- when -- when this rule was

12:02PM 7  created, it was because there was a concern that if you

12:02PM 8  have individualized monetary determinations, it's

12:02PM 9  critically important to provide opt out rights and --

12:02PM 10  and that makes sense.  Because if I'm one member of the

12:02PM 11  class, I -- I -- and I have individual issues about

12:02PM 12  what my damages are, I may not want some named

12:02PM 13  Plaintiff and his or her lawyers litigating that issue

12:02PM 14  because their interest may be divergent from mine.

12:03PM 15  That does not present itself, Your Honor, in ERISA

12:03PM 16  cases where you're challenging something plan wide.

12:03PM 17          So that's why Judge Posner correctly

12:03PM 18  explained in Meriter that in a case like this where if

12:03PM 19  we get our injunction, then it's just a matter of

12:03PM 20  laying out the records.  And UBS has no response to

12:03PM 21  this.  They lay out the records.  They know full well

12:03PM 22  who the participants are.  They know how much they

12:03PM 23  would get if the plan is an ERISA plan and they weren't

12:03PM 24  allowed to do these forfeitures.  It's a ministerial,

12:03PM 25  administrative calculation and there's no reason to --

| | | |
|---|---|---|
| 12:03PM | 1 | to force mandatory opt outs and make us get a 23(b)(3) |
| 12:03PM | 2 | class certified in that case. |
| 12:03PM | 3 | And so I have no doubt that this is a |
| 12:03PM | 4 | question on which people will disagree.  It will be |
| 12:03PM | 5 | hotly litigated, but we believe that the law is clear. |
| 12:03PM | 6 | If -- if we're right, we have -- we -- we are entitled |
| 12:03PM | 7 | to certification under 23(b)(2) and we'll be happy to |
| 12:04PM | 8 | litigate that before the Fifth Circuit, come what may. |
| 12:04PM | 9 | THE COURT:  All right.  Thank you, Mr. |
| 12:04PM | 10 | Stris, I appreciate that position. |
| 12:04PM | 11 | Mr. Scalia, do you want to respond?  And |
| 12:04PM | 12 | I -- by that I mean to the entire 23(c)(4) and (b)(2) |
| 12:04PM | 13 | or (b)(3) subjects. |
| 12:04PM | 14 | MR. SCALIA:  Your Honor, with respect to |
| 12:04PM | 15 | (b)(2) itself, Plaintiffs have again changed their |
| 12:04PM | 16 | position on Dukes itself.  Their opening brief, I |
| 12:04PM | 17 | mentioned, it cited Dukes once and got it wrong.  They |
| 12:04PM | 18 | cited it for a proposition, Your Honor, that you've |
| 12:04PM | 19 | obviously recognized, it certainly does not stand for. |
| 12:04PM | 20 | They suggested that it had approved, endorsed, and |
| 12:04PM | 21 | accepted the Allison approach; but as you know, the |
| 12:05PM | 22 | Court consciously not only set that aside, but |
| 12:05PM | 23 | suggested very serious misgivings about it.  So I do |
| 12:05PM | 24 | appreciate that we're now on a common ground as to what |
| 12:05PM | 25 | happened in Dukes that reflects, again, that you've |

12:05PM 1 been presented by Plaintiffs a road map to class

12:05PM 2 certification that's ultimately unreliable and

12:05PM 3 unsustainable.

12:05PM 4 As to whether this is a (b)(2) case, what

12:05PM 5 you've heard from Plaintiffs' Counsel who, you know,

12:05PM 6 has followed this case closely, he's a capable lawyer,

12:05PM 7 what you've heard is this is a very close call. What I

12:05PM 8 would suggest is that it clearly is not within (b)(2),

12:05PM 9 but in any event is a bad test case for the approach

12:05PM 10 that he would urge to (b)(2).

12:05PM 11 He cited the Johnson case. That's the

12:05PM 12 Judge Posner decision again, which reflects a Seventh

12:05PM 13 Circuit approach toward class certification, which is

12:05PM 14 not the approach taken here. Judge Posner did not

12:05PM 15 purport to fit what he was doing there within the

12:05PM 16 Allison rule, but there's something else that's very

12:05PM 17 important in that case, that is a thread that runs

12:06PM 18 through Allison, Bolin, and also Casa Orlando, all on

12:06PM 19 23(b)(2), all cases that we cited.

12:06PM 20 I've mentioned this earlier, but on page

12:06PM 21 369 what Posner said, he referred to, quote, those

12:06PM 22 class members who have not yet quit or retired from

12:06PM 23 Meriter who are seeking forward-looking relief as

12:06PM 24 distinct from damages.

12:06PM 25 In Allison as well, even though the Court

12:06PM 1 there ultimately did not find (b)(2) was appropriate,

12:06PM 2 you had people who at least were seeking bona fide

12:06PM 3 injunctive relief in its own right. They wanted

12:06PM 4 employment, they wanted promotion and the like, so you

12:06PM 5 had something to balance.

12:06PM 6 On the other side you have Bolin -- I'm

12:06PM 7 sorry, Bolin and Casa Orlando where in those cases the

12:06PM 8 Court says we really don't need to get into a balancing

12:06PM 9 between injunctive and -- and whether the monetary

12:07PM 10 relief is incidental or not because the injunctive

12:07PM 11 relief is effectively illusory. And of course, Bolin

12:07PM 12 has that very important line about how (b)(2) is not to

12:07PM 13 be used merely to provide injunctive relief as a means

12:07PM 14 of distributing money.

12:07PM 15 I think we've now handed up to you this,

12:07PM 16 again, would be PowerPoint, a hard copy document titled

12:07PM 17 we want money and Plaintiffs should have a copy of this

12:07PM 18 as well. Yes. And so what we have there is first a

12:07PM 19 line from Bolin at the bottom about how (b)(2) can't be

12:07PM 20 used when Plaintiffs, quote, have nothing to gain from

12:07PM 21 an injunction and the declaratory relief they seek

12:07PM 22 serves only to facilitate the award of damages, end

12:07PM 23 quote.

12:07PM 24 That's what Plaintiffs want here. That's

12:07PM 25 why they want the injunction. Again, that wasn't true

12:07PM 1  in Johnson, even though Johnson itself isn't following

12:07PM 2  the Allison, Bolin, Casa Orlando line of cases.  And

12:07PM 3  then of course on this slide we have Plaintiffs'

12:08PM 4  Counsel admission in the prior hearing, they're after

12:08PM 5  the money.  And the lead Plaintiff in the Eddingston

12:08PM 6  case saying what he wants is an order to pay money.

12:08PM 7          So we think that no monetary relief is

12:08PM 8  appropriate through a (b)(2) class, which as you know

12:08PM 9  raises all sorts of questions ultimately about due

12:08PM 10  process, which the Court was identifying in Dukes.  But

12:08PM 11  beyond that, this is a particularly poor case for that

12:08PM 12  vehicle.

12:08PM 13          To just briefly address (b)(1)(a) and

12:08PM 14  (b)(1)(b), Your Honor with respect to (b)(1)(a), the

12:08PM 15  Casa Orlando case is -- is really on point and, you

12:08PM 16  know, we cite it, but (b)(1)(a) is limited to those

12:08PM 17  circumstances where one Court might say go left and the

12:08PM 18  other Court would say go right and you can't do both.

12:08PM 19  But a circumstance where one Court says this is an

12:08PM 20  ERISA plan and another Court says it's not, doesn't put

12:08PM 21  the Defendant in that difficult position.

12:08PM 22          THE COURT:   How not?

12:08PM 23          MR. SCALIA:   Well, because see, Your

12:08PM 24  Honor, the dilemma is one Court again is saying go left

12:09PM 25  and the other is saying you may not go left, you must

12:09PM 1    go right.  The Court that says this isn't an ERISA plan

12:09PM 2    isn't going to say, and you may not treat it like one,

12:09PM 3    but it's going to say it's not ERISA, Plaintiff loses.

12:09PM 4    So you can be consistent with both by adapting your

12:09PM 5    conduct to the order of the Court that held that it was

12:09PM 6    an ERISA plan.

12:09PM 7              You're not between a rock and a hard

12:09PM 8    place the way Casa Orlando says that (1)(a) is limited

12:09PM 9    to.  So Plaintiffs cited their cases on (1)(a), they

12:09PM 10   all predate Casa Orlando and a number of them are out

12:09PM 11   of the circuit, they simply misunderstand.  And I

12:09PM 12   believe it's Judge Higginbotham, in Casa Orlando, as

12:09PM 13   well is really quite clear about that and he's

12:09PM 14   absolutely right, that's -- that -- that's how it

12:09PM 15   operates.

12:09PM 16             In terms of (b)(1)(b), again a shift.

12:09PM 17   When you read their opening briefs, Plaintiffs cite

12:09PM 18   Amcan, which is a (b)(3) case, to suggest that (1)(b)

12:09PM 19   is sort of an open door to any kind of certification.

12:09PM 20   And then they acknowledge finally it's limited to its

12:10PM 21   historical antecedents, but they say not only to the

12:10PM 22   limited fund problem, but then they do not tell you

12:10PM 23   what historical antecedents fit.

12:10PM 24             So just brief on (1)(a) and (1)(b), but

12:10PM 25   you don't fit there.

| 12:10PM | 1 | THE COURT: Why shouldn't the Court, if |
| 12:10PM | 2 | I adopt your approach to the monetary relief, simply |
| 12:10PM | 3 | certify for class determination the ERISA questions |
| 12:10PM | 4 | that the Plaintiffs put forth? |
| 12:10PM | 5 | MR. SCALIA: First, Your Honor, because |
| 12:10PM | 6 | I don't believe they've asked for that. I don't |
| 12:10PM | 7 | believe it's in their brief. They never asked for that |
| 12:10PM | 8 | and the Plaintiffs ought to be held to relief they |
| 12:10PM | 9 | requested. |
| 12:10PM | 10 | Secondly, we simply think it's |
| 12:10PM | 11 | inappropriate. That each of those rules reflects a |
| 12:10PM | 12 | very thoughtful approach to how to deal with a |
| 12:10PM | 13 | particular type of case and it's not in the proper use |
| 12:10PM | 14 | of Rule 23 to break it down into different parts -- |
| 12:10PM | 15 | THE COURT: Well, what's -- what is |
| 12:10PM | 16 | (c)(4) about? That's part of Rule 23. |
| 12:11PM | 17 | MR. SCALIA: It -- it, for example, |
| 12:11PM | 18 | could authorize subclasses, classes as to different |
| 12:11PM | 19 | claims, but I don't think it should be read to |
| 12:11PM | 20 | authorize taking a specific case and slicing and dicing |
| 12:11PM | 21 | it to fit different particular provisions in 23(b) |
| 12:11PM | 22 | itself. And -- and -- and I don't believe that's |
| 12:11PM | 23 | ultimately what was done. In the Bolin case there's |
| 12:11PM | 24 | very brief reference to it, but it wasn't ultimately |
| 12:11PM | 25 | used in that manner. |

12:11PM 1          THE COURT:  Well, I think that Judge

12:11PM 2  Higginbotham clearly pointed out that it could be used

12:11PM 3  in that manner.  I mean, how can you say that (c)(4)

12:11PM 4  which says when appropriate, an action may be brought

12:11PM 5  or maintained as a class action with respect to

12:11PM 6  particular issues, how can you say that doesn't

12:11PM 7  authorize the Court to certify a class as to particular

12:11PM 8  issues?

12:11PM 9          MR. SCALIA:  It -- it authorizes

12:11PM 10  certifying as to particular issues, but not breaking 23

12:11PM 11  down into different component parts and having a hybrid

12:12PM 12  type action, which is really neither fish nor foul and

12:12PM 13  the Court really wanted very specific protections.

12:12PM 14          THE COURT:  You're assuming that -- that

12:12PM 15  I'm talking about certifying the monetary relief for

12:12PM 16  class determination at this point also, huh?  I'm

12:12PM 17  asking you about if all that got certified was the --

12:12PM 18  whether or not this plan is covered by ERISA, whether

12:12PM 19  or not, if so it would be a Top-Hat plan, and whether

12:12PM 20  or not the plans vesting in forfeiture provisions are

12:12PM 21  in compliance with ERISA, why shouldn't those issues be

12:12PM 22  certified for class determination?

12:12PM 23          MR. SCALIA:  Just as an initial

12:12PM 24  observation, Your Honor, these are interesting and some

12:12PM 25  cases might be challenging questions, but a nice thing

12:12PM 1  about this case is that the waiver means you don't need

12:12PM 2  to reach them and we don't need to have such an

12:12PM 3  adventuresome class action certified.  But as to that

12:13PM 4  approach, what you'd be talking about then is having

12:13PM 5  what Plaintiffs maintain as the central issue in this

12:13PM 6  case, whether or not it's an ERISA plan, done under

12:13PM 7  (b)(2) presumably with no notice and -- and because

12:13PM 8  (b)(2) doesn't provide opt out and so you would have

12:13PM 9  that central issue determined unbeknownst to all of

12:13PM 10  these other people capable of bringing claims on their

12:13PM 11  own.

12:13PM 12          THE COURT:  Notice can provided in a

12:13PM 13  (b)(2) class.  The rules are specific on that.

12:13PM 14          MR. SCALIA:  But typically that occurs

12:13PM 15  late in the class.  But in any event, there's not an

12:13PM 16  opt out mechanism in (b)(2), so --

12:13PM 17          THE COURT:  There's no opt out.

12:13PM 18          MR. SCALIA:  -- so at that point you're,

12:13PM 19  in charging this group, and we've already talked about

12:13PM 20  the inadequacies they present as Plaintiffs, this group

12:13PM 21  to litigate for almost 2000 people, claims that in some

12:13PM 22  instances are hundreds of thousands of dollars by

12:13PM 23  themselves.  We already have Claimants who've either

12:13PM 24  brought cases in Federal District Court or sought to

12:14PM 25  have brought cases in arbitration.  At this point we're

| | | |
|---|---|---|
| 12:14PM | 1 | believing that in the even of (b)(3) Your Honor, but -- |
| 12:14PM | 2 | and -- and superiority. But there are so many reasons |
| 12:14PM | 3 | why individuals who are concerned about this can |
| 12:14PM | 4 | proceed on their own and do not need and should not |
| 12:14PM | 5 | have it inflicted upon them that without their ability |
| 12:14PM | 6 | to control litigation of this particular set of |
| 12:14PM | 7 | Claimants determines the central question in the case |
| 12:14PM | 8 | pursuant to (b)(2). We think that would be a misuse of |
| 12:14PM | 9 | it. |
| 12:14PM | 10 | Finally -- |
| 12:14PM | 11 | THE COURT: Do you have any authority |
| 12:14PM | 12 | that would indicate that just because it's a serious |
| 12:14PM | 13 | question that a lot of absent class members would have |
| 12:14PM | 14 | a serious interest in that it shouldn't be certified? |
| 12:14PM | 15 | MR. SCALIA: I think that the text of |
| 12:14PM | 16 | (b)(2) and -- and -- and, for that matter, (b)(1) and |
| 12:14PM | 17 | (b)(3), which presented a very conscious sort of |
| 12:14PM | 18 | purposeful approach toward class certification in |
| 12:14PM | 19 | different kinds of circumstance is part of the answer. |
| 12:14PM | 20 | And I think the rest of the answer is Dukes, which |
| 12:15PM | 21 | expressed a very serious concern in line with the |
| 12:15PM | 22 | Schutz case and Ortiz and others about mandatory |
| 12:15PM | 23 | classes which are determinative of monetary relief and |
| 12:15PM | 24 | that is what you'd still be doing because you'd still |
| 12:15PM | 25 | be having -- |

12:15PM  1          THE COURT:   You seem to be admitting

12:15PM  2   that it's incidental monetary relief, then, if you're

12:15PM  3   saying that the mere fact that you decide the question

12:15PM  4   decides the monetary relief.

12:15PM  5          MR. SCALIA:   Oh, I don't dispute for a

12:15PM  6   minute that the only reason they want a ruling on their

12:15PM  7   so-called injunction is to get money.  I mean, as we've

12:15PM  8   said, it's -- if -- it is all about the money.  What I

12:15PM  9   dispute is whether it's incidental.  It's entire and

12:15PM 10   predominant and whole that what they want is the money

12:15PM 11   and that's exactly why (b)(2) is wrong, because they'd

12:15PM 12   be saying, oh, it's just (b)(2) as to whether or not

12:15PM 13   it's an ERISA plan, but really what they want is (b)(2)

12:15PM 14   so that they can then, contrary to Bolin, contrary to

12:16PM 15   Casa Orlando, use that as a means of disbursing cash

12:16PM 16   and that's not appropriate.

12:16PM 17          Finally, Your Honor, with respect to

12:16PM 18   (b)(3) and the manageability -- and by the way, this

12:16PM 19   goes to (b)(2) also.  You read Plaintiffs' brief and

12:16PM 20   some of their exhibits and part of what they've relied

12:16PM 21   on is what was told to different class members.  So

12:16PM 22   there's one fellow, Ellspermann, who was deposed

12:16PM 23   because he'd been identified as a potential witness.

12:16PM 24   They've used his deposition, the Plaintiffs themselves.

12:16PM 25   There's another person, Mendenhall, deposed.

12:16PM 1          These folks talked about what people in

12:16PM 2   low-level management positions at UBS are supposedly

12:16PM 3   told about the retirement plan.  Plaintiffs regard that

12:16PM 4   as essential to determining whether or not this is a

12:16PM 5   retirement plan.  That is part of the aggregation of

12:16PM 6   facts which Plaintiffs are saying are needed.

12:16PM 7          So what you're talking about is -- and by

12:16PM 8   the way, Ellspermann said he told hundreds of people it

12:16PM 9   was a retirement plan; now he also admitted he didn't

12:17PM 10  know what retirement was.  But he said he told hundreds

12:17PM 11  of people.  So I gather Plaintiffs envision a case

12:17PM 12  where hundreds of people will be brought forward to

12:17PM 13  say, ah, that's what's Ellspermann told me, which of

12:17PM 14  course, entitles us to depose every one of them, to

12:17PM 15  cross-examine every one of them, and then to go seek

12:17PM 16  out our own several hundred or perhaps a thousand

12:17PM 17  Plaintiffs, putative class members, who say I knew it

12:17PM 18  wasn't a retirement plan.  It's a deferred compensation

12:17PM 19  plan.

12:17PM 20          That is not a manageable class action

12:17PM 21  whatsoever.  And so their own theory of how this ERISA

12:17PM 22  question gets litigated, Your Honor, is not consistent

12:17PM 23  at all with their so-called three questions.

12:17PM 24          In fact, you know, rereading their briefs

12:17PM 25  last night, I was really struck on page 23.  They said

12:17PM 1 on predominance the central task is just to think about

12:17PM 2 how a trial on the merits would be conducted.  And they

12:17PM 3 said individual factual determinations will be

12:17PM 4 unnecessary.  Each member seeks relief on claims

12:18PM 5 arising from the same conduct.  Each member was treated

12:18PM 6 identically.  And each member was subject to the same

12:18PM 7 plan.  Common issues do not merely predominate, they

12:18PM 8 are the only ones.

12:18PM 9 And yet now they -- they're offering you

12:18PM 10 a completely different case of literally hundreds of

12:18PM 11 people that are supposed to be heard from about whether

12:18PM 12 or not they were told that it was a retirement plan.

12:18PM 13 THE COURT:  I don't really think there's

12:18PM 14 any reliance issue in here.  I -- they may think that

12:18PM 15 it's helpful to show that UBS people themselves thought

12:18PM 16 it was a retirement plan, but the fact that they're

12:18PM 17 referring to these statements that some of the class

12:18PM 18 members heard, is -- it's not a reliance type issue

12:18PM 19 like you get into in a RICO or fraud class action.

12:18PM 20 MR. SCALIA:  But Your Honor, with

12:18PM 21 respect to the statute of limitations accrual, with

12:18PM 22 respect potentially to releases, with respect to

12:19PM 23 Plaintiffs who moved among different states, if

12:19PM 24 Plaintiffs were to have their way on which limitations

12:19PM 25 period applies, all of these are issues that would have

12:19PM 1  you drilling down in a highly individualized fact

12:19PM 2  specific way that's inconsistent with (b)(2) and (b)(3)

12:19PM 3  and I take your point.  It's not -- it's not so much

12:19PM 4  reliance, but it's Plaintiffs that put weight on what

12:19PM 5  was told to class members.

12:19PM 6            And we couldn't do our jobs without

12:19PM 7  finding out what was told to all the other class

12:19PM 8  members and then calling them as witnesses.  And that

12:19PM 9  is an entirely unmanageable trial and -- entirely

12:19PM 10 unmanageable trial and -- and not superior to these

12:19PM 11 people receiving their sizable claims brought by

12:19PM 12 their --

12:19PM 13            THE COURT:  If this -- if the case was

12:19PM 14 tried on an individual basis, there's no reason all

12:19PM 15 those hundreds of people would still not be relevant to

12:19PM 16 the question of ERISA coverage.

12:19PM 17            MR. SCALIA:  I -- I think it's highly

12:19PM 18 unlikely you would have a case of that nature.  At --

12:20PM 19 at -- at minimum it would be, you know, courts could

12:20PM 20 put reasonable limits on it.  It would be much more

12:20PM 21 manageable and what somebody on the other side of the

12:20PM 22 country thought about any particular Claimant is not

12:20PM 23 going to be -- or for that matter, the other side of

12:20PM 24 the state, is not going to be relevant in an individual

12:20PM 25 case, but necessarily becomes part of the evidence that

| | | |
|---|---|---|
| 12:20PM | 1 | goes into -- into one of these cases. |
| 12:20PM | 2 | THE COURT: Okay. I hear you. |
| 12:20PM | 3 | MR. SCALIA: Last point, Your Honor. |
| 12:20PM | 4 | Just a couple last points. With regard to the state |
| 12:20PM | 5 | law claim, the -- the Plaintiffs, I think, have all but |
| 12:20PM | 6 | waived any attempt to certify the state law claim. |
| 12:20PM | 7 | They just dropped a footnote in their first brief |
| 12:20PM | 8 | saying and for all the reasons therefore given as to |
| 12:20PM | 9 | ERISA, certify the state claim too. Completely |
| 12:20PM | 10 | different issues are presented. |
| 12:20PM | 11 | They've identified no way in which what's |
| 12:20PM | 12 | a reasonable scope of a competition restriction could |
| 12:20PM | 13 | appropriately be determined on a class basis and for |
| 12:20PM | 14 | that reason certification is inappropriate. |
| 12:20PM | 15 | Finally Your Honor, in the Castano case, |
| 12:21PM | 16 | 84 F.3d 734, sounds like you got there before I did, |
| 12:21PM | 17 | Your Honor, the Fifth Circuit has said that (c)(4) is |
| 12:21PM | 18 | not an independent basis for certification. Plaintiffs |
| 12:21PM | 19 | haven't asked for it, shouldn't be done. They should |
| 12:21PM | 20 | be held to their papers, Your Honor. |
| 12:21PM | 21 | THE COURT: Well, I think that (c)(4) is |
| 12:21PM | 22 | not independent and what the Court meant in Castano is |
| 12:21PM | 23 | that it doesn't get you out of fitting it within (b)(1) |
| 12:21PM | 24 | through (3), but it does make clear that it doesn't |
| 12:21PM | 25 | have to be an entire case certified. It can be |

| | | |
|---|---|---|
| 12:21PM | 1 | discreet issues. And I don't think Castano in any way |
| 12:21PM | 2 | changes that, but anyway, I -- I will look at Castano |
| 12:21PM | 3 | again. |
| 12:21PM | 4 | MR. SCALIA: Right. But I don't think |
| 12:21PM | 5 | what it says is you can certify under (c)(4) and then |
| 12:21PM | 6 | use it in conjunction with all the other rules, rather |
| 12:21PM | 7 | than just have a case about an issue, end of story. |
| 12:22PM | 8 | THE COURT: Mr. Stris, I want to start |
| 12:22PM | 9 | with maybe where we ended up there. I don't see how I |
| 12:22PM | 10 | could possibly certify a class on the Texas claims |
| 12:22PM | 11 | based on the record that's been made here. |
| 12:22PM | 12 | MR. STRIS: I agree. |
| 12:22PM | 13 | THE COURT: Okay. All right. |
| 12:22PM | 14 | MR. STRIS: Subject to the fact that we |
| 12:22PM | 15 | have the right to move for a certification early in the |
| 12:22PM | 16 | proceedings and if at some point in the future the case |
| 12:22PM | 17 | is decided such that ERISA is not covered, we -- you |
| 12:22PM | 18 | know, we -- we reserve the right to move for class |
| 12:22PM | 19 | certification on the Texas claims then, but I agree |
| 12:22PM | 20 | with opposing Counsel and -- and your point. |
| 12:22PM | 21 | THE COURT: All right. |
| 12:22PM | 22 | MR. STRIS: With that said, I'd like to |
| 12:22PM | 23 | kind of jump into some of the positions, some of the |
| 12:22PM | 24 | points made by opposing Counsel. And I'd like to start |
| 12:22PM | 25 | with this idea of divided certification, if I may. |

12:22PM 1          When -- when we asked, you know, my

12:23PM 2   friends' side opposite about what his position was

12:23PM 3   about divided certification, I was surprised again.

12:23PM 4   His first answer was we didn't ask for it and it's

12:23PM 5   waived.  I -- I keep hearing this again and again.  So

12:23PM 6   just in the interest of completeness, if you look at

12:23PM 7   our original class --

12:23PM 8          THE COURT:  I don't consider that you've

12:23PM 9   waived it, so --

12:23PM 10          MR. STRIS:  Okay.  But I'd like to be

12:23PM 11  clear about where we said it, because it makes it clear

12:23PM 12  about what we said.  On page 12 of our class

12:23PM 13  certification motion, in footnote 10, we said:  In the

12:23PM 14  event the Court is concerned that some individual

12:23PM 15  members may be harmed by class-wide monetary relief,

12:23PM 16  the Court can order divided certification of

12:23PM 17  Plaintiffs' class.  We cite Meriter.

12:23PM 18          And here's what I really want to get to.

12:23PM 19  I want to explain -- actually want to quote exactly

12:23PM 20  what Judge Posner said in Meriter because it explains

12:23PM 21  the precise mechanics under Rule 23 about how this

12:23PM 22  would happen.  And -- and we have this in our opening

12:23PM 23  brief.

12:23PM 24          Judge Posner says, quote:  This would

12:23PM 25  mean -- I'm actually going read the full quote, we --

12:23PM 1    we excerpted it in the brief.  The full quote says:  In

12:24PM 2    the present case, bifurcation, called divided

12:24PM 3    certification in a class action context, would mean a

12:24PM 4    (b)(2) proceeding first and if the Plaintiffs obtained

12:24PM 5    declaratory relief, a (b)(3) proceeding where notice

12:24PM 6    and the right to opt out are mandatory to follow.

12:24PM 7    That's his exact quote.

12:24PM 8              Now, we don't want that.  We believe

12:24PM 9    we've satisfied the requirements under Rule 23(b)(2)

12:24PM 10   and we'd like 23(b)(2) certification, we think we're

12:24PM 11   entitled to it.  But should this Court disagree,

12:24PM 12   there's no question, I think, as Bolin and other cases

12:24PM 13   make clear, that Rule 23(c) -- our position is not that

12:24PM 14   Rule 23(c) is some sort of independent basis for

12:24PM 15   certification, it's exactly what you said a moment

12:24PM 16   earlier, Your Honor.  It permits as long as we've met

12:24PM 17   the requirements under Rule 23 -- 23(b)(2) and 23(b)(3)

12:24PM 18   for you to separate out, just as Judge Posner suggested

12:24PM 19   could have happened in the Meriter case.  So I want to

12:24PM 20   just make that clear with regard to our position on

12:25PM 21   divided certification.

12:25PM 22             Now, the next thing I'd like to talk

12:25PM 23   about is this slide that we keep seeing.  I like it

12:25PM 24   because it has my name on it and I like anything that

12:25PM 25   has my name, especially when after my name it says we

| | | |
|---|---|---|
| 12:25PM | 1 | want money.  My -- my family would love that official |
| 12:25PM | 2 | proceedings in court had Mr. Stris, we want money, |
| 12:25PM | 3 | there's something funny about that. |
| 12:25PM | 4 | But on a serious note, there's a -- |
| 12:25PM | 5 | there's a fundamental problem with the arguments being |
| 12:25PM | 6 | made here by UBS and we can take it right out of the |
| 12:25PM | 7 | quote from Bolin at the bottom.  And what it says on |
| 12:25PM | 8 | this slide is:  Rule 23(b)(2) cannot be used where |
| 12:25PM | 9 | Plaintiffs have nothing to gain from injunction and the |
| 12:25PM | 10 | declaratory relief they seek serves only to facilitate |
| 12:25PM | 11 | the award of damages. |
| 12:25PM | 12 | That is such an important point because |
| 12:25PM | 13 | as I was trying to explain at the February 4th hearing, |
| 12:25PM | 14 | where I'm quoted as saying we want money, if you'll |
| 12:25PM | 15 | look in the full context of what I said, I was |
| 12:25PM | 16 | referring to the lengthy jurisprudence of the United |
| 12:25PM | 17 | States Supreme Court dealing with Section -- with 29 |
| 12:26PM | 18 | USC 1132(a)(3).  And in fact, in a long line of cases |
| 12:26PM | 19 | starting with Justice Scalia's Merten's decision, he |
| 12:26PM | 20 | made very clear, in fact he couldn't have made it |
| 12:26PM | 21 | clearer, no one can ever get damages under Section |
| | 22 | (a)(3), 502(a)(3) of ERISA. |
| | 23 | So there's a big difference between |
| | 24 | money -- I'm sorry? |
| | 25 | THE COURT:  The court reporter is asking |

1   for you to talk a little slower, so --

2           MR. STRIS:  Oh, that's fair.  I'm sorry,

3   I got excited, because again, it had my name and money.

4   I'll get it under control.

12:26PM  5           The -- the phrase damages has a very

12:26PM  6   specific meaning and it's not money.  The -- the --

12:26PM  7   there's a long line of U.S. Supreme Court cases that

12:26PM  8   make clear that under (a)(3), which is the provision

12:26PM  9   we're -- we're proceeding under, you -- you can -- you

12:26PM 10   can get money, but you can't get compensatory damages.

12:26PM 11           And that's a distinction that Justice

12:26PM 12   Scalia and at least five Justices in a series of

12:27PM 13   Supreme Court cases, you know, we're talking about

12:27PM 14   Merten's.  We're talking about Great West versus

12:27PM 15   Knudson.  We're talking about Sereboff.  We're talking

12:27PM 16   about, you know, case after case after case.  They've

12:27PM 17   made it clear that appropriate, equitable relief, which

12:27PM 18   is what we're seeking, is not damages.

12:27PM 19           So at the end of the day, I really don't

12:27PM 20   think there's much force to the argument UBS is making

12:27PM 21   because it's not the case that we have nothing to gain

12:27PM 22   from injunction.  And it's not the case that the

12:27PM 23   declaratory relief that we're seeking serves only to

12:27PM 24   facilitate an award of damages.

12:27PM 25           Every member of the class will benefit

12:27PM 1 from an injunction that forces UBS to -- to own up to

12:27PM 2 the fact that they really were operating a retirement

12:27PM 3 plan. And yes, it is the case that if the plan is

12:27PM 4 reformed or if an injunction is ordered, then the

12:27PM 5 benefits to which each class member would be entitled

12:27PM 6 to under the plan will be much higher than under the

12:27PM 7 status quo. And that means we want money and we will

12:28PM 8 get money. But in no way does that mean that we're

12:28PM 9 talking about damages or the rule that Bolin is setting

12:28PM 10 forth. It just flies in the face of ERISA

12:28PM 11 jurisprudence.

12:28PM 12         Now, that said, we have to win. We have

12:28PM 13 to prove the merits of the ERISA case, but we're here

12:28PM 14 at the class certification stage and I just think that

12:28PM 15 that argument is a red herring.

12:28PM 16         The last thing I really wanted to talk

12:28PM 17 about was this notion of individualized issues in the

12:28PM 18 case. This idea that we're going to have Plaintiffs

12:28PM 19 running around testifying about who said what to whom.

12:28PM 20 That's just wrong for -- on a few levels.

12:28PM 21         The first reason it's wrong is the vast

12:28PM 22 majority of the merits of this case is going to be

12:28PM 23 about the way in which UBS operated their plan. It's

12:28PM 24 going to be about issues like who were they defining as

12:28PM 25 retired under the plan. In their 2005 manual, in their

12:28PM 1 2009 manual, page after page sets up classes of

12:28PM 2 retirees.

12:29PM 3 How were they treated? Who got money?

12:29PM 4 What money did they get? The irony of the expert

12:29PM 5 reports that UBS has put forward and opposing Counsels'

12:29PM 6 entire position is, they love to repeat the mantra

12:29PM 7 again and again, how could this be a retirement plan if

12:29PM 8 80 percent of the distributions were made while people

12:29PM 9 were still working. Well, that's because -- first of

12:29PM 10 all, I'm not sure that it's true, but the reason why

12:29PM 11 that doesn't matter is because hundreds of millions of

12:29PM 12 dollars, namely the portion that was reserved for

12:29PM 13 retirees, under the very definition of the plan were

12:29PM 14 forfeited. So basically they're just looking at one

12:29PM 15 slice of the puzzle.

12:29PM 16 And -- and this is a very important

12:29PM 17 point, because if I could just throw out a thought

12:29PM 18 experiment, if the position that UBS were taking is --

12:29PM 19 were right, that would mean that any company could take

12:29PM 20 a huge retirement plan, that -- that everyone would

12:29PM 21 agree is a retirement plan, has a billion dollars in it

12:29PM 22 and if they didn't want it to be treated as a

12:29PM 23 retirement plan because they wanted to get around the

12:29PM 24 rules of ERISA, they could create a big bonus plan and

12:29PM 25 they could push them together. And then they could

12:30PM 1  say, well, I took my hundred million -- my billion

12:30PM 2  dollar retirement plan and my billion dollar bonus

12:30PM 3  plan, now look, there's a billion dollars worth of

12:30PM 4  transactions that sure don't look like a retirement

12:30PM 5  plan and they could entirely evade all requirements of

12:30PM 6  ERISA.

12:30PM 7          Doesn't work that way.  That's why

12:30PM 8  there's a facts and circumstances test and that's why

12:30PM 9  these issues are going to go to one of degree, as you

12:30PM 10  put it earlier, Your Honor.

12:30PM 11          So I don't want to wade too much into the

12:30PM 12  merits, because that's going to come later, but the

12:30PM 13  notion that somehow we're going to have individuals

12:30PM 14  coming and testifying about reliance or their specific

12:30PM 15  circumstances, it's just not true.

12:30PM 16          And Mr. Levitan in his deposition

12:30PM 17  admitted and testified that the official correspondence

12:30PM 18  from UBS on this plan came from a few senior executives

12:30PM 19  who would have annual meetings with all of the

12:30PM 20  supervisors and there -- there -- he didn't know

12:30PM 21  whether there were written correspondence associated

12:30PM 22  with that, so the reason I'm mentioning this on the

12:30PM 23  record is because insofar as representations are

12:31PM 24  relevant in this case, there is no doubt as a result of

12:31PM 25  that deposition testimony that we will be able to

12:31PM 1   address those issues on a class basis.

12:31PM 2           We'll be able to depose those individuals

12:31PM 3   who essentially were speaking for UBS in training the

12:31PM 4   trainers.  We'll be able to request documents on what

12:31PM 5   was sent.  We will never have to resort to any sort of

12:31PM 6   he said, she said, individuals talking about what was

12:31PM 7   discussed at the watercooler.  And the suggestion that

12:31PM 8   somehow that's the nub of this case and that it

12:31PM 9   undermines predominance or superiority, it is just

12:31PM 10  entirely off base.

12:31PM 11          THE COURT:   All right.  Thank you, Mr.

12:31PM 12  Stris.

12:31PM 13          Mr. Scalia, all good things must come to

12:31PM 14  an end.  I -- I think that you've thoroughly addressed

12:31PM 15  the -- the issues in your briefs.  Is there -- if

12:31PM 16  there's something that you haven't had a chance to talk

12:31PM 17  about at all, you can have the rest of the minute

12:31PM 18  that's left.

12:31PM 19          MR. SCALIA:   Just to sum up, Your Honor,

12:32PM 20  the statute of limitations, because Plaintiffs could

12:32PM 21  sue at the time that they weren't vested, their claim

12:32PM 22  by definition -- definition had to accrue then.  The

12:32PM 23  moment you can sue, the limitations period will come.

12:32PM 24  Waiver on that issue, I think that's simply and

12:32PM 25  clearly, honestly disposes of all of these other issues

12:32PM 1    that we've wrestled with today.

12:32PM 2              And finally,  with regard to (b)(2) and

12:32PM 3    (b)(3) as I mentioned earlier, I simply think that for

12:32PM 4    the Court to certify so that Plaintiffs with no ability

12:32PM 5    to opt out would be bound by the central issue in the

12:32PM 6    case would conflict with the careful structure between

12:32PM 7    (b)(2) and (b)(3), which the McManus Fleetwood case we

12:32PM 8    cite in our brief addresses and also would violate due

12:32PM 9    process ultimately for those who might be bound by a

12:32PM 10   determination that it's an ERISA plan with no ability

12:32PM 11   beforehand to have opted out.

12:32PM 12             So for those reasons because Plaintiffs

12:32PM 13   themselves have presented this case as one that

12:32PM 14   involves what they were told by a variety of people and

12:32PM 15   for -- for all of those reasons we believe that

12:32PM 16   certification under any prong of (b) is inappropriate.

12:33PM 17   Instead, certification should be denied for reasons

12:33PM 18   beginning with the class waiver and extending all the

12:33PM 19   way through (b)(3).

12:33PM 20             Thank you.

12:33PM 21             THE COURT:   Thank you all.  We'll issue

12:33PM 22   a ruling on this as soon as we can.

12:33PM 23             I appreciate your attendance and your

12:33PM 24   arguments.  Thank you.

12:33PM 25             MR. ANDERSON:  Your Honor, briefly, we've

12:33PM 1   got a proposed order that we'd like to submit to the

12:33PM 2   Court.  In addition, as a reminder, if the Court does

12:33PM 3   think it will need to reach the merits of whether or

12:33PM 4   not the PartnerPlus Plan is an ERISA plan, we do have a

12:33PM 5   pending motion for a partial continuance that we would

12:33PM 6   like to take up at that point.

12:33PM 7           THE COURT:  All right.  You can

12:33PM 8   certainly file anything you need along those lines into

12:33PM 9   the record.  I -- I don't see any basis on what we've

12:33PM 10  heard today to grant any continuance on this.  I think

12:33PM 11  that the matter has been properly submitted.

12:34PM 12          MR. ANDERSON:  Yes, Your Honor.

12:34PM 13          MR. SCALIA:  Your -- Your Honor, on --

12:34PM 14  on that note, I appreciate Mr. Anderson raising it.

12:34PM 15  Can defense rest comfortable in not responding to that

12:34PM 16  motion at this point?  If the Court thinks that a

12:34PM 17  response is warranted, we can wait for such an order?

12:34PM 18          THE COURT:  Yes.

12:34PM 19          MR. SCALIA:  Thank you, Your Honor.

12:34PM 20          MR. GOODMAN:  You want us to file our

12:34PM 21  proposed order, Your Honor?

12:34PM 22          THE COURT:  Proposed order regarding?

12:34PM 23          MR. GOODMAN:  Proposed order regarding

12:34PM 24  the certification motion?

12:34PM 25          THE COURT:  Oh, I see.  I think it'd be

12:34PM 1    best if you e-filed that.

12:34PM 2                    MR. GOODMAN:    That way you'd have the

12:34PM 3    text.

12:34PM 4                    THE COURT:    And everybody will have it.

12:34PM 5    Well, it'll be in that.  Well, you're just talking

12:34PM 6    about the language that you are suggesting the Court

12:34PM 7    use?

12:34PM 8                    MR. GOODMAN:    We will get it done this

12:34PM 9    afternoon.

12:34PM 10                   THE COURT:    Okay.

12:34PM 11                   MR. GOODMAN:    Thank you very much.

12:34PM 12                   THE COURT:  All right.  Thank you.  We're

12:34PM 13   adjourned.

        14                   (Adjournment.)

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

# Certification

    **I HEREBY CERTIFY** that the foregoing is a true
and correct transcript from the stenographic notes of
the proceedings in the above-entitled matter to the
best of my ability.


_____          _____
**MELISSA J. CARSON**                     **DATE**
Deputy Official Reporter
State of Texas No.: 1737
Expiration Date:  12/31/13