# Exhibit A

2013 WL 5969888
Only the Westlaw citation is currently available.
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.
(Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

Bill HENDRICKS; Aubrey B.
Stacy, Plaintiffs–Appellees

v.

UBS FINANCIAL SERVICES,
INCORPORATED, Defendant–Appellant.

Mark T. Eddingston; [Jeffrey M. Davis](); Elridge Nicholas Bollich;
Ray A. Cox, Plaintiffs–Appellees

v.

UBS Financial Services,
Incorporated, Defendant–Appellant.

Nos. 13–40692, 13–40693.    |    Nov. 11, 2013.

**Attorneys and Law Firms**

[Peter K. Stris](), Esq., [Victor Artun O'Connell](), Stris & Maher L.L.P ., Gardena, CA, [Robert E. Goodman, Jr.](), Esq., Kilgore & Kilgore, P.L.L.C., [Brendan Stephen Maher](), Stris & Maher, L.L.P., Dallas, TX, for Plaintiffs–Appellees.

[Mark Andrew Perry](), [Paul Blankenstein](), Gibson, Dunn & Crutcher, L.L.P., Washington, DC, [Blaine H. Evanson](), Gibson, Dunn & Crutcher, L.L.P., Los Angeles, CA, [Michael Charles Smith](), Esq., Siebman, Burg, Phillips & Smith, L.L.P., Marshall, TX, for Defendant–Appellant.

Appeals from the United States District Court for the Eastern District of Texas, USDC Nos. 2:12–CV–606; 2:12–CV–422.

Before [REAVLEY](), [ELROD]() and [HAYNES](), Circuit Judges.

**Opinion**

PER CURIAM:[*]

 ***1** Defendant–Appellant ("UBS") appeals the district court's denial of its motions to compel arbitration. Former UBS financial advisors and branch managers (the "Plaintiffs") sued UBS alleging that it violated ERISA by deeming certain funds in the Plaintiffs' PartnerPlus Plans (collectively, the "PartnerPlus Plan") forfeited upon their departure from the company. Because the Plaintiffs agreed in the Branch Manager Compensation Plan and Financial Advisor Compensation Plan (collectively, the "Compensation Plan") to arbitrate their claim, we REVERSE the denial of UBS's motions to compel arbitration and REMAND for entry of an order compelling arbitration.

**I. Factual and Procedural History**

During the course of the Plaintiffs' employment with UBS, the company issued annual Compensation and PartnerPlus Plans. The Compensation Plan provides information concerning compensation, benefits, service and merits awards, and financial programs for UBS's branch managers and financial advisors. The versions of the Compensation Plan relevant to this dispute also contained arbitration and class waiver provisions. Significantly, these provisions are located in an independent section of the Compensation Plan entitled "Arbitration." Each of the Plaintiffs signed Letters of Understanding and Acknowledgements through which they acknowledged receipt of the Compensation Plan and agreed to be bound by the terms therein.[1]

UBS also issued the PartnerPlus Plan, which is one of the benefits plans described in the Compensation Plan's summary sections. The PartnerPlus Plan sought "to retain and motivate" certain employees by "providing enhanced financial awards ... and ... permitting the voluntary deferral of Compensation for a fixed period of years." The relevant versions of the PartnerPlus Plan contain an arbitration provision, but they do not contain a class waiver.

The Plaintiffs and UBS made contributions to the PartnerPlus Plan. The Plaintiffs' contributions vested immediately, but UBS's contributions began vesting six years after the contribution. In the event that a plan participant separated from UBS, the PartnerPlus Plan provided that the unvested contributions would be forfeited unless there was a "qualifying separation." A qualifying separation required the plan participant to sign a "separation agreement," which contained "non-competition, non-solicitation and nondisclosure provisions."

When the Plaintiffs departed UBS and refused to sign separation agreements, UBS determined that its unvested contributions to the PartnerPlus Plan were forfeited. The Plaintiffs sued UBS, maintaining that the PartnerPlus Plan is an employee retirement plan governed by ERISA and that the vesting and forfeiture provisions violated ERISA. The Plaintiffs requested "all appropriate relief under 29 U.S.C. § 1132(a)(3), including an injunction against any act or practice which violates ERISA." The Plaintiffs sought to represent two classes of plaintiffs—one group of former branch managers (*Hendricks v. UBS Fin. Servs.,* No. 2:12–CV–606 (E.D.Tex .)) and one group of former financial advisors (*Eddingston v. UBS Fin. Servs.,* No. 2:12–CV–422 (E.D.Tex.)).

 \*2  UBS moved to compel arbitration in both cases. The magistrate judge denied the motions, concluding that the arbitration clause in the PartnerPlus Plan did not require arbitration of the Plaintiffs' claim because the clause "clearly [did] not extend to the arbitration of class claims." Further, after assuming for purposes of the motions to compel that the PartnerPlus Plan was a "pension plan" under ERISA, the magistrate judge concluded that the arbitration clause in the Compensation Plan qualified as an "amendment" to the PartnerPlus Plan that did not comport with ERISA's requirements and, therefore, could not be enforced.

The district court denied reconsideration, and UBS timely appealed. We granted UBS's motion to consolidate the *Hendricks* and *Eddingston* cases. The district court subsequently granted the Plaintiffs' motions for class certification, and UBS separately filed a petition to appeal the certification ruling which remains pending. [2]

## II. Jurisdiction and Standard of Review

We have jurisdiction over the appeal of the district court's denial of UBS's motions to compel arbitration pursuant to 9 U.S.C. § 16. *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 85 (2000); *Nicholas v. KBR, Inc.,* 565 F.3d 904, 907 (5th Cir.2009) (recognizing this court has jurisdiction over a denial of a motion to compel arbitration "even though the district court's denial of [such a] motion ... is an interlocutory ruling"). We review the district court's denial of a motion to compel arbitration *de novo. Am. Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 536 (5th Cir.2003).

## III. Discussion

The Federal Arbitration Act ("FAA") provides that

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Plaintiffs do not contend that the contracts in question are subject to "revocation." The Supreme Court has repeatedly held that the FAA "reflect[s] ... a 'liberal federal policy favoring arbitration.' " *AT & T Mobility LLC v. Concepcion,* 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)); *see also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006) (explaining that

§ 2 of the FAA "embodies the national policy favoring arbitration").

Indeed, the FAA "reflects the overarching principle that arbitration is a matter of contract" and requires us to "rigorously enforce arbitration agreements according to their terms ." *Am. Exp. Co. v. Italian Colors Rest.,* 133 S.Ct. 2304, 2309 (2013) (citation and internal quotation marks omitted). This strong policy favoring arbitration "holds true for claims that allege a violation of a federal statute [such as ERISA], unless the FAA's mandate has been overridden by a contrary congressional command." *Id.* (citation and internal quotation marks omitted).

**\*3** Against this backdrop, we assess whether "the parties have agreed to arbitrate a particular claim ... [by] determin[ing]: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.,* 297 F.3d 388, 392 (5th Cir.2002) (citation and internal quotation marks omitted). "In view of the policy favoring arbitration, we ordinarily resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Id.* (citation and internal quotation marks omitted); *see also Mercury Const.,* 460 U.S. at 24–25. Consequently, "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.' " *Motorola,* 297 F.3d at 392 (alteration in original) (quoting *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir.1990)). With these principles in mind, we turn to the contracts at issue.

### A. The Compensation Plan's Arbitration Clause is a Valid and Enforceable Agreement to Arbitrate

The Compensation Plan's arbitration clause provides that "[w]ith the exception of claims for injunctive relief ..., any disputes ... including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment ... will be determined by arbitration." Plaintiffs argue that this arbitration clause does not apply to their claim for relief under the PartnerPlus Plan because the Compensation Plan is merely a "summary brochure" that serves only to summarize certain benefit plans, such as the PartnerPlus Plan. As a result, according to the Plaintiffs, the Compensation Plan lacks any enforceable terms and cannot contradict any provisions in the PartnerPlus Plan. Examining the provisions, we conclude as a matter of law that the arbitration provision in the Compensation Plan is not a "summary" of any benefit plan but rather is an independent and enforceable provision.

Nevertheless, the Plaintiffs further urge that the parties' agreements in the Compensation Plan cannot be enforced because the Compensation Plan conflicts with or improperly seeks to modify the PartnerPlus Plan in violation of ERISA. They identify three potential conflicts: (1) the Compensation Plan's arbitration provision applies to "all disputes" except for claims for injunctive relief, whereas the PartnerPlus Plan's arbitration clause applies only to claims arising out of the PartnerPlus Plan and does not exempt claims for injunctive relief; (2) the PartnerPlus Plan's arbitration clause provides for the application of New York law, whereas the Compensation Plan's provision requires the application of New Jersey law; and (3) the PartnerPlus Plan's arbitration clause does not include a class waiver whereas the Compensation Plan does.

**\*4** With regard to the first two "conflicts" alleged by the Plaintiffs, we observe that regardless of whether the PartnerPlus Plan qualifies as an ERISA plan, the mere presence of differences between the terms in the PartnerPlus Plan and the Compensation Plan identified by the Plaintiffs does not render one of them void. Both plans can coexist by providing for arbitration based on different scenarios. [3]

Plaintiffs focus primarily on the "conflict" in the fact that the Compensation Plan expressly waives class actions, while the PartnerPlus Plan does not. Based on the Compensation Plan, UBS argues that the Plaintiffs must arbitrate individually, rather than proceed on a class basis. The Plaintiffs maintain that in light of Financial Industry Regulatory Authority ("FINRA") Rule 13204(a)(1)'s prohibition against class litigation and the PartnerPlus Plan's lack of a class waiver, their claims cannot be arbitrated and, therefore, must proceed as a class in federal court. We conclude that the PartnerPlus Plan's lack of a class waiver does not relieve the Plaintiffs from their independent obligation to submit their claim to arbitration based

on the Compensation Plan. Nevertheless, having concluded that the Compensation Plan's arbitration provision requires the Plaintiffs to submit their claim to arbitration, we leave for the FINRA arbitration panel to decide whether the class waiver requires the Plaintiffs to arbitrate on an individual basis.[4] *See* [Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451 (2003)](plurality) (concluding that under the parties' agreement, "the question—whether the agreement forbids class arbitration—is for the arbitrator to decide [because] [t]he parties agreed to submit to the arbitrator '[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract' " (alteration in original) (emphasis omitted) (quoting arbitration clause)); [Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir.2012)](explaining that when the arbitration rules provide the arbitration panel with authority to determine the scope of its own jurisdiction, questions concerning arbitrability should be made by the arbitration panel); *see also* FINRA Rule 12409 ("The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties.").

### B. The Scope of the Compensation Plan's Arbitration Clause Covers the Plaintiffs' Claim

Turning to the second prong of the test for compelling arbitration, the parties do not contest that the nature of the dispute between them falls within the Compensation Plan's arbitration clause. This arbitration clause provides that the parties will arbitrate "any disputes" related to compensation and employment, including disputes under ERISA. The Plaintiffs' claims arose as a result of their employment with UBS, and they seek to recover compensation they allege is due to them following their departure from UBS. Specifically, the Plaintiffs' complaint alleges that they are "entitled to recover all amounts to which they [are] entitled under the [PartnerPlus] Plan, including all Firm Contributions, Market Interest and Turbo Interest purportedly forfeited by them" following their departure from UBS. Therefore, the Plaintiffs' compensation claim falls squarely within the scope of the arbitration clause.

**\*5** However, based on the arbitration clause's application to "all disputes" except "claims for injunctive relief," the Plaintiffs argue that their claim is not arbitrable because they seek in their complaint—in addition to all equitable relief available under [§ 1132(a)(3)](link)—"an injunction against any act or practice which violates ERISA." Nonetheless, this exception does not preclude arbitration of the entirety of the Plaintiffs' claim because the Plaintiffs have not confined the relief they seek to merely an injunction, but rather they seek to recover any relief available under [§ 1132(a)(3)](link).

Furthermore, as we have previously held in the context of class action claims for injunctive relief, an injunction is not appropriate when the plaintiff would not benefit from prospective relief, the plaintiff's relationship with the defendant has ended, or the plaintiff essentially seeks monetary damages. *See, e.g.,* [Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n, 624 F.3d 185, 200 (5th Cir.2010)](link); [Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 978 (5th Cir.2000)](link) (observing that potential class members "who do not face further harm from [the defendant's] actions ... have nothing to gain from an injunction"); *see also* [Bauer v. Texas, 341 F.3d 352, 358 (5th Cir.2003)](link) ( "[W]hen a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future ... [and] from which the continuation of the dispute may be reasonably inferred.") (citation omitted). Here, each of these circumstances counsel against the availability of injunctive relief. Specifically, the Plaintiffs have failed to identify any prospective relief that they seek through an injunction, their relationship (and that of the class members they seek to represent) with UBS has ended,[5] and they unabashedly seek ultimately to recover monetary relief.[6]

Nevertheless, in light of the Plaintiffs' broad request for all appropriate equitable relief under [§ 1132(a)(3)](link) and our conclusion that the dispute must, in the first instance, be sent to arbitration, we leave the initial decision of the scope of arbitration to the arbitration panel. *See* [Bazzle, 539 U.S. at 451](link); [Petrofac, 687 F.3d at 675](link).

### IV. Conclusion

The arbitration clause in the Compensation Plan represents a separate and independent agreement between the Plaintiffs and UBS to submit "any disputes" concerning compensation and employment to arbitration. Regardless of whether the arbitration clause in the PartnerPlus Plan would otherwise require arbitration, the arbitration provision in the Compensation Plan is enforceable and its scope covers the Plaintiffs' claim. [7] Accordingly, we REVERSE the denial of UBS's motions to compel arbitration and REMAND for entry of an order compelling arbitration.

Footnotes

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The Letters of Understanding also include arbitration and class waiver provisions that are substantially similar to the provisions in the Compensation Plan.

[2] UBS's petition to appeal the district court's grant of class certification is being held in abeyance pending the outcome of this appeal.

[3] Although arguing that one plan references New Jersey law and the other New York law, Plaintiffs fail to explain how these two states' laws conflict in any way meaningful here where a violation of federal law is alleged. Thus, we have a "false conflict." See *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.,* 646 F.3d 321, 326 n. 2 (5th Cir.2011) (observing that "where all potentially applicable states' laws do not differ in material respect, the claimed conflict is a 'false conflict' " (citing *Hininger v. Case Corp.,* 23 F.3d 124, 126 (5th Cir.1994))).

[4] The arbitration clauses in both the Compensation and PartnerPlus Plans provide that the arbitration should proceed under the FINRA Rules. FINRA Rule 13204(a)(1) provides that a "[c]lass action claim[ ] may not be arbitrated." However, there are certain exceptions to this provision, including that it does not apply when a "member of the certified or putative class elects not to participate in the class." See FINRA Rule 13204(a)(4). Having concluded that the arbitration clause in the Compensation Plan requires arbitration, we leave for the arbitrator to determine this rule's potential effect on the arbitration proceedings.

[5] The named Plaintiffs are no longer employed by UBS and they limit the scope of the class they seek to represent to branch managers and financial advisors "who left the employment" of UBS. Further, the Plaintiffs' claim is necessarily limited to individuals who have ended their relationship with UBS because the violation of ERISA that they allege only occurs after there has been a non-qualifying separation between UBS and the PartnerPlus Plan participant, which results in UBS determination that certain contributions are forfeited.

[6] The Plaintiffs' counsel admitted before the district court and during oral argument before this court that the Plaintiffs' purpose in this litigation is to secure monetary damages. It is clear that the Plaintiffs' claim at its core is a claim for monetary damages cabined within a claim for injunctive relief. As the Supreme Court has observed, an injunction requiring a defendant essentially to pay monetary damages is not a form of relief that was typically available in equity and, therefore, is not available through § 1132(a)(3). See *Great–W. Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210–11 (2002).

[7] In the final footnote of their brief, the Plaintiffs explain that they argued to the district court "that even if there had been an agreement to arbitrate 29 U.S.C. § 1132(a)(3) claims, such an agreement would be barred by the clear congressional command of ERISA. Whether Congress intended to prohibit the arbitration of *section 1132(a)(3)* claims is indisputably an open question in this Circuit." However, the Plaintiffs failed to present any argument or authorities to this court describing the alleged congressional command under ERISA that would preclude arbitration of their claim and, therefore, they have waived any argument on this issue. See *Bridas S.A.P.I.C. v. Gov't of Turkm.,* 345 F.3d 347, 356 n. 7 (5th Cir.2003) (holding that an argument raised only in a footnote is waived); *Douglas W. ex rel. Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.,* 158 F.3d 205, 210 n. 4 (5th Cir.1998) ( "[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue.").